E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
VALERIE MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0756
     Facsimile: (213) 894-6269
     E-mail:    Valerie.Makarewicz@usdoj.gov

AMANDA LISKAMM
Director, Consumer Protection Branch
MANU J. SEBASTIAN
BRIANNA M. GARDNER
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
     450 Fifth Street NW, Suite 6400
     Washington, DC 20001
     Telephone: (202) 514-0515
     Facsimile: (202) 514-8742
E-mail:   Manu.J.Sebastian@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 23-CR-00021-JGB |
|---|---|
| Plaintiff, | GOVERNMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR PRETRIAL DETENTION; EXHIBITS |
| v. | |
| JASON EDWARD THOMAS CARDIFF, | |
| Defendant. | |

Plaintiff United States of America, by and through undersigned counsel, submits this brief in support of its notice of request for detention of the defendant, Jason Edward Thomas Cardiff, pending trial pursuant to 18 U.S.C. § 3142(e).

```
Dated: November 29, 2023        Respectfully submitted,

                                E. MARTIN ESTRADA
                                United States Attorney

                                AMANDA LISKAMM
                                Director, Consumer Protection Branch


                                       /s/
                                MANU J. SEBASTIAN
                                BRIANNA M. GARDNER
                                VALERIE L. MAKAREWICZ
                                Trial Attorneys/Assistant United
                                States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA
```

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The government respectfully requests that the Court order defendant Jason Edward Thomas Cardiff ("defendant") detained pending trial in these matters.

Redwood Scientific Technologies, Inc. ("Redwood") is a Delaware corporation with its corporate headquarters located in Upland, California. Redwood sold various products to consumers, including thin film strips marketed as homeopathic remedies causing weight loss, male sexual enhancement, and smoking cessation. Defendant served as Redwood's Chairman of the Board of Directors, Chief Executive Officer, and President.

As alleged in the Indictment, during approximately January 2018 through May 2018, the defendant ordered his employees to participate in a scheme that defrauded consumers out of hundreds of thousands of dollars. Specifically, the defendant engaged in a scheme to charge prior one-time single-purchase customers and place them on periodic continuity sales plans without their authorization or consent. During this scheme to defraud, the defendant also ordered the deletion and destruction of documents that Redwood had been ordered to produce as a part of a Federal Trade Commission ("FTC") investigation.

The FTC investigation uncovered numerous consumer complaints related to Redwood's sales practices and led to a civil enforcement suit in this district in *FTC v. Cardiff, et al.*, Case No. 5:18-cv-02104-DMG-PLA.[1] In March 2022, the Court issued a permanent

---

[1] The case was originally assigned to Hon. James V. Otero, and then re-assigned to Hon. Dolly M. Gee.

1   injunction against Redwood after finding that the FTC prevailed on
2   all 16 counts in its complaint against defendant, his wife, and
3   Redwood. [Dkt. 706].
4       Shortly after the FTC litigation ended in early 2022, the
5   defendant sold his residence in the United States and moved to
6   Ireland, where he maintains dual citizenship. His wife and daughter
7   moved with him and are currently residing in Ireland.
8       On January 31, 2023, a federal grand jury returned an Indictment
9   against the defendant that charged him with one count of access
10  device fraud, in violation of 18 U.S.C. § 1029(a)(5), one count of
11  aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1),
12  and two counts of witness tampering, in violation of 18 U.S.C. §
13  1512(b)(2)(B). [Dkt. #1].  The Court issued an arrest warrant for the
14  defendant the same day.
15      On November 26, 2023, U.S. Customs and Border Protection
16  officers arrested defendant at LAX Airport after defendant returned
17  to the United States from Ireland, via London, United Kingdom.
18  Defendant made his initial appearance on November 27, 2023. [Dkt.
19  #7].
20      As discussed more fully below, the defendant poses a substantial
21  risk of flight and a danger to the community, and the government
22  argues there are no release conditions that can reasonably ensure his
23  appearance on the charges in this case.
24  **II.   LEGAL STANDARD & ARGUMENT**
25      The Bail Reform Act of 1984 permits pretrial detention of a
26  defendant without bail where "no condition or combination of
27  conditions will reasonably assure the appearance of the person as
28  required and the safety of any other person and the community." 18

4

U.S.C. § 3142(e). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id*. A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. §3142(f).

Danger to the community may include "pecuniary or economic harm." *United States v. Reynolds*, 956 F.2d 192 (9th Cir. 1992). To determine whether conditions can reasonably assure defendant's appearance and the safety of the community, the Court considers: (1) the nature and circumstances of the offenses; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). With the defendant, these factors support findings by the Court that no condition or combination of conditions will reasonably assure the appearance of the defendant as required or the safety of the community.

The government proffers the following evidence in support of its request for detention and if needed, will call United States Postal Inspection Service Inspector Christine Reins-Jardin to testify.

**A.   The Offenses and Evidence Against Defendant**

The nature and circumstances of the offenses in this case are serious. In counts 1 and 2, the defendant caused hundreds of thousands of dollars in losses to thousands of victims across the United States over a period of just a few months. When defendant found his company under investigation, defendant then caused it to

fail to comply with a civil investigative demand issued by the FTC, requiring Hon. James S. Otero to hold contempt proceedings in July and August 2019. *FTC v. Jason Cardiff, et al.*, No. 5:18-cv-2104-DMG, Docket Nos. 181, 182, 183, 212.  Not to be deterred by the Court's orders in the civil case, and rather than produce documents to the FTC, defendant instructed at least two employees to destroy them, which serves as the basis for counts 3 and 4 of the Indictment.

Additionally, the weight of the government's evidence against the defendant is strong, including inculpatory emails written by the defendant and his employees in perpetrating this scheme to defraud former customers, financial data from Redwood's payment processors and customer relationship management system, and statements from former employees regarding the defendant's orders to destroy relevant documents.

Finally, the government's evidence against defendant has already been tested and found to be persuasive within the civil matter, as seen with the Court's ultimate findings against defendant. On March 1, 2022, the Court granted summary judgement in favor of the FTC when the Court found defendant violated sixteen counts of the FTC Act, which included counts related to the charged conduct. *See* Exhibits A and B, attached herein. Among a plethora of other deceptive conduct, the Court found that defendant had violated the FTC Act "by causing charges to be submitted for payment to consumers' credit and debit cards without the express informed consent of those consumers." Exhibit B, at 4:6-9. Thus, an independent factfinder has already assessed the evidence—albeit at a lower civil standard—and found it persuasive.

### B. Defendant's History & Characteristics

Defendant has a proven history of deception and dishonesty in the representations he made to the Court and shown that he cannot follow court orders. Specifically, Judge Otero found that defendant obtained a second Irish passport <u>after</u> the Court had seized his first one during the FTC litigation. See Exhibit C, 389:7-14. There, the Court ordered defendant held overnight while the second passport was located and secured. *Id*. at 341:1-7. Separately, the Court found that the defendant continuously lied to the court-appointed receiver about his assets and concealed his income and assets from the court. *Id*. at 391:2-6. During a contempt hearing on July 31, 2019, the Court stated, "I would say of the 16 years I've been on the federal court, I've never presided over a matter where the fraud committed by the defendants was so clear, the deception so extreme. I'm astounded." *Id*. at 389:3-6.

In addition, the Court stated, "I've heard carefully from the Cardiffs. Their stories are totally unbelievable. It's pretty clear to the Court that they've lied, that they worked in concert with each other and with others to avoid, violate the conditions of the orders of the Court." *Id*. at 390:3-7.

Given the defendant's history and complete disregard for prior orders issued by the Court, the defendant is unlikely to adhere to conditions imposed by this Court if released.

### C. Defendant's Risk of Flight

The defendant poses a significant risk of flight for multiple reasons.

First, the defendant's current ties to the United States are tenuous at best. The defendant has no residence within the United

States. As mentioned above, shortly after the conclusion of the FTC civil matter, the defendant sold his home in California and moved to Ireland with his wife and daughter, where all currently reside. The defendant has not returned to the United States since he left in early 2022 and maintains dual U.S. and Irish citizenship. Also as discussed above, the Court found that the defendant tried to flee and held the defendant in contempt for obtaining a second Irish passport after the Court had seized his first. Specifically, Judge Otero stated, "Let's get the marshals up. The Court has significant concern that Mr. Cardiff is attempting to flee the jurisdiction of the Court. He'll be placed in custody." *See* Exhibit C, 154:9-12.

Second, the defendant allegedly possesses significant assets and likely has the means to flee from prosecution. The defendant routinely flaunts wealth by posting pictures and making statements about it on social media. *See* Exhibit D. Unexplained is why defendant has not offered any collateral as bond for himself.

In contrast, defendant's company, Redwood, recently filed a Registration Statement with the Securities and Exchange Commission, wherein it stated that its "operations have been largely funded by [defendant](our CEO and majority stockholder) and his affiliates, which funding is treated as contributions to capital." *See* Exhibit E. Defendant signed the statement. Redwood also

> requires approximately $350,000 per month on an annualized basis for operating expenses to fund the costs associated with our financing activities, legal and accounting expenses, other general and administrative expenses, research and development, regulatory compliance, product development and maintenance, third party manufacturing fees, and compensation of executive management and our employees. Based on our current cash position, without additional financing we may not be able to pay our obligations past the fourth quarter of fiscal 2023.

Redwood also noted in the Registration Statement the following:

> As described in the report of our auditors for the years ended December 31, 2022 and 2021 and the notes to our financial statements, there is substantial doubt about our ability to continue as a going concern, and if we are unable to continue, you may lose your entire investment.
>
> The uncertainty about our ability to continue in operation is based on our continuing losses from operation, limited revenue and limited working capital, among other things which existed as of year-end December 31, 2022 and December 31, 2021. As of December 31, 2022, we had a cash balance of $0, working capital of $0 and an accumulated deficit of $5,275,421.

Redwood also stated that year end operating expenses for 2022 totaled $143,713, which is also the company's net loss. For 2021, Redwood noted that it was under receivership (in conjunction with the FTC litigation), and did not have any revenue or expenses, but did have a deficit of over $5 million. No compensation was paid to defendant in 2021 and 2022. However, according to defendant, Redwood has commenced clinical trials of its products in Chicago, Illinois and approximate the cost as $1.25 million, the source of which is unknown. As such, there is substantial doubt that defendant is generating any income from his job as CEO, yet broadcasting on social media that he is wealthy and successful. Defendant cannot have it both ways. Even if the Court were to grant defendant bond, defendant is required to maintain active employment.

Third, the defendant left the United States and resided in Ireland in an attempt to avoid arrest on criminal charges. On November 26, 2023, USPIS Postal Inspectors went to LAX to arrest defendant after he was detained by United States Custom and Border Protection agents pursuant to the instant arrest warrant. After being advised of his *Miranda* rights and the charges against him, the defendant told arresting agents that the FTC shut down his business

in 2018, so the five year statute of limitations would have passed for any charges. Defendant stated that he won a hearing against the FTC, so he was now being charged criminally because the FTC is mad about losing.

Further, defendant's latest trip to the United States was likely planned to be a short one. He was arrested with $7,000 in cash on hand and with two carry-ons of luggage. He told the arresting agents that he was in Los Angeles to visit his 96-year-old father, who is ill. The arresting agents also asked him if anyone in Los Angeles was expecting him so they could contact them on his behalf and defendant stated there was not. These facts, taken together, further strengthen that defendant 1) has no ties to this district; and 2) was returning to the United States for a brief visit with his ill elderly father and return to Ireland.

Fourth, the defendant faces a significant prison sentence if convicted – including a two-year mandatory minimum for the aggravated identity theft charge. The Ninth Circuit permits the district court, in assessing the risk that a defendant will fail to appear, to consider possible punishment as an incentive for a defendant to flee. *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Here, the potential punishment defendant faces on these charges creates a strong incentive to flee, particularly for a person who has not previously served any significant time in prison.

The defendant has little connecting him to the district and every reason to flee the country, especially with his wife and child located overseas and looking at a potentially long sentence, if convicted. His conduct in his FTC litigation demonstrated a successive disregard for court orders. Accordingly, the government

submits that a preponderance of the evidence shows that defendant should be detained as a flight risk.

### D. Defendant's Danger to the Community

The defendant also poses a danger to the community which cannot be mitigated by any conditions which the Court could impose. As noted, the defendant has repeatedly demonstrated a complete disregard of the law. As the Indictment alleges, the defendant is charged with two counts of witness tampering wherein he directed two former employees to destroy documents relevant to the FTC's Civil Investigative Demand in the civil matter. The government has string and legitimate concerns that if the defendant were released, he would contact witnesses who are the subject of the tampering charges now that he is aware that he is indicted.

### III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court order the defendant be detained pending trial. There is no condition or combination of conditions of release that will assure that defendant will not flee or pose a danger to the safety of any other person or the community.  Simply, defendant is unlikely to abide by any condition or combination of conditions of his release.