1  Stephen G. Larson (SBN 145225)
   slarson@larsonllp.com
2  Hilary Potashner (SBN 167060)
   hpotashner@larsonllp.com
3  Jonathan Gershon (SBN 306979)
   jgershon@larsonllp.com
4  **LARSON LLP**
   555 South Flower Street, 30th Floor
5  Los Angeles, California 90071
   Telephone:(213) 436-4888
6  Facsimile: (213) 623-2000

7  Attorneys for Defendant
   JASON EDWARD THOMAS CARDIFF

8

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11 | UNITED STATES OF AMERICA,        | Case No. 5:23-CR-00021-JGB

12 |            Plaintiff,             | **EXHIBIT NOS. 1-21**
                                        **TO DECLARATION OF STEPHEN**
13 |        vs.                        | **G. LARSON IN SUPPORT OF**
                                        **MOTION TO DISMISS**
14 | JASON EDWARD THOMAS               | **INDICTMENT WITH PREJUDICE**
     CARDIFF,
15 |                                   | **VOLUME 1 OF 5**
              Defendant.
16 |                                   | [*Filed concurrently with Motion to*
                                        *Dismiss Indictment with Prejudice;*
17 |                                   | *Declaration of Stephen G. Larson; and*
                                        *[Proposed] Order*]
18
                                        Date:       May 6, 2024
19 |                                   | Time:       2:00 p.m.
                                        Courtroom:  1
20

21

22

23

24

25

26

27

28

**INDEX OF EXHIBITS TO DECLARATION OF STEPHEN G. LARSON IN SUPPORT OF MOTION TO DISMISS INDICTMENT WITH PREJUDICE**

| EXH. NO. | DESCRIPTION |
|---|---|
| 1 | ███████████████████████████████ dated July 17, 2018 to October 2, 2022. |
| 2 | ████████████████████████████ Bates Number GOV005_00000495. |
| 3 | ████████████████████████████████, Bates Number GOV005_00000376. |
| 4 | ███████████ Bates Number GOV005_00000475. |
| 5 | ████████████████████, Bates Number GOV005_00000378. |
| 6 | ████████████████████, Bates Number GOV005_00000498. |
| 7 | ████████████████████, Bates Number GOV005_00000539. |
| 8 | ████████████████████, Bates Number GOV005_00000507. |
| 9 | ████████████████████, Bates Number GOV005_00000509. |
| 10 | ████████████████████, Bates Number GOV_MOI_001552–53. |
| 11 | FTC's Complaint for Permanent Injunction and Other Equitable Relief, filed on October 10, 2018, Case No. 5:18-cv-02104-DMG-PLA ("FTC Action"), ECF No. 1. |
| 12 | ████████████████████ Bates Number GOV005_00000424. |

| EXH. NO. | DESCRIPTION |
|---|---|
| 13 | FTC's Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, filed on October 10, 2018, FTC Action, ECF No. 29. |
| 14 | Excerpt of Receiver's Declarations of Brick Kane and Craig A. Welin in Support of Application for Receiver's Counsel's Fees and Expenses, filed on January 7, 2019, FTC Action, ECF No. 81-1. |
| 15 | ███████████████████████████████████, Bates Number GOV005_00000425. |
| 16 | █████████████████████████, Bates Number GOV_MOI_001092–93. |
| 17 | FTC's Preliminary Injunction with Asset Freeze, Receiver, and Other Equitable Relief Against Jason Cardiff and Eunjung Cardiff, filed on November 8, 2018, FTC Action, ECF No. 59. |
| 18 | █████████████████████████, Bates Number GOV005_00000513. |
| 19 | Receiver's Notice of Application and Application for Order Approving Receiver's Counsel's Fees and Expenses, FTC Action, ECF No. 81. |
| 20 | ██████████████████████████████, Bates Number GOV005_00000453. |
| 21 | ████████████████████████, Bates Number GOV005_00000451. |
| 22 | ███████████████████ Bates Number GOV005_00000448. |
| 23 | ██████████████████C, Bates Number GOV005_00000426. |
| 24 | █████████████████████████████ Bates Number GOV005_00000477. |
| 25 | ██████████████████████████, Bates Number GOV005_00000579. |

LARSON
LOS ANGELES

| EXH. NO. | DESCRIPTION |
|---|---|
| 26 | Joint Motion for Protective Order filed on September 23, 2019, FTC Action, FTC Action, ECF No. 218. |
| 27 | Stipulated Protective Order filed on September 24, 2019, FTC Action, FTC Action, ECF No. 219. |
| 28 | ███████████████████████ Bates Number GOV005_00000061. |
| 29 | ███████████████████████████████████████ , Bates Number GOV005_00000375. |
| 30 | ████████████████████, Bates Number GOV005_00000377. |
| 31 | ███████████████████████████████████, Bates Number GOV005_00000086. |
| 32 | ███████████████████████████████ Bates Number GOV005_00000063. |
| 33 | ███████████████████████████████ Bates Number GOV005_00000121. |
| 34 | ████████████████████████, Bates Number GOV005_00000073. |
| 35 | ████████████████████████████ Bates Number GOV005_00000155. |
| 36 | ██████████████████████████████, Bates Number GOV005_00000096. |
| 37 | ██████████████████████████, Bates Number GOV005_00000131. |
| 38 | ███████████████████████████████, Bates Number GOV005_00000002. |
| 39 | ████████████████████████ Bates Number GOV005_00000038. |
| 40 | ████████████████████████████, Bates Number GOV_MOI_000972. |

EXHIBITS TO DECLARATION OF STEPHEN LARSON IN SUPPORT OF MOTION TO DISMISS INDICTMENT WITH PREJUDICE

LARSON
LOS ANGELES

| EXH. NO. | DESCRIPTION |
|---|---|
| 41 | ███████████████████████, Bates Number GOV005_00000199. |
| 42 | ████████████████████████████ Bates Number GOV005_00000005. |
| 43 | ███████████████████████████, Bates Number GOV005_00000168. |
| 44 | ██████████████████████████, Bates Number GOV005_00000198. |
| 45 | ████████████████████████████, Bates Number GOV005_00000006. |
| 46 | ██████████████████████████, Bates Number GOV005_00000565. |
| 47 | ████████████████████████ Bates Number GOV005_00000191. |
| 48 | Excerpt of Cardiff's Ex Parte Opposed Application filed on July 13, 2020, FTC Action, ECF No. 391. |
| 49 | FTC's Opposition to Ex Parte Application filed on July 14, 2020, FTC Action, ECF No. 395. |
| 50 | █████████████████████████, Bates Number GOV005_00000190. |
| 51 | Order Denying Ex Parte Application filed on July 16, 2020, FTC Action, ECF No. 403. |
| 52 | █████████████████████ Bates Number GOV005_00000233. |
| 53 | ██████████████████████████, Bates Number GOV001_00010766–71. |
| 54 | ███████████████████, Bates Number GOV001_00001876–82. |
| 55 | ████████████████████, Bates Number GOV001_00014341–45. |

EXHIBITS TO DECLARATION OF STEPHEN LARSON IN SUPPORT OF MOTION TO DISMISS INDICTMENT WITH PREJUDICE

| EXH. NO. | DESCRIPTION |
|---|---|
| 56 | ███████████████████████████, Bates Number GOV001_00002003–23. |
| 57 | ███████████████████████████, Bates Number GOV001_00002203–26. |
| 58 | ███████████████████████████, Bates Number GOV001_00010849–69. |
| 59 | ██████████ Bates Number GOV001_00011061–62. |
| 60 | ████████ Bates Number GOV005_00000201. |
| 61 | ████████ Bates Number GOV005_00000018. |
| 62 | █████████████ Bates Number GOV005_00000051. |
| 63 | █████████ Bates Number GOV005_00000020. |
| 64 | ███████████████████ Bates Number GOV005_00000140. |
| 65 | Receiver's Declarations of Brick Kane and Michael Gerard Fletcher, filed on September 2, 2020, FTC Action, ECF No. 479-1. |
| 66 | ████████████████████, Bates Number GOV005_00000186. |
| 67 | ████████████████████, Bates Number GOV005_00000182. |
| 68 | In Chambers—Order re Cross-Motions for Summary Judgment filed on October 9, 2020, FTC Action, ECF No. 511. |
| 69 | ██████████████████████, Bates Number GOV005_00000117. |
| 70 | ████████████████, Bates Number GOV005_00000144. |

LARSON
LOS ANGELES

| EXH. NO. | DESCRIPTION |
|---|---|
| 71 | Receiver's Declarations of Brick Kane and Michael Gerard Fletcher, filed on January 8, 2021, FTC Action, ECF No. 537-1. |
| 72 | ███████████████████████ Bates Number GOV005_00000181. |
| 73 | ███████████████████████, Bates Number GOV005_00000029. |
| 74 | ███████████████████████ Bates Number GOV005_00000266. |
| 75 | ███████████████████████, Bates Number GOV_MOI_000310. |
| 76 | ███████████████████████, Bates Number GOV001_00029793–29811. |
| 77 | In Chambers - Order re Remedies filed on June 29, 2021, FTC Action, ECF No. 627. |
| 78 | ███████████████████████, Bates Number GOV005_00000290. |
| 79 | ███████████████████████, Bates Number GOV_MOI_001077–91. |
| 80 | ███████████████████████ Bates Number GOV_MOI_001794–95. |
| 81 | In Chambers—Order Setting Dates filed August 26, 2021, FTC Action, ECF No. 650. |
| 82 | FTC's [Proposed] Final Judgment Including Permanent Injunction filed on September 3, 2021, FTC Action, ECF No. 651. |
| 83 | ███████████████████████ Bates Number GOV005_00000285. |
| 84 | Final Judgment Including Permanent Injunction as to Defendants Jason Cardiff and Eunjung Cardiff filed on March 1, 2022, FTC Action, ECF No. 706. |

| EXH. NO. | DESCRIPTION |
|---|---|
| 85 | Receiver's Final Report and Accounting, and Notice of Receiver's Final Fee Application filed on September 14, 2022, FTC Action, ECF No. 715. |
| 86 | Receiver's Declarations of Antia Jen and Michael Gerard Fletcher filed on September 14, 2022, FTC Action, ECF No. 715-1. |
| 87 | ███████████████████████████, Bates Number GOV005_00000270. |
| 88 | Order Approving the Receiver's Final Report and Accounting filed on September 30, 2022, FTC Action, ECF No. 716. |
| 89 | ██████████████████████████████, Bates Number GOV005_00000269. |
| 90 | Plaintiff's Memorandum in Support of its Motion for Summary Judgment filed on August 6, 2020, FTC Action, ECF No. 423-2. |

# EXHIBIT 1

## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 2

## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 3

## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 4
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 5

## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 6

## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 7
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 8
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 9

## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 10
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 11

1   ALDEN F. ABBOTT
    General Counsel
2   ELIZABETH JONES SANGER (WI 1080449)
3   esanger@ftc.gov; (202) 326-2757
    JAMES A. PRUNTY (OR 84128)
4   jprunty@ftc.gov; (202) 326-2438
5   EDWIN RODRIGUEZ (DC 446457)
    erodriguez@ftc.gov; (202) 326-3147
6   SHIRA D. MODELL (DC 358757)
7   smodell@ftc.gov; (202) 326-3116
    Federal Trade Commission
8   600 Pennsylvania Ave., NW
9   Washington, DC 20580
    Fax: (202) 326-3259
10
11  STACY PROCTER (Local Counsel) (CA 221078)
12  sprocter@ftc.gov
    Federal Trade Commission
13  10990 Wilshire Blvd., Suite 400
14  Los Angeles, CA 90024
    Tel: (310) 824-4300
15  Fax: (310) 824-4380
16  ATTORNEYS FOR PLAINTIFF

17              UNITED STATES DISTRICT COURT
18              CENTRAL DISTRICT OF CALIFORNIA
19

20  |                                    )
    FEDERAL TRADE COMMISSION )           FILED UNDER SEAL
21  |                                    )
    |                                    )   Case No. ED18CV02104-JGB(KKx)
22          Plaintiff,                   )
    |                                    )
23          v.                           )   COMPLAINT FOR
    |                                    )   PERMANENT
24  |                                    )   INJUNCTION AND
    JASON CARDIFF, individually          )   OTHER EQUITABLE
25      and as an owner, officer,        )   RELIEF
26      director, or member of           )
    REDWOOD SCIENTIFIC                   )
27      TECHNOLOGIES, INC., a            )
28

                                   1

California corporation; )
REDWOOD SCIENTIFIC )
TECHNOLOGIES, Inc., a )
Nevada corporation; )
REDWOOD SCIENTIFIC )
TECHNOLOGIES, Inc., a )
Delaware corporation; )
IDENTIFY, LLC, a Wyoming )
limited liability company; )
ADVANCED MEN'S )
INSTITUTE PROLONGZ )
LLC, d/b/a AMI, a California )
limited liability company; and )
RUN AWAY PRODUCTS, )
LLC, a New York limited )
liability company; and )
both general and limited )
partner of )
CAROLS PLACE LIMITED )
PARTNERSHIP, an Arizona )
limited liability partnership; )

**EUNJUNG CARDIFF**, a/k/a )
Eunjung Lee, a/k/a Eunjung )
No, individually and as an )
owner, officer, director, or )
member of )
REDWOOD SCIENTIFIC )
TECHNOLOGIES, INC., a )
California corporation; )
REDWOOD SCIENTIFIC )
TECHNOLOGIES, Inc., a )
Nevada corporation; )
REDWOOD SCIENTIFIC )
TECHNOLOGIES, Inc., a )
Delaware corporation; )
IDENTIFY, LLC, a Wyoming )
limited liability company; )
ADVANCED MEN'S )
INSTITUTE PROLONGZ )

2

LLC, d/b/a AMI, a California
limited liability company; and
RUN AWAY PRODUCTS,
LLC, a New York limited
liability company; and
both general and limited
partner of
CAROLS PLACE LIMITED
PARTNERSHIP, an Arizona
limited liability partnership;

**DANIELLE CADIZ**, a/k/a Danielle
Walker, individually;

**REDWOOD SCIENTIFIC
TECHNOLOGIES, INC.,** a
California corporation, also
d/b/a Rengalife;

**REDWOOD SCIENTIFIC
TECHNOLOGIES, INC.,** a
Nevada corporation;

**REDWOOD SCIENTIFIC
TECHNOLOGIES, INC.,** a
Delaware corporation;

**IDENTIFY, LLC**, a Wyoming
limited liability company;

**ADVANCED MEN'S INSTITUTE
PROLONGZ LLC**, d/b/a
AMI, a California limited
liability company;

**RUN AWAY PRODUCTS, LLC**, a
New York limited liability
company; and

**CAROLS PLACE LIMITED**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

3

**PARTNERSHIP**, an Arizona  )
limited liability partnership,  )
                                )
Defendants.                     )

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, Section 918(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), and Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. § 6105, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, Section 4 of ROSCA, 15 U.S.C. § 8403, Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), Section 1005.10(b) of EFTA's implementing Regulation E, 12 C.F.R. § 1005.10, and Section 310.4(b)(1)(v) of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(b)(1)(v), in connection with their false and unsubstantiated claims for dissolvable film strips advertised for smoking cessation, weight loss, and male sexual performance; a related autoship continuity program resulting in unauthorized shipments and charges; abusive telemarketing through robocalls; and unsubstantiated earnings claims for a multi-level marketing scheme.

4

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345; 15 U.S.C. §§ 45(a) and 53(b); 15 U.S.C. § 8404(a); and 15 U.S.C. § 1693o(c).

3.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce, and Section 12, 15 U.S.C. § 52, which prohibits false advertisements for food, drugs, devices, services, or cosmetics in or affecting commerce.  The FTC also enforces ROSCA, 15 U.S.C. §§ 8401-8405, which prohibits the sale of goods or services on the Internet through negative option marketing without meeting certain requirements to protect consumers, including providing clear and conspicuous disclosure of all material terms of the transaction prior to obtaining the consumer's billing information, and obtaining the consumer's express informed consent before charging the consumer; EFTA, 15 U.S.C. §§ 1693-1693r, and its implementing Regulation E, 12 C.F.R. Part 1005, which regulate the rights, liabilities, and responsibilities of participants in electronic fund transfer systems; and the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, ROSCA, EFTA, Regulation E, and the TSR, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of

monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b) and 56(a)(2)(A); 15 U.S.C. § 8404(a); and 15 U.S.C. § 1693o(c).

## SUMMARY OF THE CASE

6. Individual Defendants Jason Cardiff, Eunjung Cardiff, and Danielle Cadiz have for years operated a fraudulent multi-pronged scheme that has bilked consumers out of millions of dollars through baseless advertising claims for products that purport to alleviate serious health conditions, while also enrolling consumers in unwanted autoship programs that have resulted in millions of dollars in unauthorized charges.

7. Defendants' evolving business operation injures consumers in multiple ways. First, Defendants' marketing of their dissolvable film strips relies on false or unsubstantiated claims for TBX-FREE (stop smoking aid), Eupepsia Thin (appetite suppressant), and Prolongz (men's sexual performance), including claims that those products were proven to work. Defendants also make false claims that their film strips are made in the United States and are sold with money-back guarantees. Then, Defendants enroll consumers – without prior notice and authorization and, in some cases, notwithstanding consumers' or Defendants' clear statements to the contrary – in autoship continuity plans that bill consumers monthly for unwanted products. Defendants also make it difficult for consumers to cancel those plans and get their money back. More recently, Defendants have turned to abusive telemarketing practices by delivering prerecorded marketing messages to millions of consumers. Finally, Defendants recently launched a multi-level marketing scheme for which they make false or unsubstantiated earnings claims.

8. Individual Defendants have operated the scheme through a web of interrelated companies, using Corporate Defendants as their alter egos. Corporate Defendants form a common enterprise, and include three corporations with the

same name – Redwood Scientific Technologies, Inc., a California Corporation; Redwood Scientific Technologies, Inc. a Nevada Corporation; Redwood Scientific Technologies, Inc., a Delaware Corporation – and at least 4 other entities, Identify, LLC; Advanced Men's Institute Prolongz LLC; Run Away Products, LLC; and Carols Place Limited Partnership.

## CORPORATE DEFENDANTS

9.     Corporate Defendant Redwood Scientific Technologies, Inc. ("Redwood California"), also doing business as Rengalife, is a California corporation with its principal place of business at 820 North Mountain Ave., Suite 100, Upland, CA 91786.  It has undergone name changes.  Redwood California was initially Advanced Men's Institute Prolongz LLC, which subsequently became Redwood Scientific Technologies LLC, and then finally the corporation Redwood California.  Redwood California transacts or has transacted business in this district and throughout the United States.  At times material to this Complaint, acting alone or in concert with others, Redwood California has advertised, marketed, distributed, or sold dissolvable film strips, including TBX-FREE, Eupepsia Thin, and Prolongz, to consumers throughout the United States.

10.     Corporate Defendant Redwood Scientific Technologies, Inc. ("Redwood Nevada") was, until December 2017, a Nevada corporation whose registered agent was located at 202 N. Carson Street, Carson City, NV 89701. Redwood Nevada was the parent of Redwood California, and it transacted business in this district and throughout the United States.

11.     Corporate Defendant Redwood Scientific Technologies, Inc. ("Redwood Delaware") is a Delaware corporation with its principal place of business at 820 North Mountain Ave., Suite 100, Upland, CA 91786.  Redwood Delaware was established in December 2017 as part of a merger between Greenway Design Group, Inc. and Redwood Nevada, thus becoming the parent of

7

Redwood California.  Through its subsidiaries, including Redwood California, Redwood Delaware has advertised, marketed, distributed, or sold dissolvable film strips, including TBX-FREE, Eupepsia Thin, and Prolongz, to consumers throughout the United States.

12.     Corporate Defendant Identify, LLC ("Identify") is a Wyoming limited liability company.  Identify has reserved multiple trade names in Wyoming, including TBX-FREE, Redwood Scientific Technologies, Advanced Men's Institute, and Runaway Products.  At times material to this Complaint, acting alone or in concert with others, Identify has advertised, marketed, distributed, or sold dissolvable film strips, including TBX-FREE, Eupepsia Thin, and Prolongz, to consumers throughout the United States.  Currently, Identify is the primary seller of TBX-FREE, Eupepsia Thin, and Prolongz, and receives revenue from the sales of those products.  Identify's bank accounts receive funds for activities conducted by other Corporate Defendants.

13.     Corporate Defendant Advanced Men's Institute Prolongz LLC ("AMI") was a California limited liability company formed in 2014 by Individual Defendant Eunjung Cardiff.  The managing member of AMI is Corporate Defendant Run Away Products, LLC.  At times material to this Complaint, acting alone or in concert with others, AMI has advertised, marketed, distributed, or sold Prolongz to consumers throughout the United States.

14.     Corporate Defendant Run Away Products, LLC ("Run Away") is a New York limited liability company formed on March 10, 2009 by Individual Defendant Eunjung Cardiff.  Run Away has at various times placed advertising for Prolongz, and been responsible for meeting payroll for Corporate Defendant Redwood California's employees.

15.     Corporate Defendant Carols Place Limited Partnership is an Arizona asset management limited partnership formed on January 23, 2017.  Carols Place

Limited Partnership holds 69% of the Common Shares of Redwood Delaware for the benefit of Individual Defendants Jason and Eunjung Cardiff. The two partners of Carols Place Limited Partnership are Carols Place Trust and Extension First, LLC, a Wyoming company formed on January 13, 2017 and owned by Individual Defendants Jason and Eunjung Cardiff. Carols Place Trust is a bridge trust formed on January 17, 2017 under Nevada law. Carols Place Trust owns the Cardiffs' home. The only two settlors and trustees of Carols Place Trust are Individual Defendants Jason Cardiff and Eunjung Cardiff. Carols Place Limited Partnership has received funds from Corporate Defendant Identify.

### INDIVIDUAL DEFENDANTS

### INDIVIDUAL DEFENDANT JASON CARDIFF

16.    Individual Defendant Jason Cardiff is the Founder, President, Chief Executive Officer, and a member of the Board of Directors of Corporate Defendant Redwood California, and the President, Chief Executive Officer, Secretary, Treasurer, and a Director of Corporate Defendant Redwood Delaware. Mr. Cardiff owns more than 150 million shares of Corporate Defendant Redwood Delaware common stock and controls all 2.5 million shares of Redwood Delaware's Series A Super Voting Preferred Shares, accounting for 96.6 percent of Redwood Delaware's voting securities. He was the President of Corporate Defendant Redwood Nevada before its December 2017 dissolution. Mr. Cardiff is also the managing member and has held himself out as an owner of Corporate Defendant Identify; he has held himself out as the owner of Corporate Defendant AMI; Mr. Cardiff is also a member of Corporate Defendant Run Away. Mr. Cardiff is a signatory on bank accounts of Corporate Defendants, as well as a trustee for Carols Place Trust.

17.    Individual Defendant Jason Cardiff participated in the creation and dissemination of advertising for TBX-FREE, Eupepsia Thin, and Prolongz. Mr.

Cardiff has appeared in videos promoting TBX-FREE and Eupepsia Thin, in which he touts the products' efficacy.  Mr. Cardiff also appeared in multiple videos promoting Defendant Redwood California's new multi-level marketing program (Rengalife), in which he claimed that Rengalife members are likely to earn substantial income.  Mr. Cardiff negotiated with a telemarketing company to deliver millions of prerecorded messages, commonly known as robocalls, to consumers promoting Defendants' products, and his voice is used by Defendants in those calls.  In addition, Mr. Cardiff appears to have been routinely copied on internal and external company emails, making him generally aware of company operations.

18.    Individual Defendant Jason Cardiff at all times material to this Complaint, acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Corporate Defendants, including the acts and practices set forth in this Complaint.  Mr. Cardiff resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

**INDIVIDUAL DEFENDANT EUNJUNG CARDIFF**

19.    Individual Defendant Eunjung Cardiff, a/k/a Eunjung Lee, a/k/a Eunjung No, is the Secretary, Director of Marketing, and a member of the Board of Directors of Corporate Defendant Redwood California, as well as its registered agent.  She is the Chief Operating Officer, Chief Marketing Officer, and a Director of Corporate Defendant Redwood Delaware, and she owns 550,800 shares of that company's Common Stock.  She was the Secretary of Corporate Defendant Redwood Nevada before its December 2017 dissolution.  Ms. Cardiff organized Corporate Defendant AMI; is the managing member of Corporate Defendant Run

1   Away; and has signed financial documents identifying herself as an owner of

2   Corporate Defendant Identify.

3       20.   Individual Defendant Eunjung Cardiff is identified as part of the

4   Management Team on the website of Corporate Defendant Redwood California,

5   and her profile says that:

6           At Redwood Scientific Technologies, Inc., [Ms. Cardiff] serves as the

7           Marketing Director, in which she oversees management's activities.

8           Eunjung also supervises the company's research and development

9           activities – the bread and butter of Redwood.  As all management

10          personnel reports [sic] to Eunjung, she has the best insights into the

11          company's marketing strategy.  Eunjung's focus on ensuring that the

12          company "meets" its financial targets, especially "acquisition cost per

13          new customer," guarantee[s] [t]he the company's success and

14          profitability.  She also works [closely] with Jason to constitute, layout,

15          and execute the company's success strategy.

16      21.   Individual Defendant Eunjung Cardiff, who is married to Individual

17  Defendant Jason Cardiff, participated in the dissemination of advertising for TBX-

18  FREE, Eupepsia Thin, and Prolongz.  She was the principal person responsible for

19  buying media for the three products.  She participated in responding to requests for

20  advertising claim substantiation during the television advertising clearance process

21  for TBX-FREE.  Ms. Cardiff also monitored the call centers receiving calls from

22  consumers to purchase TBX-FREE, Eupepsia Thin, and Prolongz.  Ms. Cardiff

23  also assisted Individual Defendant Jason Cardiff in filming some of the Facebook

24  Live videos promoting Rengalife.  Ms. Cardiff's voice also is used by Defendants

25  in robocalls to consumers, and she paid for robocall expenses.  She has applied for

26  multiple merchant accounts on behalf of several Corporate Defendants and she is a

27  signatory on several of their checking accounts, as well as a trustee for Carols

28  

11

Place Trust.

22.     Individual Defendant Eunjung Cardiff, at all times material to this Complaint, acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Corporate Defendants, including the acts and practices set forth in this Complaint. Ms. Cardiff resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

### INDIVIDUAL DEFENDANT DANIELLE CADIZ

23.     Individual Defendant Danielle Cadiz, a/k/a Danielle Walker, has served as Corporate Defendant Redwood California's Director of Operations since December 2016 and as its Business Manager since January 2015. Ms. Cadiz's Linkedin.com profile describes her responsibilities at Corporate Defendant Redwood California as "leading day to day business operations, office management, [Accounts Payable/Accounts Receivable], cash flow, Human Resources and strategic planning." Ms. Cadiz executes virtually all of the activities of Corporate Defendants and has actual and implied authority to make decisions on behalf of Corporate Defendants.

24.     In the course of her official responsibilities, Individual Defendant Danielle Cadiz receives information about consumer complaints. She also has communicated with the foreign manufacturers of the Defendants' film strip products and appeared in a video promoting the film strip technology, entitled "The End of the Pill," where she was identified as Corporate Defendant Redwood California's "Operations Manager." Ms. Cadiz, along with Individual Defendant Jason Cardiff, negotiated with a telemarketing company to deliver millions of robocalls to consumers promoting several of Defendants' products. Ms. Cadiz

signed the contract for services with the telemarketing company and monitored the company's performance under the contract.

25.   Individual Defendant Danielle Cadiz, at all times material to this Complaint, acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Corporate Defendants, including the acts and practices set forth in this Complaint. Ms. Cadiz resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## COMMON ENTERPRISE

26.   Corporate Defendants have operated as a common enterprise while engaging in the illegal acts and practices alleged in the Complaint.  Individual Defendants Jason Cardiff, Eunjung Cardiff, and Danielle Cadiz have conducted the alleged deceptive practices described herein through the interrelated network of Corporate Defendants, which share a business purpose, business functions, and employees; are commonly controlled by Individual Defendants; and have commingled funds.  Defendants have been able to delay detection of chargeback activity from credit card companies and merchant card banks by using multiple company names, bank accounts, and merchant accounts virtually interchangeably since 2014.  Because Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.

## **ALTER EGO**

27.     There is such a unity of interest between Corporate Defendants and Individual Defendants Jason Cardiff and Eunjung Cardiff that they are alter egos. Corporate Defendants are all dominated and controlled by Individual Defendants Jason Cardiff and Eunjung Cardiff and were used to further the deceptive scheme described herein.  Individual Defendants Jason and Eunjung Cardiff use personal credit cards to pay for expenses of Corporate Defendants and hold their stock in Redwood Nevada and Redwood Delaware in the name of Corporate Defendant Carols Place Limited Partnership. Corporate Defendant Carols Place Limited Partnership is comprised of Carols Place Trust and Extension First, LLC, which are both owned by the Cardiffs; Carols Place Trust also owns the Cardiffs' home.

28.     Failure to disregard the Corporate Defendants' corporate forms would sanction a fraud and injustice by shielding and safeguarding them from liability for their roles in a deceptive scheme that has caused millions of dollars in consumer injury, and would unjustly enrich them by permitting them to keep moneys obtained from consumers through fraud.

## **COMMERCE**

29.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## **DEFENDANTS' BUSINESS ACTIVITIES**

30.     Defendants have manufactured, labeled, advertised, marketed, promoted, offered for sale, sold, and distributed to consumers dissolvable film strip products, including strips sold under the brand names TBX-FREE, Eupepsia Thin, and Prolongz.

31.     TBX-FREE, Eupepsia Thin, and Prolongz are manufactured in China or India.

32.     Defendants market TBX-FREE, Eupepsia Thin, and Prolongz as over-the-counter homeopathic drugs that consumers place on their tongues and then press against the roofs of their mouths.

33.     According to its package label, the active ingredient in TBX-FREE is "Laburnum anagyroides 1X" and its purpose is the "Homeopathic treatment of chronic nicotinism."

34.     According to its package label, the active ingredient in Eupepsia Thin is "Paullinia Cupana H.B.K. 1X" and its purpose is as a "Homeopathic appetite suppressant."

35.     According to its package label, the active ingredients in Prolongz are "Damiana Extract 1X (10 mg) ... and Ginseng Extract 1X (10 mg)" and its purpose is as a "Homeopathic Sexual Enhancement Strip."

36.     Defendants have sold Prolongz since at least 2014, TBX-FREE since at least 2015, and Eupepsia Thin since at least 2017. Defendants have sold Prolongz, TBX-FREE, and Eupepsia Thin on multiple websites. Defendants have charged $49.95 for a box of TBX-FREE containing 120 film strips, and $49.95 for a box of Eupepsia Thin containing 60 film strips. Defendants have offered a box of Prolongz containing 60 film strips for a 15-day free-trial upon the payment of $4.98 in shipping and handling, and have charged $89.95 upon the expiration of the trial period.

## TBX-FREE ADVERTISING

37.      Defendants have advertised TBX-FREE through a national television infomercial campaign and on the Internet, including websites and Facebook Live videos. The core messages of this advertising have been that TBX-FREE enables users to quit smoking, that it is clinically proven to do so, and that it is superior to

15

other smoking cessation aids.  These materials contain the following statements and depictions, among others:

     A.    Excerpts from tbxfree.com website (captured 03/16/2017):

Revolutionary New Stop Smoking Product

More effective than the Patch and Gum

#1 Choice by Smokers

<center>***</center>

<center>**88% Success Rate**</center>

<center>***</center>

In clinical studies cited in The New England Journal of Medicine, the active ingredient in TBX-FREE™ has an 88% cure care [sic] compared to the patch and gum combined.

<center>***</center>



<center>***</center>

<center>**PROVEN IN RESEARCH STUDIES TO HELP**</center>

<center>**SMOKERS QUIT THEIR ADDICTION!**</center>

<center>***</center>

<center>The Breakthrough</center>
<center>**Stop Smoking Aid**</center>
<center>That Calms Cigarette Cravings!</center>
<center>**Proven in research studies to**</center>
<center>**help smokers quit their addiction!**</center>

     B.    TBX-FREE Facebook Live post (posted 02/24/2017):

<center>16</center>

PRESENTER [DEFENDANT JASON CARDIFF]: . . . So I'm going to show you what we've done . We've developed the most successful stop-smoking product on the market, period, plain and simple. I challenge anybody that tells me they have a more successful stop-smoking product. It doesn't exist.

***

If you've tried to stop smoking, if you want to stop smoking, if you want to quit, if you want to make that change, this is the product for you. And what you get and how it works and the magic is it has no nicotine in it, first off. But it does have an active ingredient in it.

***

And how this works is what's really important. . . . [T]his little strip here, you put it on your tongue, and it releases a chemical to the brain, which is naturally found in nature, and it makes you feel like you've had a cigarette.

Now, that's the most important part. We've replaced the feeling of smoking with a non-nicotine-based product. And in five short days -- five days -- you get all the nicotine out of your system. You now have the nicotine out of your system and you have the chance to become and live a smoke-free life. And that is how the product works. That is why it has an 88 percent success rate, and we can look here, we have an -- we have a proven track record of over an 88 percent success rate from some of the greatest medical institutions and universities in the United States and the U.K. And that's why it works so well -- no nicotine in your system.

17

*** 

What does one month supply, an entire month, of TBX-Free -- it comes with two of these packets, two of them, okay? A whole month supply, it's 120 strips, which if you follow the direction should be more than you ever need.

I don't really understand.  You know you've tried to stop. You've tried to stop five, six, seven, ten times.  This product will do it for you.  You can quit smoking with TBX-Free. Here's the best part, right? We offer a lifetime, money-back guarantee. . . . Lifetime, money-back guarantee for any reason, okay? If the product doesn't work for you or you become a smoker again, not only will we either give you your money back or we'll send you another box, whatever you want. We want the highest quality customer experience possible.  You know the patches and gums won't give you any guarantee because they know they don't work.  . . . So lifetime, money-back guarantee.  You have nothing to lose, everything to gain, the number, right here.  . . . You get a one-month supply for [$]49.95, and you don't pay shipping.  Just think about it.  Just what have you got to lose?  It's what you spend on cigarettes in a week.  Can you imagine?  You're -- all of a sudden you're smoke-free?

C.    Excerpts from TBX-FREE infomercial (captured 03/27/ 2018):

SPOKESMAN:  This amazing strip delivers the same calming effect but with no tar, no tobacco, no nicotine, no ashes, no odor, huh, and my favorite, Taylor, no secondhand smoke.

18

***

SPOKESWOMAN:  To be able to break the chain of addiction with smokers, we have developed a product that gives you the freedom to not be addicted to any type of nicotine product.  TBX-FREE is unique among stop-smoking products because of the delivery technology and it contains no nicotine.  This nicotine-free system allows you to successfully stop smoking and at the same time you do not become addicted to TBX-FREE – like you might with the nicotine gum or patch.

NARRATOR:  Have you ever wanted to quit smoking but didn't think you could?  Now, you can.  Imagine living a smoke-free, nicotine-free life.  Because of TBX-FREE, thousands of people are breaking the addiction of cigarettes.  People around the world have discovered this amazing breakthrough and, now, through this TV offer -- Redwood Scientific Technologies is giving you an opportunity of a lifetime.  TBX-FREE is a fast-acting, dissolvable strip that is setting cigarette smokers -- free for life.  With TBX-FREE, you control the habit, the habit doesn't control you.

***

SPOKESWOMAN:  TBX-FREE is a fast strip delivery technology.  You just place it on your tongue and it dissolves instantly and your nicotine craving disappears.  And the moment it hits your system, you have the same satisfaction as if you had just finished a cigarette.

***

19



\*\*\*

UNIDENTIFIED FEMALE: I smoked about a pack a day for ten years. I tried the patch first and I would still smoke. You know, I was wearing the patch, I would still smoke cigarettes. When I was chewing the gum, I would still smoke cigarettes. And then I tried the e-cig -- e-cigarettes and even those, still nicotine, you know, I kind of said, you know, I need to try something that's, you know, not nicotine. And I was really surprised how TBX works.

UNIDENTIFIED FEMALE: TBX-FREE is the only thing that works. I've tried the gum, the patch, nothing works. And, plus, no side effects. What could be better?

D.   TBX-FREE Facebook Live post (posted 01/09/2017):

PRESENTER [DEFENDANT JASON CARDIFF]: We have an 88% effective rate in long-term cure in long-term

smokers.  A long-term smoker is someone who's been smoking more than 5 years, more than a pack or around a pack a day on average.

Our clinical data on TBX-FREE have done [sic] by some of the greatest medical and scientific institutions anywhere that we know of, including, not limited to the New England Journal of Medicine, which ranks our product ten times more effective than nicotine-replacement therapy to stop smoking.  That's who's giving us this data.

E.      TBX-FREE Facebook Live post (posted 02/07/2017):

PRESENTER [DEFENDANT JASON CARDIFF]:  I want to share with you what is TBX-Free, how does it work, what is the secret to learn how to stop smoking cigarettes fast.  I mean really fast, within a week, within ten days.

We have long-term smokers that have learned this secret, that have been smoking for 30-plus years, two packs a day or more, and they no longer smoke cigarettes.  If you've tried the patch and the gum, maybe you've tried hypnosis, maybe you've tried Chantix, and you're a long-term smoker, I need your attention, just a little bit of your attention.

***

Now, you should never need more than one month.  After five days of use, all the nicotine will be cleansed out of your system... And people say, well, does it work?  Well, we have an 88 percent success rate.  We have a lifetime money-back guarantee.

***

21

But first you have to stop smoking.  You have to stop smoking, and you're addicted to something we believe internally as a group and a company, cigarettes are the most -- one of the most harmful killers of America -- of Americans.  And -- and, you know, we're an American-based company.  We have an American-based product.  We're here, located in Southern California.  We have an all-U.S.-based team here at our laboratories, and we're here for you.

38.  Jason Cardiff is the "Presenter" appearing in the TBX-FREE Facebook Live posts quoted above.

## EUPEPSIA THIN ADVERTISING

39.  Defendants have advertised Eupepsia Thin through a national television infomercial campaign and on the Internet, including websites and Facebook Live videos.  The core message of this advertising has been that Eupepsia Thin causes or enables substantial weight loss without users having to diet, increase their exercise, or make other lifestyle changes.  These materials contain the following statements and depictions, among others:

A.    Excerpts from bethinrx.com website (captured 02/05/2018):



LIVE THE
## EUPEPSIA
**LIFESTYLE!**

→ NO DIETS
→ NO GIVING UP FOOD
→ NATURAL AND EFFECTIVE

\*\*\*

FDA Registered.
Natural, homeopathic and wholesome.
Proven active ingredient is an effective appetite suppressant.

\*\*\*



\*\*\*

- Eupepsia Thin™ contains a clinically proven super ingredient called Paullinia cupana H.B.K.
- Eupepsia Thin™'s incredible active ingredient sends the brain the sensation of fullness.
- Once Eupepsia Thin™ mouth strip dissolve [sic] on your tongue, the active ingredient hits your blood stream sending the feeling of fullness which lasts for hours which in turn controls caloric intake.

\*\*\*

Studies show the new product, Eupepsia Thin, gives people a chance to live a more active lifestyle and keep weight off.

\*\*\*

23

Safe & Effective Weight-Loss

Current calorie reduction and meal plans have less than 5%
success rate while the new product, Eupepsia Thin™, has
a substantially higher success rate.  Until now there was
no better way to shed the weight other than going
through a huge lifestyle change.

\*\*\*

Lose up to 15 pounds

your first month with **Eupepsia Thin** oral strips without diets
or changing your food or lifestyle choices.

\*\*\*

**What is the price of Eupepsia Thin™?**
If you would like to **lose 8-20 lbs** – our one month supply at
**69.95** will work for you.
If you would like to **lose 20-50 lbs** – our three month supply at
**169.95** will work for you.
If you would like to **lose 50-70 lbs** – our six month supply at
**239.95** will work for you.
If you would like to **lose 70-100 lbs** – our one year supply at
**456.95** will work for you.

\*\*\*

**Is Eupepsia Thin™ 100% natural?**

Unlike most diets and supplements on the market,

Eupepsia Thin™ is all natural and FDA registered,

without fillers or dangerous ingredients, eliminating side

effects or withdrawals.

B.   Excerpts from Eupepsia Thin infomercial (captured
07/24/2017):

ON SCREEN:  ARE YOU READY TO LOSE

BEFORE and AFTER PHOTOS

10 lbs

20 lbs

24

1   100 lbs

2   WITHOUT GIVING UP YOUR FAVORITE FOODS!

3   NARRATOR:  Are you ready to lose 10, 20, even 100 pounds

4   without giving up your favorite foods or adding any exercise?

5   ***

6   NARRATOR:  The ingredients in Eupepsia will begin to

7   activate in your system in less than 20 seconds.  In minutes,

8   you'll feel your appetite suppress, giving you control over how

9   much you eat.

10  ***

11  NARRATOR:  This is exactly what you've been waiting for to

12  help you shed those unwanted pounds.

13  ON SCREEN:  Before photo

14  Danny Lost 45 lbs!

15  From 230 lbs to 185 lbs!

16  DANNY:  Forty-five pounds.  I went from 230 back to 185.

17  ON SCREEN:  Before photo

18  Tricia Lost 20 lbs!

19  From 135 lbs to 115 lbs!

20  TRICIA:  My current weight today is 115 pounds and I feel

21  absolutely amazing.  I am able to, you know, just eat whatever I

22  want and still drink wine as well.

23  ***

24  ON SCREEN:  YOU HAVE NOTHING TO LOSE.

25  But The Weight!

26  NARRATOR:  With Eupepsia, you have nothing to lose but the

27  weight.

28

25

SPOKESWOMAN 2:  . . .  This one-of-a-kind product will help you lose weight without stepping one foot in the gym or giving up any of your favorite foods.

ON SCREEN:  NO COUNTING CALORIES OR TRACKING FOOD!

SPOKESWOMAN 2:  No counting calories or tracking food and no expensive gym memberships to pay.

*\*\**

SPOKESMAN 1: We are so confident that Eupepsia will work for you, it comes with a lifetime guarantee.



*\*\**

ON SCREEN:  Before photo 240 lbs

   Karen Lost 90 lbs!

   Now 150 lbs!

KAREN:  I'm half the size I used to be.  I can get in half of these jeans.  That's quite an accomplishment.

*\*\**

ON SCREEN:  Before photo

Todd Lost 132 lbs!

From 360 lbs to 228 lbs!

TODD:  I tell you what, ever since I got the Eupepsia product, I have been amazed.  I lost -- actually, I weighed 360 pounds.  I lost 132 pounds on it.  Very easy to do.  And, now, I'm at 228 pounds.

And I tell you what, I've never felt better. I feel so good. My body is extremely different now.  I don't fight to breathe. My kidney level is back to normal.  I have no diabetes whatsoever.  I used to take five insulin shots a day.  I no longer have to take nothing for diabetes.  My kidneys are at a good function and I just -- I tell you what, Eupepsia has been awesome.

C.    Eupepsia Thin package labeling:

- **Oral Strip**
  **EASY WEIGHT LOSS**

  ────────────

  **Safe & Effective**
  Still eat your favorite foods
  No change in exercise required

- Made in USA
- Clinically proven to help suppress appetite between meals.

40.    At least some of the people who provided testimonials in the Eupepsia Thin infomercial were actors who had been paid to appear in the infomercial and

27

who had not used Eupepsia Thin to lose the weight they discussed in their

testimonials.

## PROLONGZ ADVERTISING

41.     Defendants have advertised Prolongz through a national television

infomercial campaign and on the Internet.  The core message of this advertising

has been that Prolongz boosts men's sexual performance, including by lengthening

the duration of sex and preventing premature ejaculation.  These materials contain

the following statements and depictions, among others:

A.     Excerpts from 2014 Prolongz infomercial:

ON SCREEN:



NARRATOR: Through this special offer, Advanced Men's

Institute is giving men the opportunity of a lifetime.

ON SCREEN: [blinking lights and font]



NARRATOR: Do you want longer lasting sex? Do you want more time being intimate with your partner?

NARRATOR: Do you want to satisfy your partner like never before? Now it's possible.

ON SCREEN:



NARRATOR: Thanks to a new first of a kind sexual performance product called Prolongz.

B.    Excerpts from 2015 prolongz.com website (captured May 16, 2018):

**30 DAY MONEY BACK GUARANTEE!**

**Prolongz is guaranteed to increase your ejaculatory control levels and overall sexual performance. …**

\*\*\*







The proprietary blend of ingredients in Prolongz reacts with the chemicals in the brain that control the major parts of sexual excitement. Current products on the market are topical anesthetics which don't treat the problem; they only treat the symptom. Prolongz is a FDA registered Over-The-Counter Homeopathic Drug, the strips dissolve in 20 Seconds; combining a high % dosage blast of Damiana & Ginseng.

Click here to view the complete Drug Facts Panel.
Prolongz™ is a FDA registered OTC homeopathic drug, which helps in the prevention of Premature Ejaculation (PE). It is a first of its kind product which uses Oral (sublingual) dissolvable Strip delivery technology for the treatment of PE.

C. Excerpts from 2016 prolongz.com website (captured May 16, 2018):



**DEFENDANTS' DECEPTIVE SALES AND BILLING PRACTICES IN CONNECTION WITH TBX-FREE, EUPEPSIA THIN, AND PROLONGZ**

42.   Defendants' advertising, including websites, infomercials, and social media, lists both website links and toll-free numbers that consumers can use to place orders for TBX-FREE, Eupepsia Thin, and Prolongz ("the Products"). Consumers then purchase the Products through inbound sales calls and website orders.

**Defendants' Failure to Disclose Autoship Programs
at the Time of the Initial Sale**

43.   When consumers order the Products and provide their payment information, Defendants have routinely enrolled them in a continuing autoship program, which is commonly known as a continuity plan, without disclosing, or disclosing adequately, to those consumers either the enrollment, or the terms and conditions of the autoship program.  Defendants' autoship program then makes additional shipments to consumers at regular intervals and Defendants charge the credit or debit cards that consumers provided for their initial purchase for the subsequent shipments.  Thus, if a consumer placed an order for a supply of any of the Products, the Defendants have often repeatedly, and on a continuing basis, charged the consumer for additional product without further authorization.  In numerous instances, Defendants have not disclosed, or have not disclosed adequately, these material terms to consumers before consumers provide their credit or debit card information, and therefore have not obtained consumers' express informed consent to the autoship program and the additional charges.

44.   In the case of website orders for TBX-FREE, Defendants' websites have not disclosed, or have not disclosed adequately, the negative option feature of their autoship program, whereby they interpret consumers' silence or failure to contact them as consumers' tacit acceptance of enrollment and of the receipt of

additional shipments and charges. In numerous instances, when consumers have proceeded to the shopping cart, provided their billing information, and completed the purchase, there has been no adequate disclosure about Defendants' autoship program or that any additional charges would be placed on a consumer's credit or debit card.

45. For telephone orders for the Products, in numerous instances, Defendants' call center representatives similarly have not disclosed that Defendants will enroll consumers automatically into a continuing autoship program that will result in additional shipments and charges to consumers' credit or debit cards. In many cases, consumers have specifically asked not to be enrolled in an autoship program but Defendants did so anyway. In many cases, Defendants' call center employees assured consumers they will not be enrolled in an autoship program but Defendants did so anyway.

46. At the time of the initial sale, Defendants do not disclose, or do not adequately disclose, their terms and conditions for cancellation and refunds for autoshipments before obtaining consumers' billing information. Instead, consumers are later advised by Defendants' customer service representatives that they must request cancellation, obtain a return merchandise authorization ("RMA") number, and mail products back to Defendants at their own expense.

47. In cases in which consumers pay for their initial purchase using debit cards, Defendants have debited consumers' bank accounts for the additional periodic shipments. Defendants did not obtain written authorization signed or similarly authenticated from consumers authorizing the recurring electronic fund transfers from their accounts, and did not subsequently provide consumers with a copy of such a written authorization.

**Consumers' Post-Sale Experiences – Unauthorized Charges**

48.     Defendants ship their Products to consumers on a periodic basis and charge their credit or debit cards without consumers' consent for any charge other than the initial purchase.

49.     Consumers must contact Defendants to reject additional shipments and charges and to cancel their undisclosed and unauthorized enrollment in the autoship program.

50.     Defendants' mechanisms for stopping recurring shipments and charges are often not effective.  Consumers are often not able to reach Defendants when they call to stop recurring shipments and charges.  On many occasions when consumers do cancel their enrollment in the autoship program, Defendants continue sending additional shipments and placing additional charges on consumers' credit and debit cards.

51.     Defendants do not honor their money-back guarantees.  Consumers who seek a refund are often told that the charges are not refundable.

**DEFENDANTS' ILLEGAL TELEMARKETING CAMPAIGN**

52.     In February 2018, Defendants caused prerecorded messages, commonly known as robocalls, to be delivered to consumers.  Defendants planned robocall campaigns for multiple products.

53.     Defendants' initial contract with the telemarketing company provided for "ringless voicemails" to be delivered to 1,500,000 consumers.

54.     Defendants disseminated robocalls to targeted groups of consumers, such as men over the age of 40 in the state of California, and delivered prerecorded messages, some of which featured the voice of Individual Defendant Jason Cardiff.

55.     Defendants also conducted a robocall campaign for TBX-FREE using messages featuring the voice of Individual Defendant Eunjung Cardiff.

56.     Hundreds of consumers have complained about receiving unsolicited prerecorded messages for Defendants' products.

## DECEPTIVE RENGALIFE EARNINGS CLAIMS

57.     In March 2018, Defendants launched Rengalife, a multi-level marketing program.

58.     Rengalife members advance up the line from Executive to Director, and then to Vice President and Senior Vice President, based on the number of recruits in their downline networks, all of whom are making monthly purchases of at least $199.80 of Redwood Scientific dissolvable film strips via autoship. Members earn "commissions" on the monthly purchases of Redwood products made by recruits who are one, two, and three levels below them in their network, including a 30 percent "commission" on purchases by those team members one level down whom they recruited directly.

59.     Defendants promoted Rengalife through a variety of media, including, but not limited to, online videos featuring Defendant Jason Cardiff. Defendants' advertising made strong earnings claims for the Rengalife program, including the following statements, among others:

A.     Rengalife.com/network-marketing:

> "**Finally your dreams can become real!**
> It all begins by signing up as a Rengalife member.
> By becoming part of the Rengalife family, you will be on the path to creating your ideal life. Whether you are looking for a few extra dollars or pursuing an opportunity to replace a full time income, Rengalife has the way."

B.     "Get Started Today" Facebook Live video (posted 4/4/2018):

> PRESENTER [JASON CARDIFF]: So you pick a package, and if I told you that you could make $2,000 a month, $5,000 a

month, $100,000 a month, we have somebody on pace to make
. . . $100,000 a year. We've only been live a week and a half.
If I told you you had to make a little tiny investment in product
for yourself to get to the executive level, if I showed you how
to spend $199.80 and you could make [$]5,000 a month, $6,000
a month, is that a good investment? And you would say, yes, it
is, it's a very good investment.

60. Defendants represented that Directors are guaranteed a "Minimum monthly Paid commission [of] $600," Vice Presidents $2,600 per month, and Senior Vice Presidents $12,600 per month.

61. Individual Defendant Jason Cardiff put these guarantees in terms of annual earnings:

Rengalife "New Levels" Vimeo video (captured May 25, 2018):

PRESENTER [JASON CARDIFF]: . . . That takes you from
executive to director. That also locks in your annual salary at a
minimum -- a very minimum of $7,200 a year once you go
from that level of executive to director.

\*\*\*

And at a vice president level, not only do you start to enjoy
some of the super first class bucket list travel, but you also lock
in your annual income at a minimum of over $30,000.

\*\*\*

The next level is a senior vice president level. . . . This means
. . . you've locked in your income at $144,000 a year. You're
also receiving the three weeks of first class travel.

62.     Rengalife also promises one-time bonuses as members advance through the ranks.  New Directors receive a $500 bonus, new Vice Presidents $1,200, and new Senior Vice Presidents $10,000.

63.     A Rengalife member must have ten people in his or her network to become a Director, 110 to become a Vice President, and 1,100 to become a Senior Vice President.

64.     Defendants did not have actual earnings data for Rengalife members at the time they made their earnings claims, nor did they have any basis for earnings claims based on the sale of Redwood film strips, because those products have never been sold without deceptive and unfair practices.

65.     The Rengalife program is structured such that, if members follow Defendants' instructions for advancing through the program by recruiting new members, the vast majority of participants will lose money, not earn substantial income.

## **VIOLATIONS OF THE FTC ACT**

66.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

67.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

68.     Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics.  For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, TBX-FREE, Eupepsia Thin, and Prolongz are "drugs" as defined in Section 15(b) of the FTC Act, 15 U.S.C. § 55(b).

37

**UNSUBSTANTIATED EFFICACY CLAIMS AND FALSE CLAIMS**

**THAT TBX-FREE, EUPEPSIA THIN, AND PROLONGZ ARE**

**CLINICALLY PROVEN TO BE EFFECTIVE**

**COUNT I**

**FALSE OR UNSUBSTANTIATED EFFICACY CLAIMS FOR TBX-FREE**

69.     Through the means described in Paragraph 37, Defendants have represented, directly or indirectly, expressly or by implication, that:

> A.     TBX-FREE is an effective smoking cessation product;
>
> B.     TBX-FREE is more effective than either nicotine patches or nicotine gum in enabling cigarette smokers to stop smoking;
>
> C.     TBX-FREE enables many cigarette smokers to quit in seven to ten days;
>
> D.     TBX-FREE has an 88 percent success rate, including among people who have smoked cigarettes for more than five years; and
>
> E.     Smokers should not need to purchase more than one month of TBX-FREE.

70.     The representations set forth in Paragraph 69 are false or misleading or were not substantiated at the time the representations were made.

71.     Therefore, the making of the representations as set forth in Paragraph 69 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT II

## FALSE PROOF CLAIMS FOR TBX-FREE

72.    Through the means described in Paragraph 37, Defendants have represented, directly or indirectly, expressly or by implication, that:

    A.    Clinical studies have been conducted on TBX-FREE, and have shown that TBX-FREE is an effective smoking cessation product;

    B.    TBX-FREE has been proven in clinical studies to be more effective than nicotine patches or nicotine gum in enabling smokers to stop smoking;

    C.    Clinical studies of TBX-FREE conducted on 10,600 people have shown that TBX-FREE has an "88% success rate";

    D.    The New England Journal of Medicine ("NEJM"), Harvard Health Publications, and Johns Hopkins University have published clinical studies proving that TBX-FREE is an effective smoking cessation product; and

    E.    NEJM's clinical studies showed that TBX-FREE is ten times more effective for smoking cessation than nicotine replacement therapy.

73.    The representations set forth in Paragraph 72 are false.

74.    Therefore, the making of the representations as set forth in Paragraph 72 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

# COUNT III

## FALSE OR UNSUBSTANTIATED EFFICACY CLAIMS
## FOR EUPEPSIA THIN

75.     Through the means described in Paragraph 39, Defendants have represented, directly or indirectly, expressly or by implication, that:

      A.     Eupepsia Thin is an effective appetite suppressant and weight loss aid;

      B.     Eupepsia Thin starts working in less than 20 seconds, and suppresses a user's appetite within minutes;

      C.     Eupepsia Thin enables users to lose 10, 20, or even 100 pounds without dieting, giving up their favorite foods, or increasing their exercise;

      D.     Eupepsia Thin users can lose 15 pounds their first month without dieting or changing their food or lifestyle;

      E.     Eupepsia Thin users can lose as much as 20 pounds in one month and as much as 50 pounds in three months;

      F.     Eupepsia Thin is more effective at causing weight loss than conventional calorie reduction and meal plans; and

      G.     Eupepsia Thin enables consumers to avoid gaining back weight they lose, without any lifestyle changes.

76.     The representations set forth in Paragraph 75 are false or misleading or were not substantiated at the time the representations were made.

77.     Therefore, the making of the representations as set forth in Paragraph 75 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

**COUNT IV**

**FALSE PROOF CLAIMS FOR EUPEPSIA THIN**

78.     Through the means described in Paragraph 39, Defendants have represented, directly or indirectly, expressly or by implication, that clinical studies have been conducted on Eupepsia Thin and those studies show that it is an effective appetite suppressant and weight loss aid.

79.     The representations set forth in Paragraph 78 are false.

80.     Therefore, the making of the representations as set forth in Paragraph 78 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

**COUNT V**

**FALSE OR UNSUBSTANTIATED EFFICACY**

**CLAIMS FOR PROLONGZ**

81.     Through the means described in Paragraph 41, Defendants have represented, directly or indirectly, expressly or by implication, that:

      A.     Prolongz substantially increases ejaculation control and the duration of sex; and

      B.     Prolongz treats or prevents premature ejaculation.

82.     The representations set forth in Paragraph 81 are false or misleading or were not substantiated at the time the representations were made.

83.     Therefore, the making of the representations as set forth in Paragraph 81 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT VI

### FALSE PROOF CLAIMS FOR PROLONGZ

84.     Through the means described in Paragraph 41, Defendants have represented, directly or indirectly, expressly or by implication, that Prolongz is clinically proven to increase ejaculation control and the duration of sex for more than 97% of users.

85.     The representations set forth in Paragraph 84 are false.

86.     Therefore, the making of the representations as set forth in Paragraph 84 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## ADDITIONAL VIOLATIONS OF THE FTC ACT

### COUNT VII

### FALSE CLAIMS THAT EUPEPSIA THIN
### IS MADE IN THE UNITED STATES

87.     Through the means described in Paragraph 39, Defendants have represented, directly or indirectly, expressly or by implication, that Eupepsia Thin is made in the United States.

88.     The representation set forth in Paragraph 87 is false.

89.     Therefore, the making of the representation as set forth in Paragraph 87 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT VIII

## FALSE CLAIMS THAT TBX-FREE, EUPEPSIA THIN, AND PROLONGZ ARE SOLD WITH MONEY-BACK GUARANTEES

90.     Through the means described in Paragraphs 37, 39, and 41, Defendants have represented, directly or indirectly, expressly or by implication, that consumers who are not satisfied with the Products will get their money back.

91.     The representations set forth in Paragraph 90 are false.  Many consumers who request their money back from Defendants are denied refunds.

92.     Therefore, the making of the representations as set forth in Paragraph 90 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT IX

## DECEPTIVE TESTIMONIALS

93.     Through the means described in Paragraph 39, Defendants have represented, directly or indirectly, expressly or by implication, that the product users depicted in the Eupepsia Thin infomercial were actual persons who had successfully used Eupepsia Thin to lose substantial amounts of weight.

94.     In truth and in fact, at least some of the testimonialists who appeared in the infomercial were actors who had been recruited and paid for brief on-screen appearances, and had not used Eupepsia Thin to lose the weight they discussed in the advertising.

95.     Therefore, the making of the representation as set forth in Paragraph 93 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

**COUNT X**

**FAILURE TO DISCLOSE ADEQUATELY AUTOMATIC ENROLLMENTS IN CONTINUITY PLANS**

96.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of the Products, Defendants have represented, directly or indirectly, expressly or by implication, that consumers who provide their billing information are placing a product order.

97.     In numerous instances in which Defendants made the representation set forth in Paragraph 96, Defendants failed to disclose, or disclose adequately, that consumers who provided their billing information for a product order would be enrolled automatically in a continuity plan for future autoshipments of the Products that would be charged to their credit or debit cards.  This additional information would be material to consumers in their decision to purchase Defendants' products.

98.     Defendants' failure to disclose, or disclose adequately, the material information described in Paragraph 97, in light of the representation set forth in Paragraph 96, constitutes a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT XI**

**MISREPRESENTATIONS – CONTINUING AUTOSHIP PROGRAM**

99.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of the Products, Defendants have represented, directly or indirectly, expressly or by implication, that consumers will not be enrolled in an autoship program and that their credit or debit card will be charged only for a one-time purchase of the Products.

100.   The representations set forth in Paragraph 99 are false.  In numerous instances where Defendants have told consumers they will not be enrolled in an autoship program, Defendants have enrolled consumers in an autoship program,

charging consumers' credit or debit cards for additional shipments they did not agree to purchase.

101.   Therefore, the  making of the representations as set forth in Paragraph 99 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT XII

## UNFAIRLY CHARGING CONSUMERS WITHOUT AUTHORIZATION

102.   In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of the Products, Defendants have caused charges to be submitted for payment to the credit and debit cards of consumers without the express informed consent of those consumers.

103.   Defendants' acts or practices as set forth in Paragraph 102 cause or are likely to cause substantial injury to consumers that those consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

104.   Therefore, Defendants' acts or practices as set forth in Paragraph 102 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a) and 45(n).

## VIOLATIONS OF THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT (ROSCA)

105.   In 2010, Congress passed ROSCA, 15 U.S.C. §§ 8401-05, which became effective on December 29, 2010.  Congress passed ROSCA because "[c]onsumer confidence is essential to the growth of online commerce.  To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business."  15 U.S.C. § 8401.

106. Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the TSR, 16 C.F.R. § 310.2(w), unless the seller: (a) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; (b) obtains the consumer's express informed consent before making the charge; and (c) provides a simple mechanism to stop recurring charges. *See* 15 U.S.C. § 8403.

107. The TSR defines a negative option feature as: "in an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(w).

108. As described above in Paragraphs 42 through 47, Defendants advertise and sell their Products to consumers through a negative option feature as defined by the TSR. *See* 16 C.F.R. § 310.2(w).

109. Under Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of ROSCA is a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a, and therefore constitutes an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT XIII
## VIOLATIONS OF ROSCA

110. In numerous instances, in connection with the selling of TBX-FREE on the Internet through a negative option feature, Defendants have failed to:

    A.    Clearly and conspicuously disclose all material terms of the negative option feature of the Product purchase before obtaining the consumer's billing information;

46

B.      Obtain the consumer's express informed consent to the negative option feature before charging the consumer's credit card or debit card; and/or

C.      Provide simple mechanisms for a consumer to stop recurring charges to the consumer's credit card or debit card.

111.    Defendants' practices as set forth in Paragraph 110 are a violation of Section 4 of ROSCA, 15 U.S.C. § 8403, and are therefore a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a, 15 U.S.C. § 8404(a), and therefore constitute an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT AND REGULATION E

112.    Section 907(a) of the EFTA, 15 U.S.C. § 1693(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." Section 903(10) of EFTA, 15 U.S.C. § 1693a(10), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

113.    Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

114.    Section 1005.10(b) of the Consumer Financial Protection Bureau's Official Staff Commentary to Regulation E ("Official Staff Commentary to Regulation E"), 12 C.F.R. § 1005.10(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization."

47

1     *Id*. ¶ 10(b), cmt. 5.  The Official Staff Commentary to Regulation E further

2     provides that "[a]n authorization is valid if it is readily identifiable as such and the

3     terms of the preauthorized transfer are clear and readily understandable." *Id.*

4     ¶ 10(b), cmt. 6.

5          115.  Pursuant to Section 918(c) of EFTA, 15 U.S.C. § 1693o(c), every

6     violation of EFTA and Regulation E constitutes a violation of the FTC Act.

7     <div align="center">**COUNT XIV**</div>

8     <div align="center">**EFTA AND REGULATION E VIOLATIONS – UNAUTHORIZED**</div>

9     <div align="center">**DEBITING FROM CONSUMERS' ACCOUNTS**</div>

10          116.  In numerous instances, Defendants debit consumers' bank accounts

11     on a recurring basis without obtaining a written authorization signed or similarly

12     authenticated from consumers for preauthorized electronic fund transfers from

13     their accounts, thereby violating Section 907(a) of EFTA, 15 U.S.C. § 1693e(a),

14     and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b).

15          117.  In numerous instances, Defendants debit consumers' bank accounts

16     on a recurring basis without providing to the consumer a copy of a written

17     authorization signed or similarly authenticated by the consumer for preauthorized

18     electronic fund transfers from the consumer's account, thereby violating Section

19     907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12

20     C.F.R. § 1005.10(b).

21          118.  By engaging in violations of EFTA and Regulation E as set forth in

22     Paragraphs 116 and 117, the Defendants have engaged in violations of the FTC

23     Act.  15 U.S.C. § 1693o(c).

24     <div align="center">**<u>VIOLATIONS OF THE TELEMARKETING SALES RULE</u>**</div>

25          119.  Congress directed the FTC to prescribe rules prohibiting abusive and

26     deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15

27     U.S.C. §§ 6101-6108.  The FTC adopted the original TSR in 1995, extensively

28

amended it in 2003, and amended certain provisions thereafter.  16 C.F.R. Part 310.

120.   Under the TSR, a "telemarketer" is any person who, in connection with telemarketing, initiates or receives telephone calls to or from a consumer or donor.  16 C.F.R. § 310.2(ff).

121.   Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.  16 C.F.R. § 310.2(x).

122.   As amended, effective September 1, 2009, the TSR prohibits initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service.  16 C.F.R. §310.4(b)(1)(v).  Calls delivering prerecorded messages are commonly called "robocalls."

123.   Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT XV**

**UNLAWFUL PRERECORDED MESSAGES**

124.   Through the means described in Paragraphs 52 through 56, as applicable, in numerous instances in connection with telemarketing, Defendants have engaged in initiating or causing the initiation of outbound telephone calls that delivered prerecorded messages to induce the sale of goods or services, in violation of 16 C.F.R. § 310.4(b)(1)(v).

**RENGALIFE**

## COUNT XVI

## MISREPRESENTATIONS REGARDING EARNINGS

125.   Through the means described in Paragraphs 57 through 65, Defendants have represented, directly or indirectly, expressly or by implication, that people who become Rengalife members are likely to earn substantial income.

126.   The representation set forth in Paragraph 125 is false, misleading, or was not substantiated at the time the representation was made.

127.   Therefore, the making of the representation as set forth in Paragraph 125 of this Complaint constitutes a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

128.   Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, ROSCA, EFTA, Regulation E, and the TSR.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

129.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

# PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Section 5 of ROSCA, 15 U.S.C. § 8404, Section 918(c) of EFTA, 15 U.S.C. § 1693o(c), Section 6 of the Telemarketing Act, 15 U.S.C. § 6105, and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access to all corporate premises, and appointment of a receiver.

B.     Enter a permanent injunction to prevent future violations of the FTC Act, ROSCA, EFTA, Regulation E, and the TSR, by Defendants;

C.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, ROSCA, EFTA, Regulation E, and the TSR, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

Dated: October 3, 2018

ELIZABETH SANGER
esanger@ftc.gov
JAMES A. PRUNTY

51

jprunty@ftc.gov
EDWIN RODRIGUEZ
erodriguez@ftc.gov
SHIRA D. MODELL
smodell@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580

STACY PROCTER (Local Counsel)
sprocter@ftc.gov
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

# EXHIBIT 12
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 13

FILED
CLERK, U.S. DISTRICT COURT

October 10, 2018

CENTRAL DISTRICT OF CALIFORNIA
BY: _____VPC_____ DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**Federal Trade Commission**,

    Plaintiff,

    v.

**Jason Cardiff, et al.,**

    Defendants.

**FILED UNDER SEAL**

Case No. 18-cv-2104

*EX PARTE* TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, APPOINTMENT OF A TEMPORARY RECEIVER, AND OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

    Plaintiff, the Federal Trade Commission, has filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), the Restore Online Shoppers' Confidence Act, ("ROSCA"), 15 U.S.C. §§ 8401-8405, and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and Section 6

1

of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. § 6105, and has moved, pursuant to Fed. R. Civ. P. 65(b), for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants Jason Cardiff, Eunjung Cardiff, a/k/a Eunjung Lee, a/k/a Eunjung No, Danielle Cadiz, a/k/a Danielle Walker, Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership.

## FINDINGS OF FACT

The Court, having considered the Complaint, the *ex parte* Application for a Temporary Restraining Order, declarations, exhibits, and the memorandum of points and authorities filed in support thereof, and being otherwise advised, finds that:

A.     This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B.     In numerous instances, Defendants have misrepresented the effectiveness of their dissolvable film strip products for smoking cessation, weight loss, and improved male sexual performance, thereby misleading vulnerable consumers.  Defendants have then further injured many consumers by placing them on unauthorized continuity plans that resulted in additional charges to their credits cards or withdrawals from their debit accounts.  Defendants have also made false earnings claims as part of a multilevel marketing plan, and illegally caused more than one million robocalls to be made to consumers' telephones.

C.     There is good cause to believe that Defendants Jason Cardiff, Eunjung Cardiff, Danielle Cadiz, Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific

2

Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership have engaged in and are likely to engage in acts or practices that violate Sections 5(a) and 12 of the FTC Act, Section 4 of ROSCA, Section 907(a) of EFTA, EFTA's implementing Regulation E, and the Telemarketing Sales Rule ("TSR"), and that Plaintiff is therefore likely to prevail on the merits of this action. As demonstrated by Defendants' own advertising and communications, consumer complaints, declarations, and the additional documentation filed by the FTC, the Commission has established a likelihood of success in showing that Defendants have deceptively marketed TBX-FREE, Eupepsia Thin, and Prolongz, placed consumers on continuity plans without their prior authorization, charged consumers' credit cards and debited their bank accounts without authorization, caused robocalls to be made to more than one million consumers to induce the sale of goods or services, and misrepresented the earnings that people who join their multi-level marketing program are likely to make.

D.     The FTC is likely to succeed in showing that Corporate Defendants Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership operate as a common enterprise and are the alter egos of Jason Cardiff and Eunjung Cardiff.

E.     There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of the FTC Act, ROSCA, EFTA and Regulation E, and the TSR unless Defendants are restrained and enjoined by order of this Court.

F.     There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers – including monetary restitution, rescission, or disgorgement – will occur from the sale,

3

transfer, destruction or other disposition or concealment by Defendants of their assets or records, unless Defendants are immediately restrained and enjoined by order of this Court; and that, in accordance with Fed. R. Civ. P. 65(b) and Local Rule 7-19.2, the interests of justice require that this Order be granted without prior notice to Defendants. Thus, there is good cause for relieving Plaintiff of the duty to provide Defendants with prior notice of its Motion for a Temporary Restraining Order.

G.    Good cause exists for freezing the assets of all Defendants, appointing a temporary receiver over the Receivership Entities and over the assets of Jason Cardiff and Eunjung Cardiff, permitting Plaintiff and the Receiver immediate access to the Defendants' business premises, and permitting Plaintiff and the Receiver to take expedited discovery.

H.    Weighing the equities and considering Plaintiff's likelihood of ultimate success on the merits, a temporary restraining order with an asset freeze, the appointment of a temporary receiver, immediate access to business premises, expedited discovery, and other equitable relief is in the public interest.

I.    This Court has authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Federal Rule of Civil Procedure 65, and the All Writs Act, 28 U.S.C. § 1651.

J.    No security is required of any agency of the United States for issuance of a temporary restraining order. Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.    "Asset" means any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held.

B.    "Continuity Program" means any plan, arrangement, or system under which a consumer is periodically charged for products or services, without prior notification by the seller before each charge.

4

C.     "Corporate Defendant(s)" means Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership, and each of their subsidiaries, affiliates, successors, and assigns.

D.     "Defendant(s)" means Corporate Defendants, Jason Cardiff, Eunjung Cardiff, and Danielle Cadiz, individually, collectively, or in any combination.

E.     "Document" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including email and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases, and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

F.     "Electronic Data Host" means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

G.     "Individual Defendant(s)" means Jason Cardiff, Eunjung Cardiff, and Danielle Cadiz, individually, collectively, or in any combination.

H.     "Negative Option" means, in an offer or agreement to sell or provide

5

any good or service, a provision under which the consumer's silence or failure to take an affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer or agreement.

I. "Person" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

J. "Preauthorized Electronic Fund Transfer" means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

K. "Receiver" means the temporary receiver appointed in Section XV of this Order and any deputy receivers that shall be named by the temporary receiver.

L. "Receivership Entities" means Corporate Defendants as well as any other entity that has conducted any business related to Defendants' marketing and sale of dissolvable film strips and promotion of the Rengalife multilevel marketing program, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant.

M. "Receivership Property" means any Assets, wherever located, that are: (1) owned, controlled, or held by or for the benefit of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff, in whole or in part; (2) in the actual or constructive possession of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff; or (3) owned, controlled, or held by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned or controlled by the Receivership Entities, Jason Cardiff, or Eunjung Cardiff, including the Jurikel Family Trust, and Carols Place Trust.

<div align="center">

**ORDER**

</div>

**I.     PROHIBITED BUSINESS ACTIVITIES**

<div align="center">6</div>

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods, services, or programs are temporarily restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.　　Any material fact about TBX-FREE, Eupepsia Thin, or Prolongz, including, but not limited to:

1.　　That TBX-FREE is an effective smoking cessation product;

2.　　That TBX-FREE is more effective than either nicotine patches or nicotine gum in enabling cigarette smokers to stop smoking;

3.　　That TBX-FREE enables many cigarette smokers to quit in seven to ten days;

4.　　That TBX-FREE has an 88% success rate, including among people who have smoked cigarettes for more than five years;

5.　　That smokers should not need to purchase more than one month of TBX-FREE;

6.　　That clinical studies have been conducted on TBX-FREE, and have shown that TBX-FREE is an effective smoking cessation product;

7.　　That TBX-FREE has been proven in clinical studies to be more effective than nicotine patches or nicotine gum in enabling smokers to stop smoking;

8.　　That clinical studies of TBX-FREE conducted on 10,600 people have shown that TBX-FREE has an "88% success rate";

9.　　That The New England Journal of Medicine ("NEJM"), Harvard Health Publications, and Johns Hopkins University

have published clinical studies proving that TBX-FREE is an effective smoking cessation product;

10. That NEJM's clinical studies showed that TBX-FREE is ten times more effective for smoking cessation than nicotine replacement therapy;

11. That Eupepsia Thin is an effective appetite suppressant and weight loss aid;

12. That Eupepsia Thin starts working in less than 20 seconds, and suppresses a user's appetite within minutes;

13. That Eupepsia Thin enables users to lose 10, 20, or even 100 pounds without dieting, giving up their favorite foods, or increasing their exercise;

14. That Eupepsia Thin users can lose 15 pounds their first month without dieting or changing their food or lifestyle;

15. That Eupepsia Thin users can lose as much as 20 pounds in one month and as much as 50 pounds in three months;

16. That Eupepsia Thin is more effective at causing weight loss than conventional calorie reduction and meal plans;

17. That Eupepsia Thin enables consumers to avoid gaining back weight they lose, without any lifestyle changes.

18. That clinical studies have been conducted on EupepsiaThin and those studies show that it is an effective appetite suppressant and weight loss aid;

19. That Prolongz substantially increases ejaculation control and the duration of sex;

20. That Prolongz treats or prevents premature ejaculation;

21. That Prolongz is clinically proven to increase ejaculation control and the duration of sex for more than 97% of users;

8

22.   That Eupepsia Thin is made in the United States;

23.   That individuals appearing in advertising for Eupepsia Thin used that product successfully to lose weight; and

24.   That consumers who are not satisfied with the product they purchased will get their money back;

B.   Any material fact about any multi-level marketing plan, including, but not limited to, the income that participants in the plan are likely to earn; and

C.   Any other fact material to consumers concerning any good or service, such as:  the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## II.   PROHIBITIONS AGAINST UNFAIR AND DECEPTIVE NEGATIVE OPTION MARKETING PRACTICES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service are temporarily restrained and enjoined from charging, causing to be charged, assisting others in charging, or attempting to charge any consumer in any sale of a good or service sold through a negative option without:

A.   Clearly and conspicuously disclosing all material terms of the negative option features before obtaining the consumer's billing information;

B.   Obtaining a consumer's express informed consent, written or similarly authorized, to the negative option features before making any charge; and

C.   Providing a simple mechanism for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, or other financial account.

9

## III.  PROHIBITIONS AGAINST UNAUTHORIZED CHARGES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are temporarily restrained and enjoined from charging, causing to be charged, assisting others in charging, or attempting to charge any consumer for any good or service without first obtaining the consumer's express informed consent, written or similarly authorized, to the charge.

## IV.  PROHIBITIONS AGAINST DEBITING CONSUMERS' BANK ACCOUNTS WITHOUT AUTHORIZATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service, are temporarily restrained and enjoined from:

A.  Failing to timely obtain written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account before initiating any Preauthorized Electronic Fund Transfer; and

B.  Failing to provide to the consumer a copy of a valid written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account.

## V.  PROHIBITION OF PRERECORDED MARKETING CALLS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from

initiating or causing the initiation of outbound telephone calls delivering prerecorded messages to induce the sale of goods or services.

## VI. PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.    Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; and

B.    Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order.

Provided, however, that Defendants may disclose such identifying information to a law enforcement agency, to their attorneys as required for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

## VII. ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets that are:

1.      Owned or controlled, directly or indirectly, by any Defendant, including, but not limited to, those for which a Defendant is a signatory on the account;

2.      Held, in part or in whole, for the benefit of any Defendant;

3.      In the actual or constructive possession of any Defendant; or

4.      Owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant.

B.      Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

C.      Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant, or of which any Defendant is an officer, director, member, or manager.  This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signer; or

D.      Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant;

The Assets affected by this Section shall include:  (1) all Assets of Defendants as of the time this Order is entered; and (2) Assets obtained by Defendants after this

12

Order is entered if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order; and (3) all Assets owned or controlled, directly or indirectly, by Jason Cardiff, Eunjung Cardiff, the Jurikel Family Trust, or Carols Place Trust. This Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this Order.

## VIII. DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor or vendor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that:

    (a)    has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of any Defendant or any Asset that has been owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant;

    (b)    has held, controlled, or maintained custody, through an account or otherwise, of any Document or Asset associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales

13

organizations, third party processors or vendors, payment
gateways, insurance companies, or other entities; or

(c)    has extended credit to any Defendant, including through a credit
card account, shall:

A.    Hold, preserve, and retain within its control and prohibit the
withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance,
disbursement, dissipation, relinquishment, conversion, sale, or other disposal of
any such Document or Asset, as well as all Documents or other property related to
such Assets, except by further order of this Court;

B.    Deny any person, except the Receiver, access to any safe deposit box,
commercial mail box, or storage facility that is titled in the name of any Defendant,
either individually or jointly, or otherwise subject to access by any Defendant;

C.    Provide Plaintiff's counsel and the Receiver, within three (3) days of
receiving a copy of this Order, a sworn statement setting forth:

1.    The identification number of each such account or Asset;

2.    The balance of each such account, or a description of the nature
and value of each such Asset as of the close of business on the
day on which this Order is served, and, if the account or other
Asset has been closed or removed, the date closed or removed,
the total funds removed in order to close the account, and the
name of the person or entity to whom such account or other
Asset was remitted; and

3.    The identification of any safe deposit box, commercial mail
box, or storage facility that is either titled in the name,
individually or jointly, of any Defendant, or is otherwise subject
to access by any Defendant; and

D.    Upon the request of Plaintiff's counsel or the Receiver, promptly
provide Plaintiff's counsel and the Receiver with copies of all records or other

Documents pertaining to any account covered by this Section or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

Provided, however, that this Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this Order.

## IX. FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that each Defendant, within five (5) days of service of this Order upon them, shall prepare and deliver to Plaintiff's counsel and the Receiver:

A. Completed financial statements on the forms attached to this Order as **Attachment A** (Financial Statement of Individual Defendant) for each Individual Defendant, and **Attachment B** (Financial Statement of Corporate Defendant) for each Corporate Defendant and for Carols Place Trust and the Jurikel Family Trust; and

B. Completed **Attachment C** (IRS Form 4506, Request for Copy of a Tax Return) for each Individual and Corporate Defendant.

## X. FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that within five (5) days following the service of this Order, Jason Cardiff, Eunjung Cardiff, Carols Place Trust, and each Corporate Defendant shall:

A. Provide Plaintiff's counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all Assets,

15

Documents, and accounts outside of the United States that are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.    Take all steps necessary to provide the Receiver and Plaintiff's counsel access to all Documents and records that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this Order as **Attachment D.**

C.    Transfer to the territory of the United States and deliver to the Receiver all Documents and Assets located in foreign countries that are: (1) titled in the name, individually or jointly, of any Defendant, or any trust or other entity for which any Defendant is a beneficiary or trustee; (2) held by any person or entity for the benefit of any Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

D.    The same business day as any repatriation, (1) notify the Receiver and Plaintiff's counsel of the name and location of the financial institution or other entity that is the recipient of such Documents or Assets; and (2) serve this Order on any such financial institution or other entity.

## XI.    NON-INTERFERENCE WITH ASSET FREEZE AND REPATRIATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from

16

taking any action, directly or indirectly, which may result in the encumbrance, transfer, relocation, or dissipation of domestic or foreign Assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

A. Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Defendants' Assets have been fully repatriated pursuant to this Order; or

B. Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' Assets have been fully repatriated pursuant to this Order.

## XII. CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that Plaintiff may obtain credit reports concerning any Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiff.

## XIII. PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A. Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, Assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3)

17

the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

        B.    Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' Assets.

## XIV. REPORT OF NEW BUSINESS ACTIVITY

        **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff's counsel and the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XV. TEMPORARY RECEIVER

        **IT IS FURTHER ORDERED** that Robb Evans & Associates, LLC is appointed as temporary receiver of the Receivership Entities and of the assets of Jason Cardiff and Eunjung Cardiff that are:

        1.    Owned, controlled or held by or for the benefit of Jason Cardiff or Eunjung Cardiff, in whole or in part;

18

2. In the actual or constructive possession of Jason Cardiff or Eunjung Cardiff; or

3. Owned, controlled or held by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned or controlled by Jason Cardiff or Eunjung Cardiff;

with full powers of an equity receiver. The Receiver shall be solely the agent of this Court in acting as Receiver under this Order.

## XVI. DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A. Assume full control of the Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity;

B. Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity and all Assets of Jason Cardiff and Eunjung Cardiff covered by Part XV of this Order, wherever situated, except for real property used as the residence of Jason Cardiff and Eunjung Cardiff;

C. Take exclusive custody, control, and possession of all Documents or Assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

19

D.      Conserve, hold, manage, and prevent the loss of all Receivership Property, and perform all acts necessary or advisable to preserve the value of those Assets.  The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Entities. The Receiver shall have full power to sue for, collect, and receive, all Receivership Property and all Assets of other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Entities or of Jason Cardiff or Eunjung Cardiff.  Provided, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer's debt to the Receivership Entities has resulted from the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval;

E.      Take exclusive custody, control, and possession of the following valuable articles in the possession, custody, or under the control of, Defendants Jason Cardiff, Eunjung Cardiff, or Carols Place Limited Partnership, wherever located:

1.      Ladies 14K yellow gold and diamond ring.  Insured for $11,813.

2.      Ladies diamond pendent setting 14 KT.  Insured for $23,730.

3.      Ladies Diamond Stud Earrings.  Insured for $34,125.

4.      Ladies Diamond Fancy Ring.  Insured for $31,763.

5.      Mens Roadster SM WG/WG Paved Bezel.  Insured for $32,550.

6.      Ladies handmade platinum diamond bracelet.  Insured for $46,725

7.      Mens GTS 18KT white gold Daytona Rolex.  Insured for $42,000.

20

8.      5.08 ct round diamond I color S12 Clarity EGL platinum ring. Insured for $102,076.

9.      Mens Rolex Yacht-Master 18K gold watch.  Insured for $14,125.

10.     Ladies Love Bra yellow gold 4 dia[] 17 cm.  Insured for $9,819.

11.     Ladies yellow gold ring, Serial #UD0824.  Insured for $2,284.

12      Ladies fancy diamond bracelet.  Insured for $39,397.

13.     Mens Rolex watch 18KT gold Pearlmaster.  Insured for $33,180.

14.     Tiffany pearl bracelet.  Insured for $3,166.

15.     Ladies emerald and diamond ring.  Insured for $24,856.

16.     IWC Portofino moon phase watch.  Insured for $8,000.

17.     Pre-owner Ladies stainless steel Patek Phili[ppe].  Insured for $8,145.

18.     Rolex Vintage Thund[er].  Insured for $9,000.

19.     Stuart Moore "Aronade" platinum diamond.  Insured for $12,650.

20.     Peter Philippe annual calendar wristwatch.  Insured for $41,300.

21.     18K yellow gold Tiffany Diamond Bracelet.  #B0164.  Insured for $7,600.

22.     "Living Room" Artist Romero Britto.  Insured for $12,600.

23.     Hermes Birkin bag, size 35 (Togo leather; in Sienna color). Insured for $20,000.

24.     Hermes Birkin bag, size 35 (Togo leather; Curry).  Insured for $20,000

25.     Ladies ring round center stone 8.5 cts, VS2 with diamonds. Insured for $532,000.

26. MenOCOs Patek Philippe gold calendar watch model 5035J. Insured for $28,500.

Defendants Jason Cardiff and Eunjung Cardiff shall deliver all of the foregoing articles to the Receiver at a place and time to be determined by the Receiver.

F. Obtain, conserve, hold, manage, and prevent the loss of all Documents of the Receivership Entities, and perform all acts necessary or advisable to preserve such Documents. The Receiver shall: divert mail; preserve all Documents of the Receivership Entities that are accessible via electronic means (such as online access to financial accounts and access to electronic documents held onsite or by Electronic Data Hosts, by changing usernames, passwords or other log-in credentials; take possession of all electronic Documents of the Receivership Entities stored onsite or remotely; take whatever steps necessary to preserve all such Documents; and obtain the assistance of the FTC's Digital Forensic Unit for the purpose of obtaining electronic documents stored onsite or remotely.

G. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

H. Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging his or her duties as Receiver. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Entities, such as rental payments;

22

I.      Take all steps necessary to secure and take exclusive custody of each location from which the Receivership Entities operate their businesses.  Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable:  (1) securing the location by changing the locks and alarm codes and disconnecting any Internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Entities, including, but not limited to, telephones, computers, and tablets paid for by the Receivership Entities.  Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security.  If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

J.      Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendants, and to provide access to all such web page or websites to Plaintiff's representatives, agents, and assistants, as well as Defendants and their representatives;

K.      Enter into and cancel contracts and purchase insurance as advisable or necessary;

L.      Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities;

23

M. Make an accounting, as soon as practicable, of the Assets and financial condition of the receivership and file the accounting with the Court and deliver copies thereof to all parties;

N. Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including, but not limited to, actions challenging fraudulent or voidable transfers;

O. Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate, in addition to obtaining other discovery as set forth in this Order;

P. Open one or more bank accounts at designated depositories for funds of the Receivership Entities. The Receiver shall deposit all funds of the Receivership Entities in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts. The Receiver shall serve copies of monthly account statements on all parties;

Q. Maintain accurate records of all receipts and expenditures incurred as Receiver;

R. Allow Plaintiffs' representatives, agents, and assistants, as well as Defendants' representatives and Defendants themselves, reasonable access to the premises of the Receivership Entities, or any other premises where the Receivership Entities conduct business. The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the Receivership Entities or their agents. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access;

24

S.     Allow Plaintiffs' representatives, agents, and assistants, as well as Defendants and their representatives reasonable access to all Documents in the possession, custody, or control of the Receivership Entities;

T.     Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency;

U.     Suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably;

V.     If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court. Provided, however, that the Receiver may delay providing such notice until the Receiver has established control of the nonparty entity and its assets and records, if the Receiver determines that notice to the entity or the parties before the Receiver establishes control over the entity may result in the destruction of records, dissipation of assets, or any other obstruction of the Receiver's control of the entity;

W.     If in the Receiver's judgment the business operations cannot be continued legally and profitably, take all steps necessary to ensure that any of the Receivership Entities' web pages or websites relating to the activities alleged in the Complaint cannot be accessed by the public, or are modified for consumer education and/or informational purposes, and take all steps necessary to ensure that any telephone numbers associated with the Receivership Entities cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations; and

X.     Report to this Court on or before the date set for the hearing to Show Cause regarding the Preliminary Injunction or as otherwise directed by the Court, regarding: (1) the steps taken by the Receiver to implement the terms of the Order;

25

(2) the value of all assets and sum of all liabilities of the Receivership Entities; (3) the steps the Receiver intends to take in the future to protect receivership assets, recover receivership assets from third parties, and adjust receivership liabilities; (4) the Receiver's opinion on whether any portion of the business of any of the Receivership Entities can continue to operate legally and profitably; and (5) any other matters that the Receiver believes should be brought to the Court's attention.

**XVII. TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER**

**IT IS FURTHER ORDERED** that Defendants and any other person with possession, custody or control of  (1) property of, or records relating to, the Receivership Entities or (2) the Assets of Jason Cardiff or Eunjung Cardiff or any trusts for which they are beneficiaries or trustees, shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities and the Assets of Jason Cardiff or Eunjung Cardiff and immediately provide, transfer, or deliver to the Receiver possession, custody, and control of, the following:

A.     All Assets held by or for the benefit of the Receivership Entities or of Jason Cardiff or Eunjung Cardiff, except for real property used as the residence of Jason Cardiff and Eunjung Cardiff;

B.     All Documents or Assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

C.     All Documents of or pertaining to the Receivership Entities or to the Assets of Jason Cardiff or Eunjung Cardiff;

D.     All computers, electronic devices, mobile devices, and machines used to conduct the business of the Receivership Entities;

E.     All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Entities; and

F.     All keys, codes, user names, passwords, and all other means of authentication necessary to gain or to secure access to any Assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, mobile phones, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property.

In the event that any person or entity fails to deliver or transfer any Asset, Document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

## XVIII.     PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that Receivership Entities and Jason Cardiff and Eunjung Cardiff shall immediately provide to the Receiver:

A.     A list of all Assets and accounts of the Receivership Entities that are held in any name other than the name of a Receivership Entity, or by any person or entity other than a Receivership Entity;

B.     A list of all Assets and accounts of Jason Cardiff and Eunjung Cardiff that are held in any name other than their own names, or by any person or entity other than themselves;

C.     A list of all agents, employees, officers, attorneys, servants and those persons in active concert and participation with the Receivership Entities, or who have been associated or done business with the Receivership Entities; and

D.     A description of any documents covered by attorney-client privilege or attorney work product, including files where such documents are likely to be located, authors or recipients of such documents, and search terms likely to identify such electronic documents.

27

## XIX.  COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants, Receivership Entities, Defendants' or Receivership Entities' officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and any other person with possession, custody, or control of:

1. Receivership Property or records relating to Receivership Property; or

2. Other records relating to the Receivership Entities;

who receive actual notice of this Order shall fully cooperate with and assist the Receiver.  This cooperation and assistance shall include, but is not limited to, providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any keys, codes, user names, passwords, and all other means required to access any computers, electronic devices, mobile devices, machines (onsite or remotely), and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any Receivership Entity that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Receivership Property and sales of the Receivership Entities.

## XX.  NON-INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants, Receivership Entities, Defendants' or Receivership Entities' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

A. Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership;

B. Transacting any of the business of the Receivership Entities;

28

C.     Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities, Jason Cardiff, or Eunjung Cardiff; or

D.     Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XXI. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the receivership ordered herein, Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities or over the assets of Jason Cardiff and Eunjung Cardiff, including, but not limited to:

A.     Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 et seq., or of any similar insolvency proceeding on behalf of the Receivership Entities;

B.     Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

  C.  Filing or enforcing any lien on any Asset of the Receivership Entities, taking or attempting to take possession, custody, or control of any Asset of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.

Provided, however, that this Order does not stay: (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XXII. COMPENSATION OF RECEIVER

  **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities, Jason Cardiff, or Eunjung Cardiff. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XXIII.  RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $15,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.  28 U.S.C. § 754.

## XXIV.  IMMEDIATE ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that:

A.      In order to allow Plaintiff and the Receiver to preserve Assets and evidence relevant to this action and to expedite discovery, Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, shall have immediate access to the business premises and storage facilities, owned, controlled, or used by the Receivership Entities.  Such locations include, but are not limited to:  820 North Mountain Ave., Suite 100, Upland, CA 91786; 870 North Mountain Ave., Suites 115 and 118, Upland, CA 91786; any additional business locations if they are discovered during the immediate access, and any offsite location or commercial mailbox used by the Receivership Entities.  The Receiver may exclude Defendants, Receivership Entities, and their employees from the business premises during the immediate access.

B.      Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to remove Documents from the Receivership Entities' premises in order that they may be inspected, inventoried, and copied.  Plaintiff shall return any removed materials to the Receiver within five (5) business days of completing inventorying and copying, or such time as is agreed upon by Plaintiff and the Receiver;

C.      Plaintiff's access to the Receivership Entities' documents pursuant to this Section shall not provide grounds for any Defendant to object to any subsequent request for documents served by Plaintiff.

31

D.    Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to obtain the assistance of federal, state and local law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this Order;

E.    If any Documents, computers, or electronic storage devices containing information related to the business practices or finances of the Receivership Entities are at a location other than those listed herein, including personal residence(s) of any Defendant, then, immediately upon receiving notice of this order, Defendants and the Receivership Entities shall produce to the Receiver all such Documents, computers, and electronic storage devices, along with any codes or passwords needed for access.  In order to prevent the destruction of computer data, upon service of this Order, any such computers or electronic storage devices shall be powered down in the normal course of the operating system used on such devices and shall not be powered up or used until produced for copying and inspection; and

F.    If any communications or records of any Receivership Entity are stored with an Electronic Data Host, such Entity shall, immediately upon receiving notice of this order, provide the Receiver with the username, passwords, and any other login credential needed to access the communications and records, and shall not attempt to access, or cause a third party to attempt to access, the communications or records.

## XXV.  DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date of entry of this Order, provide Plaintiff and the Receiver with a sworn statement that this provision of the Order has been

satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order. Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XXVI. EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of Fed. R. Civ. P. 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a), 34, and 45, Plaintiff and the Receiver are granted leave, at any time after service of this Order, to conduct limited expedited discovery for the purpose of discovering: (1) the nature, location, status, and extent of Defendants' Assets; or (2) compliance with this Order. The limited expedited discovery set forth in this Section shall proceed as follows:

A. Plaintiff and the Receiver may take the deposition of parties and non-parties. Forty-eight (48) hours notice shall be sufficient notice for such depositions. The limitations and conditions set forth in Rules 30(a)(2)(B) and 31(a)(2)(B) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) and depositions may be taken by telephone or other remote electronic means.

B. Plaintiff and the Receiver may serve upon parties requests for production of Documents or inspection that require production or inspection within five (5) days of service, provided, however, that three (3) days of notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only in an electronic format.

33

C.      Plaintiff and the Receiver may serve upon parties interrogatories that require response within five (5) days after Plaintiff serves such interrogatories.

D.      Plaintiff and the Receiver may serve subpoenas upon non-parties that direct production or inspection within five (5) days of service.

E.      Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

F.      Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court.  The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure.

G.      The Parties are exempted from making initial disclosures under Fed. R. Civ. P. 26(a)(1) until further order of this Court.

**XXVII.  SERVICE OF THIS ORDER**

**IT IS FURTHER ORDERED** that copies of this Order as well as Plaintiff's *Ex Parte* Application For (1) A Temporary Restraining Order And Order To Show Cause Why A Preliminary Injunction Should Not Issue And (2) Order Waiving Notice Requirement and all other pleadings, Documents, and exhibits filed contemporaneously with that Application (other than the complaint and summons), may be served by any means, including facsimile, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Defendant or any person (including any financial institution) that may have possession, custody or control of any Asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure.  For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

34

## XXVIII.  CORRESPONDENCE AND SERVICE ON PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed to:

> Elizabeth Sanger
> James A. Prunty
> Edwin Rodriguez
> Shira D. Modell
> Federal Trade Commission
> 600 Pennsylvania Ave., NW
> Washington, DC 20580
> Tel: (202) 326-2757, -2438, -3147, -3116
> Fax: (202) 326-3259
> Email:  esanger@ftc.gov; jprunty@ftc.gov; erodriguez@ftc.gov; smodell@ftc.gov

## XXIX.  PRELIMINARY INJUNCTION HEARING

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 65(b), Defendants shall appear before this Court on the 23rd day of October, 2018, at 2:00 p.m. to show cause, if there is any, why this Court should not enter a preliminary injunction, pending final ruling on the Complaint against Defendants, enjoining the violations of the law alleged in the Complaint, continuing the freeze of the Defendants' Assets, continuing the receivership, and imposing such additional relief as may be appropriate.

## XXX.  BRIEFS AND AFFIDAVITS CONCERNING PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED** that:

A.     Defendants shall file with the Court and serve on Plaintiff's counsel any answering pleadings, affidavits, motions, expert reports or declarations, or legal memoranda no later than **four (4) days** prior to the order to show cause hearing scheduled pursuant to this Order.  Plaintiff may file responsive or supplemental pleadings, materials, affidavits, or memoranda with the Court and serve the same on counsel for Defendants no later than **one (1) day** prior to the

order to show Cause hearing.  Provided that such affidavits, pleadings, motions, expert reports, declarations, legal memoranda, or oppositions must be served by personal or overnight delivery, facsimile or email, and be received by the other party or parties no later than 5:00 p.m. Pacific Time on the appropriate dates set forth in this Section.

B.     An evidentiary hearing on Plaintiff's request for a preliminary injunction is not necessary unless Defendants demonstrate that they have, and intend to introduce, evidence that raises a genuine and material factual issue.  The question of whether this Court should enter a preliminary injunction shall be resolved on the pleadings, declarations, exhibits, and memoranda filed by, and oral argument of, the parties.  Live testimony shall be heard only on further order of this Court.  Any motion to permit such testimony shall be filed with the Court and served on counsel for the other parties at least five (5) days prior to the preliminary injunction hearing in this matter.  Such motion shall set forth the name, address, and telephone number of each proposed witness, a detailed summary or affidavit revealing the substance of each proposed witness's expected testimony, and an explanation of why the taking of live testimony would be helpful to this Court. Any papers opposing a timely motion to present live testimony or to present live testimony in response to another party's timely motion to present live testimony shall be filed with this Court and served on the other parties at least three (3) days prior to the order to show cause hearing.

Provided, however, that service shall be performed by personal or overnight delivery, facsimile, or email, and Documents shall be delivered so that they shall be received by the other parties no later than 5:00 p.m. Pacific Time on the appropriate dates provided in this Section.

# XXXI. DURATION OF THE ORDER

**IT IS FURTHER ORDERED** that this Order shall expire fourteen (14) days from the date of entry noted below, unless within such time, the Order is extended for an additional period pursuant to Fed. R. Civ. P. 65(b)(2).

# XXXII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

SO ORDERED, this 10th day of October, 2018 @ 3:00 p.m.

_____

UNITED STATES DISTRICT JUDGE

# EXHIBIT 14

Michael Gerard Fletcher (State Bar No. 070849)
 mfletcher@frandzel.com
Craig A. Welin (State Bar No. 138418)
 cwelin@frandzel.com
Hal D. Goldflam  (State Bar No. 179689)
 hgoldflam@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Receiver ROBB EVANS
AND ASSOCIATES LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JASON CARDIFF, etc., et al.,<br><br>Defendants. | Case No. 5:18-cv-02104-SJO-PLA<br><br>**DECLARATIONS OF BRICK KANE AND CRAIG A. WELIN IN SUPPORT APPLICATION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF RECEIVER'S AND RECEIVER'S COUNSEL'S FEES AND EXPENSES FOR THE PERIOD FROM INCEPTION OF RECEIVERSHIP ESTATE THROUGH NOVEMBER 30, 2018; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   February 19, 2019<br>Time:   10:00 a.m.<br>Place:  Courtroom 10C, West 1st Street<br>Judge:  Hon. S. James Otero |

# DECLARATION OF BRICK KANE

I, Brick Kane, declare as follows:

1.      I am the President & Chief Operating Officer of Robb Evans & Associates LLC ("REA"), initially the Temporary Receiver and subsequently the Receiver in this matter.  I have personal knowledge of the matters set forth in this declaration and, if I were called upon to testify as to those matters, I could and would competently testify thereto based upon my personal knowledge.

2.      I am one of the individuals with REA that has primary responsibility for the day-to-day supervision and management of the receivership estate in this case since REA first began to act as the Temporary Receiver on October 10, 2018, pursuant the its *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Temporary Restraining Order").

3.      On October 24, 2018, the Court entered its Preliminary Injunction with Asset Freeze, Receiver, and Other Equitable Relief Against Redwood Scientific Technologies, Inc. (CA), etc. Appointment of a Receiver, and Other Equitable Relief, whereby the Court ordered that Robb Evans & Associates LLC shall continue to serve as the Receiver of the Receivership Entities with full powers of an equity receiver.  [Doc. No. 46.]

4.      On October 24, 2018, the Court entered its Order Extending Temporary Restraining Order and Granting Continuance of Preliminary Injunction Hearing for Defendant Danielle Cadiz.  [Doc. No. 47.]

5.      On October 24, 2018, the Court entered its Order Extending Temporary Restraining Order and Granting Continuance of Preliminary Injunction Hearing for Defendants Jason Cardiff and Eunjung Cardiff and Ordering them to Return Assets.  [Doc. No. 48.]

6.      On November 7, 2018, the Court entered its Stipulated Preliminary

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    Injunction as to Defendant Danielle Cadiz, whereby the Court ordered that Robb

2    Evans & Associates LLC shall continue to serve as the Receiver of the Receivership

3    Entities with full powers of an equity receiver [Doc. No. 55.]

4        7.     On November 8, 2018, the Court entered its Preliminary Injunction

5    with Asset Freeze, Receiver, and Other Equitable Relief Against Jason Cardiff and

6    Eunjung Cardiff ("Preliminary Injunction"), whereby the Court ordered that Robb

7    Evans & Associates LLC shall continue to serve as the Receiver of the Receivership

8    Entities and of the Assets of Defendants Jason Cardiff and Eunjung Cardiff, as more

9    particularized therein, with full powers of an equity receiver. [Doc. No. 59.]

10        8.     The activities undertaken by the Receiver's members and staff from

11    October 10, 2018 through October 31, 2018, are specified Report of Activities for

12    the period from October 10, 2018 through October 31, 2018 ("First Report of

13    Activities"). [Doc. No. 52; *see also* Doc. 53 Notice of Errata – whereby a readable

14    copy of page 9 of the First Report of Activities was filed.] The activities described

15    in First Report of Activities (a true and correct copy of which is attached hereto as

16    Exhibit 1 (without Exhibits)), generally have continued through the First Reporting

17    Period (October 10, 2018 through November 30, 2018) in the context of the

18    Receiver's efforts to identify, obtain, safeguard and preserve assets of the

19    receivership estate and otherwise to perform its duties and responsibilities under the

20    authority granted by the Temporary Restraining Order and Preliminary Injunction.

21        9.     During the First Reporting Period (October 10, 2018, through

22    November 30, 2018), the fees and costs of the Receiver's members, accountants,

23    staff, and support staff totaled $122,206.83, consisting of $117,562.20 in fees and

24    $4,644.63 in costs. The legal fees and costs of the Receiver's counsel, Frandzel

25    Robins Bloom & Csato, L.C. ("FRBC"), which the Receiver hired pursuant to the

26    authority given to the Receiver in the Court's Temporary Restraining Order at §

27    XVI.G., and the Preliminary Injunction at § XVI.G., totaled $66,267.45, consisting

28    of $55,909.00 in fees and $10,358.45 in costs. Accordingly, the total of receivership

1  fees and expenses incurred during the First Reporting Period which the Receiver

2  seeks an order authorizing payment is $188,474.28.

3       10.    The Receiver's fees and costs for which approval is requested are

4  identified in the summary which the Receiver's office has prepared and titled as

5  "Receivership Administrative Expense Report by Month and Fund Balance From

6  Inception (October 10, 2018) to November 30, 2018," a true and correct copy of

7  which I attach hereto as Exhibit 2.  The fees are further detailed Exhibit 3 hereto.

8  Specifically, Exhibit 3 is comprised of monthly billing summaries reflecting the

9  services rendered and time spent by REA's members, accountants, staff, and support

10  staff (with the work descriptions redacted where appropriate to preserve information

11  protected from disclosure by the attorney-client privilege or otherwise to protect the

12  Receiver and the receivership estate from inappropriate disclosures).

13       11.    I am familiar with the methods and procedures used to create, record,

14  and maintain the Receiver's billing records.  The billing records attached hereto as

15  Exhibit 3 are prepared from computerized time records prepared contemporaneously

16  with the services rendered by each professional billing time to this matter.  These

17  computerized records are prepared in the ordinary course of business by the

18  Receiver's professionals who have a business duty to accurately record their time

19  spent and services rendered on the matters on which they perform work.  The time

20  records are transferred into a computerized billing program which generates

21  monthly invoices.  In my experience, the Receiver's methods and procedures for

22  recording and accounting for time and services have proven to be reliable and

23  accurate.

24       12.    During the First Reporting Period, FRBC performed certain work for

25  the Receiver.  That work is summarized in the accompanying Declaration of Craig

26  A. Welin, and Exhibits 4 and 5 thereto.

27       13.    I believe that in light of the work performed during the First Reporting

28  Period, the fees and costs of the Receiver and FRBC are reasonable and should be

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

approved and authorized for payment in their entirety.

14.    In connection with the Application, the Receiver will comply with the notice requirements of Local Rule 66-7(f) concerning applications for approval of a receiver's administrative fees and expenses by serving a copy of the Notice of Application and Application, the supporting Memorandum of Points and Authorities, and the declarations and all exhibits on the parties to this action, and by serving a copy of the Notice of Application and Application and the supporting Memorandum of Points and Authorities.  In addition, the Receiver will provide an entire copy of the Application, including the declarations, to anyone who requests a copy of the Application in writing directed to Robb Evans & Associates LLC, 11450 Sheldon Street, Sun Valley, California 91352-1121.  The Receiver also will post a copy of the entire Application and supporting declarations on the Receiver's website for this case at https://www.robbevans.com/find-a-case/redwood-scientific-technologies-inc-et-al/.

15.    Accordingly, the Receiver has complied with Local Rule 66-7 regarding notice to creditors of the Application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on January 7, 2019, at Sun Valley, California.

_____
BRICK KANE

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

### DECLARATION OF CRAIG A. WELIN

1.    I am an attorney at law duly admitted to practice before the courts of the State of California, the federal courts of the State of California, including the United States District Court for the Central District of California, and the Ninth Circuit Court of Appeals, and am a shareholder of Frandzel Robins Bloom & Csato, L.C. ("FRBC"), attorneys for the Receiver in this matter, Robb Evans & Associates LLC.

2.    I am one of the attorneys primarily responsible for the representation of the Receiver in this case in addition to Michael Gerard Fletcher, who also is a shareholder of FRBC.

3.    During the period of the October 10, 2018 through November 30, 2018 ("First Reporting Period"), FRBC's fees totaled $66,267.45 consisting of $55,909.00 in fees and $10,358.45 in costs.

4.    I attach hereto as Exhibit 4 a table that summarizes the hours worked by each attorney and paralegal from October 10, 2018, through November 30, 2018 ("First Reporting Period"), and their respective hourly billing rates.

5.    I attach hereto as Exhibit 5 the billing records for FRBC reflecting the services rendered, time spent and costs incurred by FRBC pertaining to this matter during the First Reporting Period, with the work descriptions have redacted where appropriate to preserve information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine or otherwise protect the Receiver and the receivership estate from inappropriate disclosures.  These billing summaries are organized in the following manner: (a) by the following ABA Uniform Task-Based Management System Bankruptcy Code Tasks (which are most applicable to billings conducted in a federal receivership matter) – Case Administration, Asset Analysis and Recovery, Meetings of and Communications with Creditors, and Employee Benefits/Pensions; and (b) by each attorney and paralegal under each of the referenced task codes.  In addition, at the end of all timekeeper entries under

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  each task code is a table that includes the hours worked by each attorney and

2  paralegal.

3      6.    I am familiar with the methods and procedures used to create, record

4  and maintain billing records for FRBC's clients. The billing records attached hereto

5  as Exhibit 5 are prepared from computerized time records prepared

6  contemporaneously with the services rendered by each attorney and paralegal billing

7  time to this matter. These computerized records are prepared in the ordinary course

8  of business by the attorneys and paralegals employed by FRBC who have a business

9  duty to accurately record their time spent and services rendered on the matters on

10  which they perform work. The time records are transferred into a computerized

11  billing program which generates monthly invoices under the supervision of the

12  firm's accounting department. Based upon my experience with FRBC, I believe the

13  firm's methods and procedures for recording and accounting for time and services

14  for its clients is reliable and accurate.

15      7.    While the legal services rendered by FRBC during the First Reporting

16  Period, either at the direction of the Receiver or responsible attorneys with this firm,

17  are contained in the specific work entries in Exhibit 5, such services included,

18  without limitation, (a) analyzing Plaintiff's Complaint and application for the

19  appointment of receiver, and Court's various receivership orders, (b) assisting the

20  Receiver in the preparation of the Receiver's Affidavit of Non-Compliance for

21  Temporary Restraining Order (filed on October 23, 2018); (c) attending hearings

22  before the Court on the Court's Order to Show Cause re Appointment of a Receiver,

23  (d) analyzing legal issues surrounding potential assets and assets of the receivership

24  estate, including analysis of lien priority issues; (e) initiating miscellaneous actions

25  in 27 other districts under 28 U.S.C. § 754, including filing certified copies of the

26  Complaint, Temporary Restraining Order, and other Orders in connection therewith;

27  (f) communicating with certain creditor's attorneys regarding fact and legal issues;

28  (g) regularly communicating with and advising the Receiver on various legal issues

1   related to the Receiver's administration of the receivership estate, including asset

2   identification and recovery issues.

3         8.    I believe that in light of the work FRBC performed during the First

4   Reporting Period, FRBC's fees and costs are reasonable and should be approved and

5   authorized for payment in their entirety.

6         9.    It is FRBC's understanding that in light of the Court's requirement

7   under the Temporary Restraining Order and Preliminary Injunction that the Receiver

8   shall file with the Court and serve on the parties periodic requests for payment of the

9   Receiver's and its professionals' reasonable compensation, that the Receiver was

10   not required to comply with L.R. 7-3 before bringing the instant Application.

11   Further, it is our understanding that L.R. 7-3 does not apply to the Application in the

12   first instance since the Receiver represents the Court's agent, and there is no

13   "opposing counsel" as that term is used in L.R. 7-3. Nonetheless, on January 2,

14   2019, FRBC e-mailed a letter to counsel of record for Plaintiff Federal Trade

15   Commission and Defendant Danielle Cardiz, as well as to non-represented

16   Defendants Jason Cardiff and Eunjung Cardiff (neither of whom has filed a response

17   to Plaintiff's Complaint) regarding the Receiver's intent to bring the Application.

18   We included with that letter copies of (a) the "Receivership Administrative Expense

19   Report by Month and Fund Balance From Inception (October 10, 2018) to

20   November 30, 2018" (Exh. 2 to the Declaration of Brick Kane), and (b) copies of

21   FRBC's redacted invoices for the First Reporting Period. I attach hereto a copy of

22   the January 2, 2019, letter excluding the Exhibits. Because of the United States

23   federal government shutdown, we did not send the letter before January 2, 2019;

24   however, since sending the letter, the federal government shutdown has continued

25   resulting in the continued closure of Plaintiff Federal Trade Commission.

26

27

28

3180083.1 | 078410-0061

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

8

Case No. 5:18-cv-02104-SJO-PLA

10.   As of January 7, 2019, FRBC has not received a response from any of the represented parties or any of the non-represented parties any intent by any of the parties to oppose the Receiver's Application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on January 7, 2019, at Los Angeles, California.

_____
CRAIG A. WELIN

DECLARATIONS OF BRICK KANE AND CRAIG A. WELIN IN SUPPORT APPLICATION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF RECEIVER'S AND RECEIVER'S COUNSEL'S FEES, ETC.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# EXHIBIT 1

# EXHIBIT 1

1  Michael Gerard Fletcher (State Bar No. 070849)
      mfletcher@frandzel.com
2  Craig A. Welin (State Bar No.138418)
      cwelin@frandzel.com
3  Hal D. Goldflam (State Bar No.179689)
      hgoldflam@frandzel.com
4  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   1000 Wilshire Boulevard, Nineteenth Floor
5  Los Angeles, California 90017-2427
   Telephone: (323) 852-1000
6  Facsimile: (323) 651-2577

7  Attorneys for Receiver ROBB EVANS
   AND ASSOCIATES LLC

8

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11                    **WESTERN DIVISION**

12

13  FEDERAL TRADE COMMISSION,          Case No. 5:18-cv-02104-SJO-PLA

14              Plaintiff,             **NOTICE OF ERRATUM RE: REPORT OF RECEIVER'S ACTIVITIES FOR THE PERIOD FROM OCTOBER 10, 2018 THROUGH OCTOBER 31, 2018 FILED ON NOVEMBER 1, 2018**

15       v.

16  JASON CARDIFF, et al.,

17              Defendants.           [NO HEARING ASSIGNED]

18

19

20

21

22

23

24

25

26

27

28

3111926.1 | 078410-0061                    1
NOTICE OF ERRATUM RE: REPORT OF RECEIVER'S ACTIVITIES FOR THE PERIOD FROM OCTOBER 10, 2018 THROUGH OCTOBER 31, 2018 FILED ON NOVEMBER 1, 2018

11

1    TO: THE HONORABLE S. JAMES OTERO, JUDGE OF THE UNITED
2  STATES DISTRICT COURT.

3    On November 1, 2018, Robb Evans & Associates LLC, Receiver in the
4  above-entitled matter, filed its Report of Activities for the period from October 10,
5  2018 through October 31, 2018 ("Report"; Document 52.)  Subsequent to the Report
6  being filed, the Receiver discovered that page 9 of the filed copy was unreadable
7  due to an unknown error related with the electronic filing of the Report.  Therefore,
8  the Receiver submits herewith another copy of the Report, with page 9 in a readable
9  format.

10

11  DATED: November 2, 2018        FRANDZEL ROBINS BLOOM & CSATO, L.C.
                                   MICHAEL GERARD FLETCHER
12                                 CRAIG A. WELIN
13                                 HAL D. GOLDFLAM

14

15                            By:  /s/ Hal D. Goldflam
                                   HAL D. GOLDFLAM
16                                 Attorneys for Receiver ROBB
17                                 EVANS & ASSOCIATES LLC

18

19

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

3111926.1 | 078410-0061                    2

12

Robb Evans & Associates LLC
Receiver of
Redwood Scientific Technologies, Inc. et al.

## REPORT OF RECEIVER'S ACTIVITIES
### OCTOBER 10, 2018 THROUGH OCTOBER 31, 2018

This report covers the activities of the Receiver[1] since the inception of the receivership. This is the first report to the Court on the progress of the receivership. It does not constitute an audit of financial condition and is intended only to provide information for use by the Court in assessing the progress of the receivership.

## Overview

This report will describe the steps taken by the Receiver to implement the terms of the Temporary Restraining Order (TRO). This report will also describe the destruction of Receivership Entity records in May 2018 on orders from Jason Cardiff and an additional potential violation of the TRO.

## Custody, Control, and Possession

On October 12, 2018 the Receiver took control of the business premises located at 820 and 870 North Mountain Ave. in Upland, CA. There was one employee present at 820 North Mountain Ave., Suite 100. Offices for Individual Defendants Jason Cardiff and Eunjung Cardiff are at Suite 100.

Jason Cardiff was present at 870 North Mountain Ave., Suite 115. Upon seeing the TRO, he advised the Receiver that the office was that of People United for Christians (PUFC), which was not mentioned in the paperwork he saw.

As set forth below, the operations of Redwood Scientific Technologies, Inc. (Redwood) and the PUFC are intertwined and comingled.

The Receiver interviewed five individuals at 870 North Mountain Ave.

The first individual interviewed by the Receiver stated that he worked as a warehouse worker and sales representative for Redwood. He stated his primary job was to move the Redwood

---

[1] Reference to the Receiver in this report means the Receiver, the Receiver's deputies, and staff.

Page 1 of 12

13

inventory located in that entity's warehouse across the hall into a small office located in Suite 115 that had been set up with shelves for inventory. He did not know why he was moving inventory owned by one company into a suite purportedly occupied by PUFC. In addition to relocating inventory, he stated he made sales calls on companies in the area for the purpose of selling dissolvable film strips to aid in smoking cessation, weight loss, sleep aid, and improved sexual performance for men and women.

The other four individuals that were interviewed by the Receiver all stated they worked for PUFC. The Receiver learned that PUFC is a "virtual ministry" whose message was delivered by Mr. Cardiff, the Master Prophet. Mr. Cardiff exclusively determined the ministry's message through solicitation campaigns which he took from a library of previously used campaigns found in one of the offices.

Two of the four individuals were part time and only worked when called in and the other two were permanent, salaried employees. All four employees worked on solicitation campaigns for PUFC, one preparing art work, others preparing the mailers with the inclusion of religious symbols in the mailings. The Receiver observed that the employees were cutting small swatches of cheesecloth representing an item of religious significance. One full-time employee and one part-time employee also did computer input reflecting the amount of money received for a particular campaign. This input entailed taking information off of the front of empty return envelopes that Defendant Eunjung Cardiff sent to the suite after opening them and removing the money in them. The envelopes had the sender's name and address in the upper left hand corner. In the lower left hand corner there was a code for the marketing campaign the envelope was returned on. Hand written on the right side of the envelope was a number representing the amount of money received in that envelope.

One employee told the Receiver that in August, 2018 there was a meeting with all employees of Redwood and PUFC where it was announced to employees they would begin selling medical marijuana (CBD) dissolvable film strips. When that company required help in packaging that product, PUFC employees would go to 820 North Mountain and work there. The four PUFC employees were always paid by PUFC, even when work was done for Redwood, although the individual responsible for keeping track of employee time used an internal code to designate which hours in the pay period were worked at Redwood and which at PUFC. One PUFC employee listed her supervisor as Julie. The only Julie the Receiver was able to locate in the records is on the payroll report for Redwood.

Employees of PUFC stated that after the third quarter, 2017, employees did not receive checks with paystubs and that at year end they did not receive 2017 W-2 reports for their use in completing their taxes. The employee stated that when she pressed Mr. Cardiff, he became very angry and referred her to a Redwood supervisor who told her PUFC had not reported any information to the Internal Revenue Service and therefore, the employees did not need to either.

Case 5:28-cv-02021104-JSMG-PLA Document 145-3 81-File Filed 08/04/07/19 Page 26 50 of 263 Page ID
#:37672
Case 5:18-cv-02104-SJO-PLA Document 53 Filed 11/02/18 Page 5 of 76 Page ID #:3274

In addition, the Receiver observed a substantial amount of Redwood paper records located in the 870 Mountain Ave. suites. Some file cabinets contained records for both Redwood and the ministry.

The 870 Mountain Ave. suites are leased to Intel Property LLC, a Wyoming Limited Liability Company. The Guarantor on this lease is Redwood.

Defendant Danielle Cadiz, who is on Redwood's payroll, is listed as Manager on the application for Messengers for Christ World Healing's post office box application (Exhibit 1). This post office box receives mail from solicitations made by PUFC.

The Receivership Entities utilize Google Suites for email and for their documents. The Receiver took steps to change the administrative password for Google Suites and restricted access by anyone not authorized by the Receiver. Representatives of the Federal Trade Commission (FTC) commenced a forensic image of the data contained in Google Suites.

The Receivership Entities utilize QuickBooks for their accounting system. The Receiver accessed and downloaded the QuickBooks data.

The Receiver changed the locks to all of the office suites and took control of the mail.

## Interview with Jason Cardiff

On October 12, 2018 the Receiver met with Mr. Cardiff and explained to him the asset freeze provisions and the duties of the Receiver as detailed in the TRO[2].

Mr. Cardiff told the Receiver that credit card merchant processors for the Receivership Entities had terminated processing several months ago and there were no current merchant processing accounts. He stated that as a result the total sales for last month were about $7,000.

The Receiver directed Mr. Cardiff to Section XVI. paragraph E. of the TRO which requires the Receiver to take custody, control, and possession of various valuable articles. Mr. Cardiff told the Receiver that all of the items listed in the TRO had been liquidated over the past few years. He first said the items had been liquidated over the last two to three years and then later said over the last four to five years. He further stated that everything was sold for cash at pawn shops overseas and most items were sold at pawn shops in London. He also told the Receiver that he had no records reflecting the sale of any of the assets detailed in the TRO. The Receiver then asked Mr. Cardiff about item 25, his wife's (defendant Eunjung Cardiff) 8.5 carat diamond ring which is insured for $532,000. In response, Mr. Cardiff explained that the

---

[2] Tracy Green, Esq., an attorney who is representing Mr. Cardiff in the discovery dispute with the FTC, was on a speaker phone during this interview. Ms. Green reinforced the Receiver's explanation of the TRO, including the asset freeze provisions.

ring was sold in Abu Dhabi and proceeds of the sale were wire transferred to a trust in the Cook Islands. He stated there are currently no funds in the trust because the funds were wire transferred back to the United States to fund business operations. In response to further questions from the Receiver, he stated that neither he nor his wife is a trustee of the Cook Islands trust and he does not know how the trust works or who provides instructions to the trust to transfer funds.

The Receiver obtained a current insurance policy for the jewelry from Roger Stone Insurance agency. The policy period is from February 11, 2018 to February 11, 2019 and the annual premium is $16,868.77. The coverage still includes the 8.5 carat diamond ring discussed above (Exhibit 2, Item#27 on page 2).

The Receiver will investigate this issue further, but has preliminarily concluded that Mr. Cardiff's explanation about the disposition of these valuable assets that remain insured and the operation of the Cook Islands trust strains credibility and truthfulness.

## Interview with Danielle Walker a/k/a Danielle Cadiz

On October 27, 2018 the Receiver interviewed Danielle Walker. Ms. Walker was the former Operations Director of Redwood and provided a great deal of information to the Receiver.

The Receiver asked Ms. Walker if Mr. Cardiff or anyone else issued instructions to destroy computer files after receiving the FTC's Civil Investigative Demand (CID) in August 2017. Ms. Walker told the Receiver that Redwood received an additional CID in May of 2018. According to Ms. Walker, the May 2018 CID contained a list of key words. The CID instructed Redwood to search all computer files for these key words and to produce any responsive documents to the FTC. Ms. Walker told the Receiver that Mr. Cardiff instructed Redwood's employees to search their documents for these key words and to delete any documents with any of the key words. According to Ms. Walker, Mr. Cardiff said "that if the FTC got a hold of anything with key words, especially those that discussed 88%, we would all be in a lot of trouble and we would lose everything."

## Business Activities Prohibited by the Temporary Restraining Order

The TRO directs that any material fact about the defendants' products including TBX-FREE, Eupepsia Thin, or Prolongz may not be misrepresented, expressly or by implication including, but not limited to, claims that:

- TBX-FREE is an effective smoking cessation product is more effective than either nicotine patches or nicotine gum;

Page 4 of 12

- Eupepsia Thin is an effective appetite suppressant and weight loss aid and starts working in less than 20 seconds and suppresses a user's appetite within minutes; and
- Prolongz treats or prevents premature ejaculation.

The Receiver viewed numerous products displayed in several areas of the main office, Suite 100, including samples of TBX-FREE, Eupepsia, and Prolongz. The Receiver also studied a six-panel color foldout Product Catalog displaying and describing these three products. The Catalog and the product cartons have text with the prohibited claims, including… "allows smokers to stop smoking once and for all…has an 88% cure compared to the patch and gum combined; …creating the sensation of feeling full almost instantly, suppressing your appetite…easy weight loss; …homeopathic drug, which helps in the prevention of Premature Ejaculation (PE)."

Scripts posted near the desks of telephone receptionists contained similar wording to use when discussing products with in-bound callers.

## Certain Duties and Authorities of the Receiver

Included in the Court's directions to the Receiver is the Order to "Suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably." The Receiver has considered facts and issues related to each prong of this directive.

The Receiver has concluded business operations of the Receivership Entities cannot be continued lawfully. As described above, the existing products and advertising materials contain text with claims that are prohibited by the TRO.

The Receiver has concluded business operations of the Receivership Entities cannot be continued profitably. Financial information below fully describes the hopelessly insolvent financial condition and operation of the Receivership Entities. In addition to negative cash balances of about \$114,000, there are approximately \$5.0 million in current liabilities. Mr. Cardiff stated all liabilities are delinquent and several cash advance loans are in litigation or subject to judgment. The audited financial statements for 2015 and 2016 from Redwood's independent auditor show accumulated losses of about \$9.9 million as of December 31, 2016. Redwood's financial records, which appear to be incomplete and not fully current, show additional net losses from January 1, 2017 through October 12, 2018 of approximately \$1.99 million, indicating accumulated losses could now total about \$11.9 million. Documents on site indicate the premises rent is substantially delinquent. The Receiver has determined there could be potential payroll tax liability claims from the Internal Revenue Service because of improperly classifying employees as independent contractors.

## Financial Information

Based on the Receiver's preliminary review and analysis of the account details recorded under Redwood's QuickBooks accounting file, the creditability of Redwoods accounting records are in doubt. Redwood's bank accounts did not appear to be properly and periodically reconciled through the current time period, and many of the accounting records appear to be outdated or transactions appear not to be properly recorded.

Advanced Men's Institute Prolongz LLC (AMI) was organized in January 2014 in California and began selling its products in February 2014. In November 2014, AMI changed its name to Redwood Scientific Technologies LLC. Immediately after the name change, Redwood Scientific Technologies LLC converted from a limited liability company into a California corporation and became Redwood Scientific Technologies Inc. (Redwood California) in January 2015.

Redwood Scientific Technologies Inc. was also incorporated in the state of Nevada on December 17, 2014 (Redwood Nevada). In January 2015, a Share Exchange Agreement was entered into between Redwood California and Jason Cardiff, the shareholder and Chief Executive Officer of Redwood California, in which Mr. Cardiff transferred 100% of Redwood California he owned to Redwood Nevada and Redwood California became a wholly owned subsidiary of Redwood Nevada.

The Receiver obtained the online access to the Receivership Entities' QuickBooks accounting from Mr. Cardiff. The QuickBooks accounting file is in the name of Redwood Scientific Technologies Inc., which appears to be the accounting records for Redwood California and Redwood Nevada (collectively referred as Redwood). The QuickBooks accounting file for Redwood is stored on the QuickBooks online website.

Redwood's QuickBooks accounting file contains multiple bank accounts, which are in the name of affiliated entities and subsidiaries other than Redwood, including but not limited to, Advanced Men's Institute Prolongz LLC (shown as "AMI"), American Nutra Partners LLC (shown as "AM Nutra Partner" or "AM Nutra P LLC"), Expo Supplements, LLC (shown as "Expo Supplements"), Nature's Future LLC (shown as "Nature's Fut LLC") Owl Enterprises, LLC (shown as "OWL"), Top Hill Shop, Ltd (shown as "Top Hill Shop"), Smoke Stop, LLC (shown as "Smoke Shop"), TV Sales LLC, and Intel Property, LLC (shown as "Checking_70"). In addition to the affiliated entities and subsidiaries above, the Receiver also discovered a binder in Mr. Cardiff's office, which contain many corporate documents along with a list of entity names (Exhibit 3), which appear to be affiliated entities of the Receivership Entities. These demonstrate that the Receivership Entities have created a complex web of affiliated entities and subsidiaries in order to open many credit card merchant processing accounts to receive revenue from consumers or to hold the assets for the Receivership Entities.

Page 6 of 12

18

The financial statements generated from Redwood's QuickBooks accounting file, including profit and loss and balance sheet by year are under Exhibit 4 and 5.

According to Redwood's QuickBooks accounting records, the Receivership Entities generated approximately $19.6 million in gross sales from January 1, 2015 through October 12, 2018, and the refunds and chargebacks were approximately $1.38 million during the same period. The net sales revenue was approximately $18.2 million from January 1, 2015 through October 12, 2018.

The Receivership Entities' books and records show their operations have suffered significant losses since the inception of operations. All of the sales revenue was spent to cover the cost of goods sold and expenses. Cost of goods sold was approximately $3.2 million from its inception to October 12, 2018. The most significant expenses on the books were media expenses (approximately $10.2 million), advertising expenses (approximately $2.8 million) and payroll and wages (approximately $3.2 million, including payroll taxes), which totaled nearly $16 million or 77% of the total expenses. The total net losses from its inception through October 12, 2018 were approximately $6.4 million.

Redwood's balance sheet shows approximately $2.5 million in total assets as of October 12, 2018, which primarily consists of the account receivables ("AR Limelight") of $1.2 million and inter-company receivables ("Intercompany Runway") of $921,104.54. The Receiver reviewed the account details, which reflect that the last transaction for account receivables was dated July 11, 2018 and the last transaction for inter-company receivables was dated January 17, 2018, both of which appear to be outdated and not properly reconciled. Lime Light CRM, Inc. (Lime Light) is the former Customer Relationship Management System (CRM) service provider for the Receivership Entities, and the Receiver served Lime Light with the TRO and obtained the CRM data for the Receivership Entities for further assessment as discussed below.

Redwood's balance sheet shows a negative balance of $113,724.58 in cash and bank account balances as of October 12, 2018. The Receiver served the TRO on all known financial institutions and merchant processors that were used by the Receivership Entities, which is discussed in more detail below.

In addition, Redwood's balance sheet shows approximately $5.1 million in common stock, which include the capital contributions raised from the public and received from outside investors. The Receiver found a 2014 independent auditor's report, which indicates that, in 2015, Redwood Nevada began a public placement offering for a maximum of 2,222,222 units at a purchase price of $2.25 per unit. Each unit consists of one share of Redwood Nevada's common stock, par value of $0.01 per share, and a warrant to purchase the number of shares of common stock as is equal to 50% of the number of shares of common stock underlying the investor's unit at an exercise price of $2.75 per share. The Receiver also discovered a copy of the subscription escrow agreement pertaining to this public placement offering, which is under Exhibit 6.

Redwood's books and records show that all of the capital contributions received from investors were spent. As of October 12, 2018 the books also reflect total liabilities of approximately $5 million.

As noted above, based on the Receiver's preliminary review and analysis of the account details recorded under Redwood's QuickBooks accounting file, the creditability of Redwoods accounting records are in doubt. Redwood's bank accounts did not appear to be properly and periodically reconciled through the current time period, and many of the accounting records appear to be outdated or transactions appear not to be properly recorded. For example, the Receiver discovered in Mr. Cardiff's office a document regarding a recent disbursement authorization dated July 18, 2018 (Exhibit 7) for the funding of $725,000, including $362,250 to Redwood, $2,750 to Legal & Compliance LLC, $35,000 to Auctus Fund Management LLC, and $325,000 to Auctus Fund LLC. According to this authorization, Redwood authorized Auctus Fund LLC to initiate debit and credit entries to Redwood's accounts at Zions Bank. The Receiver reviewed Redwood's QuickBooks accounting records and was unable to locate or reconcile the recording pertaining to these transactions, other than a deposit of $223,250 received on May 5, 2018, which was recorded as short-term loan -- Legal and Compliance LLC but still remained as an unpaid liability on Redwood's books as of October 12, 2018. It is unclear to the Receiver whether or not and to which account Redwood has received $362,250 or has made any payments to Auctus Fund Management LLC or Auctus Fund LLC pursuant to this authorization.

In addition, on October 22, 2018 the Receiver obtained audited financial statements for 2015 and 2016 from Redwood's Independent Auditor, EKS&H LLP. The 2016 audited balance sheet shows accumulated losses of about $9.9 million as of December 31, 2016 (Exhibit 8), which is significantly different from $5.6[3] million shown on Redwood's QuickBooks accounting records (Exhibit 5). The audited profit and loss statements show net losses for 2015 and 2016 of about $5.7 million and $4.2 million, respectively (Exhibit 9). However, Redwood's profit and loss statements generated from its QuickBooks accounting file at Exhibit 4 show the net losses for 2015 and 2016 were approximately $3.3 million and $1 million, respectively.

## Customer Relationship Management (CRM)

The Receivership Entities maintained consumer data on CRM hosted by Lime Light. Apparently, Lime Light terminated the relationship with the Receivership Entities in June 2018.

---

[3] This includes $4,589,074.18 in retained earnings as of December 31, 2016 and 2016 net loss of $1,014,432.08 shown in Exhibit 4.

The Receiver served the TRO on Lime Light and obtained the CRM data of the Receivership Entities directly from Lime Light. According to the CRM data, the product sales and sale orders were recorded from February 7, 2014 to June 15, 2018. The Receiver reviewed, compared and analyzed the sales in the CRM data and the sales recorded on the books as shown below.

| Based on Redwood's QuickBooks | 2015 | 2016 | 2017 | 1/1/2018~ 6/15/2018 | TOTAL |
|---|---|---|---|---|---|
| Sales | $ 4,578,794.44 | $ 5,400,000.72 | $ 297,000.81 | $ 25,500.00 | $ 10,301,295.97 |
| Sales Limelight | - | - | 6,892,212.81 | 959,694.47 | 7,851,907.28 |
| Sales Retail | - | 73,626.60 | 1,154,725.15 | 101,199.85 | 1,329,551.60 |
| Total Sales Per Books <A> | $ 4,578,794.44 | $ 5,473,627.32 | $ 8,343,938.77 | $ 1,086,394.32 | $ 19,482,754.85 |

| Per CRM Data | 2015 | 2016 | 2017 | 1/1/2018~ 6/15/2018 | TOTAL |
|---|---|---|---|---|---|
| Approved & Shipped Sales <B> | $ 4,495,822.52 | $ 5,274,316.61 | $ 6,154,233.33 | $ 977,714.71 | $ 16,902,087.17 |
| Variances <A> - <B> | $ 82,971.92 | $ 199,310.71 | $ 2,189,705.44 | $ 108,679.61 | $ 2,580,667.68 |

Other than some timing differences, the most significant variance was likely related to retail sales, which was recorded under "Sales Retail" account.

The Receiver reviewed the sales details on the books, and it shows that Redwood recorded the sales (under "Sales-Limelight" or "Sales" and "Account Receivable" on the books) based on CRM data on a monthly basis. Starting from 2017, they also separately recorded the retail sales (under "Sales Retail" and "AR-limelight" on the books) other than the sales. It is unclear to the Receiver if Redwood did not properly reconcile the retail sales or whether there was an overstatement of these retail sales because the books still show approximately $1.2 million in "AR-Limelight" outstanding and not collected to date (Exhibit 5).

## PUFC

PUFC was registered as a non-profit entity with the State of California on May 21, 2013. Ms. Walker told the Receiver that early in its existence, PUFC would raise money and make donations to one of the outside Board Member's charity, St. Vincent Church. When those donations ceased, the outside Board Member resigned. Ms. Walker was not aware of any other charitable donations made by PUFC because "there was never enough money in the bank." Ms. Walker stated that Mr. Cardiff obtained his solicitation mailing lists from his former father-in-law, Peter Popoff. According to information on the Internet Mr. Popoff is a televangelist who has been accused for at least the past 30 years of making deceptive or

Page 9 of 12

21

fraudulent claims to heal sickness and promoting products such as "blessed water" and "holy sand" to potential susceptible and vulnerable viewers. The information also reports that Mr. Popoff, referring to himself as a Prophet, promised "fabulous extreme fortune" and "miracles" in exchange for donations to his organization. After a donation, multiple solicitation letters follow, requesting more donations in exchange for miracles.

Ms. Walker stated that Mr. Cardiff produced and completed three mailings each month in sets of about 76,000, 24,000, and 8,000 to consumers listed in a mailing data base. The three sets totaled about 108,000 letters. The second and third mailing sets were smaller and were directed to selected portions of the first mailing group.

The Receiver located multiple copies of a computer-generated mass-produced letter that Mr. Cardiff fashioned as a personal note to the target individuals addressed. The four-page letter came from an unidentified "Master Prophet" and included within the letter the name and address, including address barcode, of an individual the Master Prophet appeared to be on a first name basis. Further attempts to personalize the letter are in the form of faux hand written notations, check marks, underscores, asterisks, circles and encouragement to read on, in green ink. There is also an extensive use of bold type. The letter is overflowing with religious terminology, promises from God, divination of future events and assurances of money to come to the target individuals.

Text contained in letters include the following:

**The powerful events I witnessed in the spirit realm (that) reveal that your upcoming future is altogether ASTOUNDING.**

**Realize one thing: God would never direct me to write you like this if He wasn't ALREADY TAKING MEASURES TO BLESS YOU!**

**I tried to make sure that you had this MIRACULOUS ANOINTED OIL in your hands…Steps one through three involve putting the miraculous anointed oil on painful areas of the body. Step four involves putting the miraculous anointed oil on a cell phone and mailbox to facilitate the notification and receipt of money "a LARGE SUM OF MONEY sooner than you think."**

Following the promises is a strong request, almost a directive, to send a donation of $40 to $250 to "see God move with your prayer needs."

Attached at Exhibit 10 is one of several letters with similar characteristics designed to solicit donations.

The Receiver downloaded a database that purportedly contains consumer information for funds generated by direct mailing campaigns in 2018. The dates in the database begin on June 15, 2018 and end on October 12, 2018. During this time period there were 4,823 donations totaling approximately $163,000 or about an average of $40,750 per month.

The Receiver also found a copy of PUFC's QuickBooks file in the Receivership Entities' Google Suites. The Receiver reviewed PUFC's QuickBooks records (Exhibit 11), which only recorded the transactions from December 2017 to April 2018, and the total income and expenses for the same period were approximately $14,300 and $52,700, respectively. According to Ms. Walker, PUFC's QuickBooks accounting only recorded the transactions for vendor payments, and they did not record all the income received from donations.

Although the Receiver does not have sufficient information about the donation income that PUFC has collected since its inception, the personal financial information submitted by Mr. Cardiff and his wife shows that they received $2,010,000 of income from their employment from 2014 to 2018, including $1,525,000 from PUFC and $485,0000 from Redwood.

## Bank and Credit Card Merchant Processing Accounts

The Receiver has located and frozen numerous accounts in financial institutions and with credit card merchant processors. Currently, $312,942.09 is frozen in accounts with financial institutions and $248,789.07[4] is frozen in accounts with credit card merchant processors. Several financial institutions have not yet confirmed accounts subject to the TRO.

## Violations of the TRO

The Receiver filed its affidavit on non-compliance with the TRO on October 22, 2018. On October 24, 2018 this Court ordered the Cardiffs to return $8,715 to the Receiver by October 25, 2018. To date, the Cardiffs have not returned any funds to the Receiver, nor have they contacted the Receiver about returning funds.

On October 17, 2018 the Receiver was informed that a female picked up the mail at the post office box in La Verne (Exhibit 1).

On October 18, 2018 the Receiver went to the post office and showed employees pictures on Eunjung Cardiff. One employee tentatively identified Ms. Cardiff as the individual who picked up the mail the previous day. That same day, the Receiver picked up 323 envelopes that contained $5,170.72 in cash, checks, and money orders. Since the initial recovery of mail, the

---

[4] This amount may be reduced due to future credit card chargebacks initiated by consumers.

Receiver has taken possession of an additional 1,484 envelopes than contained $20,831.02 in cash, checks and money orders.

The Receiver is continuing its investigation to determine who picked up the mail in violation of the TRO.

Respectfully submitted,

/s/

Robb Evans & Associates LLC
Receiver

# EXHIBIT 2

# EXHIBIT 2

## Robb Evans & Associates, LLC Receiver of Redwood Scientific Technologies, Inc. et al.
### Receivership Administrative Expense Report by Month and Fund Balance
From Inception (October 10, 2018) to November 30, 2018

| | Oct 18 | Nov 18 | TOTAL |
|---|---|---|---|
| Corporate & Defendant Assets | | | |
| Carols Place Limited Partnership | 213,357.88 | 0.00 | 213,357.88 |
| Identify LLC | 1,264.48 | 0.00 | 1,264.48 |
| Intel Property LLC | 68,487.60 | 0.00 | 68,487.60 |
| Owl Enterprises LLC | 81,874.41 | 0.00 | 81,874.41 |
| Redwood Scientific Technologies | 784.17 | 0.00 | 784.17 |
| Top Hill Shop LTD | 4,677.76 | 0.00 | 4,677.76 |
| Cash from Defendant | 0.00 | 6,715.00 | 6,715.00 |
| Petty Cash/Cash on Hand | 0.00 | 2,033.00 | 2,033.00 |
| Total Corporate & Defendant Assets | 370,446.30 | 8,748.00 | 379,194.30 |
| | | | |
| Total Funds Collected | 370,446.30 | 8,748.00 | 379,194.30 |
| | | | |
| Expenses | | | |
| Receiver's Fees & Costs | | | |
| Receiver Fees | | | |
| Receiver | | | |
| B. Kane | 15,184.80 | 820.80 | 16,005.60 |
| S. Krishnan | 2,736.00 | 0.00 | 2,736.00 |
| K. Johnson | 6,429.60 | 2,975.40 | 9,405.00 |
| A. Jen | 27,702.00 | 5,643.00 | 33,345.00 |
| Total Receiver | 52,052.40 | 9,439.20 | 61,491.60 |
| Senior Staff | | | |
| C. Callahan | 3,465.00 | 1,462.50 | 4,927.50 |
| F. Jen | 13,688.10 | 301.50 | 13,989.60 |
| T. Chung | 16,793.55 | 1,085.40 | 17,878.95 |
| H. Jen | 4,846.50 | 0.00 | 4,846.50 |
| C. DeCius | 3,681.45 | 1,530.90 | 5,212.35 |
| J. Dadbin | 3,361.50 | 405.00 | 3,766.50 |
| Total Senior Staff | 45,836.10 | 4,785.30 | 50,621.40 |

Robb Evans & Associates, LLC Receiver of Redwood Scientific Technologies, Inc. et al.

## Receivership Administrative Expense Report by Month and Fund Balance

From Inception (October 10, 2018) to November 30, 2018

| | Oct 18 | Nov 18 | TOTAL |
|---|---|---|---|
| Support Staff | 1,689.00 | 3,760.20 | 5,449.20 |
| **Total Receiver Fees** | 99,577.50 | 17,984.70 | 117,562.20 |
| | | | |
| **Receiver Costs** | | | |
| Document Reproduction Costs | 0.00 | 70.00 | 70.00 |
| Investigative Search Costs | 0.00 | 379.89 | 379.89 |
| Locksmith Costs | 0.00 | 1,033.96 | 1,033.96 |
| Mileage | 0.00 | 356.62 | 356.62 |
| Moving Costs | 98.00 | 672.32 | 770.32 |
| Parking Fees | 0.00 | 27.00 | 27.00 |
| PO Box Rental | 0.00 | 143.00 | 143.00 |
| Postage & Delivery Costs | 6.55 | 1,105.00 | 1,111.55 |
| Receiver Bond Premium | 0.00 | 143.00 | 143.00 |
| Storage Unit Rent | 0.00 | 582.67 | 582.67 |
| Website Support | 0.00 | 26.62 | 26.62 |
| **Total Receiver Costs** | 104.55 | 4,540.08 | 4,644.63 |
| | | | |
| **Legal Fees & Costs** | | | |
| **Frandzel Robins Bloom & Csato** | | | |
| Legal Fees | 29,633.00 | 26,276.00 | 55,909.00 |
| Legal Costs | 6,615.45 | 3,743.00 | 10,358.45 |
| **Total Frandzel Robins Bloom & Csato** | 36,248.45 | 30,019.00 | 66,267.45 |
| | | | |
| **Total Legal Fees & Costs** | 36,248.45 | 30,019.00 | 66,267.45 |
| | | | |
| **Total Receiver's Fees & Costs** | 135,930.50 | 52,543.78 | 188,474.28 |
| | | | |
| **Total Expenses** | 135,930.50 | 52,543.78 | 188,474.28 |
| | | | |
| **Fund Balance** | | | 190,720.02 |

# EXHIBIT 3

# EXHIBIT 3

Robb Evans & Associates LLC

11450 Sheldon Street
Sun Valley, CA 91352

# Invoice

| Date | Invoice # |
|---|---|
| 10/31/2018 | Redwood1 |

**Bill To**

Robb Evans, Rec of Redwood Scientific

| | P.O. No. |
|---|---|
| | |

| Description | Qty | Rate | Amount |
|---|---|---|---|
| For professional services provided from 10/1/18 to 10/31/18 by: | | | |
| B. Kane | 44.4 | 342.00 | 15,184.80 |
| S. Krishnan | 8 | 342.00 | 2,736.00 |
| K. Johnson | 18.8 | 342.00 | 6,429.60 |
| A. Jen | 81 | 342.00 | 27,702.00 |
| C. Callahan | 15.4 | 225.00 | 3,465.00 |
| F. Jen | 45.4 | 301.50 | 13,688.10 |
| T. Chung | 55.7 | 301.50 | 16,793.55 |
| C. DeCius | 30.3 | 121.50 | 3,681.45 |
| H. Jen | 35.9 | 135.00 | 4,846.50 |
| J. Dadbin | 41.5 | 81.00 | 3,361.50 |
| Support Staff | | | 1,689.00 |

| | **Total** | $99,577.50 |
|---|---|---|

29

| Fee Claims for: | Robb Evans & Associates LLC |
| Case : | Temporary Receiver of Redwood Scientific, Inc. et al. |
| For the Month of : | October-18 |
| Name : | Brick Kane |

| Date | Description | Hours |
|---|---|---|
| 10/11/18 | Work on logistics for immediate access | 2.30 |
| 10/11/18 | Discussion with M  Fletcher & H. Goldflam re: | 0.30 |
| 10/11/18 | Meet with team to discuss tomorrow's immediate access | 0.40 |
| 10/12/18 | To and from business location, executed immediate access, onsite analysis on business operations, meet with Jason Cardiff | 9.80 |
| 10/13/18 | Discussion with FTC re: items found on site | 0.20 |
| 10/13/18 | Multiple discussion with onsite staff re:provide directions for electronic and other documents needed | 0.30 |
| 10/13/18 | Discussion with FTC and K. Johnson re: status of J. Cardiff's laptop | 0.20 |
| 10/15/18 | Discussion with FTC re: update on asset status | 0.30 |
| 10/16/18 | Work on Court report | 0.40 |
| 10/16/18 | Meet with Tracy Green to receive defendants' laptops | 0.50 |
| 10/16/18 | Discussion with FTC re: Receiver's observations of business premises | 0.20 |
| 10/16/18 | Discussion with potential attorneys for defendants re: financial status of the receivership estate and legal fees | 0.20 |
| 10/16/18 | Discussion with FTC re: discussion with potential attorneys for the defendants | 0.30 |
| 10/17/18 | Work on Court report | 3.10 |
| 10/17/18 | Discussion with FTC re: status of potential attorneys and potential violation of the asset freeze | 0.30 |
| 10/18/18 | Analyze documents and work on Court report | 3.60 |
| 10/18/18 | Discussion with FTC re: status of PI hearing and receivership issues | 0.50 |
| 10/18/18 | Discussion with securities attorney who represented Redwood re: stop order due to lack of information at June 30 | 0.10 |
| 10/18/18 | Discussion with M. Fletcher re: | 0.30 |
| 10/18/18 | Discussion and email with attorney representing D. Cadiz re: arranging an interview with her | 0.10 |
| 10/19/18 | Discussion with FTC re:potential attorney for the Cardiff defendants and issues with PI hearing | 0.40 |

| | |
|---|---|
| Fee Claims for: | Robb Evans & Associates LLC |
| Case : | Temporary Receiver of Redwood Scientific, Inc. et al. |
| For the Month of : | October-18 |
| Name : | Brick Kane |

| Date | Description | Hours |
|---|---|---|
| 10/19/18 | Discussions with M. Fletcher re: | |
| | | 0.20 |
| 10/21/18 | Work on affidavit of non-compliance | 0.30 |
| 10/22/18 | Discussion with M. Fletcher re: | |
| | | 0.10 |
| 10/22/18 | Work on Court report | 4.10 |
| 10/22/18 | Further work on affidavit of non-compliance | 0.90 |
| 10/23/18 | Work on Court report | 0.60 |
| 10/23/18 | To and from Court for PI hearing, meet with | |
| | counsel to prepare for hearing, attend hearing | 3.20 |
| 10/24/18 | Discussion with Cardiff defendants' attorney re: | |
| | status of representation | 0.10 |
| 10/25/18 | Discussion with C. Welin re: | |
| | | 0.20 |
| 10/25/18 | Discussion with H. Goldflam re: | |
| | | 0.10 |
| 10/26/18 | Analyze documents in preparation for tomorrow's | |
| | interview with D. Cadiz | 1.30 |
| 10/27/18 | Interview D. Cadiz with K. Johnson and Cadiz' | |
| | attorney | 1.70 |
| 10/28/18 | Discussion with FTC re: Cadiz interview | |
| | disclosures | 0.60 |
| 10/29/18 | Discuss Lime Light CRM with F. Jen | 0.30 |
| 10/29/18 | Work on analysis of People United for Christians | |
| | database | 0.30 |
| 10/29/18 | Work on Court report | 3.40 |
| 10/30/18 | Discussion with M. Fletcher & H. Goldflam re: | |
| | | |
| | | |
| | | 0.30 |
| 10/30/18 | Discussion with FTC re: asset discovery issues | |
| | and receivership issues | 0.40 |
| 10/31/18 | Email J. Cardiff for administrative password to | |
| | intermedia email accounts | 0.00 |
| 10/31/18 | Work on Court report | 2.50 |

| Fee Claims for: | Robb Evans & Associates LLC |
|---|---|
| Case : | Redwood Scientific Technologies, Inc. et al. |
| For the Month of : | October-18 |
| Name : | Srinivasa Krishnan |

| Date | Description | Hours |
|---|---|---|
| 10/12/18 | Review court documents, travel to location of business, meet with law enforcement personnel, execute access, conduct analysis on operations, meet with Jason Cardiff and other staff and with other deputies and staff of the Receiver. | 8.00 |

32

| | |
|---|---|
| Fee Claims for: | **Robb Evans & Associates LLC** |
| Case : | **Redwood Scientific Technologies. Inc.** |
| For the Month of : | **October-18** |
| Name : | **Kenton Johnson** |

| Date | Description | Hours |
|---|---|---|
| 10/12/18 | Travel to the company's two locations in Upland. Enter with Brick Kane and others to take control of three office suites. Review records and information. Go over information on other affiliated operations. Interview defendant Jason Cardiff. Complete telephone conversation with attorney Tracy Greene about asset and laptop records. Return to Los Angeles. | 9.80 |
| 10/13/18 | Discussion of case details with Brick Kane and others. | 0.10 |
| 10/15/18 | Forward messages to attorney Tracy Green to make contact about the laptops belonging to the Cardiff defendants. Telephone discussion re turnover of laptops and confirming emails | 0.20 |
| 10/16/18 | Meet with attorney Tracy Green, Brick Kane and computer tech to receive laptops of Jason and Eunjung Griffith and go over access details. | 0.50 |
| 10/17/18 | Read the current draft version of the Temporary Receiver's first report. Discuss additional proposed sections related to prohibited business activities and evaluating the lawful and profitable operation of the receivership entities. | 0.20 |
| 10/17/18 | Read and consider the financial and operating results of the financial life of the entities. Review the six panel color foldout Product Catalog. Review the wording in the product descriptions and on the individual product cartons. Compare the wording to the prohibited activities described in the Court's Order. Prepare text for the Receivers Report discussing prohibited advertising claims identified in the material. Determine conclusion. | 1.50 |
| 10/17/18 | Restudy the financial and operating results. Prepare text for the Receiver's Report discussing the hopelessly insolvent financial condition and the substantial operating losses of the receivership entities. Determine conclusion. | 1.10 |
| 10/22/18 | Read information forwarded and filed by the Receiver's attorney and numerous email exchanges. | 0.80 |
| 10/23/18 | Travel to the federal courthouse. Prepare for and attend the Court's hearing on issuing a Preliminary Injunction. 3.1 hours | 0.00 |
| 10/26/18 | Prepare for the informal discussion with defendant Danielle Cadiz. Review potential questions and other information. | 0.20 |



33

| | |
|---|---|
| Fee Claims for: | **Robb Evans & Associates LLC** |
| Case : | **Redwood Scientific Technologies. Inc.** |
| For the Month of : | **October-18** |
| Name : | **Kenton Johnson** |

| Date | Description | Hours |
|---|---|---|
| 10/27/18 | Participate with Brick Kane in two hour informal discussion with defendant Danielle Cadiz and her attorney. | 2.00 |
| 10/29/18 | Read the current version of the Receiver's first report.  Review the additional material describing the religious solicitations.  Locate and study information about parties and ministries related to defendant Jason Griffith.  Studied the added text and the referenced solicitation materials.  Prepare, edit and complete revisions to the additional material | 1.90 |
| 10/31/18 | Read letter from attorney for Inter Media, a judgment creditor claiming priority. | 0.10 |
| 10/31/18 | Read email from an attorney claiming to have filed quarterly over-the-counter discloser reports for Redwood Scientific.  Forward with comments to Brick Kane. | 0.10 |
| 10/31/18 | Read the latest version of the draft report. Prepare and forward recommended edits. | 0.20 |
| 10/31/18 | Additional review of the draft report. | 0.10 |

| | |
|---|---|
| Fee Claims for: | **Robb Evans & Associates LLC** |
| Case : | **Redwood Scientific Technologies, Inc. et al.** |
| For the Month of : | **October-18** |
| Name : | **Anita Jen** |

| Date | Description | Hours |
|---|---|---|
| 10/10/18 | Read Order, and set case files; prepare service file | 1.90 |
| 10/11/18 | Prepare service file, and services; case discussions | 7.10 |
| 10/12/18 | Services on financial institutions; update service file | 10.20 |
| 10/15/18 | Services on financial institutions; update service file | 9.20 |
| 10/16/18 | Services on financial institutions and on vendors; follow up on financial institutions; set up accounting; update service file | 4.40 |
| 10/17/18 | Follow up with services; open bank account; additional service, based on reply received from services; update service file | 4.30 |
| 10/18/18 | Follow up on services; update service file | 6.30 |
| 10/19/18 | Follow up on services; coordinate to file receiver's bond; Phone discussion with ex employee : July Green ; check bank account, received funds, request detail information; update service file | 2.40 |
| 10/21/18 | Review B Kane's affidavit | 0.30 |
| 10/22/18 | Review B Kane and prepare my affidavit; prepare information for report; prepare exhibits for affidavit; follow up with service and serve additional vendors; update service file | 4.80 |
| 10/23/18 | Follow up on Service; serve additional vendors; update service file | 3.90 |
| 10/24/18 | Follow up on Service; serve additional vendors and financial institutions; update service file; prepare list of financial institutions and addresses for filing | 4.70 |
| 10/24/18 | Discussion with receiver's lawyer re : | 0.20 |
| 10/25/18 | Serve PI and TRO extensions | 6.70 |
| 10/26/18 | Follow up on service, coordinate with FTC | 4.40 |
| 10/29/18 | Follow up on services, update service summary file | 3.60 |
| 10/30/18 | Follow up on services, discussions with processors; update service summary file | 2.20 |
| 10/31/18 | Follow up on service; update summary file | 4.40 |

Fee Claims for:    **Robb Evans & Associates** LLC
Case :    **Redwood**
For the Month of :    **October-18**
Name :    **Coleen Callahan**

| Date | Description | Hours |
|---|---|---|
| 10/11/18 | Review Court Orders and Complaint | 0.6 |
| 10/11/18 | Meet with Receiver's team regarding new case and entry | 0.7 |
| 10/12/18 | Travel to Upland site of Receivership | 1.5 |
| 10/12/18 | Take control of business operations, interview staff, | 6.2 |
| 10/12/18 | Travel back from Upland site of Receivership | 2.0 |
| 10/16/18 | Search UCC filing Redwood in 3 states | 0.2 |
| 10/17/18 | Scan Employee questionnaires; prepare questionnaire/employee interview portion of Report | 0.6 |
| 10/18/18 | Obtain copies of documents in UCC search, Redwood ,CA | 0.4 |
| 10/18/18 | Obtain UCC search on People United for Christians | 0.2 |
| 10/22/18 | Respond to requests for information of associate on site, including passwords to computers | 0.2 |
| 10/22/18 | Review People United for Christians solicitation. Provide write-up analysis for Deputy to the Receiver. | 1.5 |
| 10/23/18 | Review selections of incoming mail for responses to different types of solicitations from People United for Christians; scan and forward to Deputy to the Receiver for Court hearing | 1.3 |

| | |
|---|---|
| Fee Claims for: | Robb Evans & Associates LLC |
| Case : | Redwood Scientific Technologies, Inc. et al. |
| For the Month of : | October-18 |
| Name : | Flora Jen |

| Date | Description | Hours |
|---|---|---|
| 10/11/18 | Read the TRO, complaint and memorandum in preparation of the immediate access tomorrow. | 0.80 |
| 10/11/18 | Meet with team to discuss tomorrow's immediate access | 0.40 |
| 10/12/18 | To and from business location, executed immediate access, onsite analysis on business operations and records; downloaded Quickbooks online version to desktop. | 13.00 |
| 10/15/18 | Upload QuickBooks files. | 0.00 |
| 10/16/18 | Met with Tracy Green and received defendants' laptops; obtained password and prepared to backup. | 2.00 |
| 10/17/18 | Travelled to site and pickup mail and keys; travelled to post office box and talked to postal personnel regarding mails; reviewed emails. | 6.10 |
| 10/18/18 | Reviewed defendant's Apple computer files; reviewed emails and downloaded files; performed backup on defendant's Apple | 5.40 |
| 10/21/18 | Travelled to site and researched and copied documents for court report. | 2.00 |
| 10/22/18 | Reviewed and searched emails and Google documents. | 2.00 |
| 10/23/18 | Reviewed and searched emails and Google documents. | 3.80 |
| 10/24/18 | Continued reviewed and researched emails and documents. | 3.50 |
| 10/25/18 | Continued reviewed and researched emails and documents. | 0.50 |
| 10/29/18 | Prepared and setup computers for FTC IT. Downloaded and reviewed CRM data received. | 3.40 |
| 10/30/18 | Prepared CRM data and compared to QuickBooks; researched email accounts | 2.50 |

37

| | |
|---|---|
| **Fee Claims for:** | **Robb Evans & Associates LLC** |
| **Case :** | **Redwood Scientific, Inc. et al.** |
| **For the Month of :** | **October-18** |
| **Name :** | **Tiffany Chung** |

| Date | Description | Hours |
|---|---|---|
| 10/11/18 | Read the TRO, complaint and memorandum in preparation of the immediate access tomorrow. | 0.80 |
| 10/11/18 | Meet with team to discuss tomorrow's immediate access | 0.40 |
| 10/12/18 | To and from business location, executed immediate access, onsite analysis on business operations and records. | 10.00 |
| 10/15/18 | Review and analyze the documents and records obtained on-site. Review and analyze the accounting records, and download various accounting schedules for further assessment. | 6.30 |
| 10/16/18 | Review and analyze the documents and records obtained on-site. Review and analyze the accounting records, and download various accounting schedules for further assessment. | 4.60 |
| 10/17/18 | Travel to and from business location to get documents, and also stop by the nearby postal office to pick up mails. Speak with people at postal office re: unauthorized pick-up occurred last week. | 4.50 |
| 10/17/18 | Continue to review and analyze financial records and other documents/information. Work on court report and prepare various supporting schedules. | 2.50 |
| 10/18/18 | Review and analyze financial records and other documents/information. Work on court report and prepare various supporting schedules. | 6.20 |
| 10/20/18 | Travel to and from business location to get documents for court report. | 2.00 |
| 10/22/18 | Review additional documents and information obtained. Continue to work on court report and prepare the related supporting schedules. | 6.10 |
| 10/23/18 | Review additional records and documents found. Prepare the summary and schedules re: the new discoveries. Various email correspondences with B. Kane and other associates re: the same. | 3.60 |
| 10/26/18 | Review and analyze the financials submitted by defendants. | 1.00 |
| 10/31/18 | Review, analyze and reconcile CRM data to financial records, and investigate the variances. Prepare the analysis results along with the supporting schedules. Email correspondence to B. Kane re: the same. | 1.80 |
| 10/31/18 | Work on court report based on additional documents and information obtained and other new discoveries. | 5.90 |

38

| | |
|---|---|
| Fee Claims for: | **Robb Evans & Associates LLC** |
| Case : | **Redwood Scientific Technologies et al.** |
| For the Month of : | **October-18** |
| Name : | **Carl DeCius** |

| Date | Description | Hours |
|---|---|---|
| 10/11/18 | Conference call with associates to review case details and entry details. | 0.50 |
| 10/11/18 | Review case complaint and TRO documents. | 0.60 |
| 10/12/18 | Serve financial institutions and other providers; internet searches, phone calls and emails to obtain service contact details for servicing. Update service summary file information. | 7.30 |
| 10/15/18 | Serve additional financial institutions and other providers; internet searches, phone calls and emails to obtain service contact details for servicing. Follow up on prior service requests. Update service summary file. | 6.40 |
| 10/16/18 | Continue service work; follow up on prior service requests; update service summary file. | 1.10 |
| 10/17/18 | Continue service work; follow up on prior service requests; update service summary file. | 2.40 |
| 10/18/18 | Continue service work; follow up on prior service requests; update service summary file. | 1.40 |
| 10/19/18 | Continue service work; follow up on prior service requests; update service summary file. | 1.20 |
| 10/22/18 | Phone calls and emails with payroll processors regarding case status. Serve with Order. Work on details of 10/15/18 payroll runs and prepare for final processing. | 2.40 |
| 10/22/18 | Phone calls with BofA and Bank of Missouri to follow up on TRO service and response. | 0.60 |
| 10/23/18 | Follow up phone calls and emails with BofA, Bank of Missouri and payroll processors. | 0.60 |
| 10/23/18 | Review emails correspondence and updates to master file. | 0.70 |
| 10/23/18 | Review case documents and correspondence. | 0.30 |
| 10/24/18 | Serve additional financial institutions and other providers; internet searches, phone calls and emails to obtain service contact details for servicing. Follow up on prior service requests. Update service summary file. | 1.30 |
| 10/24/18 | Review creditor correspondence. Downloads documents. | 0.10 |
| 10/25/18 | Continue service work; follow up on prior service requests; update service summary file. | 1.20 |
| 10/26/18 | Continue service work; follow up on prior service requests; update service summary file. | 1.60 |
| 10/29/18 | Internet and company research; prepare and service Orders and correspondence; update master file | 0.60 |



Page 1

39

| | |
|---|---|
| Fee Claims for: | **Robb Evans & Associates LLC** |
| Case : | **Redwood Scientific** |
| For the Month of : | **October-18** |
| Name : | Henry Jen |

| Date | Description | Hours |
|---|---|---|
| 10/11/18 | Read the TRO, complaint and memorandum in preparation of the immediate access tomorrow; conference call with team member to discuss tomorrow's immediate access; case research. | 6.80 |
| 10/12/18 | Travel to / from case location. Secured premises; Case research; document computer info | 14.90 |
| 10/13/18 | Travel to / from case location. Document computer info. | 7.80 |
| 10/22/18 | Google vault check and file download. | 2.50 |
| 10/23/18 | Google vault check and file download. | 3.90 |

40

| | |
|---|---|
| Fee Claims for: | **Robb Evans & Associates LLC** |
| Case : | **Redwood Scientific** |
| For the Month of : | **October-18** |
| Name : | **Jacklin Dadbin** |

| Date | Description | Hours |
|---|---|---|
| 10/12/18 | Travelled to Upland. Take control of Redwood Scientific Technologies, Inc operations, made arrangements to change locks, analyze documents. | 13.40 |
| 10/13/18 | Travelled to Upland, met with FTC group, analyzed documents and files. Communicate with associate regarding new financial findings. | 13.50 |
| 10/15/18 | Download and printed pictures. Communicate with the property manager about rent status and mail box locks changes. | 2.50 |
| 10/16/18 | Communicate with the property manager regarding mail box locks and lock change fees. Discussed the same with associate. | 0.50 |
| 10/22/18 | Travelled to Upland to assist Christine Reins-Jarin from U.S. Postal Inspection Service. | 10.10 |
| 10/23/18 | Opened charity envelopes and looked for various charity letters. | 1.10 |
| 10/29/18 | Communicate with the property manager regarding the number of keys and locks changed and the total amount. | 0.40 |



41

## Manuel Chen
### Fee Claim for Robb Evans & Associates LLC
### Case : Redwood Scientific Technologies, Inc. et al.
7-Oct-18
13-Oct-18

| Date | Description | Hours |
|---|---|---|
| 7-Oct-18 | | 0.00 |
| 8-Oct-18 | | 0.00 |
| 9-Oct-18 | | 0.00 |
| 10-Oct-18 | | 0.00 |
| 11-Oct-18 | Made copies of the TRO ( 12 sets/stapled ) for Brick Kane and Jacklin Dadbin. | 0.60 |
| 12-Oct-18 | Telephone calls from/to Anita Jen, Provide assistance to Anita Jen and Cari DeCius in serving the TRO via fax to various banks and other financial institutions, Stamped "faxed" and date fax cover letters and attached fax transmission reports. | 5.80 |
| 13-Oct-18 | | 0.00 |
| | | 6.40 |

Manuel Chen

## Manuel Chen
## Fee Claim for Robb Evans & Associates LLC
### Case : Redwood Scientific Technologies, Inc. et al.
14-Oct-18
20-Oct-18

| Date | Description | Hours |
|------|-------------|-------|
| 14-Oct-18 | | 0.00 |
| 15-Oct-18 | Outgoing faxes ( served TRO ) in behalf of Anita Jen and Carl DeCius, Telephone call to Carl regarding problem in serving a TRO to a firm, Outgoing priority mail with tracking information ( served TRO ) to US Bancorp Center as per Anita Jen, Process incoming mail brought by Brick Kane from the site. | 1.20 |
| 16-Oct-18 | Telephone calls to US Postal Service - La Verne and ask for their fax number, Outgoing fax ( served TRO ) to USPS La Verne then scanned and saved fax cover letter and transmission report, Submitted change of address/mail forwarding request ( total of 50 ) on line at USPS.com. | 5.70 |
| 17-Oct-18 | Telephone call to Carl DeCius regarding an outgoing fax to Bank of America, Scanned and saved fax cover letters and transmission reports ( total of 22 institutions served with TRO ), Submitted change of address/mail forwarding request ( total of 25 ) on line at USPS.com, Outgoing fax to Bank of America ( served TRO 2nd request ) as per Carl DeCius, Scanned and saved fax cover letter and transmission report. | 5.10 |
| 18-Oct-18 | Telephone call from Brick Kane to proceed to US Postal Service - La Verne first before going to Sun Valley Office, Telephone calls from/to Brick Kane and Anita Jen regarding who picked up the mail from P.O. Box 370 last October 15 & 16, 2018 ( Monday & Tuesday prior to Flora's visit on Wednesday ), Discuss with Alise, the Supervisor, Lourdes, the P.O. Box in charge and Frank, the front desk clerk regarding what the Receiver's request them to do and also what the US Postal Service need from the Receiver in order to continue the service until it is needed, Changed the lock on P.O. Box 370 and picked up all Business Reply Mail ( total of 252 ), Telephone call and report everything to Brick Kane and Anita Jen, Travel back to Sun Valley Office. | 5.80 |
| 19-Oct-18 | Report to Brick Kane, Anita Jen and Flora Jen regarding the Personal Mail Box #247 located at Claremont Heights Postal Center based on the information given by Jacklin Dadbin, Telephone call to the mailing house about serving them with the TRO and found out that PMB#247 was already closed years ago, Process business reply mail picked up by Flora Jen on Oct.17, 2018 and by Myself on Oct. 18, 2018 (both days total of 293 envelopes ) according to Flora Jen's instruction such as: Open all envelopes and count all the money received, Put the money back in the original envelopes received, Report to Brick Kane cc: Anita Jen and Flora Jen on how many envelopes and how much money was received. | 3.20 |
| 20-Oct-18 | | 0.00 |
| | | 21.00 |

Manuel Chen



43

## Manuel Chen
### Fee Claim for Robb Evans & Associates LLC
### Case : Redwood Scientific Technologies, Inc. et al.
21-Oct-18
27-Oct-18

| Date | Description | Hours |
|---|---|---|
| 21-Oct-18 | | 0.00 |
| 22-Oct-18 | Telephone calls from Hal Goldflam, Esq. for Anita Jen, Telephone calls from Jacklin Dadbin, Outgoing mail to Michael Fletcher, Esq. | 0.60 |
| 23-Oct-18 | Telephone call from Danielle Cadiz Walker (                    and said that a customer called the Corporate Number (310)693-5401 and somebody answered the phone and gave away her cellphone number, Took message and gave to Coleen Callahan, Process business reply mail picked up by Jacklin Dadbin yesterday Oct. 22, 2018 ( total of 263 envelopes ) according to Flora Jen's instruction, Report to Brick Kane cc: Anita Jen and Flora Jen on how many envelopes and how much money was received. | 4.80 |
| 24-Oct-18 | Served TRO via Fax ( 2 different fax numbers ) to TMobile as per Carl DeCius, Scanned and saved fax cover letters and trasmission reports, Served TRO via USPS First Class Mail to Abbo Tax CPA, Scanned and saved mailing label/receipt, Scanned and saved 2 Cashier's Checks ( reply to the TRO served ) from Zions Bank, Prepared deposit to First Republic Bank, Scanned, saved and e-mailed images of checks and deposit slip to Carl DeCius, E-mailed information to Susan Mendez, Paul Cortez and Jim Denver of FRB cc: Anita Jen. | 1.00 |
| 25-Oct-18 | Served PI and Extension of TRO to Citibank ( total of 60 pages ) as per Carl DeCius, Scanned and saved fax cover letter and transmission report. Scanned and saved reply to the TRO from BMO Harris Bank and EMC2Billing.com LLC as per Anita Jen, Submitted additional Change of Address/Mail Forwarding Request to US Postal Service re: P.O. Box 370 La Verne, California 91750. | 1.70 |
| 26-Oct-18 | Messenger delivery of 3 boxes of various original files and documents pulled out by the FTC from the site for scanning, Telephone call to Alise, the supervisor of La Verne Post Office regarding P.O. Box 370 which the rental will expire this end of October, 2018 and 4 trays of Business Reply Mail they received for the past few days, Report to Brick Kane , Anita Jen and Flora Jen via e-mail on what are our options if we need to keep the P.O. Box and also funding the Business Reply Mail Acct., Served PI and Extension of TRO to First Entertainment Credit Union ( total of 60 pages ) as per Anita Jen, Scanned and saved fax cover letter and transmission report, Scanned and saved reply to the TRO from Signature Bank, Submitted additional Change of Address/Mail Forwarding Request to US Postal Service re: P.O. Box 370 La Verne, CA 91750, Scanned and saved expense claim of Jacklin Dadbin. | 3.80 |
| 27-Oct-18 | | 0.00 |
| | | 11.90 |

Manuel Chen

44

### Manuel Chen
### Fee Claim for Robb Evans & Associates LLC
### Case : Redwood Scientific Technologies, Inc. et al.
28-Oct-18
0-Jan-00

| Date | Description | Hours |
|------|-------------|-------|
| 28-Oct-18 | | 0.00 |
| 29-Oct-18 | Travel direct from home to Redwood Scientific Technologies, Inc. location at 820 N. Mountain Avenue, Suites 100, 115, 118 and 119, Upland, CA 91786 to pick up incoming mail re: mail boxes #1, #6 & #8, Proceed to La Verne Post Office located at 3355 N. White Avenue, La Verne, Ca 91750 to pick up mail at P.O. Box 370 ( 22 pieces ) and Business Reply Mail ( 1,221 pieces ), Telephone call to report to Brick Kane about the situation and get his approval to renew the rental on P.O. Box 370 for another 6 months and payment of fees in processing the Business Reply Mail, Proceed and travel back to Sun Valley Office. | 6.30 |
| 30-Oct-18 | Telephone call to Alise Martinez, a supervisor at La Verne Post Office, Process according to Flora Jen's instruction Business Reply Mail ( 1,221 pieces ) and Incoming Mail ( 22 pieces ) picked up from P.O. Box 370 at La Verne Post Office yesterday. | 4.90 |
| 31-Oct-18 | Telephone call to Lourdes, in charge of all the P.O. Boxes at La Verne Post Office, Continue processing according to Flora Jen's instruction  Business Reply Mail ( 1,221 pieces ) picked up from P.O. Box 370 at La Verne Post Office last Monday, Completed the process and report via e-mail the information such as total number of envelopes and total amount to Brick Kane, Anita Jen and Flora Jen. | 5.80 |
| 0-Jan-00 | | 0.00 |
| 0-Jan-00 | | 0.00 |
| 0-Jan-00 | | 0.00 |
| | | 17.00 |

Manuel Chen



45

Robb Evans & Associates LLC

11450 Sheldon Street
Sun Valley, CA 91352

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/30/2018 | Redwood2 |

| Bill To |
|---------|
| Robb Evans, Rec of Redwood Scientific |

| P.O. No. |
|----------|
|          |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| For services provided for 11/1/18~11/30/18 by : | | | |
| B. Kane | 2.4 | 342.00 | 820.80 |
| K. Johnson | 8.7 | 342.00 | 2,975.40 |
| A. Jen | 16.5 | 342.00 | 5,643.00 |
| C. Callahan | 6.5 | 225.00 | 1,462.50 |
| F. Jen | 1 | 301.50 | 301.50 |
| T. Chung | 3.6 | 301.50 | 1,085.40 |
| C. DeCius | 12.6 | 121.50 | 1,530.90 |
| J. Dadbin | 5 | 81.00 | 405.00 |
| Support Staff | | | 1,764.00 |

| | Total | $15,988.50 |
|---|-------|------------|

| Fee Claims for: | Robb Evans & Associates LLC |
| Case : | Redwood Scientific Technologies, Inc. et al. |
| For the Month of : | **November-18** |
| Name : | Brick Kane |

| Date | Description | Hours |
|---|---|---|
| 11/1/18 | Work on Court report | 0.90 |
| 11/1/18 | Discussion with K. Johnson and FTC re: issues with proposed preliminary injunction | 0.30 |
| 11/2/18 | Email exchange with J. Cardiff re: living expenses and password for email account | 0.10 |
| 11/2/18 | Discussion with C. Welin re: | 0.20 |
| 11/5/18 | Discussion with FTC re: issues for Wednesday's PI hearing | 0.10 |
| 11/14/18 | Discussion with M. Fletcher re: | 0.10 |
| 11/14/18 | Discussion with K. Johnson and FTC re: inventory of Cardiff home, status of office computers and files, and product samples | 0.40 |
| 11/19/18 | Discussion with FTC re: asset issues | 0.20 |
| 11/19/18 | Discussion with Danielle Cadiz re: help needed to unfreeze her bank account | 0.10 |



47

| Fee Claims for: | Robb Evans & Associates LLC |
|---|---|
| Case : | Redwood Scientific Technologies, Inc. et al. |
| For the Month of : | **November-18** |
| Name : | Kenton Johnson |

| Date | Description | Hours |
|---|---|---|
| 11/1/18 | Complete review of the current version of the Temporary Receiver's report. Forward comments to others. | 0.20 |
| 11/1/18 | Review comments from the Temporary Receiver's attorneys. Work with others to edit and make changes in the report. Review and increase exhibits. | 0.40 |
| 11/1/18 | Review the Temporary Receiver's report filed with the U.S. District Court. Note corruption on one page making it unreadable. Notify others. | 0.10 |
| 11/7/18 | Travel to the US District Court. Attend the hearing to issue a Preliminary Injection for the defendant Cardiff's. Participate in discussions. Agree to make contact with the defendants to complete directions and orders contained in the Preliminary Injunction. | 2.60 |
| 11/10/18 | Read and respond to email letters from the FTC and from the individual defendants. | 0.20 |
| 11/12/18 | Travel to the Redwood premises. Meet with defendant Eunjung Cardiff and turn over personal belongings left in the company premises. Retain potentially valuable personal paintings. Receive several of the personal valuable items listed on the prior insurance policy and in the issued preliminary injunction. Discuss and record the location of potential possession or disposition of the remaining listed items. Return to Los Angeles. | 2.80 |
| 11/13/18 | Read and respond to email requests about the meeting and turn over of personal items at the company premises. Review details of watch theft in Italy in 2012. | 0.20 |
| 11/13/18 | Read and reply to additional emails from defendant Cardiff with information about personal items awarded to Jason Cardiff's former wife and confirming details for inspection of the home premises on Thursday. | 0.10 |
| 11/13/18 | Read and respond to emails about the location of certain works of art. | 0.10 |
| 11/14/18 | Complete details and a schedule of personal valuable items turned over from Eunjung Cardiff. Forward to others. | 0.40 |
| 11/14/18 | Review additional subpoenas issued by the FTC on various persons and entities. | 0.10 |
| 11/16/18 | Prepare and forward cover letter with information requested by the FTC. | 0.10 |

| | | |
|---|---|---|
| Fee Claims for: | **Robb Evans & Associates LLC** | |
| Case : | **Redwood Scientific Technologies, Inc. et al.** | |
| For the Month of : | **November-18** | |
| Name : | **Kenton Johnson** | |

| Date | Description | Hours |
|---|---|---|
| 11/19/18 | Conference call with FTC on receivership issues. | 0.20 |
| 11/21/18 | Read and respond to several email requests and forwarded information from the FTC. | 0.20 |
| 11/22/18 | Read Internet, eBay and other information to help determine the real property value of the Herman Miller chair and footstool located in the company offices.  Confer with auction officials about the response and strength of Mail and vocal bidding. | 0.40 |
| 11/26/18 | Meet with defendant  Eunjung Cardiff and attorney Stacy Green.  Take possession of currency stated to total $6,715.  Complete dual verification count of the currency.  Prepare and forward summary of the meeting and recap of the return of funds taken after the TRO, as directed by the District Court. | 0.40 |
| 11/26/18 | Prepare and forward summary of the meeting and recap of the return of funds taken after the TRO, as directed by the District Court. | 0.20 |



| Fee Claims for: | Robb Evans & Associates LLC |
|---|---|
| Case : | Redwood Scientific Technologies, Inc. et al. |
| For the Month of : | **November-18** |
| Name : | **Anita Jen** |

| Date | Description | Hours |
|---|---|---|
| 11/1/18 | Provide insurance information to FTC; Phone conversation and emails with insurance companies; serve additional financial institutions; | 0.70 |
| 11/2/18 | Follow up on service and update service file | 2.10 |
| 11/5/18 | Follow up on services; discussion with revenue agent Samson Chen at               of the IRS re : IRS audit | 2.00 |
| 11/6/18 | Follow up on service | 0.10 |
| 11/7/18 | Follow up on service, provide bank contact information to FTC | 1.00 |
| 11/8/18 | deal with email from Brinks re : new client; Discussions with FTC; search for additional information | 1.20 |
| 11/9/18 | Follow up with Citizens Business Bank re : new account; Response to Brinks re : same account | 0.50 |
| 11/14/18 | Phone conversation with US Bank re : release of D Cardiz funds per PI, discussion with FTC re : same and also insurance and accountant; follow up with insurance agencies and accountant; serve creditors | 2.00 |
| 11/15/18 | Review subpoena sent by FTC; follow up on service; review insurance documents | 0.40 |
| 11/16/18 | Read and response email to Langwasser & Co, CPAs; update service file | 0.20 |
| 11/19/18 | Phone discussion with FTC re : jeweler; received email from FTC confirming from Jeweler's attorney that is a piece of glass | 0.80 |
| 11/20/18 | Deal with processors issues; phone discussion with M. Fletcher re : processors; Discussion with FTC re : HSBC | 0.20 |
| 11/21/18 | Review information received and response to insurance agent | 0.30 |
| 11/23/18 | Review information received from First Data, follow up with First Data; Serve Wells Fargo Merchant Services; search for information for additional services | 1.10 |
| 11/26/18 | Discussions with C. DeCius re : payroll and 401K issues; follow up on service on additional processors and banks based on additional information received; discussion with FTC re : additional service; discussion with . Fletcher re : provide : to M. Fletcher | 2.40 |

| | |
|---|---|
| **Fee Claims for:** | **Robb Evans & Associates LLC** |
| **Case :** | **Redwood Scientific Technologies, Inc. et al.** |
| **For the Month of :** | **November-18** |
| **Name :** | **Anita Jen** |

| Date | Description | Hours |
|------|-------------|-------|
| 11/27/18 | Follow up with American Bankcard; received confirmation from bank and update service summary file | 0.30 |
| 11/28/18 | Discussion with FTC re : information request on accountants; provide information to FTC re : information received from accountant; request release account for D. Cadiz from Capital One | 0.60 |
| 11/29/18 | Discussion with FTC re : BOA; call BOA and left message | 0.20 |
| 11/30/18 | Receiver confirmation from insurance company; follow up with bank; review and update service summary file | 0.40 |

| | |
|---|---|
| Fee Claims for: | **Robb Evans & Associates LLC** |
| Case : | **Redwood Scientific Technologies, Inc. et al.** |
| For the Month of : | **November-18** |
| Name : | **Coleen Callahan** |

| Date | Description | Hours |
|---|---|---|
| 11/14/18 | Search for safe-capable locksmith; call safe company; forward order; call locksmith; arrange for potential meeting with provisional call from site | 1.8 |
| 11/15/18 | Drive to Cardiff residence in Upland; walk through home with Deputy to the Receiver to facilitate videotaping; return from site. | 4.3 |
| 11/26/18 | Meet with Deputy to the Receiver, Mrs. Cardiff and Counsel for Mrs. Cardiff Tracy Green regarding return of funds taken post receivership from bank account | 0.4 |



Fee Claims for: **Robb Evans & Associates LLC**
Case : **Redwood Scientific Technologies, Inc. et al.**
For the Month of : **November-18**
Name : **Flora Jen**

| Date | Description | Hours |
|---|---|---|
| 11/1/18 | Assisted on draft report. | 1.00 |



Fee Claims for:    **Robb Evans & Associates LLC**
Case :    **Redwood Scientific Technologies, Inc. et al.**
For the Month of :    **November-18**
Name :    **Tiffany Chung**

| Date | Description | Hours |
|------|-------------|-------|
| 11/1/18 | Work on Court report and exhibits. | 3.60 |



| | | |
|---|---|---|
| Fee Claims for: | **Robb Evans & Associates LLC** | |
| Case : | **Redwood Scientific Technologies, Inc. et al.** | |
| For the Month of : | **November-18** | |
| Name : | **Carl DeCius** | |

| Date | Description | Hours |
|---|---|---|
| 11/1/18 | Review case documents and correspondence. Update accounting information and process payables. Review creditor documents. | 1.60 |
| 11/1/18 | Phone calls with associate and former employees regarding final matters. Review and respond to inquiries. | 0.30 |
| 11/15/18 | Multiple phone calls and emails with SDS and Paychex regarding 401K plan matters and payroll tax matters. Follow up with employee regarding 401K issues. | 0.80 |
| 11/15/18 | Review multiple email exchanges with banks and creditors served. Organize correspondence. | 0.50 |
| 11/15/18 | Follow up phone calls with SDS and Paychex to request payroll reports and plan information. | 0.40 |
| 11/16/18 | Emails with employee regarding 401K matters. | 0.10 |
| 11/20/18 | Review multiple email exchanges with banks and creditors served. Organize correspondence. | 0.10 |
| 11/20/18 | Review case correspondence and documents. | 0.20 |
| 11/20/18 | Emails with employee regarding 401K matters. | 0.10 |
| 11/20/18 | Multiple phone calls and emails with Paychex regarding RST and other payroll account information and reports. | 0.80 |
| 11/20/18 | Review case documents and correspondence. Update accounting information and process payables. | 1.70 |
| 11/26/18 | Phone calls and emails a with multiple payroll processors. Review payroll reports and defendant books; prepare payroll summary exports for all entities in summary form for future processing. | 4.90 |
| 11/27/18 | Emails with employee regarding 401K matters. | 0.10 |
| 11/27/18 | Review case documents and correspondence. Update accounting information and process payables. Review creditor documents. | 0.60 |
| 11/28/18 | Phone calls with Paychex to update employee status for 401K distributions; emails with former employees regarding same. | 0.40 |



Fee Claims for: **Robb Evans & Associates LLC**
Case : **Redwood Scientific Technologies, Inc. et al.**
For the Month of : **November-18**
Name : **Jacklin Dadbin**

| Date | Description | Hours |
|------|-------------|-------|
| 11/5/18 | Travelled to Upland and met with Dave Spear the auctioneer. | 3.50 |
| 11/5/18 | Communicate with Eva the property manager regarding rent, locks and keys, and W-9. | 0.40 |
| 11/6/18 | Communicate with Eva the property manager regarding rent. Statements are not matching. | 0.40 |
| 11/13/18 | Contact Simply Safe regarding taking Danielle off the contact list and to close the account. | 0.50 |
| 11/13/18 | Communicate with the property manager's assistant regarding rent. | 0.20 |



Page 1

### Manuel Chen
### Fee Claim for Robb Evans & Associates LLC
### Case : Redwood Scientific Technologies, Inc. et al.
0-Jan-00
3-Nov-18

| Date | Description | Hours |
|------|-------------|-------|
| 0-Jan-00 | | 0.00 |
| 0-Jan-00 | | 0.00 |
| 0-Jan-00 | | 0.00 |
| 0-Jan-00 | | 0.00 |
| 1-Nov-18 | Telephone call to Us Postal Service-La Verne regarding accumulated Business Reply Mail they have so far, Served TRO, PI and TRO Extension to Fidelity Investments, Scanned and saved fax cover letter and transmission report. | 0.50 |
| 2-Nov-18 | Served TRO, PI & TRO Extension via fax to TD Canada Trust, Scanned and saved fax cover letter and transmission report, Scanned and saved reply to the PI and TRO Extension from American Express. | 0.40 |
| 3-Nov-18 | | 0.00 |
| | | 0.90 |

Manuel Chen



57

## Manuel Chen
### Fee Claim for Robb Evans & Associates LLC
### Case : Redwood Scientific Technologies, Inc. et al.
4-Nov-18
10-Nov-18

| Date | Description | Hours |
|------|-------------|-------|
| 4-Nov-18 | | 0.00 |
| 5-Nov-18 | Outgoing mail to Florida Department of Agriculture and Consumer Services by Coleen Callahan, Made copies of Office Lease Agreement re: 820 North Mountain Avenue, Suite 100, Upland Ca, 91786 and 870 North Mountain Avenue, Suites 115 and 118, Upland, CA 91786, Send via Fedex Priority Overnight all the copies to Hal Goldflam, Esq. as per Brick Kane. | 0.50 |
| 6-Nov-18 | | 0.00 |
| 7-Nov-18 | Ordered bankers boxes ( 6 cases, 12/case ) at Office Depot and used the coupon of $40.00 off. | 0.50 |
| 8-Nov-18 | Printed USPS Change of Address Confirmation ( total of 100 ) which represents the official receipt of $1.00 identity verification fee. | 1.80 |
| 9-Nov-18 | Scanned, saved and e-mailed to Anita Jen a reply to the TRO from Fidelity Investments, File various replies to the TRO from Chase Bank, PayPal, Capital Merchant Services LLC, EVO Payments International, Morgan Stanley and Commercial Bank of California. | 0.80 |
| 10-Nov-18 | | 0.00 |
| | | 3.60 |



Manuel Chen



58

**Manuel Chen**
**Fee Claim for Robb Evans & Associates LLC**
**Case : Redwood Scientific Technologies, Inc. et al.**
11-Nov-18
17-Nov-18

| Date<br>11-Nov-18 | Description | Hours<br>0.00 |
|---|---|---|
| 12-Nov-18 | Travel ( round trip ) from Home to Redwood location at 820 North Mountain Avenue, Upland, CA 91786 to pack various files and paperwork at Suite 100 as per Brick Kane. | 11.80 |
| 13-Nov-18 | Travel ( round trip ) from Home to Redwood location at 820 North Mountain Avenue, Upland, CA 91786 to pack various files and paperwork at Suite 100 and continue to do the same at 870 North Mountain Avenue, Upland, CA 91786 on Suites 115, 118 & 119. | 13.50 |
| 14-Nov-18 | Travel from Home to Sun Valley Office and rented a U-Haul Moving Truck then proceed to Redwood location at 820 North Mountain Avenue, Upland, CA 91786 to load boxes of files, paperwork, computers and some paintings and art work at Suite 100 then transport the whole truck load back to Sun Valley Office to be stored at Enterprise Self Storage the following day. | 14.50 |
| 15-Nov-18 | Travel from Home to Sun Valley Office and drove the truck load UHaul Truck to Enterprise Self Storage unload and stored the contents, Proceed to Redwood location at 870 North Mountain Avenue, Upland, CA 91786 and continue to load files, paperwork and computers at Suites 115, 118 & 119 then transport the whole truck load back to Enterprise Self Storage since we got the Manager's approval and authorization to access the facility after hours, Proceed back to Sun Valley Office to unload the paintings and art work then returned the Moving Truck at U-Haul Burbank ( after hours drop off ) to avoid 1 more day rental charge, Project completed then returned back to Sun Valley Office and prepare to go home. | 11.50 |
| 16-Nov-18 | Telephone call to Goal Courier and schedule a messenger pick up of cash deposits, Prepared deposit to First Republic Bank, Scanned, saved and e-mailed images ( front & back ) of deposit slip to Carl DeCius, E-mailed information to Susan Mendez, Paul Cortez and Jim Denver of FRB cc: Anita Jen, Scanned in color and saved images of US Passport of Eunjung Cardiff as per Kent Johnson and Anita Jen. | 1.50 |
| 17-Nov-18 | | 0.00 |
| | | 52.80 |

Manuel Chen

## Manuel Chen
### Fee Claim for Robb Evans & Associates LLC
### Case : Redwood Scientific Technologies, Inc. et al.
18-Nov-18
24-Nov-18

| Date | Description | Hours |
|------|-------------|-------|
| 18-Nov-18 | | 0.00 |
| 19-Nov-18 | Telephone calls to/from Dave Spear not to sell the Herman Miller chair and footstoll as per Kent Johnson. | 0.30 |
| 20-Nov-18 | | 0.00 |
| 21-Nov-18 | | 0.00 |
| 22-Nov-18 | | 0.00 |
| 23-Nov-18 | | 0.00 |
| 24-Nov-18 | | 0.00 |
| | | 0.30 |

Manuel Chen

## Manuel Chen
### Fee Claim for Robb Evans & Associates LLC
### Case : Redwood Scientific Technologies, Inc. et al.
25-Nov-18
0-Jan-00

| Date | Description | Hours |
|------|-------------|-------|
| 25-Nov-18 | | 0.00 |
| 26-Nov-18 | Telephone call from Carl Ranno         for Kent Johnson. | 0.20 |
| 27-Nov-18 | Scanned, saved and file reply to the TRO from Santander Bank, Prepared cash deposit to First Republic Bank, Verified cash count then scanned and saved images of deposit slip and cash receipt initialed by Kent Johnson and Coleen Callahan plus the receipt from Goal Courier then e-mailed everything to Carl DeClus, E-mailed information to Susan Mendez and Jim Denver of FRB  cc: Anita Jen. | 1.00 |
| 28-Nov-18 | | 0.00 |
| 29-Nov-18 | | 0.00 |
| 30-Nov-18 | | 0.00 |
| 0-Jan-00 | | 0.00 |
| | | 1.20 |

Manuel Chen



**EXHIBIT 4**

**EXHIBIT 4**

**Robb Evans - FTC v. Jason, Cardiff**

**October 1 thru November 30, 2018**

| Initials | Timekeeper | Rate | Hours | Fees | Cost |
|---|---|---|---|---|---|
| 126 | MICHAEL G. FLETCHER (Shareholder) | 515 | 57.8 | 29,767.00 | |
| 131 | CRAIG A. WELIN (Shareholder) | 500 | 17.2 | 8,600.00 | |
| 774 | HAL D. GOLDFLAM (Partner) | 435 | 33.8 | 14,703.00 | |
| 936 | GERRICK M. WARRINGTON (Associate) | 320 | 0.8 | 256.00 | |
| 504 | SANDRA BARNETT (Paralegal) | 205 | 10.5 | 2,152.50 | |
| 518 | RONNIE AUCEDA (Paralegal) | 205 | 2.1 | 430.50 | |
| | | | | - | 10358.45 |
| | Total: | | | $ 55,909.00 | $ 10,358.45 |
| | **Total Fees and Costs** | | | $ 66,267.45 | |

# EXHIBIT 15
## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 16
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 17

**FILED**
CLERK, U.S. DISTRICT COURT

November 8, 2018

CENTRAL DISTRICT OF CALIFORNIA
BY: _____VPC_____ DEPUTY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br> Plaintiff, <br><br> v. <br><br> **JASON CARDIFF**, individually and as an owner, officer, director, or member of <br> REDWOOD SCIENTIFIC TECHNOLOGIES, INC., a California corporation; <br> REDWOOD SCIENTIFIC TECHNOLOGIES, Inc., a Nevada corporation; <br> REDWOOD SCIENTIFIC TECHNOLOGIES, Inc., a Delaware corporation; <br> IDENTIFY, LLC, a Wyoming limited liability company; <br> ADVANCED MEN'S INSTITUTE PROLONGZ LLC, | No. ED 5:18-cv-02104-SJO-PLAx <br><br> ~~[PROPOSED]~~ **PRELIMINARY INJUNCTION WITH ASSET FREEZE, RECEIVER, AND OTHER EQUITABLE RELIEF AGAINST JASON CARDIFF AND EUNJUNG CARDIFF** |

1

d/b/a AMI, a California limited
liability company; and
RUN AWAY PRODUCTS,
LLC, a New York limited
liability company; and
both general and limited partner
of
CAROLS PLACE LIMITED
PARTNERSHIP, an Arizona
limited liability partnership;

**EUNJUNG CARDIFF**, a/k/a Eunjung
Lee, a/k/a Eunjung No,
individually and as an owner,
officer, director, or member of
REDWOOD SCIENTIFIC
TECHNOLOGIES, INC., a
California corporation;
REDWOOD SCIENTIFIC
TECHNOLOGIES, Inc., a
Nevada corporation;
REDWOOD SCIENTIFIC
TECHNOLOGIES, Inc., a
Delaware corporation;
IDENTIFY, LLC, a Wyoming
limited liability company;
ADVANCED MEN'S
INSTITUTE PROLONGZ LLC,
d/b/a AMI, a California limited
liability company; and
RUN AWAY PRODUCTS,
LLC, a New York limited
liability company; and
both general and limited partner
of
CAROLS PLACE LIMITED
PARTNERSHIP, an Arizona
limited liability partnership;

**DANIELLE CADIZ**, a/k/a Danielle

2

Walker, individually;

**REDWOOD SCIENTIFIC TECHNOLOGIES, INC.**, a California corporation, also d/b/a Rengalife;

**REDWOOD SCIENTIFIC TECHNOLOGIES, INC.**, a Nevada corporation;

**REDWOOD SCIENTIFIC TECHNOLOGIES, INC.**, a Delaware corporation;

**IDENTIFY, LLC**, a Wyoming limited liability company;

**ADVANCED MEN'S INSTITUTE PROLONGZ LLC**, d/b/a AMI, a California limited liability company;

**RUN AWAY PRODUCTS, LLC**, a New York limited liability company; and

**CAROLS PLACE LIMITED PARTNERSHIP**, an Arizona limited liability partnership,

Defendants.

On October 3, 2018, Plaintiff, the Federal Trade Commission, filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), the Restore Online Shoppers' Confidence Act, ("ROSCA"), 15 U.S.C.

3

§§ 8401-8405, and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. § 6105, and moved, pursuant to Fed. R. Civ. P. 65(b), for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants Jason Cardiff, Eunjung Cardiff, a/k/a Eunjung Lee, a/k/a Eunjung No, Danielle Cadiz, a/k/a Danielle Walker, Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership.

A Temporary Restraining Order ("TRO") was entered by this Court on October 10, 2018, setting a Preliminary Injunction hearing for October 23, 2018 at 2:00 p.m. Plaintiff and Defendants Jason Cardiff and Eunjung Cardiff stipulated in advance of the October 23 hearing to an extension of the TRO and a continuance of the Preliminary Injunction hearing until such date as the Court set.

On October 22, 2018, the Receiver submitted an Affidavit on Non-Compliance for Temporary Restraining Order detailing bank withdrawals and attempted bank transactions by Jason Cardiff and Eunjung Cardiff in violation of the TRO.

On October 24, 2018, the Court extended the TRO and continued the Preliminary Injunction hearing to November 7, 2018 as to Jason Cardiff and Eunjung Cardiff, and ordered them to return assets to the Receiver. (Dkt. No. 48) The Court also entered a Preliminary Injunction against all seven Corporate Defendants. (Dkt. 46) On November 1, 2018, the Receiver reported that the Cardiffs had not returned any funds to the Receiver. (Dkt. 53)

Under Section XXX of the extended TRO, Individual Defendants Jason Cardiff and Eunjung Cardiff were required to file any answering pleadings,

4

affidavits, motions, expert reports or declarations, or legal memoranda no later than four days prior to the hearing to show cause why a Preliminary Injunction should not issue (i.e., by Friday, November 2, 2018). Individual Defendants Jason Cardiff and Eunjung Cardiff did not file any such pleadings.

The Court held a Preliminary Injunction hearing on November 7, 2018, at which counsel for Plaintiff, counsel for the Receiver, and Defendants Jason Cardiff and Eunjung Cardiff appeared. The Court heard testimony and argument from the parties and the Receiver.

## FINDINGS OF FACT

The Court, having entered a Temporary Restraining Order and having considered the declarations, exhibits, and the memorandum of points and authorities filed in support thereof, as well as testimony and oral argument at the November 7 Preliminary Injunction hearing, and being otherwise advised, finds that:

A.      This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B.      In numerous instances, Defendants have misrepresented the effectiveness of their dissolvable film strip products for smoking cessation, weight loss, and improved male sexual performance, thereby misleading vulnerable consumers. Defendants have then further injured many consumers by placing them on unauthorized continuity plans that resulted in additional charges to their credits cards or withdrawals from their debit accounts. Defendants have also made false earnings claims as part of a multilevel marketing plan, and illegally caused more than one million robocalls to be made to consumers' telephones.

C.      There is good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate Sections 5(a) and 12 of the FTC Act, Section 4 of ROSCA, Section 907(a) of EFTA, EFTA's implementing

Regulation E, and the Telemarketing Sales Rule ("TSR"), and that Plaintiff is therefore likely to prevail on the merits of this action. As demonstrated by Defendants' own advertising and communications, consumer complaints, declarations, and the additional documentation filed by the FTC, the Commission has established a likelihood of success in showing that Defendants have deceptively marketed TBX-FREE, Eupepsia Thin, and Prolongz, placed consumers on continuity plans without their prior authorization, charged consumers' credit cards and debited their bank accounts without authorization, caused robocalls to be made to more than one million consumers to induce the sale of goods or services, and misrepresented the earnings that people who join their multi-level marketing program are likely to make.

D.    The FTC is likely to succeed in showing that Corporate Defendants Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership operate as a common enterprise and are the alter egos of Jason Cardiff and Eunjung Cardiff.

E.    There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of the FTC Act, ROSCA, EFTA and Regulation E, and the TSR unless Defendants are restrained and enjoined by order of this Court.

F.    There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers – including monetary restitution, rescission, or disgorgement – will occur from the sale, transfer, destruction or other disposition or concealment by Defendants of their assets or records, unless Defendants are restrained and enjoined by order of this Court.

6

G.      Good cause exists for continuing the receivership and the asset freeze imposed pursuant to the TRO issued in this case, and permitting Plaintiff and the Receiver to take expedited discovery.  Defendants Jason Cardiff and Eunjung Cardiff each violated the asset freeze provision of the TRO, as discussed in the Receiver's Affidavit on Non-Compliance for Temporary Restraining Order, and then failed to return to the funds they had withdrawn from frozen bank accounts as they were directed to do by the Court's October 24, 2018 Order.

H.      Weighing the equities and considering Plaintiff's likelihood of ultimate success on the merits, this Order is in the public interest.

I.      This Court has authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Federal Rule of Civil Procedure 65, and the All Writs Act, 28 U.S.C. § 1651.

J.      No security is required of any agency of the United States for issuance of a Preliminary Injunction.  Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.      "Asset" means any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held.

B.      "Continuity Program" means any plan, arrangement, or system under which a consumer is periodically charged for products or services, without prior notification by the seller before each charge.

C.      "Corporate Defendant(s)" means Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership, and each of their subsidiaries, affiliates, successors, and assigns.

D.      "Defendant(s)" means Corporate Defendants, Jason Cardiff, Eunjung Cardiff, and Danielle Cadiz, individually, collectively, or in any combination.

7

E.     "Document" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including email and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases, and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

F.     "Electronic Data Host" means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

G.     "Individual Defendant(s)" means Jason Cardiff, Eunjung Cardiff, and Danielle Cadiz, individually, collectively, or in any combination.

H.     "Negative Option" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take an affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer or agreement.

I.     "Person" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

8

J.      "Preauthorized Electronic Fund Transfer" means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

K.      "Receiver" means the receiver identified in Section XV of this Order and any deputy receivers that shall be named by the receiver.

L.      "Receivership Entities" means Corporate Defendants as well as any other entity that has conducted any business related to Defendants' marketing and sale of dissolvable film strips and promotion of the Rengalife multilevel marketing program, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant.

M.      "Receivership Property" means any Assets, wherever located, that are: (1) owned, controlled, or held by or for the benefit of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff, in whole or in part; (2) in the actual or constructive possession of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff; or (3) owned, controlled, or held by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned or controlled by the Receivership Entities, Jason Cardiff, or Eunjung Cardiff, including the Jurikel Family Trust, and Carols Place Trust.

## ORDER

### I.      PROHIBITED BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that Defendants Jason Cardiff and Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods, services, or programs are preliminarily restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

9

A.      Any material fact about TBX-FREE, Eupepsia Thin, or Prolongz, including, but not limited to:

1. That TBX-FREE is an effective smoking cessation product;

2. That TBX-FREE is more effective than either nicotine patches or nicotine gum in enabling cigarette smokers to stop smoking;

3. That TBX-FREE enables many cigarette smokers to quit in seven to ten days;

4. That TBX-FREE has an 88% success rate, including among people who have smoked cigarettes for more than five years;

5. That smokers should not need to purchase more than one month of TBX-FREE;

6. That clinical studies have been conducted on TBX-FREE, and have shown that TBX-FREE is an effective smoking cessation product;

7. That TBX-FREE has been proven in clinical studies to be more effective than nicotine patches or nicotine gum in enabling smokers to stop smoking;

8. That clinical studies of TBX-FREE conducted on 10,600 people have shown that TBX-FREE has an "88% success rate";

9. That The New England Journal of Medicine ("NEJM"), Harvard Health Publications, and Johns Hopkins University have published clinical studies proving that TBX-FREE is an effective smoking cessation product;

10. That NEJM's clinical studies showed that TBX-FREE is ten times more effective for smoking cessation than nicotine replacement therapy;

11. That Eupepsia Thin is an effective appetite suppressant and weight loss aid;

10

12. That Eupepsia Thin starts working in less than 20 seconds, and suppresses a user's appetite within minutes;

13. That Eupepsia Thin enables users to lose 10, 20, or even 100 pounds without dieting, giving up their favorite foods, or increasing their exercise;

14. That Eupepsia Thin users can lose 15 pounds their first month without dieting or changing their food or lifestyle;

15. That Eupepsia Thin users can lose as much as 20 pounds in one month and as much as 50 pounds in three months;

16. That Eupepsia Thin is more effective at causing weight loss than conventional calorie reduction and meal plans;

17. That Eupepsia Thin enables consumers to avoid gaining back weight they lose, without any lifestyle changes.

18. That clinical studies have been conducted on Eupepsia Thin and those studies show that it is an effective appetite suppressant and weight loss aid;

19. That Prolongz substantially increases ejaculation control and the duration of sex;

20. That Prolongz treats or prevents premature ejaculation;

21. That Prolongz is clinically proven to increase ejaculation control and the duration of sex for more than 97% of users;

22. That Eupepsia Thin is made in the United States;

23. That individuals appearing in advertising for Eupepsia Thin used that product successfully to lose weight; and

24. That consumers who are not satisfied with the product they purchased will get their money back;

B. Any material fact about any multi-level marketing plan, including, but not limited to, the income that participants in the plan are likely to earn; and

11

C.     Any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## II.  PROHIBITIONS AGAINST UNFAIR AND DECEPTIVE NEGATIVE OPTION MARKETING PRACTICES

**IT IS FURTHER ORDERED** that Defendants Jason Cardiff and Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service are preliminarily restrained and enjoined from charging, causing to be charged, assisting others in charging, or attempting to charge any consumer in any sale of a good or service sold through a negative option without:

A.     Clearly and conspicuously disclosing all material terms of the negative option features before obtaining the consumer's billing information;

B.     Obtaining a consumer's express informed consent, written or similarly authorized, to the negative option features before making any charge; and

C.     Providing a simple mechanism for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, or other financial account.

## III.   PROHIBITIONS AGAINST UNAUTHORIZED CHARGES

**IT IS FURTHER ORDERED** that Defendants Jason Cardiff and Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are preliminarily restrained and enjoined from charging, causing to be charged, assisting others in charging, or attempting to charge any consumer for any good or service without first obtaining the consumer's express informed consent, written or similarly authorized, to the charge.

12

## IV. PROHIBITIONS AGAINST DEBITING CONSUMERS' BANK ACCOUNTS WITHOUT AUTHORIZATION

**IT IS FURTHER ORDERED** that Defendants Jason Cardiff and Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service, are preliminarily restrained and enjoined from:

A.     Failing to timely obtain written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account before initiating any Preauthorized Electronic Fund Transfer; and

B.     Failing to provide to the consumer a copy of a valid written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account.

## V. PROHIBITION OF PRERECORDED MARKETING CALLS

**IT IS FURTHER ORDERED** that Defendants Jason Cardiff and Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from initiating or causing the initiation of outbound telephone calls delivering prerecorded messages to induce the sale of goods or services.

## VI. PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants Jason Cardiff and Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.      Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; and

B.      Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order.

Provided, however, that Defendants Jason Cardiff and Eunjung Cardiff may disclose such identifying information to a law enforcement agency, to their attorneys as required for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

## VII.  ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants Jason Cardiff and Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are preliminarily restrained and enjoined from:

A.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets that are:

1.      Owned or controlled, directly or indirectly, by any Defendant, including, but not limited to, those for which any Defendant is a signatory on the account;

14

Case 5:23-cv-00021-JGB-PLA Document 453 Filed 04/09/24 Page 192 of 263 Page ID
#:1000
Case 5:18-cv-02104-SJO-PLA Document 59 Filed 11/09/18 Page 15 of 26 Page ID #:343

2. Held, in part or in whole, for the benefit of any Defendant;

3. In the actual or constructive possession of any Defendant; or

4. Owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant.

B. Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

C. Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant, or of which any Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signer; or

D. Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

The Assets affected by this Section shall include: (1) all Assets of Defendants as of the time the TRO was entered; (2) all Assets obtained by Defendants after the TRO was entered if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order; and (3) all Assets owned or controlled, directly or indirectly, by Defendant Jason Cardiff or Defendant Eunjung Cardiff, including, but not limited to, the Jurikel Family Trust or Carols Place Trust. This Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this Order.

15

# VIII. DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor or vendor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that:

    a)    has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of Defendant Jason Cardiff or Defendant Eunjung Cardiff or any Asset that has been owned or controlled, directly or indirectly, by Defendant Jason Cardiff or Defendant Eunjung Cardiff; held, in part or in whole, for the benefit of Defendant Jason Cardiff or Defendant Eunjung Cardiff; in the actual or constructive possession of Defendant Jason Cardiff or Defendant Eunjung Cardiff; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by Defendant Jason Cardiff or Defendant Eunjung Cardiff;

    b)    has held, controlled, or maintained custody, through an account or otherwise, of any Document or Asset associated with credits, debits, or charges made on behalf of Defendant Jason Cardiff or Defendant Eunjung Cardiff, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors or vendors, payment gateways, insurance companies, or other entities; or

16

1              c)     has extended credit to Defendant Jason Cardiff or Defendant

2               Eunjung Cardiff, including through a credit card account, shall:

3     A.    Hold, preserve, and retain within its control and prohibit the

4 withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance,

5 disbursement, dissipation, relinquishment, conversion, sale, or other disposal of

6 any such Document or Asset, as well as all Documents or other property related to

7 such Assets, except by further order of this Court;

8     B.    Deny any person, except the Receiver, access to any safe deposit box,

9 commercial mail box, or storage facility that is titled in the name of Defendant

10 Jason Cardiff or Defendant Eunjung Cardiff, either individually or jointly, or

11 otherwise subject to access by Defendant Jason Cardiff or Defendant Eunjung

12 Cardiff;

13     C.    Provide Plaintiff's counsel and the Receiver, unless already provided

14 pursuant to the TRO, within three (3) days of receiving a copy of this Order, a

15 sworn statement setting forth:

16       1.    The identification number of each such account or Asset;

17       2.    The balance of each such account, or a description of the nature and

18            value of each such Asset as of the close of business on the day on

19            which this Order is served, and, if the account or other Asset has been

20            closed or removed, the date closed or removed, the total funds

21            removed in order to close the account, and the name of the person or

22            entity to whom such account or other Asset was remitted; and

23       3.    The identification of any safe deposit box, commercial mail box, or

24            storage facility that is either titled in the name, individually or jointly,

25            of Defendant Jason Cardiff or Defendant Eunjung Cardiff, or is

26            otherwise subject to access by Defendant Jason Cardiff or Defendant

27            Eunjung Cardiff; and

28

D.     Upon the request of Plaintiff's counsel or the Receiver, promptly provide Plaintiff's counsel and the Receiver with copies of all records or other Documents pertaining to any account covered by this Section or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities. Provided, however, that this Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this Order.

## IX.   FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that, to the extent not already done pursuant to the TRO, Defendants Jason Cardiff and Eunjung Cardiff, within five (5) days of service of this Order upon them, shall:

A.     Prepare and deliver to Plaintiff's counsel and the Receiver completed financial statements on the forms attached to this Order as **Attachment A** (Financial Statement of Individual Defendant) for each Individual Defendant, and **Attachment B** (Financial Statement of Corporate Defendant) for each Corporate Defendant and for Carols Place Trust and the Jurikel Family Trust;

B.     Prepare and deliver to Plaintiff's counsel and the Receiver completed **Attachment C** (IRS Form 4506, Request for Copy of a Tax Return) for each Individual Defendant and Corporate Defendant;

C.     Identify to Plaintiff's counsel and the Receiver all bank accounts for all entities for which Defendant Jason Cardiff or Defendant Eunjung Cardiff has been an officer, director, member, owner, or signatory for the last five (5) years, including, but not limited to, the entities Defendant Jason Cardiff identified in his Financial Statement of Individual Defendant and the entities Defendant Eunjung Cardiff identified in her Financial Statement of Individual Defendant; and

18

D.     Deliver to Plaintiff's counsel and the Receiver any inventory of the contents of any residence owned or leased by Defendants Jason Cardiff or Eunjung Cardiff, prepared for any purpose, including, but not limited to, obtaining insurance.

## X.     FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that, to the extent not already done pursuant to the TRO, within five (5) days following the service of this Order, Defendant Jason Cardiff, Defendant Eunjung Cardiff, and Carols Place Trust shall:

A.     Provide Plaintiff's counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all Assets, Documents, and accounts outside of the United States that are:  (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.     Take all steps necessary to provide the Receiver and Plaintiff's counsel access to all Documents and records that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records, appended to this Order as **Attachment D.**

C.     Transfer to the territory of the United States and deliver to the Receiver all Documents and Assets located in foreign countries that are: (1) titled in the name, individually or jointly, of any Defendant, or any trust or other entity for which any Defendant is a beneficiary or trustee; (2) held by any person or entity for the benefit of any Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly

owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

D.     The same business day as any repatriation, (1) notify the Receiver and Plaintiff's counsel of the name and location of the financial institution or other entity that is the recipient of such Documents or Assets; and (2) serve this Order on any such financial institution or other entity.

## XI.    NON-INTERFERENCE WITH ASSET FREEZE AND REPATRIATION

**IT IS FURTHER ORDERED** that Defendants Jason Cardiff and Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance, transfer, relocation, or dissipation of domestic or foreign Assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

A.     Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Defendants' Assets have been fully repatriated pursuant to this Order or any other order issued by this Court; or

B.     Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' Assets have been fully repatriated pursuant to this Order or any other order issued by this Court.

**XII.   CONSUMER CREDIT REPORTS**

**IT IS FURTHER ORDERED** that Plaintiff may obtain credit reports concerning Defendants Jason Cardiff and Eunjung Cardiff pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiff.

**XIII.  PRESERVATION OF RECORDS**

**IT IS FURTHER ORDERED** that Defendants Jason Cardiff and Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.     Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to:  (1) the business, business practices, Assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

B.     Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' Assets.

**XIV.  REPORT OF NEW BUSINESS ACTIVITY**

**IT IS FURTHER ORDERED** that Defendants Jason Cardiff and Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from creating, operating, or exercising any control over any business

21

entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff's counsel and the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XV.   CONTINUATION OF THE RECEIVERSHIP

**IT IS FURTHER ORDERED** that Robb Evans & Associates shall continue to serve as the Receiver of the Receivership Entities and of the Assets of Defendants Jason Cardiff and Eunjung Cardiff that are:

1.   Owned, controlled, or held by or for the benefit of Defendant Jason Cardiff or Defendant Eunjung Cardiff, in whole or in part;

2.   In the actual or constructive possession of Defendant Jason Cardiff or Defendant Eunjung Cardiff; or

3.   Owned, controlled, or held by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned or controlled by Defendant Jason Cardiff or Defendant Eunjung Cardiff;

with full powers of an equity receiver.  The Receiver shall be solely the agent of this Court in acting as Receiver under this Order.

## XVI.  DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A.   Assume full control of the Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity;

B.     Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity and all Assets of Defendants Jason Cardiff and Eunjung Cardiff covered by Part XV of this Order, wherever situated.  The Receiver shall have access to all personal and business premises and storage facilities owned, controlled, or used by the Receivership Entities or Defendants Jason Cardiff or Eunjung Cardiff, and any offsite commercial mailboxes or virtual offices used by Defendants, to inventory all Assets and remove Assets from the premises if appropriate.  Defendants Jason Cardiff and Eunjung Cardiff are prohibited from removing any Assets from these locations before or after the Receiver's inspection. The Receiver and Defendants Jason Cardiff and Eunjung Cardiff shall coordinate to effect an inspection of the Cardiffs' personal residence during the week of November 11, 2018.  The Receiver may exclude any individuals within his discretion, including but not limited to Defendants, Defendants' friends and family, and any employees of Defendants from part or all of the personal and business premises during the time of the Receiver's access.  The Receiver is authorized to employ the assistance of law enforcement as he deems necessary to effect service and peacefully implement this Order.  Provided, however, that the Receiver shall not, without further order of this Court, take physical possession of the primary residence of Defendants Jason Cardiff and Eunjung Cardiff;

C.     Take exclusive custody, control, and possession of all Documents or Assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

D.     Conserve, hold, manage, and prevent the loss of all Receivership Property, and perform all acts necessary or advisable to preserve the value of those

23

Assets.  The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Entities.  The Receiver shall have full power to sue for, collect, and receive, all Receivership Property and all Assets of other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Entities or of Jason Cardiff or Eunjung Cardiff.  Provided, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer's debt to the Receivership Entities has resulted from the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval;

E.     Take exclusive custody, control, and possession of the following valuable articles in the possession, custody, or under the control of, Defendants Jason Cardiff or Eunjung Cardiff or Carols Place Limited Partnership, wherever situated:

1.     Ladies 14K yellow gold and diamond ring.  Insured for $11,813.

2.     Ladies diamond pendent setting 14 KT.  Insured for $23,730.

3.     Ladies Diamond Stud Earrings.  Insured for $34,125.

4.     Ladies Diamond Fancy Ring.  Insured for $31,763.

5.     Mens Roadster SM WG/WG Paved Bezel.  Insured for $32,550.

6.     Ladies handmade platinum diamond bracelet.  Insured for $46,725.

7.     Mens GTS 18KT white gold Daytona Rolex.  Insured for $42,000.

8.     5.08 ct round diamond I color S12 Clarity EGL platinum ring.  Insured for $102,076.

9.     Mens Rolex Yacht-Master 18K gold watch.  Insured for $14,125.

10.    Ladies Love Bra yellow gold 4 dia[] 17 cm.  Insured for $9,819.

11.    Ladies yellow gold ring, Serial #UD0824.  Insured for $2,284.

12.    Ladies fancy diamond bracelet.  Insured for $39,397.

13.    Mens Rolex watch 18KT gold Pearlmaster.  Insured for $33,180.

24

14. Tiffany pearl bracelet.  Insured for $3,166.

15. Ladies emerald and diamond ring.  Insured for $24,856.

16. IWC Portofino moon phase watch.  Insured for $8,000.

17. Pre-owner Ladies stainless steel Patek Phili[ppe].  Insured for $8,145.

18. Rolex Vintage Thund[er].  Insured for $9,000.

19. Stuart Moore "Aronade" platinum diamond.  Insured for $12,650.

20. Peter Philippe annual calendar wristwatch.  Insured for $41,300.

21. 18K yellow gold Tiffany Diamond Bracelet.  #B0164.  Insured for $7,600.

22. "Living Room" Artist Romero Britto.  Insured for $12,600.

23. Hermes Birkin bag, size 35 (Togo leather; in Sienna color).  Insured for $20,000.

24. Hermes Birkin bag, size 35 (Togo leather; Curry).  Insured for $20,000.

25. Ladies ring round center stone 8.5 cts, VS2 with diamonds.  Insured for $532,000.

26. MenOCOs Patek Philippe gold calendar watch model 5035J.  Insured for $28,500.

F. Obtain, conserve, hold, manage, and prevent the loss of all Documents of the Receivership Entities, and perform all acts necessary or advisable to preserve such Documents. The Receiver shall:  divert mail; preserve all Documents of the Receivership Entities that are accessible via electronic means (such as online access to financial accounts and access to electronic documents held onsite or by Electronic Data Hosts, by changing usernames, passwords or other log-in credentials; take possession of all electronic Documents of the Receivership Entities stored onsite or remotely; take whatever steps necessary to preserve all such Documents; and obtain the assistance of the FTC's Digital

Forensic Unit for the purpose of obtaining electronic documents stored onsite or remotely.

G.  Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

H.  Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging his or her duties as Receiver.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Entities, such as rental payments;

I.  Take all steps necessary not already taken pursuant to the TRO to secure and take exclusive custody of each location from which the Receivership Entities operate their businesses.  Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable:  (1) securing the location by changing the locks and alarm codes and disconnecting any Internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Entities, including, but not limited to, telephones, computers, and tablets paid for by the Receivership Entities.  Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security. If

26

requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

J.     Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendants, and to provide access to all such web pages or websites to Plaintiff's representatives, agents, and assistants, as well as Defendants and their representatives;

K.     Enter into and cancel contracts and purchase insurance as advisable or necessary;

L.     Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities;

M.     Make an accounting, as soon as practicable, of the Assets and financial condition of the receivership and file the accounting with the Court and deliver copies thereof to all parties;

N.     Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including, but not limited to, actions challenging fraudulent or voidable transfers;

O.     Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate, in addition to obtaining other discovery as set forth in this Order;

P.     Open one or more bank accounts at designated depositories for funds of the Receivership Entities.  The Receiver shall deposit all funds of the Receivership Entities in such designated accounts and shall make all payments and

disbursements from the receivership estate from such accounts.  The Receiver shall serve copies of monthly account statements on all parties;

Q.      Maintain accurate records of all receipts and expenditures incurred as Receiver;

R.      Allow Plaintiffs' representatives, agents, and assistants, as well as Defendants' representatives and Defendants themselves, reasonable access to the premises of the Receivership Entities, or any other premises where the Receivership Entities conduct business.  The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the Receivership Entities or their agents.  The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access;

S.      Allow Plaintiffs' representatives, agents, and assistants, as well as Defendants and their representatives reasonable access to all Documents in the possession, custody, or control of the Receivership Entities;

T.      Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency;

U.      Suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably;

V.      If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court.  Provided, however, that the Receiver may delay providing such notice until the Receiver has established control of the nonparty entity and its assets and records, if the Receiver determines that notice to the entity or the parties before the Receiver establishes control over the entity may result in the destruction of records,

28

dissipation of assets, or any other obstruction of the Receiver's control of the entity;

W.    If in the Receiver's judgment the business operations cannot be continued legally and profitably, take all steps necessary to ensure that any of the Receivership Entities' web pages or websites relating to the activities alleged in the Complaint cannot be accessed by the public, or are modified for consumer education and/or informational purposes, and take all steps necessary to ensure that any telephone numbers associated with the Receivership Entities cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations; and

X.    File timely reports with the Court at reasonable intervals or as otherwise directed by the Court.

## XVII.    TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that, to the extent not already done pursuant to the TRO, Defendants and any other person with possession, custody, or control of (1) property of, or records relating to, the Receivership Entities or (2) the Assets of Jason Cardiff or Eunjung Cardiff or any trusts for which they are beneficiaries or trustees, shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities and the Assets of Jason Cardiff or Eunjung Cardiff and immediately provide, transfer, or deliver to the Receiver possession, custody, and control of, the following:

A.    All Assets held by or for the benefit of the Receivership Entities or of Jason Cardiff or Eunjung Cardiff, except for real property used as the primary residence of Jason Cardiff and Eunjung Cardiff;

B.    All Documents or Assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks,

acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

C.    All Documents of or pertaining to the Receivership Entities or to the Assets of Jason Cardiff or Eunjung Cardiff;

D.    All computers, electronic devices, mobile devices, and machines used to conduct the business of the Receivership Entities;

E.    All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Entities; and

F.    All keys, codes, user names, passwords, and all other means of authentication necessary to gain or to secure access to any Assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, mobile phones, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property.

In the event that any person or entity fails to deliver or transfer any Asset, Document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

## XVIII.    PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that, to the extent not already done pursuant to the TRO, Jason Cardiff and Eunjung Cardiff shall immediately provide to the Receiver:

A.    A list of all Assets and accounts of the Receivership Entities that are held in any name other than the name of a Receivership Entity, or by any person or entity other than a Receivership Entity;

B.    A list of all Assets and accounts of Jason Cardiff or Eunjung Cardiff that are held in any name other than their own names, or by any person or entity other than themselves;

30

C.     A list of all agents, employees, officers, attorneys, servants and those persons in active concert and participation with the Receivership Entities, or who have been associated or done business with the Receivership Entities; and

D.     A description of any documents covered by attorney-client privilege or attorney work product, including files where such documents are likely to be located, authors or recipients of such documents, and search terms likely to identify such electronic documents.

## XIX.     COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants, Receivership Entities, Defendants' or Receivership Entities' officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and any other person with possession, custody, or control of:

1.     Receivership Property or records relating to Receivership Property; or

2.     Other records relating to the Receivership Entities;

who receive actual notice of this Order shall fully cooperate with and assist the Receiver.  This cooperation and assistance shall include, but is not limited to, providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any keys, codes, user names, passwords, and all other means required to access any computers, electronic devices, mobile devices, machines (onsite or remotely), and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any Receivership Entity that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Receivership Property and sales of the Receivership Entities.

31

## XX. NON-INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants, Receivership Entities, Defendants' or Receivership Entities' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

A. Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership;

B. Transacting any of the business of the Receivership Entities;

C. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities, Jason Cardiff, or Eunjung Cardiff; or

D. Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XXI. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the receivership ordered herein, Defendants, their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities or over the Assets of Jason Cardiff and Eunjung Cardiff, including, but not limited to:

A.     Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 et seq., or of any similar insolvency proceeding on behalf of the Receivership Entities;

B.     Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

C.     Filing or enforcing any lien on any Asset of the Receivership Entities, taking or attempting to take possession, custody, or control of any Asset of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.

Provided, however, that this Order does not stay:  (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XXII.    COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities, Jason Cardiff, or Eunjung Cardiff.  The Receiver shall file with the Court and serve on the parties periodic requests for the

payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XXIII. RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court, unless already filed, a bond in the sum of $15,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs. 28 U.S.C. § 754.

## XXIV. SURRENDER OF PASSPORTS

**IT IS FURTHER ORDERED** that Defendants Jason Cardiff and Eunjung Cardiff shall surrender any and all domestic and foreign passports to the Receiver on or before November 12, 2018 at 12:00 p.m. (noon).

## XXV. DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants Jason Cardiff and Eunjung Cardiff shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date of entry of this Order, provide Plaintiff and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order. Furthermore, Defendants Jason Cardiff and Eunjung Cardiff shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons

or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XXVI.  EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of Fed. R. Civ. P. 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a), 34, and 45, Plaintiff and the Receiver are granted leave, from any time after service of this Order until a Rule 16(b) scheduling order is issued, to conduct limited expedited discovery for the purpose of discovering:  (1) the nature, location, status, and extent of Defendants' Assets; or (2) compliance with this Order.  The limited expedited discovery set forth in this Section shall proceed as follows:

A.      Plaintiff and the Receiver may take the deposition of parties and non-parties.  Forty-eight (48) hours notice shall be sufficient notice for such depositions.  The limitations and conditions set forth in Rules 30(a)(2)(B) and 31(a)(2)(B) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section.  Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) and depositions may be taken by telephone or other remote electronic means.

B.      Plaintiff and the Receiver may serve upon parties requests for production of Documents or inspection that require production or inspection within five (5) days of service, provided, however, that three (3) days of notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only in an electronic format.

C.      Plaintiff and the Receiver may serve upon parties interrogatories that require response within five (5) days after Plaintiff serves such interrogatories.

D.      Plaintiff and the Receiver may serve subpoenas upon non-parties that direct production or inspection within five (5) days of service.

E.    Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

F.    Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court.  The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure.

G.    The Parties are exempted from making initial disclosures under Fed. R. Civ. P. 26(a)(1) until further order of this Court.

## XXVII.  SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Defendant or any person (including any financial institution) that may have possession, custody or control of any Asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure.  For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## XXVIII. CORRESPONDENCE AND SERVICE ON PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed to:

> Elizabeth Sanger
> James A. Prunty
> Edwin Rodriguez
> Shira D. Modell
> Federal Trade Commission
> 600 Pennsylvania Ave., NW

Washington, DC 20580
Tel: (202) 326-2757, -2438, -3147, -3116
Fax: (202) 326-3259
Email: esanger@ftc.gov; jprunty@ftc.gov; erodriguez@ftc.gov;
smodell@ftc.gov

**XXIX. DURATION OF THE ORDER**

    **IT IS FURTHER ORDERED** that this Order shall expire upon entry of a
final judgment in this case.

**XXX. RETENTION OF JURISDICTION**

    **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of
this matter for all purposes.

    SO ORDERED, this _____8th_____ day of November, 2018, at ___11:54 a___.m.

_____

UNITED STATES DISTRICT JUDGE

# ATTACHMENT A

**FEDERAL TRADE COMMISSION**

**FINANCIAL STATEMENT OF INDIVIDUAL DEFENDANT**

**Definitions and Instructions:**

1. Complete all items. Enter "None" or "N/A" ("Not Applicable") in the first field only of any item that does not apply to you. If you cannot fully answer a question, explain why.

2. "Dependents" include your spouse, live-in companion, dependent children, or any other person, whom you or your spouse (or your children's other parent) claimed or could have claimed as a dependent for tax purposes at any time during the past five years.

3. "Assets" and "Liabilities" include ALL assets and liabilities, located within the United States or any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

4. Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number(s) being continued.

5. Type or print legibly.

6. Initial each page in the space provided in the lower right corner.

7. Sign and date the completed financial statement on the last page.

**Penalty for False Information:**

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or devise a material fact; makes any materially false, fictitious or fraudulent statement or representation; or makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any ( . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration" (18 U.S.C. § 1623).

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

## BACKGROUND INFORMATION

### Item 1.  Information About You

| | |
|---|---|
| Full Name | Social Security No. |

| | | |
|---|---|---|
| Current Address of Primary Residence | Driver's License No. | State Issued |

| | |
|---|---|
| | Phone Numbers<br>Home: (    ) <br>Fax:  (    ) |
| | Date of Birth:      /   /<br>(mm/dd/yyyy) |
| | Place of Birth |

☐Rent  ☐Own      From (Date):      /   /
(mm/dd/yyyy)

E-Mail Address

Internet Home Page

### Previous Addresses for past five years (if required, use additional pages at end of form)

| Address | From:     /   /<br>(mm/dd/yyyy)     Until:     /   /<br>(mm/dd/yyyy)<br><br>☐Rent  ☐Own |
|---|---|
| Address | From:     /   /     Until:     /   /<br><br>☐Rent  ☐Own |
| Address | From:     /   /     Until:     /   /<br><br>☐Rent  ☐Own |

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they
were used:

### Item 2.  Information About Your Spouse or Live-In Companion

| | | |
|---|---|---|
| Spouse/Companion's Name | Social Security No. | Date of Birth<br>   /   /<br>(mm/dd/yyyy) |
| Address (if different from yours) | Phone Number<br>(    ) | Place of Birth |
| | ☐Rent  ☐Own      From (Date):      /   /<br>(mm/dd/yyyy) | |

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used:

| | |
|---|---|
| Employer's Name and Address | Job Title |
| | Years in Present Job |
| | Annual Gross Salary/Wages<br>$ |

### Item 3.  Information About Your Previous Spouse

| | |
|---|---|
| Name and Address | Social Security No. |
| | Date of Birth<br>   /   /<br>(mm/dd/yyyy) |

### Item 4.  Contact Information (name and address of closest living relative other than your spouse)

| | |
|---|---|
| Name and Address | Phone Number<br>(    ) |

Initials: _____

## Item 5. Information About Dependents (whether or not they reside with you)

| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
|---|---|---|
| | Relationship | |
| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
| | Relationship | |
| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
| | Relationship | |
| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
| | Relationship | |

## Item 6. Employment Information/Employment Income

Provide the following information for this year-to-date and for each of the previous five full years, for each business entity of which you were a director, officer, member, partner, employee (including self-employment), agent, owner, shareholder, contractor, participant or consultant at any time during that period. "Income" includes, but is not limited to, any salary, commissions, distributions, draws, consulting fees, loans, loan payments, dividends, royalties, and benefits for which you did not pay (e.g., health insurance premiums, automobile lease or loan payments) received by you or anyone else on your behalf.

| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
|---|---|---|---|---|
| | From (Month/Year) / | To (Month/Year) / | Year 20 | Income $ $ |
| Ownership Interest? ☐ Yes ☐ No | | | | |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | / | / | | $ |
| | / | / | | $ |
| | / | / | | $ |
| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
| | From (Month/Year) / | To (Month/Year) / | Year 20 | Income $ $ |
| Ownership Interest? ☐ Yes ☐ No | | | | |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | / | / | | $ |
| | / | / | | $ |
| | / | / | | $ |
| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
| | From (Month/Year) / | To (Month/Year) / | Year 20 | Income $ $ |
| Ownership Interest? ☐ Yes ☐ No | | | | |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | / | / | | $ |
| | / | / | | $ |
| | / | / | | $ |

Initials: _____

Case 5:23-cv-00021-JGB-PLA Document 45-3 Filed 04/08/24 Page 219 of 263 Page ID
Case 5:18-cv-02104-SJO-PLA Document 53 Filed 11/09/18 Page 42 of 70 Page ID #:3670
#:1027

**Item 7. Pending Lawsuits Filed By or Against You or Your Spouse**

List all pending lawsuits that have been filed by or against you or your spouse in any court or before an administrative agency in the United States or in any foreign country or territory.  **Note:** *At Item 12, list lawsuits that resulted in final judgments or settlements in your favor.  At Item 21, list lawsuits that resulted in final judgments or settlements against you.*

| Caption of Proceeding | Court or Agency and Location | Case No. | Nature of Proceeding | Relief Requested | Status or Disposition |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Item 8. Safe Deposit Boxes**

List all safe deposit boxes, located within the United States or in any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents.

| Name of Owner(s) | Name & Address of Depository Institution | Box No. | Contents |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Initials: _____

## FINANCIAL INFORMATION

**REMINDER:** When an item asks for information regarding your "assets" and "liabilities" include <u>ALL</u> assets and liabilities, located within the United States or in any foreign country or territory, or institution, whether held individually or jointly, and whether held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents. In addition, provide all documents requested in Item 24 with your completed Financial Statement.

## ASSETS

### Item 9.  Cash, Bank, and Money Market Accounts

List cash on hand (as opposed to cash in bank accounts or other financial accounts) and all bank accounts, money market accounts, or other financial accounts, including but not limited to checking accounts, savings accounts, and certificates of deposit.  The term "cash on hand" includes but is not limited to cash in the form of currency, uncashed checks, and money orders.

| a.  Amount of Cash on Hand  $ | | Form of Cash on Hand | |
|---|---|---|---|
| b.  Name on Account | Name & Address of Financial Institution | Account No. | Current Balance |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

### Item 10.  Publicly Traded Securities

List all publicly traded securities, including but not limited to, stocks, stock options, corporate bonds, mutual funds, U.S. government securities (including but not limited to treasury bills and treasury notes), and state and municipal bonds.  Also list any U.S. savings bonds.

| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
|---|---|---|---|---|
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | | Loan(s) Against Security $ |
| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | | Loan(s) Against Security $ |
| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | | Loan(s) Against Security $ |

Initials: _____

## Item 11. Non-Public Business and Financial Interests

List all non-public business and financial interests, including but not limited to any interest in a non-public corporation, subchapter-S corporation, limited liability corporation ("LLC"), general or limited partnership, joint venture, sole proprietorship, international business corporation or personal investment corporation, and oil or mineral lease.

| Entity's Name & Address | Type of Business or Financial Interest (e.g., LLC, partnership) | Owner (e.g., self, spouse) | Ownership % | If Officer, Director, Member or Partner, Exact Title |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

## Item 12. Amounts Owed to You, Your Spouse, or Your Dependents

| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
|---|---|---|---|
| | Current Amount Owed $ | Payment Schedule $ | |
| Debtor's Telephone | Debtor's Relationship to You | | |
| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
| | Current Amount Owed $ | Payment Schedule $ | |
| Debtor's Telephone | Debtor's Relationship to You | | |

## Item 13. Life Insurance Policies

List all life insurance policies (including endowment policies) with any cash surrender value.

| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
|---|---|---|---|
| | Insured | Loans Against Policy $ | Surrender Value $ |
| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
| | Insured | Loans Against Policy $ | Surrender Value $ |

## Item 14. Deferred Income Arrangements

List all deferred income arrangements, including but not limited to, deferred annuities, pensions plans, profit-sharing plans, 401(k) plans, IRAs, Keoghs, other retirement accounts, and college savings plans (e.g., 529 Plans).

| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. |
|---|---|---|---|
| | Date Established / / (mm/dd/yyyy) | Type of Plan | Surrender Value before Taxes and Penalties $ |
| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. |
| | Date Established / / | Type of Plan | Surrender Value before Taxes and Penalties $ |

Initials: _____

## Item 15.  Pending Insurance Payments or Inheritances
List any pending insurance payments or inheritances owed to you.

| Type | Amount Expected | Date Expected  (mm/dd/yyyy) |
|------|-----------------|------------------------------|
|  | $ | /   / |
|  | $ | /   / |
|  | $ | /   / |

## Item 16.  Vehicles
List all cars, trucks, motorcycles, boats, airplanes, and other vehicles.

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

## Item 17.  Other Personal Property
List all other personal property not listed in Items 9-16 by category, whether held for personal use, investment or any other reason, including but not limited to coins, stamps, artwork, gemstones, jewelry, bullion, other collectibles, copyrights, patents, and other intellectual property.

| Property  Category (e.g., artwork, jewelry) | Name of Owner | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|---|
|  |  |  | $ | $ |
|  |  |  | $ | $ |
|  |  |  | $ | $ |

Initials: _____

## Item 18. Real Property
List all real property interests (including any land contract)

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages |
|---|---|---|

| Acquisition Date (mm/dd/yyyy) /  / | Purchase Price $ | Current Value $ | Basis of Valuation |
|---|---|---|---|

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract $ |
|---|---|---|
| | | Monthly Payment $ |

| Other Mortgage Loan(s) (describe) | Monthly Payment $ | ☐ Rental Unit |
|---|---|---|
| | Current Balance $ | Monthly Rent Received $ |

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages |
|---|---|---|

| Acquisition Date (mm/dd/yyyy) /  / | Purchase Price $ | Current Value $ | Basis of Valuation |
|---|---|---|---|

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract $ |
|---|---|---|
| | | Monthly Payment $ |

| Other Mortgage Loan(s) (describe) | Monthly Payment $ | ☐ Rental Unit |
|---|---|---|
| | Current Balance $ | Monthly Rent Received $ |

# LIABILITIES

## Item 19. Credit Cards
List each credit card account held by you, your spouse, or your dependents, and any other credit cards that you, your spouse, or your dependents use, whether issued by a United States or foreign financial institution.

| Name of Credit Card (e.g., Visa, MasterCard, Department Store) | Account No. | Name(s) on Account | Current Balance |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

## Item 20. Taxes Payable
List all taxes, such as income taxes or real estate taxes, owed by you, your spouse, or your dependents.

| Type of Tax | Amount Owed | Year Incurred |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |

Initials: _____

| Item 21.  Other Amounts Owed by You, Your Spouse, or Your Dependents | | | |
|---|---|---|---|
| List all other amounts, not listed elsewhere in this financial statement, owed by you, your spouse, or your dependents. | | | |

| Lender/Creditor's Name, Address, and Telephone No. | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) | | |
|---|---|---|---|
| | Lender/Creditor's Relationship to You | | |

| Date Liability Was Incurred  /   /  (mm/dd/yyyy) | Original Amount Owed  $ | Current Amount Owed  $ | Payment Schedule |
|---|---|---|---|

| Lender/Creditor's Name, Address, and Telephone No. | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) | | |
|---|---|---|---|
| | Lender/Creditor's Relationship to You | | |

| Date Liability Was Incurred  /   /  (mm/dd/yyyy) | Original Amount Owed  $ | Current Amount Owed  $ | Payment Schedule |
|---|---|---|---|

## OTHER FINANCIAL INFORMATION

| Item 22.  Trusts and Escrows | | | | |
|---|---|---|---|---|
| List all funds and other assets that are being held in trust or escrow by any person or entity for you, your spouse, or your dependents.  Include any legal retainers being held on your behalf by legal counsel.  Also list all funds or other assets that are being held in trust or escrow by you, your spouse, or your dependents, for any person or entity. | | | | |

| Trustee or Escrow Agent's Name & Address | Date Established (mm/dd/yyyy) | Grantor | Beneficiaries | Present Market Value of Assets* |
|---|---|---|---|---|
| | /   / | | | $ |
| | /   / | | | $ |
| | /   / | | | $ |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

| Item 23.  Transfers of Assets | | | | |
|---|---|---|---|---|
| List each person or entity to whom you have transferred, in the aggregate, more than $5,000 in funds or other assets during the previous five years by loan, gift, sale, or other transfer (exclude ordinary and necessary living and business expenses paid to unrelated third parties).  For each such person or entity, state the total amount transferred during that period. | | | | |

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value* | Transfer Date (mm/dd/yyyy) | Type of Transfer (e.g., Loan, Gift) |
|---|---|---|---|---|
| | | $ | /   / | |
| | | $ | /   / | |
| | | $ | /   / | |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

Initials: _____

## Item 24. Document Requests

Provide copies of the following documents with your completed Financial Statement.

| | |
|---|---|
| | Federal tax returns filed during the last three years by or on behalf of you, your spouse, or your dependents. |
| | All applications for bank loans or other extensions of credit (other than credit cards) that you, your spouse, or your dependents have submitted within the last two years, including by obtaining copies from lenders if necessary. |
| Item 9 | For each bank account listed in Item 9, all account statements for the past 3 years. |
| Item 11 | For each business entity listed in Item 11, provide (including by causing to be generated from accounting records) the most recent balance sheet, tax return, annual income statement, the most recent year-to-date income statement, and all general ledger files from account records. |
| Item 17 | All appraisals that have been prepared for any property listed in Item 17, including appraisals done for insurance purposes. You may exclude any category of property where the total appraised value of all property in that category is less than $2,000. |
| Item 18 | All appraisals that have been prepared for real property listed in Item 18. |
| Item 21 | Documentation for all debts listed in Item 21. |
| Item 22 | All executed documents for any trust or escrow listed in Item 22. Also provide any appraisals, including insurance appraisals that have been done for any assets held by any such trust or in any such escrow. |

## SUMMARY FINANCIAL SCHEDULES

### Item 25. Combined Balance Sheet for You, Your Spouse, and Your Dependents

| Assets | | Liabilities | |
|---|---|---|---|
| Cash on Hand (Item 9) | $ | Loans Against Publicly Traded Securities (Item 10) | $ |
| Funds Held in Financial Institutions (Item 9) | $ | Vehicles - Liens (Item 16) | $ |
| U.S. Government Securities (Item 10) | $ | Real Property – Encumbrances (Item 18) | $ |
| Publicly Traded Securities (Item 10) | $ | Credit Cards (Item 19) | $ |
| Non-Public Business and Financial Interests (Item 11) | $ | Taxes Payable (Item 20) | $ |
| Amounts Owed to You (Item 12) | $ | Amounts Owed by You (Item 21) | $ |
| Life Insurance Policies (Item 13) | $ | **Other Liabilities (Itemize)** | |
| Deferred Income Arrangements (Item 14) | $ | | $ |
| Vehicles (Item 16) | $ | | $ |
| Other Personal Property (Item 17) | $ | | $ |
| Real Property (Item 18) | $ | | $ |
| **Other Assets (Itemize)** | | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| **Total Assets** | $ | **Total Liabilities** | $ |

### Item 26. Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents

Provide the current monthly income and expenses for you, your spouse, and your dependents. Do not include credit card payments separately; rather, include credit card expenditures in the appropriate categories.

| Income (State source of each item) | | Expenses | |
|---|---|---|---|
| Salary - After Taxes<br>Source: | $ | Mortgage or Rental Payments for Residence(s) | $ |
| Fees, Commissions, and Royalties<br>Source: | $ | Property Taxes for Residence(s) | $ |
| Interest<br>Source: | $ | Rental Property Expenses, Including Mortgage Payments, Taxes, and Insurance | $ |
| Dividends and Capital Gains<br>Source: | $ | Car or Other Vehicle Lease or Loan Payments | $ |
| Gross Rental Income<br>Source: | $ | Food Expenses | $ |
| Profits from Sole Proprietorships<br>Source: | $ | Clothing Expenses | $ |
| Distributions from Partnerships, S-Corporations, and LLCs<br>Source: | $ | Utilities | $ |

Initials: _____

| Item 26.  Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents (cont.) | | | | |
|---|---|---|---|---|
| Distributions from Trusts and Estates<br>Source: | $ | | Medical Expenses, Including Insurance | $ |
| Distributions from Deferred Income Arrangements<br>Source: | $ | | Other Insurance Premiums | $ |
| Social Security Payments | $ | | Other Transportation Expenses | $ |
| Alimony/Child Support Received | $ | | **Other Expenses (Itemize)** | |
| Gambling Income | $ | | | $ |
| **Other Income (Itemize)** | | | | $ |
| | $ | | | $ |
| | $ | | | $ |
| | $ | | | $ |
| **Total Income** | $ | | Total Expenses | $ |

## ATTACHMENTS

### Item 27.  Documents Attached to this Financial Statement
List all documents that are being submitted with this financial statement.  For any Item 24 documents that are not attached, explain why.

| Item No. Document Relates To | Description of Document |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court.  I have used my best efforts to obtain the information requested in this statement.  The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge.  I have provided all requested documents in my custody, possession, or control.  I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines).  I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____
(Date)

_____
Signature

Case 5:23-cr-00021-JGB   Document 45-3   Filed 04/09/24   Page 227 of 263   Page ID
#:1035
Case 5:18-cv-02104-SJO-PLA   Document 59   Filed 11/09/18   Page 50 of 70   Page ID #:3978

# ATTACHMENT B

**FEDERAL TRADE COMMISSION**

**FINANCIAL STATEMENT OF CORPORATE DEFENDANT**

<u>Instructions</u>:

1.      Complete all items. Enter "None" or "N/A" ("Not Applicable") where appropriate. If you cannot fully answer a question, explain why.

2.      The font size within each field will adjust automatically as you type to accommodate longer responses.

3.      In completing this financial statement, "the corporation" refers not only to this corporation but also to each of its predecessors that are not named defendants in this action.

4.      When an Item asks for information about assets or liabilities "held by the corporation," include <u>ALL</u> such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.

5.      Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number being continued.

6.      Type or print legibly.

7.      An officer of the corporation must sign and date the completed financial statement on the last page and initial each page in the space provided in the lower right corner.

<u>Penalty for False Information</u>:

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any (. . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration." (18 U.S.C. § 1623)

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

Case 5:23-cv-00021-JGB-PLA   Document 45-3   Filed 04/08/24   Page 229 of 263   Page ID
#:1037
Case 5:18-cv-02104-SJO-PLA   Document 53   Filed 11/09/18   Page 52 of 70   Page ID #:980

## BACKGROUND INFORMATION

<u>**Item 1.**</u>          **General Information**

Corporation's Full Name _____

Primary Business Address _____ From (Date) _____

Telephone No. _____ Fax No. _____

 E-Mail Address_____ Internet Home Page_____

All other current addresses & previous addresses for past five years, including post office boxes and mail drops:

Address_____ From/Until_____

Address_____ From/Until_____

Address_____ From/Until_____

All predecessor companies for past five years:

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

<u>**Item 2.**</u>          **Legal Information**

Federal Taxpayer ID No. _____ State & Date of Incorporation _____

State Tax ID No. _____ State _____ Profit or Not For Profit _____

Corporation's Present Status:  Active _____ Inactive _____ Dissolved _____

If Dissolved:  Date dissolved _____ By Whom _____

Reasons _____

Fiscal Year-End (Mo./Day) _____ Corporation's Business Activities _____

<u>**Item 3.**</u>          **Registered Agent**

Name of Registered Agent _____

Address _____ Telephone No. _____

Case 5:23-cr-00021-JGB   Document 45-3   Filed 04/08/24   Page 230 of 263   Page ID
Case 5:18-cv-02104-SJO-PLA   Document 59   Filed 11/09/18   Page 53 of 70   Page ID #:3981
#:1038

<u>**Item 4.**</u>        **Principal Stockholders**

List all persons and entities that own at least 5% of the corporation's stock.

<div align="center">

<u>Name & Address</u>                                    <u>% Owned</u>

</div>

_____   _____

_____   _____

_____   _____

_____   _____


<u>**Item 5.**</u>        **Board Members**

List all members of the corporation's Board of Directors.

<div align="center">

<u>Name & Address</u>                    <u>% Owned</u>   <u>Term (From/Until)</u>

</div>

_____   _____   _____

_____   _____   _____

_____   _____   _____

_____   _____   _____

_____   _____   _____


<u>**Item 6.**</u>        **Officers**

List all of the corporation's officers, including *de facto* officers (individuals with significant management responsibility whose titles do not reflect the nature of their positions).

<div align="center">

<u>Name & Address</u>                                    <u>% Owned</u>

</div>

_____   _____

_____   _____

_____   _____

_____   _____

_____   _____

**Item 7.**  **Businesses Related to the Corporation**

List all corporations, partnerships, and other business entities in which this corporation has an ownership interest.

|     Name & Address     |  Business Activities  |  % Owned  |
| --- | --- | --- |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

State which of these businesses, if any, has ever transacted business with the corporation _____

_____

**Item 8.**  **Businesses Related to Individuals**

List all corporations, partnerships, and other business entities in which the corporation's principal stockholders, board members, or officers (i.e., the individuals listed in Items 4 - 6 above) have an ownership interest.

| Individual's Name | Business Name & Address | Business Activities | % Owned |
| --- | --- | --- | --- |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

State which of these businesses, if any, have ever transacted business with the corporation _____

_____

**Item 9.**  **Related Individuals**

List all related individuals with whom the corporation has had any business transactions during the three previous fiscal years and current fiscal year-to-date. A "related individual" is a spouse, sibling, parent, or child of the principal stockholders, board members, and officers (i.e., the individuals listed in Items 4 - 6 above).

|      Name and Address      |  Relationship  |  Business Activities  |
| --- | --- | --- |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

**Item 10.**          **Outside Accountants**

List all outside accountants retained by the corporation during the last three years.

| Name | Firm Name | Address | CPA/PA? |
|------|-----------|---------|---------|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Item 11.**          **Corporation's Recordkeeping**

List all individuals within the corporation with responsibility for keeping the corporation's financial books and records for the last three years.

| Name, Address, & Telephone Number | Position(s) Held |
|-----------------------------------|------------------|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**Item 12.**          **Attorneys**

List all attorneys retained by the corporation during the last three years.

| Name | Firm Name | Address |
|------|-----------|---------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

<u>**Item 13.**</u>        **Pending Lawsuits Filed by the Corporation**

List all pending lawsuits that have been filed by the corporation in court or before an administrative agency.  (List lawsuits that resulted in final judgments or settlements in favor of the corporation in Item 25).

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

<u>**Item 14.**</u>        **Current Lawsuits Filed Against the Corporation**

List all pending lawsuits that have been filed against the corporation in court or before an administrative agency.  (List lawsuits that resulted in final judgments, settlements, or orders in Items 26 - 27).

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____  Relief Requested_____  Nature of Lawsuit_____

_____  Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____  Relief Requested_____  Nature of Lawsuit_____

_____  Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____  Relief Requested_____  Nature of Lawsuit_____

_____  Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____  Relief Requested_____  Nature of Lawsuit_____

_____  Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____  Relief Requested_____  Nature of Lawsuit_____

_____  Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____  Relief Requested_____  Nature of Lawsuit_____

_____  Status_____

**Item 15.**        **Bankruptcy Information**

List all state insolvency and federal bankruptcy proceedings involving the corporation.

Commencement Date _____ Termination Date _____ Docket No. _____

If State Court: Court & County _____ If Federal Court: District _____

Disposition _____

**Item 16.**        **Safe Deposit Boxes**

List all safe deposit boxes, located within the United States or elsewhere, held by the corporation, or held by others for the benefit of the corporation.  *On a separate page, describe the contents of each box.*

| Owner's Name | Name & Address of Depository Institution | Box No. |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

## FINANCIAL INFORMATION

**REMINDER:  When an Item asks for information about assets or liabilities "held by the corporation," include ALL such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.**

**Item 17.**        **Tax Returns**

List all federal and state corporate tax returns filed for the last three complete fiscal years.  *Attach copies of all returns.*

| Federal/ State/Both | Tax Year | Tax Due Federal | Tax Paid Federal | Tax Due State | Tax Paid State | Preparer's Name |
|---|---|---|---|---|---|---|
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |

**Item 18.** **Financial Statements**

List all financial statements that were prepared for the corporation's last three complete fiscal years and for the current fiscal year-to-date. *Attach copies of all statements, providing audited statements if available.*

| Year | Balance Sheet | Profit & Loss Statement | Cash Flow Statement | Changes in Owner's Equity | Audited? |
|------|---------------|-------------------------|---------------------|----------------------------|----------|
| _____ | _____ | _____ | _____ | _____ | \_\_\_\_\_ |
| _____ | _____ | _____ | _____ | _____ | \_\_\_\_\_ |
| _____ | _____ | _____ | _____ | _____ | \_\_\_\_\_ |
| _____ | _____ | _____ | _____ | _____ | \_\_\_\_\_ |

**Item 19.** **Financial Summary**

For each of the last three complete fiscal years and for the current fiscal year-to-date for which the corporation has not provided a profit and loss statement in accordance with Item 18 above, provide the following summary financial information.

| | Current Year-to-Date | 1 Year Ago | 2 Years Ago | 3 Years Ago |
|--|----------------------|------------|-------------|-------------|
| Gross Revenue | $_____ | $_____ | $_____ | $_____ |
| Expenses | $_____ | $_____ | $_____ | $_____ |
| Net Profit After Taxes | $_____ | $_____ | $_____ | $_____ |
| Payables | $_____ | | | |
| Receivables | $_____ | | | |

**Item 20.** **Cash, Bank, and Money Market Accounts**

List cash and all bank and money market accounts, including but not limited to, checking accounts, savings accounts, and certificates of deposit, held by the corporation. The term "cash" includes currency and uncashed checks.

Cash on Hand $_____ Cash Held for the Corporation's Benefit $_____

| Name & Address of Financial Institution | Signator(s) on Account | Account No. | Current Balance |
|------------------------------------------|------------------------|-------------|------------------|
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |

Case 5:23-cv-00021-JGB-PLA Document 153 Filed 04/09/24 Page 237 of 263 Page ID
Case 5:18-cv-02004-SJO-PLA Document 59 Filed 1/09/18 Page 36 of 70 Page ID#:1045
#:1045

<u>**Item 21.**</u>        **Government Obligations and Publicly Traded Securities**

List all U.S. Government obligations, including but not limited to, savings bonds, treasury bills, or treasury notes, held by the corporation. Also list all publicly traded securities, including but not limited to, stocks, stock options, registered and bearer bonds, state and municipal bonds, and mutual funds, held by the corporation.

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____


<u>**Item 22.**</u>        **Real Estate**

List all real estate, including leaseholds in excess of five years, held by the corporation.

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____


Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

<u>**Item 23.**</u>　　　　**Other Assets**

List all other property, by category, with an estimated value of $2,500 or more, held by the corporation, including but not limited to, inventory, machinery, equipment, furniture, vehicles, customer lists, computer software, patents, and other intellectual property.

| <u>Property Category</u> | <u>Property Location</u> | <u>Acquisition Cost</u> | <u>Current Value</u> |
|---|---|---|---|
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |

<u>**Item 24.**</u>　　　　**Trusts and Escrows**

List all persons and other entities holding funds or other assets that are in escrow or in trust for the corporation.

| <u>Trustee or Escrow Agent's Name & Address</u> | <u>Description and Location of Assets</u> | <u>Present Market Value of Assets</u> |
|---|---|---|
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |

**Item 25.**      **Monetary Judgments and Settlements Owed To the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed to the corporation.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____


**Item 26.**      **Monetary Judgments and Settlements Owed By the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed by the corporation.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

**Item 27.**      **Government Orders and Settlements**

List all existing orders and settlements between the corporation and any federal or state government entities.

Name of Agency _____ Contact Person _____

Address _____ Telephone No. _____

Agreement Date _____ Nature of Agreement _____

**Item 28.**      **Credit Cards**

List all of the corporation's credit cards and store charge accounts and the individuals authorized to use them.

<u>Name of Credit Card or Store</u>               <u>Names of Authorized Users and Positions Held</u>

_____       _____

_____       _____

_____       _____

_____       _____

_____       _____

**Item 29.**      **Compensation of Employees**

List all compensation and other benefits received from the corporation by the five most highly compensated employees, independent contractors, and consultants (other than those individuals listed in Items 5 and 6 above), for the two previous fiscal years and current fiscal year-to-date. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, bonuses, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| <u>Name/Position</u> | <u>Current Fiscal Year-to-Date</u> | <u>1 Year Ago</u> | <u>2 Years Ago</u> | <u>Compensation or Type of Benefits</u> |
|---|---|---|---|---|
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |

**Item 30.**  **Compensation of Board Members and Officers**

List all compensation and other benefits received from the corporation by each person listed in Items 5 and 6, for the current fiscal year-to-date and the two previous fiscal years. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
|---|---|---|---|---|
| _____ | \$_____ | \$_____ | \$_____ | _____ |
| _____ | \$_____ | \$_____ | \$_____ | _____ |
| _____ | \$_____ | \$_____ | \$_____ | _____ |
| _____ | \$_____ | \$_____ | \$_____ | _____ |
| _____ | \$_____ | \$_____ | \$_____ | _____ |
| _____ | \$_____ | \$_____ | \$_____ | _____ |
| _____ | \$_____ | \$_____ | \$_____ | _____ |
| _____ | \$_____ | \$_____ | \$_____ | _____ |

**Item 31.**  **Transfers of Assets Including Cash and Property**

List all transfers of assets over $2,500 made by the corporation, other than in the ordinary course of business, during the previous three years, by loan, gift, sale, or other transfer.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value | Transfer Date | Type of Transfer (*e.g.*, Loan, Gift) |
|---|---|---|---|---|
| _____ | _____ | \$_____ | _____ | _____ |
| _____ | _____ | \$_____ | _____ | _____ |
| _____ | _____ | \$_____ | _____ | _____ |
| _____ | _____ | \$_____ | _____ | _____ |
| _____ | _____ | \$_____ | _____ | _____ |

Page 14      Initials _____

<u>**Item 32.**</u>      **Documents Attached to the Financial Statement**

List all documents that are being submitted with the financial statement.

| <u>Item No. Document<br>Relates To</u> | <u>Description of Document</u> |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court. I have used my best efforts to obtain the information requested in this statement. The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge. I have provided all requested documents in my custody, possession, or control. I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines). I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____          _____
(Date)                               Signature

                                     _____
                                     Corporate Position

Case 5:23-cv-00021-JGB-PLA Document 45-3 Filed 04/09/24 Page 243 of 263 Page ID
Case 5:18-cv-02104-SJO-PLA Document 59 Filed 11/09/18 Page 66 of 70 Page ID #:3094
#:1051

# ATTACHMENT C

Case 5:23-cv-00021-JGB   Document 45-3   Filed 04/09/24   Page 244 of 263   Page ID
#:1052
Case 5:18-cv-02104-SJO-PLA   Document 59   Filed 11/09/24   Page 67 of 76   Page ID #:395

Form **4506**

(July 2017)

Department of the Treasury
Internal Revenue Service

# Request for Copy of Tax Return

▶ Do not sign this form unless all applicable lines have been completed.

▶ **Request may be rejected if the form is incomplete or illegible.**

▶ For more information about Form 4506, visit *www.irs.gov/form4506*.

OMB No. 1545-0429

**Tip.** You may be able to get your tax return or return information from other sources. If you had your tax return completed by a paid preparer, they should be able to provide you a copy of the return. The IRS can provide a **Tax Return Transcript** for many returns free of charge. The transcript provides most of the line entries from the original tax return and usually contains the information that a third party (such as a mortgage company) requires. See **Form 4506-T, Request for Transcript of Tax Return,** or you can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." or call 1-800-908-9946.

| | |
|---|---|
| **1a** Name shown on tax return. If a joint return, enter the name shown first. | **1b** First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions) |
| **2a** If a joint return, enter spouse's name shown on tax return. | **2b** Second social security number or individual taxpayer identification number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

**4** Previous address shown on the last return filed if different from line 3 (see instructions)

**5** If the tax return is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

**Caution:** If the tax return is being mailed to a third party, ensure that you have filled in lines 6 and 7 before signing. Sign and date the form once you have filled in these lines. Completing these steps helps to protect your privacy. Once the IRS discloses your tax return to the third party listed on line 5, the IRS has no control over what the third party does with the information. If you would like to limit the third party's authority to disclose your return information, you can specify this limitation in your written agreement with the third party.

**6** **Tax return requested.** Form 1040, 1120, 941, etc. and all attachments as originally submitted to the IRS, including Form(s) W-2, schedules, or amended returns. Copies of Forms 1040, 1040A, and 1040EZ are generally available for 7 years from filing before they are destroyed by law. Other returns may be available for a longer period of time. Enter only one return number. If you need more than one type of return, you must complete another Form 4506. ▶ _____

**Note:** If the copies must be certified for court or administrative proceedings, check here . . . . . . . . . . . . . ☐

**7** **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than eight years or periods, you must attach another Form 4506.

_____   _____   _____   _____

_____   _____   _____   _____

**8** **Fee.** There is a $50 fee for each return requested. **Full payment must be included with your request or it will be rejected. Make your check or money order payable to "United States Treasury." Enter your SSN, ITIN, or EIN and "Form 4506 request" on your check or money order.**

| | | | |
|---|---|---|---|
| **a** | Cost for each return | $ | 50.00 |
| **b** | Number of returns requested on line 7 | | |
| **c** | Total cost. Multiply line 8a by line 8b | $ | |

**9** If we cannot find the tax return, we will refund the fee. If the refund should go to the third party listed on line 5, check here . . . . . . ☐

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax return requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506 on behalf of the taxpayer. **Note:** This form must be received by IRS within 120 days of the signature date.

☐   **Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506.** See instructions.

Phone number of taxpayer on line 1a or 2a

**Sign Here**

▶ Signature (see instructions)                         Date

▶ Title (if line 1a above is a corporation, partnership, estate, or trust)

▶ Spouse's signature                                  Date

**For Privacy Act and Paperwork Reduction Act Notice, see page 2.**

67

Cat. No. 41721E

Form **4506** (Rev. 7-2017)

Form 4506 (Rev. 7-2017)  Page **2**

Section references are to the Internal Revenue Code unless otherwise noted.

## Future Developments

For the latest information about Form 4506 and its instructions, go to *www.irs.gov/form4506*. Information about any recent developments affecting Form 4506, Form 4506-T and Form 4506T-EZ will be posted on that page.

## General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Purpose of form.** Use Form 4506 to request a copy of your tax return. You can also designate (on line 5) a third party to receive the tax return.

**How long will it take?** It may take up to 75 calendar days for us to process your request.

**Tip.** Use Form 4506-T, Request for Transcript of Tax Return, to request tax return transcripts, tax account information, W-2 information, 1099 information, verification of nonfiling, and records of account.

**Automated transcript request.** You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." or call 1-800-908-9946.

**Where to file.** Attach payment and mail Form 4506 to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual returns (Form 1040 series) and one for all other returns.

If you are requesting a return for more than one year or period and the chart below shows two different addresses, send your request to the address based on the address of your most recent return.

## Chart for individual returns (Form 1040 series)

| If you filed an individual return and lived in: | Mail to: |
|---|---|
| Alabama, Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team Stop 6716 AUSC Austin, TX 73301 |
| Alaska, Arizona, Arkansas, California, Colorado, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | Internal Revenue Service RAIVS Team Stop 37106 Fresno, CA 93888 |
| Connecticut, Delaware, District of Columbia, Florida, Georgia, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia | Internal Revenue Service RAIVS Team Stop 6705 P-6 Kansas City, MO 64999 |

## Chart for all other returns

| If you lived in or your business was in: | Mail to: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Texas, Utah, Washington, Wyoming, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 |
| Connecticut, Delaware, District of Columbia, Georgia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, West Virginia, Wisconsin | Internal Revenue Service RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250 |

## Specific Instructions

**Line 1b.** Enter your employer identification number (EIN) if you are requesting a copy of a business return. Otherwise, enter the first social security number (SSN) or your individual taxpayer identification number (ITIN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 3.** Enter your current address. If you use a P.O. box, please include it on this line 3.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address. For a business address, file Form 8822-B, Change of Address or Responsible Party — Business.

**Signature and date.** Form 4506 must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506 within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines are completed before signing.



*You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed and returned to you if the box is unchecked.*

**Individuals.** Copies of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506 exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506 can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506 but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506 can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506 for a taxpayer only if this authority has been specifically delegated to the representative on Form 2848, line 5. Form 2848 showing the delegation must be attached to Form 4506.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested return(s) under the Internal Revenue Code. We need this information to properly identify the return(s) and respond to your request. If you request a copy of a tax return, sections 6103 and 6109 require you to provide this information, including your SSN or EIN, to process your request. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506 will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 16 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506 simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224.

Do not send the form to this address. Instead, see *Where to file* on this page.

# ATTACHMENT D

## CONSENT TO RELEASE FINANCIAL RECORDS

I, _____ of _____, (City, State), do hereby direct any bank, saving and loan association, credit union, depository institution, finance company, commercial lending company, credit card processor, credit card processing entity, automated clearing house, network transaction processor, bank debit processing entity, automated clearing house, network transaction processor, bank debit processing entity, brokerage house, escrow agent, money market or mutual fund, title company, commodity trading company, trustee, or person that holds, controls, or maintains custody of assets, wherever located, that are owned or controlled by me or at which there is an account of any kind upon which I am authorized to draw, and its officers, employees, and agents, to disclose all information and deliver copies of all documents of every nature in its possession or control which relate to the said accounts to any attorney of the Federal Trade Commission, and to give evidence relevant thereto, in the matter of [            ], now pending in the United States District Court of [            ], and this shall be irrevocable authority for so doing.

This direction is intended to apply to the laws of countries other than the United States of America which restrict or prohibit disclosure of bank or other financial information without the consent of the holder of the account, and shall be construed as consent with respect hereto, and the same shall apply to any of the accounts for which I may be a relevant principal.

Dated:_____        Signature:_____

Printed Name:_____

# EXHIBIT 18
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 19

1  Michael Gerard Fletcher (State Bar No. 070849)
    mfletcher@frandzel.com
2  Craig A. Welin (State Bar No. 138418)
    cwelin@frandzel.com
3  Hal D. Goldflam (State Bar No. 179689)
    hgoldflam@frandzel.com
4  FRANDZEL ROBINS BLOOM & CSATO, L.C.
    1000 Wilshire Boulevard, Nineteenth Floor
5  Los Angeles, California 90017-2427
    Telephone: (323) 852-1000
6  Facsimile: (323) 651-2577

7  Attorneys for Receiver ROBB EVANS
    AND ASSOCIATES LLC

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                   WESTERN DIVISION

12

13  FEDERAL TRADE COMMISSION,        Case No. 5:18-cv-02104-SJO-PLA

14         Plaintiff,                **NOTICE OF APPLICATION AND**
                                     **APPLICATION FOR ORDER**
15      v.                           **APPROVING AND AUTHORIZING**
                                     **PAYMENT OF RECEIVER'S AND**
16  JASON CARDIFF, etc., et al.,     **RECEIVER'S COUNSEL'S FEES**
                                     **AND EXPENSES FOR THE**
17         Defendants.               **PERIOD FROM INCEPTION OF**
                                     **RECEIVERSHIP ESTATE**
18                                   **THROUGH NOVEMBER 30, 2018;**
                                     **MEMORANDUM OF POINTS AND**
19                                   **AUTHORITIES**

20                                   [Local Rule 66-7(f)]

21                                   Date:  February 19, 2019
                                     Time:  10:00 a.m.
22                                   Place: Courtroom 10C, West 1st Street
                                     Judge: Hon. S. James Otero
23

24

25

26

27

28
NOTICE OF APPLICATION AND APPLICATION FOR ORDER APPROVING AND AUTHORIZING
PAYMENT OF RECEIVER'S AND RECEIVER'S COUNSEL'S FEES AND EXPENSES, ETC.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  TO: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT

2  JUDGE, THE PARTIES TO THIS ACTION, AND TO ALL KNOWN

3  CREDITORS AND OTHER PARTIES IN INTEREST:

4  PLEASE TAKE NOTICE that on February 19, 2019, at 10:00 a.m., or as

5  soon thereafter as the parties may be heard in Courtroom 10C of the above-entitled

6  court located at 350 West 1st Street, Tenth Floor, Los Angeles, California 90012,

7  Robb Evans & Associates LLC, as Receiver of Redwood Scientific Technologies,

8  Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood

9  Scientific Technologies, Inc. (Delaware), Identify, LLC, Advance Men's Institute

10  Prolongz LLC, Run Away Productions, LLC, Carols Place Limited Partnership, and

11  each of their subsidiaries, affiliates, successors, and assigns, and of assets of Jason

12  Cardiff and Eunjung Cardiff (collectively, the "Receivership Defendants"), will and

13  hereby does apply to the Court for an order approving the payment of the fees and

14  expenses of the Receiver, the Receiver's staff, and the Receiver's outside counsel,

15  Frandzel Robins Bloom & Csato, L.C., for the period from inception of the

16  receivership estate (October 10, 2018) through November 30, 2018 ("First

17  Reporting Period"). During the First Reporting Period (a) the fees and costs of the

18  Receiver and its staff totaled $122,206.83 (consisting of $117,562.20 in fees and

19  $4,4644.63 in costs), and (b) the fees and costs of FRBC totaled $66,267.45

20  (consisting of $55,909.00 in fees and $10,358.45 in costs), for a total of

21  $188,474.28.

22  PLEASE TAKE FURTHER NOTICE that this Application is made pursuant

23  to Local Rule 66-7(f) and in accordance with the latest of the Court's preliminary

24  injunctions issued in this action, namely Preliminary Injunction with Asset Freeze,

25  Receiver, and Other Equitable Relief against Jason Cardiff and Eunjung Cardiff

26  (Doc. No. 59, filed on November 8, 2018), which requires the Receiver to file with

27  the Court and serve on the parties periodic requests for the payment of reasonable

28  compensation for the Receiver's and the Receiver's hired personnel, including

3179670.1 | 078410-0061                2                Case No. 5:18-cv-02104-SJO-PLA
NOTICE OF APPLICATION AND APPLICATION FOR ORDER APPROVING AND AUTHORIZING
PAYMENT OF RECEIVER'S AND RECEIVER'S COUNSEL'S FEES AND EXPENSES, ETC.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  counsel to the Receiver, and for actual out-of-pocket expenses incurred by them,

2  with the first such request filed no more than 60 days after the entry of said Order.

3  Further, to the extent L.R. 7-3 applies to this Application, please see the discussion

4  in the concurrently filed Declaration of Craig A. Welin regarding the Receiver's

5  attempt to comply with this local rule.

6      This Application is based upon this Notice and the attached Memorandum of

7  Points and Authorities; the concurrently filed Declarations of Brick Kane and Craig

8  A. Welin and exhibits thereto; upon the pleadings, records and files of this case of

9  which the Receiver requests the Court take judicial notice, and upon all other further

10  pleadings, oral and documentary evidence and argument of counsel as may be

11  presented by the Receiver at or before the time of the hearing on this Application.

12      PLEASE TAKE FURTHER NOTICE that a copy of this Application and

13  supporting declarations and exhibits are posted on the Receiver's website at

14  https://www.robbevans.com/find-a-case/redwood-scientific-technologies-inc-et-al/

15  where they may be reviewed in their entirety. This Application, attached

16  Memorandum of Points and Authorities, and concurrently filed declarations and

17  exhibits are being served on all parties herein. While a copy of this Application and

18  attached Memorandum of Points and Authorities is being served on all known

19  creditors and interested parties (see attached Service List), these third-parties may

20  obtain copies of the supporting declarations by accessing the Receiver's website or

21  by sending a written request to: Robb Evans & Associates LLC, 11450 Sheldon

22  Street, Sun Valley, California 91352-1121; Telephone (818) 768-8100; Facsimile:

23  (818) 768-8802.

DATED: January 7, 2019

FRANDZEL ROBINS BLOOM & CSATO, L.C.
MICHAEL GERARD FLETCHER
CRAIG A. WELIN
HAL D. GOLDFLAM


By: /s/ CRAIG A. WELIN
     CRAIG A. WELIN
     Attorneys for Receiver ROBB
     EVANS & ASSOCIATES LLC

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

3179670.1 | 078410-0061

4

Case No. 5:18-cv-02104-SJO-PLA

NOTICE OF APPLICATION AND APPLICATION FOR ORDER APPROVING AND AUTHORIZING
PAYMENT OF RECEIVER'S AND RECEIVER'S COUNSEL'S FEES AND EXPENSES, ETC.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   CHRONOLOGICAL FACTS

1. On October 10, 2018, the Federal Trade Commission ("FTC") initiated this action alleging violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a), among other alleged violations of federal laws and regulations.

2. On October 10, 2018, the Court issued its *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Temporary Restraining Order"), whereby the Court appointed Robb Evans & Associates LLC as the Temporary Receiver of the Receivership Entities and of the assets of Jason Cardiff and Eunjung Cardiff as more particularized therein. [Doc. No. 1.]

3. On October 24, 2018, the Court entered its Preliminary Injunction with Asset Freeze, Receiver, and Other Equitable Relief Against Redwood Scientific Technologies, Inc. (CA), etc. Appointment of a Receiver, and Other Equitable Relief, whereby the Court ordered that Robb Evans & Associates LLC shall continue to serve as the Receiver of the Receivership Entities with full powers of an equity receiver. [Doc. No. 46.]

4. On October 24, 2018, the Court entered its Order Extending Temporary Restraining Order and Granting Continuance of Preliminary Injunction Hearing for Defendant Danielle Cadiz. [Doc. No. 47.]

5. On October 24, 2018, the Court entered its Order Extending Temporary Restraining Order and Granting Continuance of Preliminary Injunction Hearing for Defendants Jason Cardiff and Eunjung Cardiff and Ordering them to Return Assets. [Doc. No. 48.]

6. On October November 1, 2018, the Receiver filed Report of Activities for the period from October 10, 2018 through October 31, 2018 ("First Report of Activities"). [Doc. No. 52; *see also* Doc. 53 Notice of Errata – whereby a readable

copy of page 9 of the First Report of Activities was filed.]

7.     On November 7, 2018, the Court entered its Stipulated Preliminary Injunction as to Defendant Danielle Cadiz, whereby the Court ordered that Robb Evans & Associates LLC shall continue to serve as the Receiver of the Receivership Entities with full powers of an equity receiver [Doc. No. 55.]

8.     On November 8, 2018, the Court entered its Preliminary Injunction with Asset Freeze, Receiver, and Other Equitable Relief Against Jason Cardiff and Eunjung Cardiff ("Preliminary Injunction"), whereby the Court ordered that Robb Evans & Associates LLC shall continue to serve as the Receiver of the Receivership Entities and of the Assets of Defendants Jason Cardiff and Eunjung Cardiff, as more particularized therein, with full powers of an equity receiver. [Doc. No. 59.]

9.     Pursuant to Section XXII of the Preliminary Injunction, the Court ordered that:

> "the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, or in the possession or control of, or which may be received by the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order."

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

## II. THE RECEIVER'S AND RECEIVER'S COUNSEL'S FEES, EXPENSES, AND ACTIVITIES DURING THE FIRST REPORTING PERIOD

During the First Reporting Period (October 10, 2018, through November 30, 2018), the fees and costs of the Receiver, the Receiver's deputies, and staff totaled $122,206.83, consisting of $117,562.20 in fees and $4,4644.63 in costs. The legal fees and costs of the Receiver's counsel, Frandzel Robins Bloom & Csato, L.C. ("FRBC"), which the Receiver hired pursuant to the authority given to the Receiver in the Court's Temporary Restraining Order at § XVI.G., and the Preliminary Injunction at § XVI.G., totaled $66,267.45, consisting of $55,909.00 in fees and $10,358.45 in costs. Accordingly, the total of receivership fees and expenses incurred during the First Reporting Period which the Receiver seeks an order authorizing payment is $188,474.28. (*See* concurrently filed Declaration of Brick Kane.)

The activities undertaken by the Receiver, the Receiver's duties, and staff from inception of the receivership estate through November 30, 2019 are described in part in the First Report of Activities and are further detailed in the Receiver's monthly billing summaries reflecting the services rendered and time spent by the Receiver. (*See* Declaration of Brick Kane, Exhs. 1, 3.) The activities described in the First Report of Activities generally have continued First Reporting Period in the context of the Receiver's efforts to identify, obtain, safeguard and preserve assets of the receivership estate and otherwise to perform its duties and responsibilities under the authority granted by the Temporary Restraining Order and Preliminary Injunction. (*Id.*) FRBC assisted the Receiver during the First Reporting Period in the manner described in the concurrently filed Declaration of Craig A. Welin.

The Receiver respectfully submits that in light of the work performed during the First Reporting Period, the fees and costs of the Receiver and its professionals are reasonable and should be approved and authorized for payment in their entirety.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

## III.    <u>CONCLUSION</u>

Based on the foregoing and the concurrently filed Declarations of Brick Kane and Craig A. Welin (and Exhibits thereto), the Receiver respectfully requests that the Court grant the Application and that it issue an order deeming that, in light of the work performed during the First Reporting Period, the fees and costs of the Receiver and its professionals are reasonable and should be approved and authorized for payment in their entirety.

Dated: January 7, 2019      FRANDZEL ROBINS BLOOM & CSATO, L.C.
MICHAEL GERARD FLETCHER
CRAIG A. WELIN
HAL D. GOLDFLAM

By:    /S/ CRAIG A. WELIN
       CRAIG A. WELIN
       Attorneys for Receiver ROBB EVANS & ASSOCIATES LLC

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

NOTICE OF APPLICATION AND APPLICATION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF RECEIVER'S AND RECEIVER'S COUNSEL'S FEES AND EXPENSES, ETC.

# PROOF OF SERVICE

### FTC v. Jason Cardiff
### Case No. 5:18-cv-2104

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles, State of California. I am employed in the office of Frandzel Robins Bloom & Csato, L.C., members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 1000 Wilshire Boulevard, Nineteenth Floor, Los Angeles, CA 90017-2427.

On **January 7, 2019**, I served true copy(ies) of the **NOTICE OF APPLICATION AND APPLICATION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF RECEIVER'S AND RECEIVER'S COUNSEL'S FEES AND EXPENSES FOR THE PERIOD FROM INCEPTION OF RECEIVERSHIP ESTATE THROUGH NOVEMBER 30, 2019; MEMORANDUM OF POINTS AND AUTHORITIES**, the original(s) of which is(are) affixed hereto. to the party(ies) on the attached service list.

### SEE ATTACHED SERVICE LIST

☒ **BY MAIL:** I placed the envelope for collection and mailing at Los Angeles, California. The envelope was mailed with postage fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒ **BY E-MAIL:** At approximately _____, I caused said document(s) to be transmitted by electronic mail. The name(s) and e-mail addresses of the person(s) served are set forth in the service list. The document was transmitted by electronic transmission and without error.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on **January 7, 2019**, at Los Angeles, California.

Barbara Wilson

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**SERVICE LIST**
**FTC v. Jason Cardiff**
**Case No. 5:18-cv-2104**

**Electronic Mail Notice List**

- **Michael Gerard Fletcher**
  mfletcher@frandzel.com,sking@frandzel.com
- **Hal D Goldflam**
  hgoldflam@frandzel.com,bwilson@frandzel.com
- **Shira D Modell**
  smodell@ftc.gov
- **Stacy Rene Procter**
  sprocter@ftc.gov
- **James A Prunty**
  jprunty@ftc.gov,mengle@ftc.gov
- **Edwin Rodriguez**
  erodriguez@ftc.gov
- **Elizabeth Jones Sanger**
  esanger@ftc.gov,csands@ftc.gov
- **Jesse James Thaler**
  jessejthaler@gmail.com
- **Craig A Welin**
  cwelin@frandzel.com,bwilson@frandzel.com

**U.S. Mail List**

Jason Cardiff, individually                    Defendant
870 N. Mountain Avenue, Suite 115
Upland, CA  91786

Eunjung Cardiff a/k/a Eunjung Lee a/k/a        Defendant
Eunjung No
700 W. 25th Street
Upland, CA  91784

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**CREDITORS SERVICE LIST**

<u>Via E-Mail</u>

CMS c/o Renata Bukham, Esq.
renatabukhmanesq.com

Corporation Service Company
UCCSPREP@CSCINFO.COM

<u>Via U.S. Mail</u>

| | |
|---|---|
| Ace Funding Source LLC<br>366 North Bradway<br>Jericho, NY 11753 | Allen, Maxwell & Silver, Inc.<br>(collection agent for Facebook)<br>P.O. 540<br>Fair Lan, NJ 07410 |
| American Express<br>P.O. Box 981535<br>El Paso, TX 79998-1535 | App Group International LLC<br>85 Broadway Street, 17th Floor<br>New York, NY 10004 |
| California Secretary of State<br>1500 11th St.<br>Sacramento, CA 95814 | Corporate Filings LLC<br>30 N Gould St., Suite 7001<br>Sheridan, WY 82801 |
| Corporation Service Company<br>PO Box 2576<br>Springfield, IL 62708 | Corporation Service Company<br>801 Adlai Stevenson Drive<br>Springfield, IL 62703-4261 |
| County of San Bernardino - Central<br>Collections<br>268 West Hospitality Lane, Second Floor<br>San Bernardino, CA 92415-0465 | DAISY IT Supplies, Sales & Service<br>8575 Red Oak Ave<br>Rancho Cucamonga, CA 91730-4823 |
| Florida Dept of Agriculture and Consumer<br>Services<br>The Rhodes Building<br>2005 Alalachee Parkway<br>Tallahassee, Florida 32399-6500 | Franchise Tax Board<br>P.O. Box 942857<br>Sacramento, CA 94257-0021 |
| Franchise Tax Board<br>Special Procedures Sections; Att.: Tuan<br>Nguyen<br>P.O. Box 2952, Mail Stop A-345<br>Sacramento, CA 95812-2952 | Franchise Tax Board - State of California<br>P.O. Box 942867<br>Sacramento, CA 94267-0011 |
| Frontier<br>P.O. Box 740407<br>Cincinnati, OH 45274-0407 | Inter/Media Time Buying Corporation<br>Peter Bisno, Esq.<br>BISNO MULVANEY, LLP<br>15760 Ventura Boulevard, Suite 1200<br>Encino, CA 91436 |

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

NOTICE OF APPLICATION AND APPLICATION FOR ORDER APPROVING AND AUTHORIZING
PAYMENT OF RECEIVER'S AND RECEIVER'S COUNSEL'S FEES AND EXPENSES, ETC.

| | |
|---|---|
| Internal Revenue Service<br>Mail Stop 5022<br>300 N. Los Angeles Street<br>Los Angeles, CA 90012 | Internal Revenue Service<br>Samson Cheng<br>9350 Flair Drive<br>El Monte, CA 91731 |
| Internal Revenue Service<br>Ogden, UT 84201-0038 | Intrisnic LLC c/o First Western Credit<br>P.O. Box 391<br>El Mirage, AZ 91711 |
| Lien Solutions<br>P.O. Box 29071<br>Glendale, CA 91209-9071 | Mailing House<br>1050 East Valencia Drive<br>Fullerton, CA 92831 |
| Nevada Department of Taxation<br>Grant Sawyer Office Building<br>555 E. Washington Ave., Ste 1300<br>Las Vegas, NV 89101 | Nevada Registered Agent LLC<br>401 Ryland St., Suite 200A<br>Reno, NV 89502 |
| Nevada Secretary of State<br>101 North Carson St., Suite 3<br>Carson City, NV 89701 | Paper Recycling & Shredding Specialists, Inc.<br>P.O. Box 3074<br>San Dimas, CA 91773 |
| ReadyRefresh by Nestle<br>P.O. Box 856158<br>Louisville, KY 40285-6158 | Riverside County DCSS - Main Office<br>2041 Iowa Ave.<br>Riverside, CA 92507-2414 |
| State of CA - Employment Development<br>Department<br>P.O. Box 826880<br>MIC 4<br>Sacramento, CA 94280-0001 | State of CA - Employment Development<br>Department<br>P.O. Box 989151<br>W. Sacramento, CA 95798-9151 |
| Telecheck Services, Inc.<br>P.O. Box 60028<br>City of Industry, CA 91716-0028 | Time Warner Cable<br>P.O. Box 60074<br>City of Industry, CA 91716-0074 |
| T-Mobile<br>P.O. Box 790047<br>St. Louis, MO 63179-0047 | USPS c/o Collections Acquisition Company, Inc.<br>2 Easton Oval, Suite 310<br>Columbus, OH 43219-6011 |

FRANDZEL ROBINS BLOOM & CSATO, L.C.<br>1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR<br>LOS ANGELES, CALIFORNIA 90017-2427<br>(323) 852-1000

NOTICE OF APPLICATION AND APPLICATION FOR ORDER APPROVING AND AUTHORIZING
PAYMENT OF RECEIVER'S AND RECEIVER'S COUNSEL'S FEES AND EXPENSES, ETC.

# EXHIBIT 20
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 21

## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]