1  Stephen G. Larson (SBN 145225)
   *slarson@larsonllp.com*
2  Hilary Potashner (SBN 167060)
   *hpotashner@larsonllp.com*
3  Jonathan Gershon (SBN 306979)
   *jgershon@larsonllp.com*
4  **LARSON LLP**
   555 South Flower Street, 30th Floor
5  Los Angeles, California 90071
   Telephone:(213) 436-4888
6  Facsimile: (213) 623-2000

7  Attorneys for Defendant
   JASON EDWARD THOMAS CARDIFF

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11 | UNITED STATES OF AMERICA,      | Case No. 5:23-CR-00021-JGB

12 |             Plaintiff,          | **EXHIBIT NOS. 22-64**
                                      **TO DECLARATION OF STEPHEN**
13 |        vs.                      | **G. LARSON IN SUPPORT OF**
                                      **MOTION TO DISMISS**
14 | JASON EDWARD THOMAS            | **INDICTMENT WITH PREJUDICE**
   | CARDIFF,
15 |                                 | **VOLUME 2 OF 5**
   |             Defendant.
16 |                                 | [*Filed concurrently with Motion to*
                                      *Dismiss Indictment with Prejudice;*
17 |                                 | *Declaration of Stephen G. Larson; and*
                                      *[Proposed] Order*]
18 |
                                      Date:        May 6, 2024
19 |                                 | Time:        2:00 p.m.
                                      Courtroom:   1
20

21

22

23

24

25

26

27

28

LARSON
LOS ANGELES

EXHIBITS TO DECLARATION OF STEPHEN LARSON IN SUPPORT OF MOTION TO DISMISS
INDICTMENT WITH PREJUDICE

**INDEX OF EXHIBITS TO DECLARATION OF STEPHEN G. LARSON IN SUPPORT OF MOTION TO DISMISS INDICTMENT WITH PREJUDICE**

| EXH. NO. | DESCRIPTION |
|---|---|
| 1 | ██████████████████████████████████████ dated July 17, 2018 to October 2, 2022. |
| 2 | ██████████████████████████████████████ Bates Number GOV005_00000495. |
| 3 | ██████████████████████████████████████, Bates Number GOV005_00000376. |
| 4 | ██████████████████ Bates Number GOV005_00000475. |
| 5 | ██████████████████, Bates Number GOV005_00000378. |
| 6 | ██████████████████, Bates Number GOV005_00000498. |
| 7 | ██████████████████, Bates Number GOV005_00000539. |
| 8 | ██████████████████, Bates Number GOV005_00000507. |
| 9 | ██████████████████, Bates Number GOV005_00000509. |
| 10 | ██████████████████, Bates Number GOV_MOI_001552–53. |
| 11 | FTC's Complaint for Permanent Injunction and Other Equitable Relief, filed on October 10, 2018, Case No. 5:18-cv-02104-DMG-PLA ("FTC Action"), ECF No. 1. |
| 12 | ██████████████████ Bates Number GOV005_00000424. |

| EXH. NO. | DESCRIPTION |
|---|---|
| 13 | FTC's Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, filed on October 10, 2018, FTC Action, ECF No. 29. |
| 14 | Excerpt of Receiver's Declarations of Brick Kane and Craig A. Welin in Support of Application for Receiver's Counsel's Fees and Expenses, filed on January 7, 2019, FTC Action, ECF No. 81-1. |
| 15 | ██████████████████████, Bates Number GOV005_00000425. |
| 16 | ████████████████████, Bates Number GOV_MOI_001092–93. |
| 17 | FTC's Preliminary Injunction with Asset Freeze, Receiver, and Other Equitable Relief Against Jason Cardiff and Eunjung Cardiff, filed on November 8, 2018, FTC Action, ECF No. 59. |
| 18 | ██████████████████, Bates Number GOV005_00000513. |
| 19 | Receiver's Notice of Application and Application for Order Approving Receiver's Counsel's Fees and Expenses, FTC Action, ECF No. 81. |
| 20 | ████████████████████, Bates Number GOV005_00000453. |
| 21 | ████████████████, Bates Number GOV005_00000451. |
| 22 | ██████████████ Bates Number GOV005_00000448. |
| 23 | █████████████C, Bates Number GOV005_00000426. |
| 24 | ████████████████ Bates Number GOV005_00000477. |
| 25 | ████████████████, Bates Number GOV005_00000579. |

LARSON
LOS ANGELES

| EXH. NO. | DESCRIPTION |
|---|---|
| 26 | Joint Motion for Protective Order filed on September 23, 2019, FTC Action, FTC Action, ECF No. 218. |
| 27 | Stipulated Protective Order filed on September 24, 2019, FTC Action, FTC Action, ECF No. 219. |
| 28 | ████████████████████ Bates Number GOV005_00000061. |
| 29 | ████████████████████████████████████████ , Bates Number GOV005_00000375. |
| 30 | ████████████████, Bates Number GOV005_00000377. |
| 31 | ████████████████████████████████, Bates Number GOV005_00000086. |
| 32 | ████████████████████████ Bates Number GOV005_00000063. |
| 33 | ████████████████████████ Bates Number GOV005_00000121. |
| 34 | ████████████████████, Bates Number GOV005_00000073. |
| 35 | ████████████████████████ Bates Number GOV005_00000155. |
| 36 | ████████████████████████, Bates Number GOV005_00000096. |
| 37 | ████████████████████, Bates Number GOV005_00000131. |
| 38 | ████████████████████████, Bates Number GOV005_00000002. |
| 39 | ████████████████████ Bates Number GOV005_00000038. |
| 40 | ████████████████████, Bates Number GOV_MOI_000972. |

| EXH. NO. | DESCRIPTION |
|---|---|
| 41 | ████████████████████████████, Bates Number GOV005_00000199. |
| 42 | ███████████████████████████████ Bates Number GOV005_00000005. |
| 43 | ███████████████████████████████, Bates Number GOV005_00000168. |
| 44 | ███████████████████████████████, Bates Number GOV005_00000198. |
| 45 | ███████████████████████████████, Bates Number GOV005_00000006. |
| 46 | ███████████████████████████████, Bates Number GOV005_00000565. |
| 47 | ███████████████████████████████ Bates Number GOV005_00000191. |
| 48 | Excerpt of Cardiff's Ex Parte Opposed Application filed on July 13, 2020, FTC Action, ECF No. 391. |
| 49 | FTC's Opposition to Ex Parte Application filed on July 14, 2020, FTC Action, ECF No. 395. |
| 50 | ███████████████████████████████, Bates Number GOV005_00000190. |
| 51 | Order Denying Ex Parte Application filed on July 16, 2020, FTC Action, ECF No. 403. |
| 52 | ███████████████████████████████ Bates Number GOV005_00000233. |
| 53 | ███████████████████████████████, Bates Number GOV001_00010766–71. |
| 54 | ███████████████████████████████, Bates Number GOV001_00001876–82. |
| 55 | ███████████████████████████████, Bates Number GOV001_00014341–45. |

EXHIBITS TO DECLARATION OF STEPHEN LARSON IN SUPPORT OF MOTION TO DISMISS
INDICTMENT WITH PREJUDICE

| EXH. NO. | DESCRIPTION |
|---|---|
| 56 | ███████████████████████████, Bates Number GOV001_00002003–23. |
| 57 | ██████████████████████████, Bates Number GOV001_00002203–26. |
| 58 | ███████████████████████████, Bates Number GOV001_00010849–69. |
| 59 | ████████████ Bates Number GOV001_00011061–62. |
| 60 | ████████ Bates Number GOV005_00000201. |
| 61 | ████████ Bates Number GOV005_00000018. |
| 62 | █████████████████ Bates Number GOV005_00000051. |
| 63 | ████████ Bates Number GOV005_00000020. |
| 64 | ████████████████████ Bates Number GOV005_00000140. |
| 65 | Receiver's Declarations of Brick Kane and Michael Gerard Fletcher, filed on September 2, 2020, FTC Action, ECF No. 479-1. |
| 66 | ██████████████████, Bates Number GOV005_00000186. |
| 67 | ████████████████████, Bates Number GOV005_00000182. |
| 68 | In Chambers—Order re Cross-Motions for Summary Judgment filed on October 9, 2020, FTC Action, ECF No. 511. |
| 69 | ███████████████████████, Bates Number GOV005_00000117. |
| 70 | ███████████████████, Bates Number GOV005_00000144. |

LARSON
LOS ANGELES

| EXH. NO. | DESCRIPTION |
|---|---|
| 71 | Receiver's Declarations of Brick Kane and Michael Gerard Fletcher, filed on January 8, 2021, FTC Action, ECF No. 537-1. |
| 72 | ████████████████████████ Bates Number GOV005_00000181. |
| 73 | ████████████████████████, Bates Number GOV005_00000029. |
| 74 | ████████████████████████████ Bates Number GOV005_00000266. |
| 75 | ████████████████████████, Bates Number GOV_MOI_000310. |
| 76 | ████████████████████████████, Bates Number GOV001_00029793–29811. |
| 77 | In Chambers - Order re Remedies filed on June 29, 2021, FTC Action, ECF No. 627. |
| 78 | ████████████████████████, Bates Number GOV005_00000290. |
| 79 | ████████████████████████, Bates Number GOV_MOI_001077–91. |
| 80 | █████████████████████████████ Bates Number GOV_MOI_001794–95. |
| 81 | In Chambers—Order Setting Dates filed August 26, 2021, FTC Action, ECF No. 650. |
| 82 | FTC's [Proposed] Final Judgment Including Permanent Injunction filed on September 3, 2021, FTC Action, ECF No. 651. |
| 83 | ████████████████████████ Bates Number GOV005_00000285. |
| 84 | Final Judgment Including Permanent Injunction as to Defendants Jason Cardiff and Eunjung Cardiff filed on March 1, 2022, FTC Action, ECF No. 706. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LARSON
LOS ANGELES

EXHIBITS TO DECLARATION OF STEPHEN LARSON IN SUPPORT OF MOTION TO DISMISS INDICTMENT WITH PREJUDICE

| EXH. NO. | DESCRIPTION |
|----------|-------------|
| 85 | Receiver's Final Report and Accounting, and Notice of Receiver's Final Fee Application filed on September 14, 2022, FTC Action, ECF No. 715. |
| 86 | Receiver's Declarations of Antia Jen and Michael Gerard Fletcher filed on September 14, 2022, FTC Action, ECF No. 715-1. |
| 87 | ██████████████████████████, Bates Number GOV005_00000270. |
| 88 | Order Approving the Receiver's Final Report and Accounting filed on September 30, 2022, FTC Action, ECF No. 716. |
| 89 | ██████████████████████████, Bates Number GOV005_00000269. |
| 90 | Plaintiff's Memorandum in Support of its Motion for Summary Judgment filed on August 6, 2020, FTC Action, ECF No. 423-2. |

EXHIBITS TO DECLARATION OF STEPHEN LARSON IN SUPPORT OF MOTION TO DISMISS
INDICTMENT WITH PREJUDICE

# EXHIBIT 22
## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document
Conditionally Filed Under
Seal]

# EXHIBIT 23
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 24
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 25
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 26

ELIZABETH JONES SANGER (pro hac vice)
esanger@ftc.gov; (202) 326-2757
SHIRA D. MODELL (pro hac vice)
smodell@ftc.gov; (202) 326-3116
JAMES A. PRUNTY (pro hac vice)
jprunty@ftc.gov; (202) 326-2438
EDWIN RODRIGUEZ (pro hac vice)
erodriguez@ftc.gov; (202) 326-3147
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
Fax: (202) 326-3259

STACY PROCTER (Local Counsel) (CA 221078)
sprocter@ftc.gov; (310) 824-4300
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Fax: (310) 824-4380
ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Federal Trade Commission**, | No. ED 5:18-cv-02104-SJO-PLAx |
| Plaintiff, | JOINT MOTION FOR PROTECTIVE ORDER |
| v. | |
| **Jason Cardiff, et al.**, | |
| Defendants. | |

Plaintiff Federal Trade Commission ("FTC" or "Commission"), the Receiver, and Defendants Jason Cardiff and Eunjung Cardiff ("the Cardiffs") move the Court for entry of the attached proposed Stipulated Protective Order.  As noted in the proposed Stipulated Protective Order, this action is likely to involve trade secrets, customer and pricing lists, and other valuable research, development, commercial, financial, technical and/or proprietary information for which special protection from public disclosure may be warranted.  On March 25, 3019, the FTC and the Cardiffs submitted their Joint Rule 26(F) Report, in which they committed, among other things, to negotiate a "a proposed protective order that largely follows the model order found on Magistrate Judge Abrams's website." (Dkt. 101, p. 17.) The parties have now done so, and respectfully move that the Court enter the proposed order.

The proposed Stipulated Protective Order is modeled on Magistrate Judge Abrams's model "[Proposed] Stipulated Protective Order."  The parties have, among other revisions to the model:  (1) added language recognizing the presence of a Court-appointed Receiver in this case, protecting Undercover Information obtained by the Commission, expanding the time for designating deposition testimony, requiring certifications that confidentiality designations have been made in good faith, and recognizing the FTC's legal obligations with respect to the sharing of confidential information and retaining documents after trial; and (2) deleted the provision entitled "Violation of Order."

The FTC, the Receiver, and the Cardiffs have jointly agreed to the attached Stipulated Protective Order, and respectfully request that the Court enter it in this case.

Dated:  September 23, 2019     s/ Edwin Rodriguez
                                               ELIZABETH JONES SANGER
                                               esanger@ftc.gov; (202) 326-2757

SHIRA D. MODELL
smodell@ftc.gov; (202) 326-3116
JAMES A. PRUNTY
jprunty@ftc.gov; (202) 326-2438
EDWIN RODRIGUEZ
erodriguez@ftc.gov; (202) 326-3147
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
Fax: (202) 326-3259

STACY PROCTER (Local Counsel)
sprocter@ftc.gov; (310) 824-4300
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Fax: (310) 824-4380
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

s/ Michael G. Fletcher
Michael Gerard Fletcher (State Bar No. 070849)
mfletcher@frandzel.com
Craig Welin (State Bar No. 13 8418)
cwelin@frandzel.com
Hal Goldflam (State Bar No. 179689)
hgoldflam@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577
Attorneys for Receiver
ROBB EVANS AND ASSOCIATES LLC

s/ Michael A. Thurman
MICHAEL A. THURMAN
Attorney for Defendants
JASON CARDIFF AND EUNJUNG CARDIFF

-3-

<u>Certificate of Service</u>

I hereby certify that on September 23, 2019, I served the foregoing Joint Motion for Protective Order upon the parties as follows:

James White, Esq., counsel, on behalf of Defendants Jason Cardiff and Eunjung Cardiff
By ECF

Michael A. Thurman, Esq., counsel, on behalf of Defendants Jason Cardiff and Eunjung Cardiff
By ECF

Robb Evans & Associates, Receiver, through counsel, Frandzel Robins Bloom & Csato, L.C., Attorneys at Law
By ECF to Hal D. Goldflam, Esq., Michael Gerard Fletcher, Esq., and Craig A. Welin, Esq.

Michael Kinney, Esq., counsel, on behalf of Jacques Poujade
By ECF

Ari N. Rothman, Esq. and Roger A. Colaizzi, Esq., counsel, on behalf of Jacques Poujade
By ECF

James Spertus, Esq. and M. Anthony Brown, Esq., counsel on behalf of Jacques Poujade
By ECF

s/ Edwin Rodriguez
EDWIN RODRIGUEZ

-4-

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

No. ED 5:18-cv-02104-SJO-PLAx

**Federal Trade Commission**,
               Plaintiff,
         v.

**Jason Cardiff, et al.**,
                 Defendants.

**[PROPOSED] STIPULATED**
**PROTECTIVE ORDER**

# 1.   <u>GENERAL</u>

    1.1   <u>Purposes and Limitations</u>. Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from

1

public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 13.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

1.2    <u>Good Cause Statement</u>.  This action is likely to involve trade secrets, customer and pricing lists, and other valuable research, development, commercial, financial, technical and/or proprietary information for which special protection from public disclosure may be warranted.  Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law.  Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public

2

manner, and there is good cause why it should not be part of the public record of this case.

## 2.  **DEFINITIONS**

2.1  Action: Federal Trade Commission v. Jason Cardiff, et al., Civil Action No. ED 5:18-cv-02104-SJO-PLAx (C.D. Cal.).

2.2  Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.3  Commission: the Plaintiff, Federal Trade Commission.

2.4  "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Cause Statement.

2.5  Counsel: Outside Counsel of Record and House Counsel (as well as their support staff).

2.6  Designating Party: a Party or Non-Party or the Receiver that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

2.7  Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.8  Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

2.9   <u>House Counsel</u>: attorneys who are employees of a party to this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10   <u>Non-Party</u>: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.11   <u>Outside Counsel of Record</u>: attorneys who are not employees of a Party, Non-Party, or Receiver in this Action but are retained to represent or advise a Party, Non-Party, or Receiver in this Action and have appeared in this Action on behalf of that Party, Non-Party, or Receiver or are affiliated with a law firm that has appeared on behalf of that Party, Non-Party, or Receiver, including support staff.

2.12   <u>Party</u>: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.13   <u>Producing Party</u>: a Party or Non-Party or the Receiver that produces Disclosure or Discovery Material in this Action.

2.14   <u>Professional Vendors</u>: persons or entities that provide litigation support services (<u>e.g.</u>, photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.15   <u>Protected Material</u>: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.16   <u>Receiver</u>: the Receiver in this Action, Robb Evans & Associates LLC, including all of its officers, directors, employees, House Counsel, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.17   <u>Receiving Party</u>: a Party or the Receiver that receives Disclosure or Discovery Material from a Producing Party.

2.18    <u>Undercover Information</u>: any information relating to undercover identities that Commission employees used in connection with their investigation, including undercover names and any related phone numbers, email addresses, physical addresses, credit card numbers, or other payment information

## 3.    **SCOPE**

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties, Non-Parties, Receiver, or their Counsel that might reveal Protected Material.

Any use of Protected Material at trial shall be governed by the orders of the trial judge. This Order does not govern the use of Protected Material at trial.

## 4.    **DURATION**

Once a case proceeds to trial, all of the court-filed information to be introduced that was previously designated as confidential or maintained pursuant to this protective order becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge in advance of the trial. <u>See</u> <u>Kamakana v. City and Cty. of Honolulu</u>, 447 F.3d 1172, 1180-81 (9th Cir. 2006) (distinguishing "good cause" showing for sealing documents produced in discovery from "compelling reasons" standard when merits-related documents are part of court record). Accordingly, the terms of this protective order do not extend beyond the commencement of the trial.

## 5.   DESIGNATING PROTECTED MATERIAL

5.1   Exercise of Restraint and Care in Designating Material for Protection. A Party, Non-Party, or the Receiver that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.  The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited.  For each document production that contains Protected Material, the Designating Party's counsel must provide a signed declaration at the time of production that:  (A) certifies that information designated as Protected Material contains information not known to be in the public domain; and (B) identifies the specific or cognizable harm that would result if the Protected Materials were disclosed to the public or to unauthorized persons. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

5.2   Manner and Timing of Designations. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (<u>e.g.</u>, paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix, at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend"), to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (<u>e.g.</u>, by making appropriate markings in the margins).

A Party, Non-Party, or the Receiver that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL legend" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (<u>e.g.</u>, by making appropriate markings in the margins).

(b) for testimony given in depositions, that the Designating Party identify the Disclosure or Discovery Material on the record, before the close of the deposition. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition is concluded) a right to have up to fourteen days to identify the specific portions of the testimony as to which protection is sought. Only those

portions of the testimony that are appropriately designated for protection within fourteen days following the deposition shall be covered by the provisions of this Protective Order.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the legend "CONFIDENTIAL." If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

(d) for data obtained by the Commission that are the subject of the Court's September 10, 2019 Stipulated Order Requiring Defendants Eunjung and Jason Cardiff to Turn Over Their Mobile Phones to the Plaintiff (Dkt. 217), the Cardiffs may designate any of those data as Confidential within 30 days after the data are produced by the Commission to the Cardiffs; during those 30 days, all such data obtained by the Commission shall be treated as confidential in accordance with the Court's Standing Order (Dkt. 80).

5.3     <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material, but a recipient's prior disclosure of newly designated Protected Material shall not violate this Order. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.     **UNDERCOVER INFORMATION**

The Commission's Undercover Information is protected from discovery. The Commission may redact Undercover Information from any Court filings,

hearing or deposition exhibits, or discovery responses.  No Party or Non-Party may obtain Undercover Information from the Commission unless the Court finds that there is good cause for a party to receive such information.

## 7.   CHALLENGING CONFIDENTIALITY DESIGNATIONS

7.1    Timing of Challenges. Any Party or Non-Party or the Receiver may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

7.2    Meet and Confer. The Challenging Party shall initiate the dispute resolution process under Local Rule 37-1, et seq. Any discovery motion must strictly comply with the procedures set forth in Local Rules 37-1, 37-2, and 37-3.

7.3    Burden. The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

## 8.   ACCESS TO AND USE OF PROTECTED MATERIAL

8.1    Basic Principles. Except as provided in Sections 8.3 and 8.4, a Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action. Such Protected Material may be disclosed only to the categories of persons and under the conditions

described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of Section 14 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

8.2 <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

(c) the Parties;

(d) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) or FTC Form X33-Nondisclosure Agreement for Contractors (Exhibit B);

(e) the Court and its personnel;

(f) court reporters and their staff;

(g) the Receiver and the Receiver's Outside Counsel of Record in this action;

10

(h)     Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(i)     any person (and his or her attorneys) who had prior access to the Protected Material or participated in a communication that is the subject of the Protected Material;

(j)     during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit A hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court.  Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order;

(k)     any other witnesses or persons whom the Receiving Party believes in good faith may be witnesses (and their respective counsel), provided that they have signed Exhibit A or Exhibit B;

(l)     any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions; and

(m)     any other persons or entities as required by law or as authorized by this Court.

8.3     <u>Statutory and Regulatory Requirements Relating to the Commission</u>. Notwithstanding the limitations set forth in Section 8.2 and subject to taking appropriate steps to preserve confidentiality, the Commission may use or disclose Protected Material to other governmental entities, as provided by 16 C.F.R. §§ 4.9–

4.11, 15 U.S.C. §§ 46(f) and 52, or any other legal obligation imposed upon the Commission.  Such entities include officers and employees of Federal or State law enforcement agencies (including duly authorized employees of the Commission) and congressional committees.

       8.4    <u>Duties of the Receiver</u>.  Notwithstanding the limitations set forth in Section 8.2 and subject to taking appropriate steps to preserve confidentiality, the Receiver may disclose Protected Material to: (1) state or federal agencies, including the Internal Revenue Service and law enforcement agencies, as necessary to fulfill the Receiver's duties in this action; or (2) other persons when necessary to protect the interests of the Receivership Estate.

## 9. **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

       If a Party or the Receiver is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL," it must:

       (a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

       (b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

       (c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

       If the Designating Party timely seeks a protective order, the Party or the Receiver served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a

determination by the court from which the subpoena or order issued, unless the Party or the Receiver has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

**10.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION**

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party or the Receiver is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party or the Receiver is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party or the Receiver shall:

(1)  promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2)  promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3)  make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this Court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the Court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this Court of its Protected Material.

## 11. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

## 12. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for

production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the Court.

## 13. MISCELLANEOUS

13.1    Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

13.2    Right to Assert Other Objections. By stipulating to the entry of this Protective Order, neither any Party nor the Receiver waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, neither any Party nor the Receiver waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

13.3    Filing Protected Material. Anyone who seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue; good cause must be shown in the request to file under seal. If a request to file Protected Material under seal is denied by the Court, then the Receiving Party may file the information in the public record unless otherwise instructed by the Court.

## 14. FINAL DISPOSITION

After the final disposition of this Action, within 60 days of a written request by the Designating Party, each Receiving Party must return all Protected Material (including all copies, abstracts, compilations, summaries, and any other format

reproducing or capturing any of the Protected Material) to the Producing Party or destroy such material, except as follows:

A.    Designating parties may maintain copies of all of their own Protected Material.

B.    The Commission shall retain, return, or destroy Protected Material in accordance with 16 C.F.R. § 4.12, and may retain such information to assist with other ongoing law enforcement matters or policy or research matters consistent with the Commission's mission,  provided that the Commission continues to take all appropriate steps to protect the confidentiality of the materials.

C.    Any law enforcement agency other than the Commission that has received copies of any Protected Material may retain such information to assist with other ongoing law enforcement matters, provided that the law enforcement agency continues to take all appropriate steps to protect the confidentiality of the materials.

D.    Any congressional committee may maintain copies of Protected Materials obtained from the Commission as required under 15 U.S.C. § 57b-2 and 16 C.F.R. § 4.11(b).

Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed, and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work

16

product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

**IT IS SO ORDERED.**


**DATED: _____, 2019**


_____
**PAUL L. ABRAMS**
**UNITED STATES MAGISTRATE JUDGE**

**Exhibit A**

Acknowledgement and Agreement to Be Bound

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Protective Order that was issued by the United States District Court for the Central District of California on _____ in the case of Federal Trade Commission v. Jason Cardiff, et al., Case No. 18-cv-02104-SJO-PLAx.  I agree to comply with and to be bound by all the terms of this Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt.  I solemnly promise that I will not disclose in any manner any information or item that is subject to this Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Protective Order, even if such enforcement proceeding occurs after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent of service of process in connection with this action or any proceedings related to enforcement of this Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

[printed name]

Signature: _____

[signature]

Exhibit A

UNITED STATES OF AMERICA
# FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

## NONDISCLOSURE AGREEMENT FOR CONTRACTORS

**(1)** ***Disclosure of FTC materials and information.*** I will not divulge FTC materials and information for any purpose to any person other than an authorized person.

- "FTC materials and information" includes both materials and information provided to me by the FTC (whether the FTC received such materials and information from a submitter or generated them internally) and produced by me pursuant to my work for the FTC. It includes materials and information in any form, including, for example, electronic form, and it includes information identifying the existence of a nonpublic FTC investigation.

- An "authorized person" is

    (1) a member of the FTC staff, or
    (2) other contractor personnel from whom the Contracting Officer has received a signed FTC "Nondisclosure Agreement for Contractors."

**(2)** ***Use of FTC materials and information.*** I will not directly or indirectly use, or allow the use of, FTC materials and information for any purpose other than that directly associated with my officially assigned duties. I will not reveal the nature or content of FTC materials and information to any unauthorized person, either by direct action, counsel, recommendation or suggestion.

**(3)** ***Return of FTC materials and information.*** At the conclusion of my work under this contract, I will return to the FTC (or destroy, at the request of the Contracting Officer's Technical Representative) all FTC materials, including copies, and all records containing FTC materials and information.

Consistent with the above, I understand that all reports or data first produced during my contract with the FTC and in connection with that contract shall be the sole property of the government.

None of these provisions shall limit disclosures: (1) at and consistent with directions of FTC staff, during an adjudicative or judicial proceeding to which the FTC is a party; or (2) with the written consent of the FTC General Counsel, or the General Counsel's delegate, which consent can only be given if consistent with the FTC Act, the FTC's Rules of Practice, and any other applicable laws, regulations, or orders.

Sanctions for misuse of FTC materials and information may include a fine of up to $10,000, imprisonment of up to ten years, or both.

_____ (typed or printed name)

_____ (signature)    _____ (company)

_____ (date)    _____ (contract number)

(At the time of contract award, the Contracting Officer is _____ ;

the Contracting Officer's Technical Representative is _____ )

FTC Form **X33** (rev. 4/06)

Exhibit B
19

# EXHIBIT 27

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

No. ED 5:18-cv-02104-SJO-PLAx

**Federal Trade Commission**,
                    Plaintiff,
          v.

**Jason Cardiff, et al.**,
                    Defendants.

**STIPULATED PROTECTIVE ORDER**

1. <u>**GENERAL**</u>

     1.1     <u>Purposes and Limitations</u>. Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from

1

public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 13.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

       1.2   <u>Good Cause Statement</u>.  This action is likely to involve trade secrets, customer and pricing lists, and other valuable research, development, commercial, financial, technical and/or proprietary information for which special protection from public disclosure may be warranted.  Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law.  Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public

manner, and there is good cause why it should not be part of the public record of this case.

## 2. DEFINITIONS

2.1    <u>Action</u>: Federal Trade Commission v. Jason Cardiff, et al., Civil Action No. ED 5:18-cv-02104-SJO-PLAx (C.D. Cal.).

2.2    <u>Challenging Party</u>: a Party or Non-Party that challenges the designation of information or items under this Order.

2.3    <u>Commission</u>: the Plaintiff, Federal Trade Commission.

2.4    <u>"CONFIDENTIAL" Information or Items</u>: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Cause Statement.

2.5    <u>Counsel</u>: Outside Counsel of Record and House Counsel (as well as their support staff).

2.6    <u>Designating Party</u>: a Party or Non-Party or the Receiver that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

2.7    <u>Disclosure or Discovery Material</u>: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.8    <u>Expert</u>: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

3

2.9     House Counsel: attorneys who are employees of a party to this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10    Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.11    Outside Counsel of Record: attorneys who are not employees of a Party, Non-Party, or Receiver in this Action but are retained to represent or advise a Party, Non-Party, or Receiver in this Action and have appeared in this Action on behalf of that Party, Non-Party, or Receiver or are affiliated with a law firm that has appeared on behalf of that Party, Non-Party, or Receiver, including support staff.

2.12    Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.13    Producing Party: a Party or Non-Party or the Receiver that produces Disclosure or Discovery Material in this Action.

2.14    Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.15    Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.16    Receiver: the Receiver in this Action, Robb Evans & Associates LLC, including all of its officers, directors, employees, House Counsel, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.17    Receiving Party: a Party or the Receiver that receives Disclosure or Discovery Material from a Producing Party.

2.18    <u>Undercover Information</u>: any information relating to undercover identities that Commission employees used in connection with their investigation, including undercover names and any related phone numbers, email addresses, physical addresses, credit card numbers, or other payment information

## 3.    **SCOPE**

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties, Non-Parties, Receiver, or their Counsel that might reveal Protected Material.

Any use of Protected Material at trial shall be governed by the orders of the trial judge. This Order does not govern the use of Protected Material at trial.

## 4.    **DURATION**

Once a case proceeds to trial, all of the court-filed information to be introduced that was previously designated as confidential or maintained pursuant to this protective order becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge in advance of the trial. <u>See</u> <u>Kamakana v. City and Cty. of Honolulu</u>, 447 F.3d 1172, 1180-81 (9th Cir. 2006) (distinguishing "good cause" showing for sealing documents produced in discovery from "compelling reasons" standard when merits-related documents are part of court record). Accordingly, the terms of this protective order do not extend beyond the commencement of the trial.

**5.    DESIGNATING PROTECTED MATERIAL**

5.1    <u>Exercise of Restraint and Care in Designating Material for Protection</u>. A Party, Non-Party, or the Receiver that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.  The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited.  For each document production that contains Protected Material, the Designating Party's counsel must provide a signed declaration at the time of production that:  (A) certifies that information designated as Protected Material contains information not known to be in the public domain; and (B) identifies the specific or cognizable harm that would result if the Protected Materials were disclosed to the public or to unauthorized persons. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (<u>e.g.</u>, to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

5.2    <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order (<u>see, e.g.</u>, second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix, at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend"), to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party, Non-Party, or the Receiver that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL legend" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in depositions, that the Designating Party identify the Disclosure or Discovery Material on the record, before the close of the deposition. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition is concluded) a right to have up to fourteen days to identify the specific portions of the testimony as to which protection is sought. Only those

portions of the testimony that are appropriately designated for protection within fourteen days following the deposition shall be covered by the provisions of this Protective Order.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the legend "CONFIDENTIAL." If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

(d) for data obtained by the Commission that are the subject of the Court's September 10, 2019 Stipulated Order Requiring Defendants Eunjung and Jason Cardiff to Turn Over Their Mobile Phones to the Plaintiff (Dkt. 217), the Cardiffs may designate any of those data as Confidential within 30 days after the data are produced by the Commission to the Cardiffs; during those 30 days, all such data obtained by the Commission shall be treated as confidential in accordance with the Court's Standing Order (Dkt. 80).

5.3    <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material, but a recipient's prior disclosure of newly designated Protected Material shall not violate this Order. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

## 6.    <u>UNDERCOVER INFORMATION</u>

The Commission's Undercover Information is protected from discovery. The Commission may redact Undercover Information from any Court filings,

hearing or deposition exhibits, or discovery responses.  No Party or Non-Party may obtain Undercover Information from the Commission unless the Court finds that there is good cause for a party to receive such information.

## 7.   CHALLENGING CONFIDENTIALITY DESIGNATIONS

7.1   <u>Timing of Challenges</u>. Any Party or Non-Party or the Receiver may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

7.2   <u>Meet and Confer</u>. The Challenging Party shall initiate the dispute resolution process under Local Rule 37-1, <u>et seq.</u> Any discovery motion must strictly comply with the procedures set forth in Local Rules 37-1, 37-2, and 37-3.

7.3   <u>Burden</u>. The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (<u>e.g.</u>, to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

## 8.   ACCESS TO AND USE OF PROTECTED MATERIAL

8.1   <u>Basic Principles</u>. Except as provided in Sections 8.3 and 8.4, a Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action. Such Protected Material may be disclosed only to the categories of persons and under the conditions

9

described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of Section 14 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

8.2    <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)    the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b)    the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

(c)    the Parties;

(d)    Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) or FTC Form X33-Nondisclosure Agreement for Contractors (Exhibit B);

(e)    the Court and its personnel;

(f)    court reporters and their staff;

(g)    the Receiver and the Receiver's Outside Counsel of Record in this action;

10

(h)     Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(i)     any person (and his or her attorneys) who had prior access to the Protected Material or participated in a communication that is the subject of the Protected Material;

(j)     during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit A hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court.  Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order;

(k)     any other witnesses or persons whom the Receiving Party believes in good faith may be witnesses (and their respective counsel), provided that they have signed Exhibit A or Exhibit B;

(l)     any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions; and

(m)     any other persons or entities as required by law or as authorized by this Court.

8.3     <u>Statutory and Regulatory Requirements Relating to the Commission</u>. Notwithstanding the limitations set forth in Section 8.2 and subject to taking appropriate steps to preserve confidentiality, the Commission may use or disclose Protected Material to other governmental entities, as provided by 16 C.F.R. §§ 4.9–

11

4.11, 15 U.S.C. §§ 46(f) and 52, or any other legal obligation imposed upon the Commission.  Such entities include officers and employees of Federal or State law enforcement agencies (including duly authorized employees of the Commission) and congressional committees.

8.4    Duties of the Receiver.  Notwithstanding the limitations set forth in Section 8.2 and subject to taking appropriate steps to preserve confidentiality, the Receiver may disclose Protected Material to: (1) state or federal agencies, including the Internal Revenue Service and law enforcement agencies, as necessary to fulfill the Receiver's duties in this action; or (2) other persons when necessary to protect the interests of the Receivership Estate.

## 9.    **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

If a Party or the Receiver is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL," it must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party or the Receiver served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a

12

determination by the court from which the subpoena or order issued, unless the Party or the Receiver has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

## 10. A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party or the Receiver is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party or the Receiver is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party or the Receiver shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this Court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the Court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this Court of its Protected Material.

## 11. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

## 12. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for

production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the Court.

## 13. MISCELLANEOUS

13.1 <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

13.2 <u>Right to Assert Other Objections</u>. By stipulating to the entry of this Protective Order, neither any Party nor the Receiver waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, neither any Party nor the Receiver waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

13.3 <u>Filing Protected Material</u>. Anyone who seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue; good cause must be shown in the request to file under seal. If a request to file Protected Material under seal is denied by the Court, then the Receiving Party may file the information in the public record unless otherwise instructed by the Court.

## 14. FINAL DISPOSITION

After the final disposition of this Action, within 60 days of a written request by the Designating Party, each Receiving Party must return all Protected Material (including all copies, abstracts, compilations, summaries, and any other format

reproducing or capturing any of the Protected Material) to the Producing Party or destroy such material, except as follows:

A.     Designating parties may maintain copies of all of their own Protected Material.

B.     The Commission shall retain, return, or destroy Protected Material in accordance with 16 C.F.R. § 4.12, and may retain such information to assist with other ongoing law enforcement matters or policy or research matters consistent with the Commission's mission,  provided that the Commission continues to take all appropriate steps to protect the confidentiality of the materials.

C.     Any law enforcement agency other than the Commission that has received copies of any Protected Material may retain such information to assist with other ongoing law enforcement matters, provided that the law enforcement agency continues to take all appropriate steps to protect the confidentiality of the materials.

D.     Any congressional committee may maintain copies of Protected Materials obtained from the Commission as required under 15 U.S.C. § 57b-2 and 16 C.F.R. § 4.11(b).

Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed, and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work

16

product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

**IT IS SO ORDERED.**

**DATED:** __September 24_____, **2019**

_____

**PAUL L. ABRAMS**
**UNITED STATES MAGISTRATE JUDGE**

17

## Exhibit A

### Acknowledgement and Agreement to Be Bound

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Protective Order that was issued by the United States District Court for the Central District of California on _____ in the case of Federal Trade Commission v. Jason Cardiff, et al., Case No. 18-cv-02104-SJO-PLAx.  I agree to comply with and to be bound by all the terms of this Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt.  I solemnly promise that I will not disclose in any manner any information or item that is subject to this Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Protective Order, even if such enforcement proceeding occurs after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent of service of process in connection with this action or any proceedings related to enforcement of this Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

[printed name]

Signature: _____

[signature]

Exhibit A

UNITED STATES OF AMERICA
# FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

## NONDISCLOSURE AGREEMENT FOR CONTRACTORS

**(1)** ***Disclosure of FTC materials and information.*** I will not divulge FTC materials and information for any purpose to any person other than an authorized person.

- "FTC materials and information" includes both materials and information provided to me by the FTC (whether the FTC received such materials and information from a submitter or generated them internally) and produced by me pursuant to my work for the FTC. It includes materials and information in any form, including, for example, electronic form, and it includes information identifying the existence of a nonpublic FTC investigation.

- An "authorized person" is

  (1)   a member of the FTC staff, or
  (2)   other contractor personnel from whom the Contracting Officer has received a signed FTC "Nondisclosure Agreement for Contractors."

**(2)** ***Use of FTC materials and information.*** I will not directly or indirectly use, or allow the use of, FTC materials and information for any purpose other than that directly associated with my officially assigned duties. I will not reveal the nature or content of FTC materials and information to any unauthorized person, either by direct action, counsel, recommendation or suggestion.

**(3)** ***Return of FTC materials and information.*** At the conclusion of my work under this contract, I will return to the FTC (or destroy, at the request of the Contracting Officer's Technical Representative) all FTC materials, including copies, and all records containing FTC materials and information.

Consistent with the above, I understand that all reports or data first produced during my contract with the FTC and in connection with that contract shall be the sole property of the government.

None of these provisions shall limit disclosures: (1) at and consistent with directions of FTC staff, during an adjudicative or judicial proceeding to which the FTC is a party; or (2) with the written consent of the FTC General Counsel, or the General Counsel's delegate, which consent can only be given if consistent with the FTC Act, the FTC's Rules of Practice, and any other applicable laws, regulations, or orders.

Sanctions for misuse of FTC materials and information may include a fine of up to $10,000, imprisonment of up to ten years, or both.

_____ (typed or printed name)

_____ (signature)   _____ (company)

_____ (date)   _____ (contract number)

(At the time of contract award, the Contracting Officer is _____ ;

the Contracting Officer's Technical Representative is _____ )

FTC Form **X33** (rev. 4/06)

Exhibit B
19

# EXHIBIT 28
## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 29
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 30
## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document
Conditionally Filed Under
Seal]

# EXHIBIT 31
## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document
Conditionally Filed Under
Seal]

# EXHIBIT 32

## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document
Conditionally Filed Under
Seal]

# EXHIBIT 33

## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 34
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 35
## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document
Conditionally Filed Under
Seal]

# EXHIBIT 36
## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document
Conditionally Filed Under
Seal]

# EXHIBIT 37
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 38
## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document
Conditionally Filed Under
Seal]

# EXHIBIT 39
## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 40

## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 41
## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document
Conditionally Filed Under
Seal]

# EXHIBIT 42
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 43
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 44

## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 45

## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 46
## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document
Conditionally Filed Under
Seal]

# EXHIBIT 47
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 48

Case 5:23-cv-00021-JGB- Document 45-4   Filed 04/08/24  Page 78 of 116   Page ID
Case 5:18-cv-02104-SJO-PLA   Document 391  Filed 07/13/20  Page 1 of 15   Page ID
#:1749
#:17286

1   Stephen R. Cochell
2   Cochell Law Firm P.C.
3   5850 San Felipe Ste 500
    Houston Texas 77057
4   (346)800-3500
5   srcochell@gmail.com
    Admitted Pro Hac Vice
6
7   James D. White, Esq.
    Law Offices of James D. White
8   CA Bar # 064721
9   PO Box 367
10  113 Quarter Horse Dr.
    Bellevue, ID 83313
11  949 697 9236
12  jdw@jamesdwhitelaw.com
13
    Attorneys for Defendants Jason
14  Cardiff and VPL Medical, Inc.
15
16              **UNITED STATES DISTRICT COURT**
17              **CENTRAL DISTRICT OF CALIFORNIA**
18
19  FEDERAL TRADE COMMISSION,        )  Case No.:  5:18-cv-02104-SJO (PLAx)
20              Plaintiff,            )  **EX PARTE** *OPPOSED*
                                      )  **APPLICATION TO REMOVE**
21         vs.                        )  **RECEIVER OR TO DIRECT**
                                      )  **RECEIVER TO CONTINUE VPL**
22  JASON CARDIFF, et al.            )  **MEDICAL, INC'S OPERATIONS**
                                      )  **AND PAY VENDORS AND**
23              Defendants.           )  **CRITICAL STAFF**
                                      )
24  _____)
                                      )
25
26
27
28

# EXHIBIT 49

ELIZABETH JONES SANGER (*pro hac vice*)
esanger@ftc.gov; (202) 326-2757
SHIRA D. MODELL (*pro hac vice*)
smodell@ftc.gov; (202) 326-3116
JAMES A. PRUNTY (*pro hac vice*)
jprunty@ftc.gov; (202) 326-2438
EDWIN RODRIGUEZ (*pro hac vice*)
erodriguez@ftc.gov; (202) 326-3147
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
Fax: (202) 326-3259

STACY PROCTER (Local Counsel) (CA 221078)
sprocter@ftc.gov; (310) 824-4300
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Fax: (310) 824-4380
ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **Federal Trade Commission**, | No. ED 5:18-cv-02104-DMG-PLAx |
| Plaintiff, | PLAINTIFF'S OPPOSITION TO DEFENDANT JASON CARDIFF AND NON-PARTY VPL MEDICAL INC.'S *EX PARTE* APPLICATION TO REMOVE RECEIVER OR TO DIRECT RECEIVER TO CONTINUE VPL MEDICAL INC'S OPERATIONS AND PAY VENDORS AND CRITICAL STAFF |
| v. |  |
| **Jason Cardiff, et al.**, |  |
| Defendants. |  |

# Table of Contents

I.  Jason Cardiff and VPL's *Ex Parte* Application is a Disguised Motion to Reconsider the VPL Preliminary Injunction and Should Be Denied On That Basis Alone ....................................................................................................1

II.  Jason Cardiff and VPL Have Not Shown that Removal of the Receiver Is Warranted Under the VPL Preliminary Injunction...................................................2

III.  Jason Cardiff and VPL's Reliance On the Defense Production Act Is Misplaced ....................................................................................................6

IV.  Conclusion ....................................................................................................7

i

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), opposes Defendant Jason Cardiff and non-party VPL Medical, Inc.'s ("VPL") *ex parte* application to remove the Receiver or direct the Receiver to pay certain claimed VPL expenses (Dkt. 391).

## I.      Jason Cardiff and VPL's *Ex Parte* Application is a Disguised Motion to Reconsider the VPL Preliminary Injunction and Should Be Denied On That Basis Alone

The precise basis of Jason Cardiff and VPL's *ex parte* application to remove the Receiver is not clearly stated. They raise a scattershot of arguments, the gist of which appears to be a thinly-disguised motion to reconsider the VPL Preliminary Injunction ("VPL PI") (Dkts. 388-389). Reconsideration of the VPL PI should be denied because Jason Cardiff and VPL have failed to demonstrate a significant change in law or fact that warrants revision or dissolution of the PI. *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000); *see also Melt Franchising, LLC v. PMI Enters.*, No. CV 08-4148 PSG, 2008 U.S. Dist. LEXIS 115636, at *3 (C.D. Cal. Sept. 28, 2008) (stating that district courts have wide discretion in modifying a preliminary injunction if "the circumstances, whether law or fact, obtaining at the time of its issuance have changed, or new ones have arisen") (quoting *System Fed'n No. 91 v. Wright*, 364 U.S. 642, 647-48 (1961)); *GE v. Wilkins*, No. 1:10-cv-00674-OWW-JLT, 2011 U.S. Dist. LEXIS 6057, at *9 (E.D. Cal. Jan. 20, 2011) (citing *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985)) ("A reconsideration motion should not merely present arguments previously raised, or which could have been raised in a previous motion.").

Jason Cardiff and VPL repeat the same legal arguments concerning *Liu v. SEC* already rejected by this Court (Dkt. 388, p. 8-9), and they cite no additional new law since the *Liu* decision. They also continue to ignore Jason Cardiff's control of VPL, despite the Court's finding that:

Given inconsistencies in how Bedi described Cardiff's position; England's and Barker's belief that Cardiff acted as the CEO; Cardiff's history of dishonesty before the Court; and the undisputed facts that Cardiff helped to found VPL and wields final authority over many crucial business decisions, the Court concludes that the preponderance of the evidence supports the FTC's argument that Cardiff owns or controls VPL, whether directly or indirectly, even if he is not technically VPL's CEO.

Dkt. 388, p. 6.

Similarly, they seek to revisit the necessity of a receivership over VPL, arguing that a lesser remedy would be sufficient to safeguard assets. This, again, is nothing more than asking the Court to reconsider its finding that a Receiver is needed in this particular case because, among other reasons, "Cardiff's past and current conduct does not give the Court much faith that he will not machinate to conceal, transfer, or use VPL funds in a manner that reduces value for potential restitution." Dkt. 388, p. 10. Jason Cardiff and VPL's proposed relief – dissolution of the Receivership *and the authorization of payments to Jason Cardiff of $20,000 per month* (Dkt. 391, p. 27, lines 24-25) – provide immediate validation of the Court's concerns that if VPL is not under receivership, Jason Cardiff will diminish the value of funds that would be available for equitable monetary relief at the conclusion of the FTC's underlying consumer protection case.

Jason Cardiff and VPL do not even attempt to meet the standard for reconsideration, and thus the Court should decline to revisit the issuance of the VPL PI or the continuing need for a receivership. On that basis alone, the Court should deny their *ex parte* application.

## II.     Jason Cardiff and VPL Have Not Shown that Removal of the Receiver Is Warranted Under the VPL Preliminary Injunction

Jason Cardiff and VPL appear to argue that the Receiver is abusing his discretion by refusing to pay certain contractors (albeit while paying other vetted

bills) and suspending business operations based on information he has received to date, including information gathered during a surprise inspection of the business, rather than rely on the word of Jason Cardiff and Bobby Bedi. As has been shown on countless occasions during this case, Jason Cardiff and his minions do not tell the truth. Accordingly, a surprise inspection of the business was justified to verify Jason Cardiff and VPL's claims about the readiness of the business to fulfill VPL's April 17, 2020 U.S. Department of Health and Human Services ("HHS") contract by this week's (already extended, pre-Receivership) deadline, and to give the Receiver an opportunity to independently gather needed information. Contrary to Jason Cardiff and VPL's argument, it would actually be "reckless" for the Receiver to rely only on the representations of Jason Cardiff and Bobby Bedi, or on their counsel's[1] rote repetition of their optimistic evaluation of the business's ability to meet its pre-Receivership obligations.[2]

Jason Cardiff and VPL take offense that the Receiver determined that the HHS contract could not be met by the existing deadline, and blame the Receiver

---

[1] James White, counsel for Jason Cardiff and VPL, is also a director and Secretary of Accent Imports, Inc., an entity in which Jason Cardiff apparently has a 40% ownership interest and which Jason Cardiff and VPL claim is owed more than $100,000 by the Receivership Estate. Dkt. 374, p. 5; Dkt. 391-2, p. 17. The demand for payment to the Receiver appears to contain wire instructions for an Accent Imports bank account, but no such account has been disclosed to the FTC as a Cardiff asset under the November 8, 2018 Preliminary Injunction (Dkt. 59). At least one VPL document suggests that Jason Cardiff controls Accent Imports: his name and personal mobile phone number are listed as the contact on a Sales Contract dated May 15, 2020 between a Chinese company and Accent Imports, Inc. Sands Decl., p. 1, ¶ 2 & Att. 1.

[2] The declaration of Jatinder Singh (Dkt. 391-3) does little to address the concerns arising from the Receiver's independent inspection. It was offered by Jason Cardiff and VPL only after the Receiver's surprise inspection and subsequent decision to suspend operations.

for VPL's inability to perform on a contract it had no present ability to fulfill when it promised HHS *three months ago* that it could deliver millions of Made in USA masks on a short turnaround. The record shows that, instead of investing in the VPL expenses they now complain the Receiver refuses to pay, Jason Cardiff and Bobby Bedi paid themselves at least $420,000 each, and gave another $257,588 to VPL's VP of Enterprise Sales, Stacey Barker. Dkt. 365, p. 6, 35. Conserving, holding, managing, and preventing the loss of VPL assets is central to the role of the Receiver in the VPL PI (Dkt. 389, p. 10, lines 13-19), and it is the Receiver's duty to determine whether – in his judgment – the business can be run legally *and* profitably (*id*. at 13, p. 17-18). If not, the Receiver must suspend business operations to prevent further dissipation of assets. *Id*. It appears that the Receiver made a judgment not to throw good money after bad. Jason Cardiff and VPL are simply demanding that the Court substitute the judgment of Jason Cardiff and Bobby Bedi for that of the Receiver.

Jason Cardiff and VPL point to two Securities and Exchange Commission ("SEC") cases where courts refused to modify a preliminary injunction and remove a receiver after defendants alleged impropriety and bias on the part of the receiver. Dkt. 391, p. 25 (*SEC v. Private Equity Mgmt. Grp.*, No. CV 09-2901 PSG (Ex), U.S. Dist. LEXIS 62001 (C.D. Cal. July 2, 2009); *SEC v. Schooler*, No. 3:12-cv-2164-GPC-JMA, 2015 U.S. Dist. LEXIS 46870 (S.D. Cal. Mar. 4, 2015)). They have failed to show why the outcome here should be any different, especially with their different set of allegations that seem to revolve around a claim of "negligence" (which is not a standard relied upon or even discussed in the cited cases), as opposed to the allegations of impropriety and bias alleged (though

4

ultimately found not to form a basis for removal of the receiver) in the SEC cases. Dkt. 391, p. 25, line 6.[3]

Putting aside the inapt analogy to the facts in the SEC cases, Jason Cardiff and VPL have also failed to show how the Receiver's actions have failed to fulfill his fiduciary duty to "'protect and preserve' the receivership estate's assets 'for the benefit of the persons ultimately entitled to it.'" *Schooler*, 2015 U.S. Dist. LEXIS 46870, at *7 (citing *Sovereign Bank v. Schwab*, 414 F.3d 450, 454 (3d Cir. 2005)). Their singular focus on the claimed ownership interest of Bobby Bedi ignores the Court's determination that the balance of the equities favors the ongoing receivership (Dkt. 388, p. 10), which is capable of protecting both the public interest (and the possibility of refunding consumers at the conclusion of the underlying case against the Cardiffs) as well as any additional claims against the Receivership Estate (such as Bobby Bedi's claim of partial ownership of VPL or claims of additional potential creditors).

Finally, the allegation that the Receiver ignored Jason Cardiff and VPL or refused to explore solutions to transform VPL into a profitable business (despite the Receiver's early-stated concerns about, among other issues, the business's cash flow projections and sources of investor funding, Dkt. 365, p. 7-8) is belied by Jason Cardiff and VPL's own evidence showing constant contact – flowing in both directions – between the Receiver and VPL (Dkt. 391-2). Further, the timing of the

---

[3] Jason Cardiff and VPL argue that the FTC "has lost any objectivity about the Cardiffs" and express frustration that the FTC has been unwilling to settle the underlying case against the Cardiffs on their terms. Dkts. 391, 391-1 (Cochell Declaration attaching settlement discussion emails). Setting aside whether it was appropriate to reference the content of confidential settlement negotiations as evidence in their *ex parte* application, Jason Cardiff and VPL do not explain the relevance of an impasse in settlement negotiations to the question of whether the Receiver is adequately performing his duties under the mandate of the VPL PI.

*ex parte* motion is baffling and counter-productive, given that the understanding between counsel for Jason Cardiff, VPL, the Receiver, and the FTC at the conclusion of the July 13, 2020 conference of counsel[4] was that Jason Cardiff and VPL would not proceed with their contemplated motion, and would, instead, provide additional information to the Receiver and work cooperatively with the Receiver on formulating a response to a July 10, 2020 letter from HHS seeking additional assurances on VPL's ability to fulfill the contract. Sanger Decl., p. 1, ¶¶ 3-5. Indeed, a follow-up conference call had been scheduled for 9:00 a.m. Pacific this morning. *Id.* at ¶ 5. Rather than cooperating with the Receiver, Jason Cardiff and VPL are now interfering with performance of the Receiver's duties by forcing him to respond to their *ex parte* application on the same day that VPL was required to provide a response to HHS.

## III. Jason Cardiff and VPL's Reliance On the Defense Production Act Is Misplaced

Jason Cardiff and VPL raise the specter that the Defense Production Act of 1950, 50 U.S.C. § 4501 *et seq.*, is somehow implicated in the actions of either the FTC or the Receiver, and any Court decision regarding VPL. Dkt. 391, p. 12. They do not, however, articulate precisely how. They refer to an Executive Order on prioritizing and allocating health and medical resources to respond to the spread of COVID-19, and cite a presidential memorandum directed specifically to 3M

---

[4] In describing the July 13, 2020 conference of counsel, Jason Cardiff and VPL also falsely reported that "the FTC has refused to discuss a response to the Request for Assurance and seek an extension of the HHS Contract until the deadline set by HHS." Dkt. 391, p. 6. The FTC first became aware of this letter *during* the conference of counsel, and did not refuse to discuss it; to the contrary, the FTC was scheduled to participate in a phone call with the Receiver and counsel for Jason Cardiff and VPL at 9:00 am Pacific this morning, during which a response to the letter was supposed to be discussed. Sanger Decl., p. 1, ¶¶ 3, 5.

6

Company regarding N-95 respirators. *Id*. Neither document renders VPL *capable* of meeting the needs for producing the personal protective equipment outlined therein, nor creates any expectancy or legally enforceable right on VPL's part. *See* Section 3(c) of both documents ("This [order/memorandum] is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.").[5] While providing the 3-ply medical masks the contract calls for (*see* Dkt. 372, p. 14; Dkt. 359-3, p. 4) at this time to HHS might be useful, there is no evidence in the record that HHS could not find a replacement contractor, or how VPL's performance on this particular contract is detrimental to the government's ability to obtain these types of masks. The purported concern about a potential conflict with orders issued under the Defense Production Act seems nothing more than a hyperbolic smoke screen with no basis in fact or law.[6]

## IV.   Conclusion

For the reasons stated above, as well as the previous findings of the Court (Dkts. 368, 388) in response to Jason Cardiff and VPL's motion to dissolve the VPL TRO (Dkt. 352) and opposition to the Order to Show Cause why a PI as to VPL should not be entered (Dkt. 376), the FTC respectfully requests that the Court

---

[5] https://www.govinfo.gov/content/pkg/FR-2020-03-23/pdf/2020-06161.pdf (March 18, 2020 Executive Order); https://www.whitehouse.gov/presidential-actions/memorandum-order-defense-production-act-regarding-3m-company/ (April 2, 2020 Memorandum).

[6] This impression is reinforced by the fact that Jason Cardiff and VPL neglected to raise this argument, murky as it is, in either their previously filed motion to dissolve the TRO (Dkt. 352) or their opposition to the Order to Show Cause (Dkt. 376), even though the documents they now cite were issued months ago.

deny Jason Cardiff and VPL's *ex parte* application to remove the Receiver, or otherwise modify the VPL PI.


Respectfully submitted,

Dated:  July 14, 2020

s/ Elizabeth Jones Sanger
ELIZABETH JONES SANGER
esanger@ftc.gov; (202) 326-2757
SHIRA D. MODELL
smodell@ftc.gov; (202) 326-3116
JAMES A. PRUNTY
jprunty@ftc.gov; (202) 326-2438
EDWIN RODRIGUEZ
erodriguez@ftc.gov; (202) 326-3147
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
Fax: (202) 326-3259

STACY PROCTER (Local Counsel)
sprocter@ftc.gov; (310) 824-4300
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Fax: (310) 824-4380

Attorneys for Plaintiff

FEDERAL TRADE COMMISSION

Certificate of Service

I hereby certify that on July 14, 2020, I served the foregoing Plaintiff's Opposition to Defendant Jason Cardiff and Non-Party VPL Medical Inc.'s *Ex Parte* Application to Remove Receiver or to Direct Receiver to Continue VPL Medical Inc's Operations and Pay Vendors and Critical Staff as follows:

James White, Esq., counsel, on behalf of Defendants Jason Cardiff and Eunjung Cardiff and non-party VPL Medical, Inc.
By ECF

Stephen R. Cochell, Esq., counsel, on behalf of Defendants Jason Cardiff and Eunjung Cardiff and non-party VPL Medical, Inc.
By ECF

Robb Evans & Associates, Receiver, through counsel, Frandzel Robins Bloom & Csato, L.C., Attorneys at Law
By ECF to Hal D. Goldflam, Esq., Michael Gerard Fletcher, Esq., and Craig A. Welin, Esq.

/s/ Elizabeth Jones Sanger
ELIZABETH JONES SANGER

1   ELIZABETH JONES SANGER (*pro hac vice*)
    esanger@ftc.gov; (202) 326-2757
2   JAMES A. PRUNTY (*pro hac vice*)
    jprunty@ftc.gov; (202) 326-2438
3   EDWIN RODRIGUEZ (*pro hac vice*)
    erodriguez@ftc.gov; (202) 326-3147
4   SHIRA D. MODELL (*pro hac vice*)
    smodell@ftc.gov; (202) 326-3116
5
    Federal Trade Commission
6   600 Pennsylvania Ave., NW
7   Washington, DC 20580
    Fax: (202) 326-3259
8
9
10  STACY PROCTER (Local Counsel) (CA 221078)
    sprocter@ftc.gov; (310) 824-4300
11  Federal Trade Commission
12  10990 Wilshire Blvd., Suite 400
    Los Angeles, CA 90024
13  Fax: (310) 824-4380
14  ATTORNEYS FOR PLAINTIFF
15
16              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
17

18                                          No. ED 18-CV-02104-DMG (PLAx)
19  **Federal Trade Commission**,
                                            DECLARATION OF FTC LEAD
20              Plaintiff,                   INVESTIGATOR CONNOR SANDS
21              v.
22  **Jason Cardiff, et al.**,
23              Defendants.
24
25
26
27
28

**DECLARATION OF CONNOR SANDS**
**PURSUANT TO 28 U.S.C. § 1746**

1.      I am a Federal Trade Investigator with the Federal Trade Commission ("FTC") assigned to the headquarters satellite office at 400 7th Street, SW, Washington, D.C. 20024. Among other things, my position entails investigating entities and persons who may be violating statutes and rules enforced by the FTC. In the course of my employment, I have participated in an investigation of Redwood Scientific Technologies, Inc. I have personal knowledge of the matters discussed in this declaration and, if called as a witness, I could and would competently testify as to the matters discussed in this declaration.

2.      On June 30, 2020, Receiver, Robb Evans & Associates, LLC, provided the FTC with documents obtained from the VPL Medical, Inc. business premises. A true and correct redacted copy of one such document is attached to this declaration as Attachment 1.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the statements made in this declaration are true and correct.

Executed on July 14, 2020 in Washington, D.C.

_____
Connor Sands

## SALES CONTRACT

Contract NO:YYM20200515
Date:15th, May 2020

FROM  ,Jinhua    Zhejiang Provi

TO:    Accent Imports Inc
9007 Arrow Route Suite 290
Rancho Cucamonga 91730
Jason Cardiff    

| N. | DESCRIPTION | QUANTITY | | UNIT PRICE(USD) | TOTAL AMT. |
|---|---|---|---|---|---|
| 1 | Flat Face Mask Making Machine (1+2) | 8 | Set | | |
| 2 | Melt blown Non-woven Fabric | 2 | T | | |
| 3 | Outer Non-woven Fabric | 2 | T | | |
| 4 | Inner Non-woven Fabric | 2 | T | | |
| 5 | Ear loop String（2M PCS） | 0.7 | T | | |
| 6 | Plastic Nose Piece （2M PCS） | 0.4 | T | | |

$

1)SHIPPMENT DATE:

2sets machine shipped on 10th, June    Need to pay ASAP
2sets machine shipped on 15th, July
2sets machine shipped on 15th, August
2sets machine shipped on 15th, September

2) DESTINATION:    LOS ANGELES
3)PAYMENT:    T/T,FOB NINGBO
4)INSURANCE:    BY BUYER

ELIZABETH JONES SANGER (*pro hac vice*)
esanger@ftc.gov; (202) 326-2757
JAMES A. PRUNTY (*pro hac vice*)
jprunty@ftc.gov; (202) 326-2438
EDWIN RODRIGUEZ (*pro hac vice*)
erodriguez@ftc.gov; (202) 326-3147
SHIRA D. MODELL (*pro hac vice*)
smodell@ftc.gov; (202) 326-3116
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
Fax: (202) 326-3259

STACY PROCTER (Local Counsel) (CA 221078)
sprocter@ftc.gov; (310) 824-4300
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Fax: (310) 824-4380
ATTORNEYS FOR PLAINTIFF

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Federal Trade Commission**, <br><br> Plaintiff, <br><br> v. <br><br> **Jason Cardiff, et al.**, <br><br> Defendants. | No. ED 18-CV-02104-DMG (PLAx) <br><br> DECLARATION OF FTC COUNSEL ELIZABETH SANGER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT JASON CARDIFF AND NON-PARTY VPL MEDICAL INC.'S *EX PARTE* APPLICATION TO REMOVE RECEIVER OR TO DIRECT RECEIVER TO CONTINUE VPL MEDICAL INC.'S OPERATIONS AND PAY VENDORS AND CRITICAL STAFF |

Pursuant to 28 U.S.C. § 1746, I, Elizabeth Jones Sanger, declare as follows:

1.      I am an attorney employed by the U.S. Federal Trade Commission ("FTC" or "Commission"), in Washington, D.C., in the Division of Advertising Practices. I am assigned to the above-captioned case.

2.      The facts set forth herein are based on my personal knowledge or information made known to me in the course of my official duties, and if called as a witness I could competently testify thereto.

3.      Yesterday, July 13, 2020, I participated in a meet and confer conversation with counsel for Jason Cardiff and VPL Medical, Inc. ("VPL") and counsel for the Receiver. During the call, counsel for Jason Cardiff and VPL expressed his belief that VPL may be able to successfully obtain a second deadline extension on VPL's contract with the U.S. Department of Health and Human Services ("HHS"). I learned during the call that HHS had sent a letter to VPL on Friday, July 10, 2020, seeking assurances that VPL could fulfill its contract. Counsel for the Receiver provided the FTC with a copy of the HHS letter after the call. Contrary to the representation in Jason Cardiff and VPL's *ex parte* application, the FTC did not refuse to discuss the letter.

4.      The outcome of the July 13, 2020 meet and confer conversation was that counsel for Jason Cardiff and VPL would hold off on filing their contemplated *ex parte* application, and instead work to produce additional documentation to the Receiver and cooperate with the Receiver in formulating a response to the July 10 letter from HHS. Later yesterday afternoon and evening, I was copied on several emails between counsel for Jason Cardiff and VPL and counsel for the Receiver.

5.      Counsel for the Receiver circulated dial-in information for a follow-up conference call that was supposed to take place at 9:00 am Pacific today, July 14, 2020. One of the topics of discussion was to be the response to the July 10 letter from HHS. In response, counsel for Jason Cardiff and VPL stated that he would attend the call, but was prepared to file his contemplated *ex parte*

application "if we get blind sided again." Approximately one hour and forty-five minutes later (at 11:56 pm Eastern), he filed the *ex parte* application. Counsel for Jason Cardiff and VPL did not contact the FTC to provide the required notice under the Court's Standing Order (Dkt. 319, p. 10, lines 25-27) until 3:29 pm Eastern today.

I declare under penalty of perjury that the statements in this declaration are true and correct.

Executed in Washington, D.C. on July 14, 2020.

/s/ Elizabeth Jones Sanger
ELIZABETH JONES SANGER
Attorney for Plaintiff
FEDERAL TRADE COMMISSION

# EXHIBIT 50

## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 51

Case 5:23-cv-00021-JGB-PLA Document 45-3 Filed 04/08/24 Page 99 of 116 Page ID
#:1170
Case 5:18-cv-02104-DMG-PLA Document 403 Filed 07/16/20 Page 1 of 5 Page ID #:10735

1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **CENTRAL DISTRICT OF CALIFORNIA**
10
11
12  FEDERAL TRADE COMMISSION,          )  Case No.: ED CV 18-2104-DMG (PLAx)
                                        )
13            Plaintiff,                )
                                        )  **ORDER DENYING DEFENDANT**
14                                      )  **JASON CARDIFF AND**
                                        )  **INTERVENOR VPL MEDICAL**
15        vs.                           )  **INC.'S *EX PARTE* APPLICATION TO**
                                        )  **REMOVE RECEIVER OR TO**
16                                      )  **DIRECT RECEIVER TO CONTINUE**
                                        )  **VPL MEDICAL, INC'S**
17  JASON CARDIFF, et al.,              )  **OPERATIONS AND PAY VENDORS**
                                        )  **AND CRITICAL STAFF [391]**
18            Defendants.               )
                                        )
19                                      )
                                        )
20 ─────────────────────────────────── )
21
22
23
24
25
26
27
28

On July 13, 2020, Defendant Jason Cardiff and Intervenor VPL Medical, Inc. ("VPL") filed their *Ex Parte* Application for Leave to Remove Receiver or to Direct Receiver to Continue VPL Medical Inc.'s Operations and Pay Vendors and Critical Staff. [Doc. # 391.] On July 14, 2020, the Receiver and the FTC filed their Responses to VPL's *Ex Parte* Application. [Doc. ## 395, 396.] Cardiff and VPL filed a reply on July 15, 2020. [Doc. # 399.]

Cardiff and VPL argue that the Receiver Robb Evans & Associates has acted "grossly negligent[ly]" and breached its fiduciary duty to preserve the Receivership Assets in two ways: (1) "failing to timely work with VPL's Bobby Bedi to assure that the production lines were operational" and (2) "relying on the opinions of untrained hourly personnel when [the Receiver] decided to terminate VPL's manufacturing operations" on July 10, 2020. *Ex Parte* App. at 25 [Doc. # 391].

The Receiver asserts that Cardiff, Bedi, and VPL have "fundamentally misrepresented what VPL is capable of achieving and the status of the manufacturing for the [Department of Health and Human Services ("HHS") contract," which required the delivery of 2 million "Surgical Three Ply Face Masks" by July 14, 2020. Receiver Opp. at 4 [Doc. # 396]; Jen Decl. at ¶ 14 [Doc. # 396]. Because employees of the Receiver observed only one functioning mask-manufacturing machine at VPL on July 9, 2020, and Matthew Peters, a representative of VPL's primary investor who is also involved in setting up VPL's manufacturing capability, stated that VPL would not be ready to produce 2 million FDA-compliant masks by the HHS contract deadline, the Receiver concluded that any effort to meet the July 14, 2020 deadline would be futile and decided to stop spending Receivership Assets on VPL's manufacturing costs on July 10, 2020. Kane Decl. at ¶¶ 5-10 [Doc. # 396 at 42-43]. Cardiff and VPL object to this characterization of VPL's readiness, arguing that according to their contracted engineer Jalinder Singh, three production lines were ready, and that more could

1    have been operational had the Receiver more quickly resolved financing and

2    budget issues when it assumed control of VPL on June 24, 2020. Cardiff and VPL

3    Reply at 2-3 [Doc. # 399].

4        The Court "'has broad powers and wide discretion to determine the

5    appropriate relief in an equity receivership.'" *S.E.C. v. Capital Consultants, LLC*,

6    397 F.3d 733, 738 (9th Cir. 2005) (quoting *S.E.C. v. Lincoln Thrift Ass'n*, 577 F.2d

7    600, 606 (9th Cir. 1978)). A receiver "is appointed in behalf of all parties, and not

8    of the complainant or of the defendant only," and should be impartial between the

9    parties. *Booth v. Clark*, 58 U.S. 322, 331 (1855).

10       Reminiscent of their arguments against the Court's July 7 Preliminary

11   Injunction, Cardiff and VPL have not provided a legal basis on which to remove

12   the Receiver. Cardiff and VPL cite to two unpublished cases in which courts

13   balanced the equities and found that removing the receiver was *not* proper because

14   it would cause the estate irreparable harm, despite the receiver making some

15   mistakes or evincing some bias. *See S.E.C. v. Private Equity Mgmt. Grp., Inc.*, No.

16   CV 09-2901 PSG (EX), 2009 WL 2019747, at *6 (C.D. Cal. July 2, 2009); *S.E.C.

17   v. Schooler*, No. CV 12-2164-GPC-(JMAx), 2015 WL 1510949, at *7 (S.D. Cal.

18   Mar. 4, 2015).

19       Here, the Receiver has been ordered to "[c]onserve, hold, manage, and

20   prevent the loss of all VPL Assets, and perform all acts necessary or advisable to

21   preserve the value of those Assets." July 7, 2020 Preliminary Injunction at VI.D

22   [Doc. # 389]. Based on the information before the Receiver, the Receiver did not

23   clearly violate its fiduciary duty or its Court-ordered obligation to prevent loss of

24   VPL Assets by spending money to fulfill a contract that appeared to be doomed to

25   fail. The Court understands that the timeframe to fulfill the HHS contract has been

26   tight and that certain delays in achieving VPL's manufacturing capability were

27   outside its control. But the facts, as contested as they are, do not support pinning

28   the blame for the failure to meet the HHS contract deadline solely on the Receiver,

where VPL's manufacturing ability appears to be significantly delayed. Moreover, removing the Receiver at this stage would cause the estate irreparable harm, as the Court has already amply explained its concerns of asset dissipation (and Cardiff and VPL's proposed order seeks to pay $20,000 per month to both Bedi and Cardiff, without temporal limitation or explanation). The Court thus does not find that the equities require terminating the Receiver's responsibilities over VPL. Nor have Cardiff and VPL stated with sufficient particularity based on credible facts what the Court should order the Receiver to do in the alternative.

Given the current evidentiary record, it is understandable that the Receiver is wary about the accuracy of Cardiff's representations to him. The Court is disappointed, however, in the apparent lack of clarity—and alacrity—in communications between the Receiver, Bedi, Cardiff, VPL, and their attorneys. For example, there is no excuse for the enduring confusion over whether the Receiver in fact reimbursed Jalinder Singh $6,500 for a critical compressor, given the objective evidence showing that he was reimbursed. Jen Decl. at ¶ 13 and Ex. 4. There is no excuse for the parties to tell such different tales about how many machines are operational, what the production capacity of each machine is, precisely what is needed to run the machines, and who is qualified to opine as to how and when VPL can become ready to produce the masks. There is no excuse for the Receiver's possible misunderstanding of what type of masks HHS agreed to purchase and what the most up-to-date FDA standards are for the manufacture and labeling of such masks.

The Receiver and VPL share responsibility for following the Court's instruction to do what is in the best interests of all parties, non-parties such as Bobby Bedi, and the public: to keep VPL running legally and profitably. The Receiver must be mindful of its obligations to remain impartial and the particular need in this case for urgency, given the tight timelines and the specter of another national shortage of personal protective equipment. VPL and its representatives

must fulfill their promises of total cooperation with the Receiver, including fully disclosing the role Matthew Peters plays in its operations, clarifying what its manufacturing and labeling obligations are under the HHS contract (should that contract be extended), and refraining from making legally baseless ad hominem attacks and last-minute applications to the Court.

Cardiff and VPL's *ex parte* application is **DENIED**. The Receiver shall file a report with the Court with an update on the status of the HHS contract as soon as new information is available, and Cardiff and VPL may respond to that report within two days after it is filed.

IT IS SO ORDERED.

DATED:  July 16, 2020

DOLLY GEE
UNITED STATES DISTRICT JUDGE

# EXHIBIT 52
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 53
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 54
## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 55
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 56
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 57
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 58
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 59
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 60
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 61
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 62
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 63
## TO THE DECLARATION
## OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]

# EXHIBIT 64
## TO THE DECLARATION OF STEPHEN G. LARSON

[Redacted - Document Conditionally Filed Under Seal]