# EXHIBIT A

## CARDIFF MOTION TO SUPPRESS

Stephen R. Cochell
Cochell Law Firm P.C.
5850 San Felipe Ste 500
Houston Texas 77057
(346)800-3500
srcochell@gmail.com
Admitted Pro Hac Vice


Attorneys for Defendant
Jason Edward Thomas Cardiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     vs.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>          Defendant. | Case No.:  5:23-CR-00021-JGB |

## DECLARATION OF STEPHEN R. COCHELL IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE EFROM ILLEGAL SEARCHES AND SEIZURES

I, Stephen R. Cochell, declare as follows:

1.     I am a partner and owner of Cochell Law Firm, PC, attorneys of record for Defendant Jason Edward Thomas Cardiff.  I have personal knowledge of the facts set forth herein.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration based in support of Defendant Jason Cardiff's Motion to Supppress Evidence From Illegal Searches and Seizures.

1

2.      A true and correct copy of an email dated July 17, 2018 from the FTC to the USPIS with attachment removed, produced by the Government as Bates Number GOV005_00000495, is attached hereto as **Exhibit 1**.

3.      A true and correct copy of a Request for Non-Public Materials and Certification of Intent to Maintain Confidentiality and to Restrict Use to Law Enforcement Purposes dated July 24, 2018 and submitted by the USPIS to the FTC, produced by the Government as Bates Number GOV005_00000376, is attached hereto as **Exhibit 2**.

4.      A true and correct copy of a letter dated August 3, 2018 from the FTC to USPIS, produced by the Government as Bates Number GOV005_00000378, is attached hereto as **Exhibit 3**.

5.      A true and correct copy of an email dated August 14, 2018 from the FTC to USPIS, produced by the Government as Bates Number GOV005_00000498, is attached hereto as **Exhibit 4**.

6.      A true and correct copy of an email dated August 17, 2018 from USPIS to the FTC, produced by the Government as Bates Number GOV005_00000539, is attached hereto as **Exhibit 5**.

7.      A true and correct copy of an email dated September 4, 2018 from the FTC to USPIS, produced by the Government as Bates Number GOV005_00000507, is attached hereto as **Exhibit 6**.

8.      A true and correct copy of an email dated September 6, 2018 from the FTC to USPIS, produced by the Government as Bates Number GOV005_00000509, is attached hereto as **Exhibit 7**.

9.      A true and correct copy of a USPIS Memorandum to File dated October 10, 2018, produced by the Government as Bates Number

GOV_MOI_001552–53, is attached hereto as **Exhibit 8**.

10.    A true and correct copy of an email dated October 10, 2018 from the FTC to USPIS with attachment, produced by the Government as Bates Number GOV005_00000424, is attached hereto as **Exhibit 9**.

11.    A true and correct copy of an email dated October 10, 2018 from the FTC to USPIS with attachment, produced by the Government as Bates Number GOV005_00000425, is attached hereto as **Exhibit 10**.

12.    A true and correct copy of a USPIS Memorandum to File dated July 6, 2021, produced by the Government as Bates Number GOV_MOI_001077–91, is attached hereto as **Exhibit 11**.

13.    A true and correct copy of a USPIS Memorandum to File dated October 23, 2018, produced by the Government as Bates Number GOV_MOI_001092–93, is attached hereto as **Exhibit 12**.

14.    A true and correct copy of a Consent to Search – Electronic Devices and Storage Media or Services dated July 6, 2021, produced by the Government as Bates Number GOV_MOI_001794–95, is attached hereto as **Exhibit 13**.

15.    A true and correct copy of an email dated May 15, 2020 from the DOJ to the Receiver with attachment, produced by the Government as Bates Number GOV005_00000002, is attached hereto as **Exhibit 14**.

16.    A true and correct copy of an email exchange dated between May 15, 2020 and May 26, 2020 between the Receiver and the DOJ with attachment, including handwritten notes produced by the Government as Bates Number GOV005_00000038, is attached hereto as **Exhibit 15**.

17.    A true and correct copy of an email exchange dated between June 22, 2020 and June 23, 2020 between the Receiver and the DOJ with

attachment, produced by the Government as Bates Number GOV005_00000005, is attached hereto as **Exhibit 16**.

18.    A true and correct copy of FTC Civil Dkt. 81-1, the Declaration of Brick Kane is attached hereto as **Exhibit 17**.

19.    A true and correct copy of the Final Judgment Including Permanent Injunction as to Defendants Jason Cardiff and Eunjung Cardiff, FTC Civil Dkt. 706 is attached as **Exhibit 18.**

20.    A true and correct copy of the Final Judgment Including Permanent Injunction as to Defendants Jason Cardiff and Eunjung Cardiff, FTC Civil Dkt. 705 is attached as **Exhibit 19**

21.    The Government, by Manu Sebastian, DOJ sent a letter dated April 18, 2024 describing the Government's production of documents included a group of documents entitled "GOV_MOI" which contained government memoranda of interviews and other "Agent Materials." These include "MTF" (Memorandum to File) and "MTA" (Memorandum of Activity).  A true and correct copy of this document is attached hereto as **Exhibit 20** and includes "Comprehensive Production Index as of April 18, 2024":

- GOV_MOI 1-1076:

- GOV_MOI 1077-1553;

- GOV_MOI 1554-1801.

I have reviewed these materials and was unable to locate any documents referred to or reported any contact by the Receiver and USPIS prior to October 12, 2018.  In addition, none of the above referenced documents suggest that USPIS agents, including but not limited to Ms. Reins-Jarin, advised Brick Kane, the Receiver, as to Redwood's or Cardiffs' constitutional right to refuse a

4

search of the premises and various computers prior to October 12, 2018.

19.   The April 18, 2024 "Comprehensive Production Index as of April 18, 2024" (**Exhibit 20**) also provides a summary and specific details of documents that are the subject of Defendant's Motion to Suppress Evidence. The motion also includes evidence and witnesses that were learned as a result of the initial search on October 12, 2018 and subsequent searches conducted by law enforcement authorities.

20.   I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

Executed on this 9th day of September, at Houston, Texas.

**/s/ Stephen R. Cochell**
Stephen R. Cochell

| Ex. No. | Description |
|---------|-------------|
| 1 | Email dated July 17, 2018 from the FTC to the USPIS with attachment removed, produced by the Government as Bates Number GOV005_00000495 |
| 2 | Request for Non-Public Materials and Certification of Intent to Maintain Confidentiality and to Restrict Use to Law Enforcement Purposes dated July 24, 2018 and submitted by the USPIS to the FTC, produced by the Government as Bates Number GOV005_00000376 |
| 3 | Letter dated August 3, 2018 from the FTC to USPIS, produced by the Government as Bates Number GOV005_00000378 |
| 4 | Email dated August 14, 2018 from the FTC to USPIS, produced by the Government as Bates Number GOV005_00000498 |
| 5 | Email dated August 17, 2018 from USPIS to the FTC, produced by the Government as Bates Number GOV005_00000539 |
| 6 | Email dated September 4, 2018 from the FTC to USPIS, produced by the Government as Bates Number GOV005_00000507 |
| 7 | Email dated September 6, 2018 from the FTC to USPIS, produced by the Government as Bates Number GOV005_00000509 |
| 8 | USPIS Memorandum to File dated October 10, 2018, produced by the Government as Bates Number GOV_MOI_001552–53 |
| 9 | Email dated October 10, 2018 from the FTC to USPIS with attachment, produced by the Government as Bates Number GOV005_00000424 |
| 10 | Email dated October 10, 2018 from the FTC to USPIS with attachment, produced by the Government as Bates Number GOV005_00000425 |
| 11 | USPIS Memorandum to File dated July 6, 2021, produced by the Government as Bates Number GOV_MOI_001077–91 |
| 12 | USPIS Memorandum to File dated October 23, 2018, produced by the Government as Bates Number GOV_MOI_001092–93 |
| 13 | Consent to Search – Electronic Devices and Storage Media or Services dated July 6, 2021, produced by the Government as Bates Number GOV_MOI_001794–95 |
| 14 | Email dated May 15, 2020 from the DOJ to the Receiver with attachment, produced by the Government as Bates Number GOV005_00000002 |
| 15 | Email exchange dated between May 15, 2020 and May 26, 2020 between the Receiver and the DOJ with attachment, produced by the Government as Bates Number GOV005_00000038 |

6

| 16 | Email exchange dated between June 22, 2020 and June 23, 2020 between the Receiver and the DOJ with attachment, produced by the Government as Bates Number GOV005_00000005 |
| 17 | Declaration of Brick Kane, Dkt. 81-1 of Civil Case with FTC |
| 18 | The Final Judgment and Permanent Injunctions as to Defendants Jason Cardiff and Eunjung Cardiff, Dkt. 706 of the Civil Case with the FTC. |
| 19 | The Final Judgment and Permanent Injunctions as to Defendants Corporate Defendants, Dkt. 705 of the Civil Case with the FTC. |
| 20 | April 18, 2024 Letter from Government re: Production of Documents |

# EXHIBIT 1

## CARDIFF MOTION

## TO SUPPRESS

Message
_____

| | |
|---|---|
| **From**: | Prunty, James A. [JPRUNTY@ftc.gov] |
| **Sent**: | 7/17/2018 11:41:59 PM |
| **To**: | 'Mayberry, Lisa D - Santa Ana, CA' [LDMayberry@uspis.gov] |
| **CC**: | Sanger, Elizabeth [esanger@ftc.gov] |
| **Subject**: | [EXTERNAL] RE: contact info |
| **Attachments**: | 2018-07-17 Ltr to USPIS L. Mayberry.pdf; USPIS 712 Form.pdf |

Lisa, nice speaking with you.  I've copied my colleague, Liz, on this email.  I'll be away for a week so please copy her should you have any follow-up questions about the info sharing form.

Jim

**James A. Prunty**

Federal Trade Commission | Division of Advertising Practices
600 Pennsylvania Ave., N.W. | Room CC-10562 | Washington DC 20580
t: 202.326.2438 | f: 202.326.3259 | jprunty@ftc.gov

Confidentiality Notice: The information contained in this transmittal, including attachments if any, may be confidential or privileged under applicable law, or otherwise may be protected from disclosure to anyone other than the intended recipient(s).  Any review, use, distribution, or copying of the contents of this e-mail or its attachments by any person other than the intended recipient for any purpose other than its intended use, is strictly prohibited and may be unlawful.  This communication is not intended as a waiver of the confidential, privileged or exempted status of the information transmitted. If you have received this e-mail in error, you should permanently delete the e-mail and any attachments.  Do not save, copy, disclose, or rely on any part of the information contained in this e-mail or its attachments.  Also immediately notify the sender of the misdirection of this transmittal.  Your cooperation is appreciated.

_____

**From:** Mayberry, Lisa D - Santa Ana, CA [mailto:LDMayberry@uspis.gov]
**Sent:** Tuesday, July 17, 2018 7:01 PM
**To:** Prunty, James A.
**Subject:** contact info

Hi James,
Please send any information regarding the case to:

Lisa Mayberry
U.S. Postal Inspector
Los Angeles Division Mail Fraud Team Leader
704-578-9878 cell
714-571-4571 office
LDMayberry@uspis.gov

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER



Division of Advertising Practices

United States of America
FEDERAL TRADE COMMISSION
Washington, D.C. 20580

July 17, 2018

**Via Email**
Ms. Lisa Mayberry
Fraud Team Leader
U.S. Postal Inspection Service
Los Angeles Division

      Re:   *Form 712 For Sharing FTC Information With Law Enforcement*

Dear Lisa:

     Thanks for taking my call today. As I mentioned on the telephone, the FTC's Division of Advertising Practices has been investigating a nest of companies permeated with fraud and centered in Upland, California. We are hoping to file an ex parte TRO in early September that will include seven common enterprise defendants and three individual defendants. Based on our investigation to date, it appears that the companies and individuals are defrauding consumers through the US mail and by wire. Additionally, money is being circulated in a manner consistent with money laundering and structuring to avoid bank reporting requirements.

     So far, we have records from several banks, some forensic analysis of those records, and more than 1.6 million documents received directly from the company and other third parties. We look forward to hearing from you regarding your interest in pursuing this matter further with us.

Best regards,

James A. Prunty
Division of Advertising Practices

Encl.

**To:** General Counsel
Federal Trade Commission
Washington, DC 20580

**Re:** Request for Non-public Materials and
Certification of Intent to Maintain
Confidentiality and to Restrict Use to Law
Enforcement Purposes

Pursuant to the Federal Trade Commission Act, as amended 15 U.S.C. §41 et seq., and Rules 4.6 and 4.11 of the Commission's Rules of Practice, 16 C.F.R. §§4.6 and 4.11, I hereby request access to materials concerning:

Redwood Scientific Technologies, Inc. (CA); Redwood Scientific Technologies, Inc. (Delaware); Redwood Scientific Technologies, Inc. (NV); Identify, LLC (WY); Advanced Men's Institute, LLC (CA); Runaway Products, LLC (NY); Carol Place Trust; Carols Place Limited Partnership (AZ);Jason Cardiff; Eunjung Cardiff, aka Eunjung No; Danielle Cadiz, aka Danielle Walker; and all of their related companies

| FTC File No. *(if known)*: | FTC STAFF CONTACT |
|---|---|
| 1723117 | James Prunty |

I certify on behalf of this office that any information received pursuant to this request will be maintained in confidence and used only for official law enforcement purposes.

| CITE AGENCY'S AUTHORITY | DESCRIBE LAW ENFORCEMENT PURPOSE |
|---|---|
| | |

PLEASE CHECK ONE:

○ A copy of this certification should be provided to submitters of the documents to which access is requested.

◉ I request that the Commission **NOT** send a copy of this Certification to submitters of the documents to which access is requested.

REQUESTER'S SIGNATURE                                    DATE

SIGN HERE

## PLEASE PRINT OR TYPE THE INFORMATION REQUESTED BELOW.

| REQUESTER'S NAME AND TITLE | TELEPHONE NUMBER |
|---|---|
| | |

OFFICE

ADDRESS

EMAIL ADDRESS

FTC Form **712** (6/17)

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER                    GOV005_00000495_0003.00001

# EXHIBIT 2

## CARDIFF MOTION

## TO SUPPRESS

| **To:** General Counsel<br>Federal Trade Commission<br>Washington, DC 20580 | **Re:** Request for Non-public Materials and<br>Certification of Intent to Maintain<br>Confidentiality and to Restrict Use to Law<br>Enforcement Purposes |
|---|---|

Pursuant to the Federal Trade Commission Act, as amended 15 U.S.C. §41 et seq., and Rules 4.6 and 4.11 of the Commission's Rules of Practice, 16 C.F.R. §§4.6 and 4.11, I hereby request access to materials concerning:

Redwood Scientific Technologies, Inc. (CA); Redwood Scientific Technologies, Inc. (Delaware); Redwood Scientific Technologies, Inc. (NV); Identify, LLC (WY); Advanced Men's Institute, LLC (CA); Runaway Products, LLC (NY); Carol Place Trust; Carols Place Limited Partnership (AZ);Jason Cardiff; Eunjung Cardiff, aka Eunjung No; Danielle Cadiz, aka Danielle Walker; and all of their related companies

| FTC File No. *(if known):* | FTC STAFF CONTACT |
|---|---|
| 1723117 | James Prunty |

I certify on behalf of this office that any information received pursuant to this request will be maintained in confidence and used only for official law enforcement purposes.

| CITE AGENCY'S AUTHORITY | DESCRIBE LAW ENFORCEMENT PURPOSE |
|---|---|
| FTC Act, 15 USC 45, 52 | Assist FTC staff in investigation of advertising and marketing practices for thin film strip products |

PLEASE CHECK ONE:

    ○ A copy of this certification should be provided to submitters of the documents to which access is requested.

    ◉ I request that the Commission **NOT** send a copy of this Certification to submitters of the documents to which access is requested.

| REQUESTER'S SIGNATURE | DATE |
|---|---|
| *Lisa Mayberry* | 7/24/2018 |

## PLEASE PRINT OR TYPE THE INFORMATION REQUESTED BELOW.

| REQUESTER'S NAME AND TITLE | TELEPHONE NUMBER |
|---|---|
| Lisa Mayberry, US Postal Inspector - Mail Fraud Team Leader | 704-578-9878 |

OFFICE

Los Angeles Division

ADDRESS

PO Box 4399
Santa Ana, CA 92702

EMAIL ADDRESS

LDMayberry@USPIS.GOV

FTC Form **712** (6/17)

# EXHIBIT 3

**CARDIFF MOTION**

**TO SUPPRESS**



United States of America
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Heather Hippsley
Acting Principal Deputy General Counsel
Office of the General Counsel



AUG 0 3 2018

Lisa Mayberry
United States Postal Inspector
United States Postal Inspection Service
Mail Fraud Team Leader
P.O. Box 4399
Santa Ana, CA 92702

Dear Ms. Mayberry:

This responds to your request received in this office on July 24, 2018, for access to
information regarding materials received by FTC in the course of its investigation of Redwood
Scientific Technologies, Inc. (CA); Redwood Scientific Technologies, Inc. (DE); Redwood
Scientific Technologies, Inc. (NV); Identify, LLC (WY); Advance Men's Institute, LLC (CA);
Runaway Products, LLC (NY); Carol Place Trust; Carols Place Limited Partnership (AZ); Jason
Cardiff, Eunjung Cardiff, aka Eunjung No; Danielle Cardiz, aka Danielle Walker; and all of their
related companies. The Commission appreciates your continued involvement in our mutual law
enforcement activities and your interest in this matter. I have determined to grant you access to
responsive materials on a continuing basis as an exercise of discretion, subject to certain limited
exceptions required by statute or regulation or policy.

My response to your request is authorized by Commission Rule 4.11(c) of the
Commission's Rules of Practice, 16 C.F.R. § 4.11(c). Access to this material is granted for
official law enforcement purposes only, and with the understanding, as expressed in your
certification, that you will preserve its confidentiality.

In granting discretionary release of this information, the Commission intends no waiver
of statutory privileges or of applicable exemptions under the Freedom of Information Act, 5
U.S.C. § 552. Further, the Commission may wish to protect the confidentiality of the material
under any applicable privileges if your office receives a request for access or becomes subject to
compulsory process or to discovery in litigation. Accordingly, any further disclosure of this
material, including its use in court, may be undertaken only if you provide notice to this office
and obtain advance written authorization. We appreciate your cooperation and look forward to
working with you in the future.

The materials to which you have been granted access may be obtained by contacting James Prunty, Attorney, Bureau of Consumer Protection, Division of Advertising Practices, 600 Pennsylvania Avenue N.W., Mail Stop CC — 10528, Washington, D.C. 20580.  Mr. Prunty's telephone number is (202) 326-2438.

Sincerely,

Heather Hippsley

2

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

GOV005_00000378_0001.00002

# EXHIBIT 4

**CARDIFF MOTION**

**TO SUPPRESS**

Message

| | |
|---|---|
| **From**: | Prunty, James A. [JPRUNTY@ftc.gov] |
| **Sent**: | 8/14/2018 9:14:49 PM |
| **To**: | Lisa Mayberry [LDMayberry@uspis.gov] |
| **CC**: | Sanger, Elizabeth [esanger@ftc.gov] |
| **Subject**: | [EXTERNAL] Redwood Scientific Technologies |

Lisa, now that our general counsel's office has given you access to discuss this case, is there a time tomorrow afternoon (EDST) we could have a brief conversation about where we are?

Jim

**James A. Prunty**

Federal Trade Commission | Division of Advertising Practices
600 Pennsylvania Ave., N.W. | Room CC-10562 | Washington DC 20580
t: 202.326.2438 | f: 202.326.3259 | jprunty@ftc.gov

Confidentiality Notice: The information contained in this transmittal, including attachments if any, may be confidential or privileged under applicable law, or otherwise may be protected from disclosure to anyone other than the intended recipient(s). Any review, use, distribution, or copying of the contents of this e-mail or its attachments by any person other than the intended recipient for any purpose other than its intended use, is strictly prohibited and may be unlawful. This communication is not intended as a waiver of the confidential, privileged or exempted status of the information transmitted. If you have received this e-mail in error, you should permanently delete the e-mail and any attachments. Do not save, copy, disclose, or rely on any part of the information contained in this e-mail or its attachments. Also immediately notify the sender of the misdirection of this transmittal. Your cooperation is appreciated.

# EXHIBIT 5

## CARDIFF MOTION

## TO SUPPRESS

Message

---

**From**:        Mayberry, Lisa D - Santa Ana, CA [LDMayberry@uspis.gov]
**Sent**:        8/17/2018 7:11:26 PM
**To**:          Prunty, James A. [JPRUNTY@ftc.gov]
**CC**:          Sanger, Elizabeth [esanger@ftc.gov]; Rodriguez, Edwin [ERODRIGUEZ@ftc.gov]
**Subject**:     Re: [EXTERNAL] Redwood - Immediate Access


10 4. Sounds good.

Lisa

Sent from my iPhone

> On Aug 17, 2018, at 12:10 PM, Prunty, James A. <JPRUNTY@ftc.gov> wrote:
>
> Lisa, we will call you on your cell at 11:00 a.m. pacific time on Monday.
>
> Thanks and have a good weekend. Jim
>
> <meeting.ics>

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 6

## CARDIFF MOTION

## TO SUPPRESS

Message

---

**From**: Prunty, James A. [JPRUNTY@ftc.gov]
**Sent**: 9/4/2018 9:38:28 PM
**To**: Lisa Mayberry [LDMayberry@uspis.gov]
**Subject**: [EXTERNAL] My Trip to So Cal this Week

Lisa, thanks for speaking with us on the spur of the moment today. Let me know if you have not received or secure link with Redwood documents I prepared a couple of weeks ago for your review.

I'm planning to meet you at your Long Beach office at 10:00 a.m. on Friday, September 7th. It has occurred to me that it might be worth doing some sort of reconnaissance of the Redwood business premises in Upland that day. One of the things we're concerned about is that the principals of Redwood may be pulling up stakes and leaving. We hope to get our action filed no later than September 25th. Knowing that the business is still going and still located at the Upland location might help reassure the team that we're on the right track. If they've moved that would be helpful as well. Let me know if you have the time to do that. Perhaps we could meet at an easier location on the way to Upland if that's something you're willing to do.

Just let me know your thoughts. Otherwise, I'll plan to see you in Long Beach Friday morning.

Thanks.

Jim

**James A. Prunty**

Federal Trade Commission | Division of Advertising Practices
600 Pennsylvania Ave., N.W. | Room CC-10562 | Washington DC 20580
t: 202.326.2438 | f: 202.326.3259 | jprunty@ftc.gov

Confidentiality Notice: The information contained in this transmittal, including attachments if any, may be confidential or privileged under applicable law, or otherwise may be protected from disclosure to anyone other than the intended recipient(s). Any review, use, distribution, or copying of the contents of this e-mail or its attachments by any person other than the intended recipient for any purpose other than its intended use, is strictly prohibited and may be unlawful. This communication is not intended as a waiver of the confidential, privileged or exempted status of the information transmitted. If you have received this e-mail in error, you should permanently delete the e-mail and any attachments. Do not save, copy, disclose, or rely on any part of the information contained in this e-mail or its attachments. Also immediately notify the sender of the misdirection of this transmittal. Your cooperation is appreciated.

# EXHIBIT 7

**CARDIFF MOTION**

**TO SUPPRESS**

Message

| From: | Prunty, James A. [JPRUNTY@ftc.gov] |
|---|---|
| Sent: | 9/6/2018 8:18:45 PM |
| To: | Lisa Mayberry [LDMayberry@uspis.gov] |
| Subject: | [EXTERNAL] Redwood |
| Attachments: | 2018-09-05 Memo to Lisa Mayberry USPIS.docx |

Lisa, thanks for taking my call on your day off.  Your suggestion of avoiding all of the Friday traffic by having some of your USPIS associates drive by these addresses is certainly appealing.

The hope is that by driving by the business addresses and the home address, we can make some sort of determination as to whether the Cardiffs are still living at the home at 700 West 25th Street, Upland, and whether they are still conducting business activities at the three addresses in Upland (see attached memo) and the historical address in Claremont (see memo).

We know that the Cardiffs drive two Bentleys and two Porsches.  It would help to know what, if any business activities are being conducted at the business addresses we've given you, and to have some plates we can run to see if we can match them to the employment records we've already received from California Employment Division.

Hopefully, the memo will help with the description of the conduct we are investigating, and some names and addresses where the activities have been taking place.

Feel free to contact me at 202-905-8668 with questions.

Lisa, I'll still plan to meet with you at your Long Beach office tomorrow at 10:00 a.m.  At that time, I can transfer you some of the large files we were unable to send you using secure links.  Can you please send me your Long Beach address when you receive this email.  Thanks again.

Jim Prunty

**CONFIDENTIAL AND PRIVILEGED JOINT WORK PRODUCT**

**TO:**      **Lisa Mayberry, USPIS, Team Leader**

**FROM:**    **Elizabeth Sanger, 202-326-2757; Email: [ HYPERLINK
"mailto:esanger@ftc.gov" ]**
             **Jim Prunty, 202-326-2438; Email: [ HYPERLINK "mailto:jprunty@ftc.gov"
]**
             **Edwin Rodrigues, 202-326-3147; Email: [ HYPERLINK
"mailto:erodriguez@ftc.gov" ]**

**RE:**      **Redwood Scientific Technologies, Inc., and Jason & Eunjung Cardiff**

**DATE:**    **August 21, 2018**

**Defendants**

*Husband and wife*:

Jason Edward Thomas Cardiff

███████████████   █████████████

Eunjung Cardiff, a/k/a Eunjung No

████████████  ██████████

*Associate*:

Danielle Cadiz, a/k/a Danielle Walker
SSN ██████████ ; ████████
Address: ██████████████████████

*Corporate Entities*:

Redwood Scientific Technologies, Inc. (Incorporated in CA, NV, and DE)
Addresses: 820 North Mountain Avenue, Suite 100 (main office), Upland, CA 91786
870 North Mountain Avenue, Suites 115 (warehouse) and 118 (customer service), Upland, CA
91786

*Note*: Historical address is 2501 1ˢᵗ Street, Suite 301, Claremont, CA 91711
We've never been able to verify whether this address is still being used by the corporate entities.

Identify, LLC (WY)
Address: 820 North Mountain Avenue, Suite 100, Upland, CA 91786

Redwood Scientific Technologies, LLC (CA)
Advanced Men's Institute Prolongz LLC d/b/a AMI (CA)
Run Away Products, LLC (NY)
Carols Place Limited Partnership (AZ)


**Other Related Businesses**

Intel Property, LLC (WY)
Address: 870 North Mountain Avenue, Suite 115, Upland, CA 91786
Cigirex LLC (NY)
OWL Enterprises LLC (NV)
Smoke Stop LLC (CA)
Wage Lock LLC (CA)


**Target Filing Date**

Early to mid-September 2018. Along with our complaint, we plan to apply for an ex parte TRO in the Central District of California, requesting the appointment of a receiver and an immediate access order allowing the receiver access to the companies' physical premises. We do not anticipate that there will be more than 15-20 people working at the three business locations.


**The FTC Case**

The FTC case involves deceptive marketing of dissolvable oral film strip products; the use of unauthorized autoship programs; violations of the Telemarketing Sales Rule (TSR); and a recently launched multi-level marketing program. The common enterprise includes three identically named corporations – Redwood Scientific Technologies, Inc. (incorporated in California, Nevada, and Delaware, respectively) – and four limited liability companies incorporated in different states: Identify, LLC (Wyoming), Run Away Products, LLC (New York), Advanced Men's Institute Prolongz, LLC (California), and Carols Place Limited Partnership (Arizona).

Proposed defendants operate as a common enterprise making fraudulent claims about their products and engaging in marketing and billing practices that are causing ongoing consumer injury. Specifically, our investigation showed that proposed defendants have: (1) deceptively marketed at least three of their dissolvable film strip products – TBX-FREE, Eupepsia Thin, and Prolongz – as, respectively, highly effective smoking cessation, weight loss, and sexual performance products; (2) falsely represented that TBX-FREE, Eupepsia Thin, and Prolongz have been proven effective in clinical testing; (3) falsely claimed that Eupepsia Thin is made in the USA; (4) falsely claimed that TBX-FREE, Eupepsia Thin, and Prolongz are sold with a lifetime money-back guarantee; (5) deceptively featured actors in Eupepsia Thin advertising as actual consumers who had successfully used Eupepsia Thin to lose substantial amounts of weight; (6) failed to adequately disclose enrollments in autoship plans, unfairly placed consumers in autoship plans without their authorization, and misrepresented that consumers would *not* be placed in autoship plans; (7) violated the Restore Online Shoppers'

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

Confidence Act and the Electronic Fund Transfer Act; (8) violated the Telemarketing Sales Rule by making illegal robocalls; and (9) in connection with their spring 2018 launch of Rengalife, a multi-level marketing program, made false or unsubstantiated earnings claims.

Defendants use USPS to ship their products to consumers and ask consumers to return unwanted/unordered products via US mail.

Staff has accumulated evidence from publicly-available sources and third parties, as well as Redwood's 1.6 million-document response to a Civil Investigative Demand (CID), including over 525 consumer complaints via Consumer Sentinel and the California Better Business Bureau, records of more than 10,000 consumer contacts/complaints to Redwood, interviews with more than 20 consumers, seventeen sworn consumer affidavits, two recorded undercover purchase calls to defendants' TBX-FREE toll-free number, two recorded undercover purchases initiated on tbxfree.com, one undercover purchase of Eupepsia Thin initiated on Amazon.com, thousands of pages of bank statements and related documents covering both corporate depository and merchant accounts, and CID responses from Visa, MasterCard, American Express, and the California Division of Employment and Labor. Staff also has obtained documentation from a telecommunications company establishing that proposed defendants licensed a telephone number from which robocalls were delivered to consumers.

In addition to making false or unsubstantiated advertising claims, proposed defendants also engage in deceptive and unfair marketing practices, including failing to disclose adequately material terms and conditions of autoship continuity plans, misrepresenting that consumers would not be placed in autoship continuity plans, and unfairly charging consumers' debit and credit cards without authorization. Consumer complaints are voluminous: in just five months in 2017, the company recorded over 10,000 contacts from consumers. The overwhelming majority of complaints, whether to third parties or to Redwood directly, concerned unauthorized charges to debit and credit cards. Defendants also had high chargeback rates and were terminated by processors a number of times for that reason. Defendants have also been denied merchant accounts due to a history of high chargebacks. One of the ways Defendants have gotten around this is by creating new companies to apply for accounts under different company names, and by rotating through individuals who sign account applications.

Under its autoship continuity program, Redwood sends consumers additional shipments of its products each month and charges their debit or credit cards for each shipment until consumers affirmatively cancel their membership. Consumers are typically unaware that they have been enrolled in a continuity program until they discover the charges on their debit or credit card statements or receive an unexpected product shipment. These unauthorized charges result most often from proposed defendants' failure to disclose the continuity program to obtain consumers' informed consent to the recurring charges. However, at Jason Cardiff's direction, Defendants have at times simply converted what were initially registered as one-time sales into continuity sales without consumers' consent (in some cases months after the fact). In other instances, Redwood's customer service representatives affirmatively misrepresented to consumers that they would not be enrolled in autoship continuity programs, and that their debit or credit cards would only be charged for a one-time purchase. Several of the consumers we interviewed, and others who complained directly to the company, cited being charged despite assurances that they were making a one-time purchase.

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

These consumer experiences are corroborated by our undercover purchase. When our investigator placed a phone order of TBX-FREE, he stated that he only wanted a single box. The sales representative tried to upsell the investigator on a three-box bundle, but ultimately closed the sale by confirming that our investigator's credit card would be charged $49.95 for one box. Nevertheless, a month later, our investigator received an email with the subject line, "TBX Subscription Billing Reminder TBX-FREE 1 Month –Tobacco Subscription," which stated that he was due to receive his refill within the upcoming week through his "preferred subscribe and save membership."

Our investigator was also enrolled in an autoship continuity plan after placing an online order for "1 Month Supply of TBX-FREE$^{TM}$ Menthol Flavor $49.95." There were no disclosures about the continuity plan during the order flow, nor were there any disclosures about Redwood's restrictions on refunds.

The packing slip that arrives with the product shipment is often the first time consumers have an opportunity to learn that they have been placed in an autoship continuity plan and, even then, they have to read past the upper half of the packing slip, where date of purchase and the amount they agreed to pay appear in large print. The lower half of the packing slip, under the heading "Order Information," contains a densely worded, single-spaced, small-print explanation of Redwood's policy concerning "RETURNS & REFUNDS." Buried in the second paragraph of that section is the following statement:

> Thank you so much for choosing Redwood Scientific Technologies' product. We sincerely hope you will be pleased with your purchase. We are so confident that you will love the product(s) which you have purchased, we are offering a 30 days' money back satisfaction guarantee. To provide you with a trouble-free experience, contact us within 30 days of your order to return for refund or cancel your auto-ship subscription, [sic] you must follow the steps listed below to ensure prompt credit or cancellation to your account.

The fine print goes on to state that consumers will not be refunded for original shipping and handling, that they will have to pay for return postage, that returns will only be accepted if they are shipped with a Return Merchandise Authorization number, and that refunds will only be issued if the product is received within 30 days of when it was *ordered* (not received) by the consumer.

Many consumers who attempt to follow Redwood's return policies are still denied refunds, are trapped in autoship continuity plans for three to four months before successfully cancelling, or are re-enrolled in autoship continuity plans after believing they had successfully canceled their membership. Consumer complaints and our investigator's capture of the TBX-FREE website also show that although Redwood obtains debit card numbers from many consumers with the intention of charging them for autoship continuity plans, proposed defendants fail to get written or other similarly authenticated authorization in advance.

**Additional Potentially Criminal Issues**

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

In addition to using the US mail and telephones to facilitate fraudulent, unauthorized debit and credit card charges, Defendants also use their companies for personal gain while potentially evading taxes. For example, they take very large sums of cash out of their various accounts. Also, the Cardiffs recently testified under oath in a civil proceeding in Los Angeles that they have not filed personal taxes in the last six years.

One of Defendants' biggest sources of revenue and cash comes from their completely bogus 501(c)(3) charities, People United For Christians (PUFC), a California corporation, d/b/a Peter Popoff Ministries, Ltd.; PPM Ministries Ltd., a California corporation; and Messengers For Christ World Healing Center (MFC), a Nevada corporation. They may also be operating charities in the following names: Together Against Cancer, Medical Aid and Research Fund Inc., and Edward Thomas Ministries. Jason Cardiff started his marketing career fundraising for The Ministries of Peter Popoff (a televangelist), and was married to Popoff's daughter, Amy. When Jason stopped fundraising for Popoff, we believe he took the mailing lists and opened several bank accounts to continue fundraising for an organization formed by Jason and his new wife (Eunjung), Peter Popoff Ministries, Ltd, which bears Popoff's name but has no formal relationship with The Ministries of Peter Popoff.

When Defendants responded to our CID, rather than cull out the documents that were responsive to our requests, they gave us a data dump, which includes outgoing mail solicitations from PUFC and MFC asking people for checks and cash contributions. One of our bank CIDs turned up 25,000 pages of check, USPS Postal Money Order, and other money order deposits in amounts varying from $20-$100 from people all over the United States who responded to Defendants' appeals for "seed offerings" for prayers. So much cash comes in the mail in response to these bogus pleas that they needed a Brinks contract to keep the cash safe. We see no evidence at all of any actual religious activity or eleemosynary purpose being served by these charities. To the contrary, the charities help fund the expenses of the common enterprise of companies we have targeted. The Cardiffs also appear to use those charities to pay personal expenses.

The Cardiffs also have at least three personal trusts of which we are aware: Jurikel Trust, Jurikel Trust 2, and Carols Place Trust (a bridge trust). Carols Place Trust is the primary owner of Carols Place Limited Partnership, one of the Defendants. There may be another trust in Europe. Little is known about the trust assets except that Carols Place Trust owns the Cardiffs' $1.3 million home, as well as jewelry and paintings listed in an insurance rider that almost equal the value of the home. Carols Place Trust has a duress clause that causes trust assets to pour over to a Cook Island Trust in the event of legal action against the Cardiffs.

**Consumer Sentinel Complaints in Southern California**

The following complaint reference numbers are from Culver City, Fountain Valley, Visalia, Banning, and Murrieta, California:

Ref: 

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER



If you discover additional consumer complaints in your USPIS database that have not been
reported to Consumer Sentinel, we'd appreciate having an opportunity to review them.

I'm attaching 10 consumer declarations, as well as some documents that relate to the Cardiffs'
charitable solicitations on behalf of PUFC to give you a flavor of things. Let me know if you
need anything else to get started. When are moving papers for the TRO are in order we will get
you a copy.

# EXHIBIT 8

**CARDIFF MOTION**

**TO SUPPRESS**

# U.S. POSTAL INSPECTION SERVICE
# LOS ANGELES DIVISION

## MEMO TO FILE

---

RE: 820 N. Mountain Ave., Suite 100
    870 N. Mountain Ave., Suites 115 and 118
    Upland, CA  91786


    700 W. 25th St., Upland, CA  91784


On Friday, October 5, 2018, I conducted surveillance of the target addresses 820 N. Mountain Ave., Suite 100, and 870 N. Mountain Ave., Suites 115 and 118, Upland, CA, associated with Redwood Scientific Technologies.  I also drove past 700 W. 25th St., the address for Jason and Eunjung Cardiff.

At approximately 9:00am, I drove by 700 W. 25th St.  The driveway gate was closed and I could not see in.  I spent several minutes driving down W. 25th St., then turned back to drive past the home again.  I noticed a truck parked across the street from the home and after I drove by, the truck turned in to the driveway.  I turned around to head back to pass the home again.  As I drove by, I observed the truck parked inside and a larger black dog not far away.  I recognized the dog as one from several RengaLife Facebook posts by Jason Cardiff.

At approximately 12:40pm, I walked through 820 N. Mountain Ave. and observed Suite 100.  The door was closed and there was a Redwood Scientific Technologies sign posted to the side of the door.  Following this location, I walked to the 870 N. Mountain Ave. building and entered through the door facing 820 N. Mountain Ave.  I walked down the hall and past Suites 115 and 118, located across the hall from each other.  I turned the corner (to my right) and heard someone exit a door.  Though I did not observe it directly, it sounded as if the person exited either 115 or 118.  I waited a few seconds before turning the corner and heading back down the hall.  I saw a female, possibly white or Hispanic, with brown hair up in a ponytail walking down the hall.  I turned the corner toward the main corridor in the middle of the building and saw the female enter a restroom.  She appeared to be in her 20s or possibly early 30s.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                GOV_MOI_001552

On October 10, 2018, I returned to 820 and 870 N. Mountain Ave.  At
approximately 8:45am, I observed a dark colored Bentley sedan parked
outside 820 N. Mountain.  There was no license plate on the front.
Systems checks found that Eunjung Cardiff has two Bentleys
registered in her name (one expiring in 2019, and one that expired
09/24/2018).

At approximately 10:40am, I observed the Bentley parked in the same
parking space, not far from the cluster mailbox outside 820 N.
Mountain.  I walked along the sidewalk behind the vehicle and the
rear had a paper plate with a frame that said 'Beverly Hills'.

Christine Reins-Jarin
Postal Inspector
October 10, 2018

# EXHIBIT 9

**CARDIFF MOTION**

**TO SUPPRESS**

Message

---

**From**:        Prunty, James A. [JPRUNTY@ftc.gov]
**Sent**:        10/10/2018 7:35:16 PM
**To**:          Reins-Jarin, Christine A - Los Angeles, CA [/o=USPS/ou=Exchange Administrative Group
                 (FYDIBOHF23SPDLT)/cn=Recipients/cn=FCBKF0]
**Subject**:     [EXTERNAL] Redwood

Christine, just a quick update.  No word from the Court yet, so our earliest date at this
point will be Friday, October 12, 2018.  If no luck this week, we'll be looking at next
Tuesday.  I'll keep you updated as I know.  Did you have any luck pulling CCW permits
for the subjects or vehicle plates?

Thanks.

Jim

**James A. Prunty**

Federal Trade Commission | Division of Advertising Practices
600 Pennsylvania Ave., N.W. | Room CC-10562 | Washington DC 20580
t: 202.326.2438 | f: 202.326.3259 | jprunty@ftc.gov

Confidentiality Notice: The information contained in this transmittal, including attachments if any, may be confidential or privileged
under applicable law, or otherwise may be protected from disclosure to anyone other than the intended recipient(s).  Any review, use,
distribution, or copying of the contents of this e-mail or its attachments by any person other than the intended recipient for any purpose
other than its intended use, is strictly prohibited and may be unlawful.  This communication is not intended as a waiver of the
confidential, privileged or exempted status of the information transmitted. If you have received this e-mail in error, you should
permanently delete the e-mail and any attachments.  Do not save, copy, disclose, or rely on any part of the information contained in this
e-mail or its attachments.  Also immediately notify the sender of the misdirection of this transmittal.  Your cooperation is appreciated.

# EXHIBIT 10

## CARDIFF MOTION

## TO SUPPRESS

Message

| | |
|---|---|
| **From**: | Prunty, James A. [JPRUNTY@ftc.gov] |
| **Sent**: | 10/10/2018 10:47:26 PM |
| **To**: | Reins-Jarin, Christine A - Los Angeles, CA [/o=USPS/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=FCBKF0] |
| **Subject**: | [EXTERNAL] Redwood |
| **Attachments**: | Redwood Scientific TRO Signed by J. Otero.pdf |

Christine, the judge signed our TRO today and it looks like we'll be doing the immediate access Friday, October 12, 2018. We'll be meeting at the Upland Police Dept. as I stated in a previous email. I'll be leaving the office shortly as I have to catch an early flight out of here in the morning.

I'll still be monitoring email at this address but if you need to speak with me you're welcome to call my cell, 202-905-8688.

Jim

**James A. Prunty**

Federal Trade Commission | Division of Advertising Practices
600 Pennsylvania Ave., N.W. | Room CC-10562 | Washington DC 20580
t: 202.326.2438 | f: 202.326.3259 | jprunty@ftc.gov

Confidentiality Notice: The information contained in this transmittal, including attachments if any, may be confidential or privileged under applicable law, or otherwise may be protected from disclosure to anyone other than the intended recipient(s). Any review, use, distribution, or copying of the contents of this e-mail or its attachments by any person other than the intended recipient for any purpose other than its intended use, is strictly prohibited and may be unlawful. This communication is not intended as a waiver of the confidential, privileged or exempted status of the information transmitted. If you have received this e-mail in error, you should permanently delete the e-mail and any attachments. Do not save, copy, disclose, or rely on any part of the information contained in this e-mail or its attachments. Also immediately notify the sender of the misdirection of this transmittal. Your cooperation is appreciated.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FILED
CLERK, U.S. DISTRICT COURT

October 10, 2018

CENTRAL DISTRICT OF CALIFORNIA
BY: ____VPC____ DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**Federal Trade Commission**,

    Plaintiff,

    v.

**Jason Cardiff, et al.,**

    Defendants.

**FILED UNDER SEAL**

Case No. 18-cv-2104

*EX PARTE* TEMPORARY
RESTRAINING ORDER WITH
ASSET FREEZE,
APPOINTMENT OF A
TEMPORARY RECEIVER, AND
OTHER EQUITABLE RELIEF,
AND ORDER TO SHOW CAUSE
WHY A PRELIMINARY
INJUNCTION SHOULD NOT
ISSUE

    Plaintiff, the Federal Trade Commission, has filed its Complaint for
Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the
Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), the Restore
Online Shoppers' Confidence Act, ("ROSCA"), 15 U.S.C. §§ 8401-8405, and the
Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and Section 6

1

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER    GOV005_00000425_0002.00001

of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the

"Telemarketing Act"), 15 U.S.C. § 6105, and has moved, pursuant to Fed. R. Civ.

P. 65(b), for a temporary restraining order, asset freeze, other equitable relief, and

an order to show cause why a preliminary injunction should not issue against

Defendants Jason Cardiff, Eunjung Cardiff, a/k/a Eunjung Lee, a/k/a Eunjung No,

Danielle Cadiz, a/k/a Danielle Walker, Redwood Scientific Technologies, Inc.

(California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific

Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz

LLC, Run Away Products, LLC, and Carols Place Limited Partnership.

## FINDINGS OF FACT

The Court, having considered the Complaint, the *ex parte* Application for a

Temporary Restraining Order, declarations, exhibits, and the memorandum of

points and authorities filed in support thereof, and being otherwise advised, finds

that:

A.    This Court has jurisdiction over the subject matter of this case, and

there is good cause to believe that it will have jurisdiction over all parties hereto

and that venue in this district is proper.

B.    In numerous instances, Defendants have misrepresented the

effectiveness of their dissolvable film strip products for smoking cessation, weight

loss, and improved male sexual performance, thereby misleading vulnerable

consumers.  Defendants have then further injured many consumers by placing

them on unauthorized continuity plans that resulted in additional charges to their

credits cards or withdrawals from their debit accounts.  Defendants have also made

false earnings claims as part of a multilevel marketing plan, and illegally caused

more than one million robocalls to be made to consumers' telephones.

C.    There is good cause to believe that Defendants Jason Cardiff, Eunjung

Cardiff, Danielle Cadiz, Redwood Scientific Technologies, Inc. (California),

Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific

2

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

1  Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz
2  LLC, Run Away Products, LLC, and Carols Place Limited Partnership have
3  engaged in and are likely to engage in acts or practices that violate Sections 5(a)
4  and 12 of the FTC Act, Section 4 of ROSCA, Section 907(a) of EFTA, EFTA's
5  implementing Regulation E, and the Telemarketing Sales Rule ("TSR"), and that
6  Plaintiff is therefore likely to prevail on the merits of this action.  As demonstrated
7  by Defendants' own advertising and communications, consumer complaints,
8  declarations, and the additional documentation filed by the FTC, the Commission
9  has established a likelihood of success in showing that Defendants have
10 deceptively marketed TBX-FREE, Eupepsia Thin, and Prolongz, placed consumers
11 on continuity plans without their prior authorization, charged consumers' credit
12 cards and debited their bank accounts without authorization, caused robocalls to be
13 made to more than one million consumers to induce the sale of goods or services,
14 and misrepresented the earnings that people who join their multi-level marketing
15 program are likely to make.

16      D.    The FTC is likely to succeed in showing that Corporate Defendants
17 Redwood Scientific Technologies, Inc. (California), Redwood Scientific
18 Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware),
19 Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products,
20 LLC, and Carols Place Limited Partnership operate as a common enterprise and are
21 the alter egos of Jason Cardiff and Eunjung Cardiff.

22      E.    There is good cause to believe that immediate and irreparable harm
23 will result from Defendants' ongoing violations of the FTC Act, ROSCA, EFTA
24 and Regulation E, and the TSR unless Defendants are restrained and enjoined by
25 order of this Court.

26      F.    There is good cause to believe that immediate and irreparable damage
27 to the Court's ability to grant effective final relief for consumers – including
28 monetary restitution, rescission, or disgorgement – will occur from the sale,

3

GOV005_00000425_0002.00003

1   transfer, destruction or other disposition or concealment by Defendants of their

2   assets or records, unless Defendants are immediately restrained and enjoined by

3   order of this Court; and that, in accordance with Fed. R. Civ. P. 65(b) and Local

4   Rule 7-19.2, the interests of justice require that this Order be granted without prior

5   notice to Defendants.  Thus, there is good cause for relieving Plaintiff of the duty

6   to provide Defendants with prior notice of its Motion for a Temporary Restraining

7   Order.

8       G.    Good cause exists for freezing the assets of all Defendants, appointing

9   a temporary receiver over the Receivership Entities and over the assets of Jason

10  Cardiff and Eunjung Cardiff, permitting Plaintiff and the Receiver immediate

11  access to the Defendants' business premises, and permitting Plaintiff and the

12  Receiver to take expedited discovery.

13      H.    Weighing the equities and considering Plaintiff's likelihood of

14  ultimate success on the merits, a temporary restraining order with an asset freeze,

15  the appointment of a temporary receiver, immediate access to business premises,

16  expedited discovery, and other equitable relief is in the public interest.

17      I.    This Court has authority to issue this Order pursuant to Section 13(b)

18  of the FTC Act, 15 U.S.C. § 53(b), Federal Rule of Civil Procedure 65, and the All

19  Writs Act, 28 U.S.C. § 1651.

20      J.    No security is required of any agency of the United States for issuance

21  of a temporary restraining order.  Fed. R. Civ. P. 65(c).

22                          **DEFINITIONS**

23      For the purpose of this Order, the following definitions shall apply:

24      A.    "Asset" means any legal or equitable interest in, right to, or claim to,

25  any property, wherever located and by whomever held.

26      B.    "Continuity Program" means any plan, arrangement, or system under

27  which a consumer is periodically charged for products or services, without prior

28  notification by the seller before each charge.

                                4

C.      "Corporate Defendant(s)" means Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership, and each of their subsidiaries, affiliates, successors, and assigns.

D.      "Defendant(s)" means Corporate Defendants, Jason Cardiff, Eunjung Cardiff, and Danielle Cadiz, individually, collectively, or in any combination.

E.      "Document" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including email and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases, and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

F.      "Electronic Data Host" means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

G.      "Individual Defendant(s)" means Jason Cardiff, Eunjung Cardiff, and Danielle Cadiz, individually, collectively, or in any combination.

H.      "Negative Option" means, in an offer or agreement to sell or provide

5

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

1    any good or service, a provision under which the consumer's silence or failure to

2    take an affirmative action to reject a good or service or to cancel the agreement is

3    interpreted by the seller or provider as acceptance or continuing acceptance of the

4    offer or agreement.

5          I.     "Person" means a natural person, organization, or other legal entity,

6    including a corporation, partnership, proprietorship, association, cooperative, or

7    any other group or combination acting as an entity.

8          J.     "Preauthorized Electronic Fund Transfer" means an electronic fund

9    transfer authorized in advance to recur at substantially regular intervals.

10          K.     "Receiver" means the temporary receiver appointed in Section XV of

11    this Order and any deputy receivers that shall be named by the temporary receiver.

12          L.     "Receivership Entities" means Corporate Defendants as well as any

13    other entity that has conducted any business related to Defendants' marketing and

14    sale of dissolvable film strips and promotion of the Rengalife multilevel marketing

15    program, including receipt of Assets derived from any activity that is the subject of

16    the Complaint in this matter, and that the Receiver determines is controlled or

17    owned by any Defendant.

18          M.     "Receivership Property" means any Assets, wherever located, that are:

19    (1) owned, controlled, or held by or for the benefit of the Receivership Entities,

20    Jason Cardiff, or Eunjung Cardiff, in whole or in part; (2) in the actual or

21    constructive possession of the Receivership Entities, Jason Cardiff, or Eunjung

22    Cardiff; or (3) owned, controlled, or held by, or in the actual or constructive

23    possession of, or otherwise held for the benefit of, any corporation, partnership,

24    trust, or other entity directly or indirectly owned or controlled by the Receivership

25    Entities, Jason Cardiff, or Eunjung Cardiff, including the Jurikel Family Trust, and

26    Carols Place Trust.

27                        **ORDER**

28    **I.     PROHIBITED BUSINESS ACTIVITIES**

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

GOV005_00000425_0002.00006

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods, services, or programs are temporarily restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

    A.    Any material fact about TBX-FREE, Eupepsia Thin, or Prolongz, including, but not limited to:

        1.    That TBX-FREE is an effective smoking cessation product;

        2.    That TBX-FREE is more effective than either nicotine patches or nicotine gum in enabling cigarette smokers to stop smoking;

        3.    That TBX-FREE enables many cigarette smokers to quit in seven to ten days;

        4.    That TBX-FREE has an 88% success rate, including among people who have smoked cigarettes for more than five years;

        5.    That smokers should not need to purchase more than one month of TBX-FREE;

        6.    That clinical studies have been conducted on TBX-FREE, and have shown that TBX-FREE is an effective smoking cessation product;

        7.    That TBX-FREE has been proven in clinical studies to be more effective than nicotine patches or nicotine gum in enabling smokers to stop smoking;

        8.    That clinical studies of TBX-FREE conducted on 10,600 people have shown that TBX-FREE has an "88% success rate";

        9.    That The New England Journal of Medicine ("NEJM"), Harvard Health Publications, and Johns Hopkins University

7

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER    GOV005_00000425_0002.00007

1     have published clinical studies proving that TBX-FREE is an

2     effective smoking cessation product;

3     10.    That NEJM's clinical studies showed that TBX-FREE is ten

4            times more effective for smoking cessation than nicotine

5            replacement therapy;

6     11.    That Eupepsia Thin is an effective appetite suppressant and

7            weight loss aid;

8     12.    That Eupepsia Thin starts working in less than 20 seconds, and

9            suppresses a user's appetite within minutes;

10    13.    That Eupepsia Thin enables users to lose 10, 20, or even 100

11           pounds without dieting, giving up their favorite foods, or

12           increasing their exercise;

13    14.    That Eupepsia Thin users can lose 15 pounds their first month

14           without dieting or changing their food or lifestyle;

15    15.    That Eupepsia Thin users can lose as much as 20 pounds in one

16           month and as much as 50 pounds in three months;

17    16.    That Eupepsia Thin is more effective at causing weight loss

18           than conventional calorie reduction and meal plans;

19    17.    That Eupepsia Thin enables consumers to avoid gaining back

20           weight they lose, without any lifestyle changes.

21    18.    That clinical studies have been conducted on EupepsiaThin and

22           those studies show that it is an effective appetite suppressant

23           and weight loss aid;

24    19.    That Prolongz substantially increases ejaculation control and

25           the duration of sex;

26    20.    That Prolongz treats or prevents premature ejaculation;

27    21.    That Prolongz is clinically proven to increase ejaculation

28           control and the duration of sex for more than 97% of users;

8

22.   That Eupepsia Thin is made in the United States;

23.   That individuals appearing in advertising for Eupepsia Thin
used that product successfully to lose weight; and

24.   That consumers who are not satisfied with the product they
purchased will get their money back;

B.   Any material fact about any multi-level marketing plan, including, but
not limited to, the income that participants in the plan are likely to
earn; and

C.   Any other fact material to consumers concerning any good or service,
such as:  the total costs; any material restrictions, limitations, or
conditions; or any material aspect of its performance, efficacy, nature,
or central characteristics.

## II.   PROHIBITIONS AGAINST UNFAIR AND DECEPTIVE NEGATIVE OPTION MARKETING PRACTICES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers,
agents, employees, and attorneys, and all other persons in active concert or
participation with any of them, who receive actual notice of this Order, whether
acting directly or indirectly, in connection with the sale of any good or service are
temporarily restrained and enjoined from charging, causing to be charged,
assisting others in charging, or attempting to charge any consumer in any sale of a
good or service sold through a negative option without:

A.   Clearly and conspicuously disclosing all material terms of the
negative option features before obtaining the consumer's billing information;

B.   Obtaining a consumer's express informed consent, written or similarly
authorized, to the negative option features before making any charge; and

C.   Providing a simple mechanism for a consumer to stop recurring
charges from being placed on the consumer's credit card, debit card, or other
financial account.

9

## III.   PROHIBITIONS AGAINST UNAUTHORIZED CHARGES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are temporarily restrained and enjoined from charging, causing to be charged, assisting others in charging, or attempting to charge any consumer for any good or service without first obtaining the consumer's express informed consent, written or similarly authorized, to the charge.

## IV.   PROHIBITIONS AGAINST DEBITING CONSUMERS' BANK ACCOUNTS WITHOUT AUTHORIZATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service, are temporarily restrained and enjoined from:

   A.   Failing to timely obtain written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account before initiating any Preauthorized Electronic Fund Transfer; and

   B.   Failing to provide to the consumer a copy of a valid written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account.

## V.   PROHIBITION OF PRERECORDED MARKETING CALLS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from

10

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER   GOV005_00000425_0002.00010

initiating or causing the initiation of outbound telephone calls delivering

prerecorded messages to induce the sale of goods or services.

## VI.    PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers,

agents, employees, and attorneys, and all other persons in active concert or

participation with any of them, who receive actual notice of this Order, whether

acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.    Selling, renting, leasing, transferring, or otherwise disclosing, the

name, address, birth date, telephone number, email address, credit card number,

bank account number, Social Security number, or other financial or identifying

information of any person that any Defendant obtained in connection with any

activity that pertains to the subject matter of this Order; and

B.    Benefitting from or using the name, address, birth date, telephone

number, email address, credit card number, bank account number, Social Security

number, or other financial or identifying information of any person that any

Defendant obtained in connection with any activity that pertains to the subject

matter of this Order.

Provided, however, that Defendants may disclose such identifying

information to a law enforcement agency, to their attorneys as required for their

defense, as required by any law, regulation, or court order, or in any filings,

pleadings or discovery in this action in the manner required by the Federal Rules of

Civil Procedure and by any protective order in the case.

## VII.    ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants and their officers, agents,

employees, and attorneys, and all other persons in active concert or participation

with any of them, who receive actual notice of this Order, whether acting directly

or indirectly, are hereby temporarily restrained and enjoined from:

11

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets that are:

1.    Owned or controlled, directly or indirectly, by any Defendant, including, but not limited to, those for which a Defendant is a signatory on the account;

2.    Held, in part or in whole, for the benefit of any Defendant;

3.    In the actual or constructive possession of any Defendant; or

4.    Owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant.

B.    Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

C.    Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant, or of which any Defendant is an officer, director, member, or manager.  This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signer; or

D.    Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant;

The Assets affected by this Section shall include:  (1) all Assets of Defendants as of the time this Order is entered; and (2) Assets obtained by Defendants after this

12

Order is entered if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order; and (3) all Assets owned or controlled, directly or indirectly, by Jason Cardiff, Eunjung Cardiff, the Jurikel Family Trust, or Carols Place Trust. This Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this Order.

## VIII. DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor or vendor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that:

(a) has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of any Defendant or any Asset that has been owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant;

(b) has held, controlled, or maintained custody, through an account or otherwise, of any Document or Asset associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales

13

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

GOV005_00000425_0002.00013

organizations, third party processors or vendors, payment gateways, insurance companies, or other entities; or

(c)    has extended credit to any Defendant, including through a credit card account, shall:

A.    Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or Asset, as well as all Documents or other property related to such Assets, except by further order of this Court;

B.    Deny any person, except the Receiver, access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;

C.    Provide Plaintiff's counsel and the Receiver, within three (3) days of receiving a copy of this Order, a sworn statement setting forth:

1.    The identification number of each such account or Asset;

2.    The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

3.    The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

D.    Upon the request of Plaintiff's counsel or the Receiver, promptly provide Plaintiff's counsel and the Receiver with copies of all records or other

14

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

GOV005_00000425_0002.00014

Documents pertaining to any account covered by this Section or Asset, including

originals or copies of account applications, account statements, signature cards,

checks, drafts, deposit tickets, transfers to and from the accounts, including wire

transfers and wire transfer instructions, all other debit and credit instruments or

slips, currency transaction reports, 1099 forms, and all logs and records pertaining

to safe deposit boxes, commercial mail boxes, and storage facilities.

Provided, however, that this Section does not prohibit any transfers to the Receiver

or repatriation of foreign Assets specifically required by this Order.

## IX.    FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that each Defendant, within five (5) days of

service of this Order upon them, shall prepare and deliver to Plaintiff's counsel and

the Receiver:

A.    Completed financial statements on the forms attached to this Order as

**Attachment A** (Financial Statement of Individual Defendant) for each Individual

Defendant, and **Attachment B** (Financial Statement of Corporate Defendant) for

each Corporate Defendant and for Carols Place Trust and the Jurikel Family Trust;

and

B.    Completed **Attachment C** (IRS Form 4506, Request for Copy of a

Tax Return) for each Individual Defendant and Corporate Defendant.

## X.    FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that within five (5) days following the

service of this Order, Jason Cardiff, Eunjung Cardiff, Carols Place Trust, and each

Corporate Defendant shall:

A.    Provide Plaintiff's counsel and the Receiver with a full accounting,

verified under oath and accurate as of the date of this Order, of all Assets,

15

Documents, and accounts outside of the United States that are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.      Take all steps necessary to provide the Receiver and Plaintiff's counsel access to all Documents and records that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this Order as **Attachment D.**

C.      Transfer to the territory of the United States and deliver to the Receiver all Documents and Assets located in foreign countries that are: (1) titled in the name, individually or jointly, of any Defendant, or any trust or other entity for which any Defendant is a beneficiary or trustee; (2) held by any person or entity for the benefit of any Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

D.      The same business day as any repatriation, (1) notify the Receiver and Plaintiff's counsel of the name and location of the financial institution or other entity that is the recipient of such Documents or Assets; and (2) serve this Order on any such financial institution or other entity.

## XI.    NON-INTERFERENCE WITH ASSET FREEZE AND REPATRIATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from

16

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER   GOV005_00000425_0002.00016

1  taking any action, directly or indirectly, which may result in the encumbrance,

2  transfer, relocation, or dissipation of domestic or foreign Assets, or in the

3  hindrance of the repatriation required by this Order, including, but not limited to:

4      A.    Sending any communication or engaging in any other act, directly or

5  indirectly, that results in a determination by a foreign trustee or other entity that a

6  "duress" event has occurred under the terms of a foreign trust agreement until such

7  time that all Defendants' Assets have been fully repatriated pursuant to this Order;

8  or

9      B.    Notifying any trustee, protector, or other agent of any foreign trust or

10 other related entities of either the existence of this Order, or of the fact that

11 repatriation is required pursuant to a court order, until such time that all

12 Defendants' Assets have been fully repatriated pursuant to this Order.

13 **XII.  CONSUMER CREDIT REPORTS**

14      **IT IS FURTHER ORDERED** that Plaintiff may obtain credit reports

15 concerning any Defendants pursuant to Section 604(a)(1) of the Fair Credit

16 Reporting Act, 15 U.S.C. 1681b(a)(1), and that, upon written request, any credit

17 reporting agency from which such reports are requested shall provide them to

18 Plaintiff.

19 **XIII.  PRESERVATION OF RECORDS**

20      **IT IS FURTHER ORDERED** that Defendants, Defendants' officers,

21 agents, employees, and attorneys, and all other persons in active concert or

22 participation with any of them, who receive actual notice of this Order, whether

23 acting directly or indirectly, are hereby temporarily restrained and enjoined from:

24      A.    Destroying, erasing, falsifying, writing over, mutilating, concealing,

25 altering, transferring, or otherwise disposing of, in any manner, directly or

26 indirectly, Documents that relate to:  (1) the business, business practices, Assets, or

27 business or personal finances of any Defendant; (2) the business practices or

28 finances of entities directly or indirectly under the control of any Defendant; or (3)

17

1  the business practices or finances of entities directly or indirectly under common

2  control with any other Defendant; and

3          B.      Failing to create and maintain Documents that, in reasonable detail,

4  accurately, fairly, and completely reflect Defendants' incomes, disbursements,

5  transactions, and use of Defendants' Assets.

6  **XIV.  REPORT OF NEW BUSINESS ACTIVITY**

7          **IT IS FURTHER ORDERED** that Defendants, Defendants' officers,

8  agents, employees, and attorneys, and all other persons in active concert or

9  participation with any of them, who receive actual notice of this Order, whether

10  acting directly or indirectly, are hereby temporarily restrained and enjoined from

11  creating, operating, or exercising any control over any business entity, whether

12  newly formed or previously inactive, including any partnership, limited

13  partnership, joint venture, sole proprietorship, or corporation, without first

14  providing Plaintiff's counsel and the Receiver with a written statement disclosing:

15  (1) the name of the business entity; (2) the address and telephone number of the

16  business entity; (3) the names of the business entity's officers, directors, principals,

17  managers, and employees; and (4) a detailed description of the business entity's

18  intended activities.

19

20

21

22  **XV.  TEMPORARY RECEIVER**

23          **IT IS FURTHER ORDERED** that Robb Evans & Associates, LLC is

24  appointed as temporary receiver of the Receivership Entities and of the assets of

25  Jason Cardiff and Eunjung Cardiff that are:

26          1 .      Owned, controlled or held by or for the benefit of Jason Cardiff

27                   or Eunjung Cardiff, in whole or in part;

28

                                        18

      2.     In the actual or constructive possession of Jason Cardiff or Eunjung Cardiff; or

      3.     Owned, controlled or held by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned or controlled by Jason Cardiff or Eunjung Cardiff;

with full powers of an equity receiver. The Receiver shall be solely the agent of this Court in acting as Receiver under this Order.

## XVI.  DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A.    Assume full control of the Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity;

B.    Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity and all Assets of Jason Cardiff and Eunjung Cardiff covered by Part XV of this Order, wherever situated, except for real property used as the residence of Jason Cardiff and Eunjung Cardiff;

C.    Take exclusive custody, control, and possession of all Documents or Assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

19

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER  GOV005_00000425_0002.00019

D.     Conserve, hold, manage, and prevent the loss of all Receivership
Property, and perform all acts necessary or advisable to preserve the value of those
Assets.  The Receiver shall assume control over the income and profits therefrom
and all sums of money now or hereafter due or owing to the Receivership Entities.
The Receiver shall have full power to sue for, collect, and receive, all Receivership
Property and all Assets of other persons or entities whose interests are now under
the direction, possession, custody, or control of, the Receivership Entities or of
Jason Cardiff or Eunjung Cardiff.  Provided, however, that the Receiver shall not
attempt to collect any amount from a consumer if the Receiver believes the
consumer's debt to the Receivership Entities has resulted from the deceptive acts
or practices or other violations of law alleged in the Complaint in this matter,
without prior Court approval;

E.     Take exclusive custody, control, and possession of the following
valuable articles in the possession, custody, or under the control of, Defendants
Jason Cardiff, Eunjung Cardiff, or Carols Place Limited Partnership, wherever
located:

1.     Ladies 14K yellow gold and diamond ring.  Insured for
$11,813.

2.     Ladies diamond pendent setting 14 KT.  Insured for $23,730.

3.     Ladies Diamond Stud Earrings.  Insured for $34,125.

4.     Ladies Diamond Fancy Ring.  Insured for $31,763.

5.     Mens Roadster SM WG/WG Paved Bezel.  Insured for
$32,550.

6.     Ladies handmade platinum diamond bracelet.  Insured for
$46,725

7.     Mens GTS 18KT white gold Daytona Rolex.  Insured for
$42,000.

20

GOV005_00000425_0002.00020

8.   5.08 ct round diamond I color S12 Clarity EGL platinum ring. Insured for $102,076.

9.   Mens Rolex Yacht-Master 18K gold watch.  Insured for $14,125.

10.  Ladies Love Bra yellow gold 4 dia[] 17 cm.  Insured for $9,819.

11.  Ladies yellow gold ring, Serial #UD0824.  Insured for $2,284.

12   Ladies fancy diamond bracelet.  Insured for $39,397.

13.  Mens Rolex watch 18KT gold Pearlmaster.  Insured for $33,180.

14.  Tiffany pearl bracelet.  Insured for $3,166.

15.  Ladies emerald and diamond ring.  Insured for $24,856.

16.  IWC Portofino moon phase watch.  Insured for $8,000.

17.  Pre-owner Ladies stainless steel Patek Phili[ppe].  Insured for $8,145.

18.  Rolex Vintage Thund[er].  Insured for $9,000.

19.  Stuart Moore "Aronade" platinum diamond.  Insured for $12,650.

20.  Peter Philippe annual calendar wristwatch.  Insured for $41,300.

21.  18K yellow gold Tiffany Diamond Bracelet.  #B0164.  Insured for $7,600.

22.  "Living Room" Artist Romero Britto.  Insured for $12,600.

23.  Hermes Birkin bag, size 35 (Togo leather; in Sienna color). Insured for $20,000.

24.  Hermes Birkin bag, size 35 (Togo leather; Curry).  Insured for $20,000

25.  Ladies ring round center stone 8.5 cts, VS2 with diamonds. Insured for $532,000.

21

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

26.    MenOCOs Patek Philippe gold calendar watch model 5035J.
Insured for $28,500.

Defendants Jason Cardiff and Eunjung Cardiff shall deliver all of the foregoing
articles to the Receiver at a place and time to be determined by the Receiver.

F.    Obtain, conserve, hold, manage, and prevent the loss of all Documents
of the Receivership Entities, and perform all acts necessary or advisable to
preserve such Documents. The Receiver shall: divert mail; preserve all
Documents of the Receivership Entities that are accessible via electronic means
(such as online access to financial accounts and access to electronic documents
held onsite or by Electronic Data Hosts, by changing usernames, passwords or
other log-in credentials; take possession of all electronic Documents of the
Receivership Entities stored onsite or remotely; take whatever steps necessary to
preserve all such Documents; and obtain the assistance of the FTC's Digital
Forensic Unit for the purpose of obtaining electronic documents stored onsite or
remotely.

G.    Choose, engage, and employ attorneys, accountants, appraisers, and
other independent contractors and technical specialists, as the Receiver deems
advisable or necessary in the performance of duties and responsibilities under the
authority granted by this Order;

H.    Make payments and disbursements from the receivership estate that
are necessary or advisable for carrying out the directions of, or exercising the
authority granted by, this Order, and to incur, or authorize the making of, such
agreements as may be necessary and advisable in discharging his or her duties as
Receiver. The Receiver shall apply to the Court for prior approval of any payment
of any debt or obligation incurred by the Receivership Entities prior to the date of
entry of this Order, except payments that the Receiver deems necessary or
advisable to secure Assets of the Receivership Entities, such as rental payments;

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER    GOV005_00000425_0002.00022

I.    Take all steps necessary to secure and take exclusive custody of each location from which the Receivership Entities operate their businesses.  Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable:  (1) securing the location by changing the locks and alarm codes and disconnecting any Internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Entities, including, but not limited to, telephones, computers, and tablets paid for by the Receivership Entities.  Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security.  If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

J.    Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendants, and to provide access to all such web page or websites to Plaintiff's representatives, agents, and assistants, as well as Defendants and their representatives;

K.    Enter into and cancel contracts and purchase insurance as advisable or necessary;

L.    Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities;

23

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER    GOV005_00000425_0002.00023

M.    Make an accounting, as soon as practicable, of the Assets and financial condition of the receivership and file the accounting with the Court and deliver copies thereof to all parties;

N.    Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including, but not limited to, actions challenging fraudulent or voidable transfers;

O.    Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate, in addition to obtaining other discovery as set forth in this Order;

P.    Open one or more bank accounts at designated depositories for funds of the Receivership Entities.  The Receiver shall deposit all funds of the Receivership Entities in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts.  The Receiver shall serve copies of monthly account statements on all parties;

Q.    Maintain accurate records of all receipts and expenditures incurred as Receiver;

R.    Allow Plaintiffs' representatives, agents, and assistants, as well as Defendants' representatives and Defendants themselves, reasonable access to the premises of the Receivership Entities, or any other premises where the Receivership Entities conduct business.  The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the Receivership Entities or their agents.  The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access;

24

S.    Allow Plaintiffs' representatives, agents, and assistants, as well as Defendants and their representatives reasonable access to all Documents in the possession, custody, or control of the Receivership Entities;

T.    Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency;

U.    Suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably;

V.    If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court. Provided, however, that the Receiver may delay providing such notice until the Receiver has established control of the nonparty entity and its assets and records, if the Receiver determines that notice to the entity or the parties before the Receiver establishes control over the entity may result in the destruction of records, dissipation of assets, or any other obstruction of the Receiver's control of the entity;

W.    If in the Receiver's judgment the business operations cannot be continued legally and profitably, take all steps necessary to ensure that any of the Receivership Entities' web pages or websites relating to the activities alleged in the Complaint cannot be accessed by the public, or are modified for consumer education and/or informational purposes, and take all steps necessary to ensure that any telephone numbers associated with the Receivership Entities cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations; and

X.    Report to this Court on or before the date set for the hearing to Show Cause regarding the Preliminary Injunction or as otherwise directed by the Court, regarding: (1) the steps taken by the Receiver to implement the terms of the Order;

25

(2) the value of all assets and sum of all liabilities of the Receivership Entities; (3)

the steps the Receiver intends to take in the future to protect receivership assets,

recover receivership assets from third parties, and adjust receivership liabilities; (4)

the Receiver's opinion on whether any portion of the business of any of the

Receivership Entities can continue to operate legally and profitably; and (5) any

other matters that the Receiver believes should be brought to the Court's attention.

**XVII. TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER**

**IT IS FURTHER ORDERED** that Defendants and any other person with

possession, custody or control of (1) property of, or records relating to, the

Receivership Entities or (2) the Assets of Jason Cardiff or Eunjung Cardiff or any

trusts for which they are beneficiaries or trustees, shall, upon notice of this Order

by personal service or otherwise, fully cooperate with and assist the Receiver in

taking and maintaining possession, custody, or control of the Assets and

Documents of the Receivership Entities and the Assets of Jason Cardiff or Eunjung

Cardiff and immediately provide, transfer, or deliver to the Receiver possession,

custody, and control of, the following:

A.    All Assets held by or for the benefit of the Receivership Entities or of

Jason Cardiff or Eunjung Cardiff, except for real property used as the residence of

Jason Cardiff and Eunjung Cardiff;

B.    All Documents or Assets associated with credits, debits, or charges

made on behalf of any Receivership Entity, wherever situated, including reserve

funds held by payment processors, credit card processors, merchant banks,

acquiring banks, independent sales organizations, third party processors, payment

gateways, insurance companies, or other entities;

C.    All Documents of or pertaining to the Receivership Entities or to the

Assets of Jason Cardiff or Eunjung Cardiff;

D.    All computers, electronic devices, mobile devices, and machines used

to conduct the business of the Receivership Entities;

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER    GOV005_00000425_0002.00026

E.      All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Entities; and

F.      All keys, codes, user names, passwords, and all other means of authentication necessary to gain or to secure access to any Assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, mobile phones, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property.

In the event that any person or entity fails to deliver or transfer any Asset, Document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

## XVIII.    PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that Receivership Entities and Jason Cardiff and Eunjung Cardiff shall immediately provide to the Receiver:

A.      A list of all Assets and accounts of the Receivership Entities that are held in any name other than the name of a Receivership Entity, or by any person or entity other than a Receivership Entity;

B.      A list of all Assets and accounts of Jason Cardiff and Eunjung Cardiff that are held in any name other than their own names, or by any person or entity other than themselves;

C.      A list of all agents, employees, officers, attorneys, servants and those persons in active concert and participation with the Receivership Entities, or who have been associated or done business with the Receivership Entities; and

D.      A description of any documents covered by attorney-client privilege or attorney work product, including files where such documents are likely to be located, authors or recipients of such documents, and search terms likely to identify such electronic documents.

27

## XIX.  COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants, Receivership Entities, Defendants' or Receivership Entities' officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and any other person with possession, custody, or control of:

      1.    Receivership Property or records relating to Receivership Property; or

      2.    Other records relating to the Receivership Entities;

who receive actual notice of this Order shall fully cooperate with and assist the Receiver.  This cooperation and assistance shall include, but is not limited to, providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any keys, codes, user names, passwords, and all other means required to access any computers, electronic devices, mobile devices, machines (onsite or remotely), and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any Receivership Entity that all debts should be paid directly to the Receiver; transferring funds at the Receiver's direction and producing records related to the Receivership Property and sales of the Receivership Entities.

## XX.  NON-INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants, Receivership Entities, Defendants' or Receivership Entities' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

      A.    Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership;

      B.    Transacting any of the business of the Receivership Entities;

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

GOV005_00000425_0002.00028

C.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities, Jason Cardiff, or Eunjung Cardiff; or

D.    Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XXI.  STAY OF ACTIONS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the receivership ordered herein, Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities or over the assets of Jason Cardiff and Eunjung Cardiff, including, but not limited to:

A.    Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 et seq., or of any similar insolvency proceeding on behalf of the Receivership Entities;

B.    Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

29

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER    GOV005_00000425_0002.00029

C.      Filing or enforcing any lien on any Asset of the Receivership Entities, taking or attempting to take possession, custody, or control of any Asset of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.

Provided, however, that this Order does not stay:  (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XXII. COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities, Jason Cardiff, or Eunjung Cardiff.  The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order.  The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

GOV005_00000425_0002.00030

## XXIII.  RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $15,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.  28 U.S.C. § 754.

## XXIV.  IMMEDIATE ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that:

A.   In order to allow Plaintiff and the Receiver to preserve Assets and evidence relevant to this action and to expedite discovery, Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, shall have immediate access to the business premises and storage facilities, owned, controlled, or used by the Receivership Entities.  Such locations include, but are not limited to:  820 North Mountain Ave., Suite 100, Upland, CA 91786; 870 North Mountain Ave., Suites 115 and 118, Upland, CA 91786; any additional business locations if they are discovered during the immediate access, and any offsite location or commercial mailbox used by the Receivership Entities.  The Receiver may exclude Defendants, Receivership Entities, and their employees from the business premises during the immediate access.

B.   Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to remove Documents from the Receivership Entities' premises in order that they may be inspected, inventoried, and copied.  Plaintiff shall return any removed materials to the Receiver within five (5) business days of completing inventorying and copying, or such time as is agreed upon by Plaintiff and the Receiver;

C.   Plaintiff's access to the Receivership Entities' documents pursuant to this Section shall not provide grounds for any Defendant to object to any subsequent request for documents served by Plaintiff.

31

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER                 GOV005_00000425_0002.00031

D.     Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to obtain the assistance of federal, state and local law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this Order;

E.     If any Documents, computers, or electronic storage devices containing information related to the business practices or finances of the Receivership Entities are at a location other than those listed herein, including personal residence(s) of any Defendant, then, immediately upon receiving notice of this order, Defendants and the Receivership Entities shall produce to the Receiver all such Documents, computers, and electronic storage devices, along with any codes or passwords needed for access.  In order to prevent the destruction of computer data, upon service of this Order, any such computers or electronic storage devices shall be powered down in the normal course of the operating system used on such devices and shall not be powered up or used until produced for copying and inspection; and

F.     If any communications or records of any Receivership Entity are stored with an Electronic Data Host, such Entity shall, immediately upon receiving notice of this order, provide the Receiver with the username, passwords, and any other login credential needed to access the communications and records, and shall not attempt to access, or cause a third party to attempt to access, the communications or records.

## XXV. DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date of entry of this Order, provide Plaintiff and the Receiver with a sworn statement that this provision of the Order has been

32

satisfied, which statement shall include the names, physical addresses, phone
number, and email addresses of each such person or entity who received a copy of
the Order.  Furthermore, Defendants shall not take any action that would
encourage officers, agents, members, directors, employees, salespersons,
independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or
other persons or entities in active concert or participation with them to disregard
this Order or believe that they are not bound by its provisions.

## XXVI.  EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of Fed.
R. Civ. P. 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a),
34, and 45, Plaintiff and the Receiver are granted leave, at any time after service of
this Order, to conduct limited expedited discovery for the purpose of discovering:
(1) the nature, location, status, and extent of Defendants' Assets; or (2) compliance
with this Order.  The limited expedited discovery set forth in this Section shall
proceed as follows:

A.    Plaintiff and the Receiver may take the deposition of parties and non-
parties.  Forty-eight (48) hours notice shall be sufficient notice for such
depositions.  The limitations and conditions set forth in Rules 30(a)(2)(B) and
31(a)(2)(B) of the Federal Rules of Civil Procedure regarding subsequent
depositions of an individual shall not apply to depositions taken pursuant to this
Section.  Any such deposition taken pursuant to this Section shall not be counted
towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) and
depositions may be taken by telephone or other remote electronic means.

B.    Plaintiff and the Receiver may serve upon parties requests for
production of Documents or inspection that require production or inspection within
five (5) days of service, provided, however, that three (3) days of notice shall be
deemed sufficient for the production of any such Documents that are maintained or
stored only in an electronic format.

33

GOV005_00000425_0002.00033

C.     Plaintiff and the Receiver may serve upon parties interrogatories that require response within five (5) days after Plaintiff serves such interrogatories.

D.     Plaintiff and the Receiver may serve subpoenas upon non-parties that direct production or inspection within five (5) days of service.

E.     Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

F.     Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court.  The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure.

G.     The Parties are exempted from making initial disclosures under Fed. R. Civ. P. 26(a)(1) until further order of this Court.

## XXVII. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order as well as Plaintiff's *Ex Parte* Application For (1) A Temporary Restraining Order And Order To Show Cause Why A Preliminary Injunction Should Not Issue And (2) Order Waiving Notice Requirement and all other pleadings, Documents, and exhibits filed contemporaneously with that Application (other than the complaint and summons), may be served by any means, including facsimile, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Defendant or any person (including any financial institution) that may have possession, custody or control of any Asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure.  For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

34

GOV005_00000425_0002.00034

## XXVIII.  CORRESPONDENCE AND SERVICE ON PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed to:

> Elizabeth Sanger
> James A. Prunty
> Edwin Rodriguez
> Shira D. Modell
> Federal Trade Commission
> 600 Pennsylvania Ave., NW
> Washington, DC 20580
> Tel: (202) 326-2757, -2438, -3147, -3116
> Fax: (202) 326-3259
> Email:  esanger@ftc.gov; jprunty@ftc.gov; erodriguez@ftc.gov; smodell@ftc.gov

## XXIX.  PRELIMINARY INJUNCTION HEARING

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 65(b), Defendants shall appear before this Court on the 23rd day of October, 2018, at 2:00 p.m. to show cause, if there is any, why this Court should not enter a preliminary injunction, pending final ruling on the Complaint against Defendants, enjoining the violations of the law alleged in the Complaint, continuing the freeze of the Defendants' Assets, continuing the receivership, and imposing such additional relief as may be appropriate.

## XXX.  BRIEFS AND AFFIDAVITS CONCERNING PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED** that:

A.    Defendants shall file with the Court and serve on Plaintiff's counsel any answering pleadings, affidavits, motions, expert reports or declarations, or legal memoranda no later than **four (4) days** prior to the order to show cause hearing scheduled pursuant to this Order.  Plaintiff may file responsive or supplemental pleadings, materials, affidavits, or memoranda with the Court and serve the same on counsel for Defendants no later than **one (1) day** prior to the

35

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER    GOV005_00000425_0002.00035

order to show Cause hearing.  Provided that such affidavits, pleadings, motions, expert reports, declarations, legal memoranda, or oppositions must be served by personal or overnight delivery, facsimile or email, and be received by the other party or parties no later than 5:00 p.m. Pacific Time on the appropriate dates set forth in this Section.

B.    An evidentiary hearing on Plaintiff's request for a preliminary injunction is not necessary unless Defendants demonstrate that they have, and intend to introduce, evidence that raises a genuine and material factual issue.  The question of whether this Court should enter a preliminary injunction shall be resolved on the pleadings, declarations, exhibits, and memoranda filed by, and oral argument of, the parties.  Live testimony shall be heard only on further order of this Court.  Any motion to permit such testimony shall be filed with the Court and served on counsel for the other parties at least five (5) days prior to the preliminary injunction hearing in this matter.  Such motion shall set forth the name, address, and telephone number of each proposed witness, a detailed summary or affidavit revealing the substance of each proposed witness's expected testimony, and an explanation of why the taking of live testimony would be helpful to this Court.  Any papers opposing a timely motion to present live testimony or to present live testimony in response to another party's timely motion to present live testimony shall be filed with this Court and served on the other parties at least three (3) days prior to the order to show cause hearing.

Provided, however, that service shall be performed by personal or overnight delivery, facsimile, or email, and Documents shall be delivered so that they shall be received by the other parties no later than 5:00 p.m. Pacific Time on the appropriate dates provided in this Section.

36

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER    GOV005_00000425_0002.00036

## XXXI. DURATION OF THE ORDER

**IT IS FURTHER ORDERED** that this Order shall expire fourteen (14) days from the date of entry noted below, unless within such time, the Order is extended for an additional period pursuant to Fed. R. Civ. P. 65(b)(2).

## XXXII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

SO ORDERED, this 10th day of October, 2018 @ 3:00 p.m.

_S. James Otero_

_____

UNITED STATES DISTRICT JUDGE

37

CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 11

## CARDIFF MOTION

## TO SUPPRESS

**MEMO TO FILE**

| | | |
|---|---|---|
| CASE NUMBER | : | 2994965-MF |
| ACTIVITY | : | Review of Storage Unit and Consent to Search Laptop |
| DATE | : | July 6, 2021 |
| CONDUCTED BY | : | Christine Reins-Jarin, Postal Inspector, USPIS |
| | | Gene Quon, Investigative Analyst, USPIS |

On July 6, 2021, Postal Inspector (PI) Christine Reins-Jarin and Investigative Analyst (IA) Gene Quon reviewed items and documents from Redwood Scientific Technologies (Redwood) stored by Robb Evans and Associates (REA), Receiver of Redwood and related entities, in unit 049 at Enterprise Self Storage, 10711 Vinedale St., Sun Valley, CA 91352.

PI Reins-Jarin spoke with Brick Kane (Kane), President, REA, on July 2, 2021 regarding the storage unit and its contents. Kane granted USPIS permission to access the unit and review its contents. Kane also gave verbal consent for USPIS to search a Redwood laptop previously in the possession of Danielle Cadiz Walker (Walker). Walker voluntarily turned the Lenovo laptop (S/N R90HN00N) over to PI Reins-Jarin on July 1, 2021 and signed USPIS form *Consent to Search Electronic Devices*.

On July 6, 2021, PI Reins-Jarin and IA Quon met with Kane at the REA office. Kane provided a copy of a photo of the storage unit (see attached). Kane also viewed the Lenovo laptop turned over by Walker and signed USPIS form *Consent to Search Electronic Devices*.

Accompanied by REA employee Manny Chen, PI Reins-Jarin and IA Quon reviewed the contents of boxes and items in storage unit 049.

The following highlights folder names, documents, and other contents. Some labeled folders were found not to have documents inside. USPIS did not view all documents, folders, and contents. Items that indicated possible privileged material were immediately returned to its folder and/or box.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                GOV_MOI_001077

**Left Side of Storage Unit (while facing the brick wall)**

| | |
|---|---|
| Plastic tub on ground | -Prolongz research studies book<br>-CDs, including ministry related; Mona Vie;<br>Advanced Medical Institute; and People<br>United for Christians binders<br>(many pre-2014 documents) |
| Frames on top of tub | -PTO framed "Be the Dragon" S/N 86-326<br>024<br>-books/pamphlets on Sumusent and<br>Prolongz |

Bankers Boxes
Stack 1 (from top to bottom)

| | |
|---|---|
| Box 1<br>Redwood, Ste 100, Room J,<br>Eunjung Cardiff | -folder labeled for Jason Cardiff's Ireland<br>passport and citizenhip<br>-pre-2014 tax return information |
| Box 2<br>Redwood, Ste 100, Room J,<br>Eunjung Cardiff, Chief<br>Marketing Officer Executive | -EKS&H independent audit reports<br>-Nationwide 2016/2017<br>(box also contains pre-2014 documents) |
| Box 3<br>Redwood, Ste 100, Room H<br>Jason Cardiff | -appears to contain majority pre-2014 docs |
| Box 4<br>Redwood, Ste 100, Room H<br>Jason Cardiff | -vintage Playboy magazines<br>-2015 HSBC statements<br>-old KMG and RAP sheets |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                GOV_MOI_001078

Box 5
Redwood, Ste 100, Room H,
Jason Cardiff                           -notice to pay rent from Mountain Grove
                                         Office Park
                                        -Bisno and Mulvaney envelopes
                                        -Massachusetts Medical filing paperwork
                                        -Yellowstone Capital merchant agreement
                                        -numerous notebooks with notes
                                        -PUFC Donations-Vancouver checkbook pad


Stack 2 (top to bottom)


Brown box – Cigirex        -appears to be pre-2014 Kelly Media Group
(not bankers box)               and bank statements

Box 1
Redwood, Ste 100, Room B,
Section 4 (Vault) Part 6 final    -Clover Strip products in boxes

Box 2
Redwood, Ste 100, Room F,
Section 11B, 11C                 -2015 Citi records
                                 -2015 HSBC statements

Box 3
Redwood, Ste 100, Room D,
Section 1A, 1B                   -Citi statements American Nutra Partners
                                 -2016 Run Away Products Citi statements
                                 -2016 Cigirex Citi
                                 -Wage Lock

Box 4
Redwood, Ste 100, Room D,
Section 8B, 8C                   -misc. docs folders
                                 -GNC
                                 -W-9 2016
                                 -Dalian
                                 -Public/Board docs
                                 -SunTrust
                                 -2017 W2
                                 -2017 941s

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    GOV_MOI_001079

Stack 3 (top to bottom)

Box 1
Redwood, Ste 100, Room B
Section 4 (vault) partial 5          -Clover Strip product

Box 2
Redwood, Ste 100, Room B
Section 4 (vault) partial 3          -Clover Strip product

Box 3
Redwood, Ste 100, Room D
Section 1A                           -LegalZoom binders for Expo Supplements,
                                     Messengers for Christ World Healing
                                     Center, TV Sales
                                     -ANP and Nature's Future binders and docs
                                     -CBD file folder
                                     -Redwood files

Redwood, Ste 100, Room D
Section 2C, 3B, 3C, 6A               -Provaxaltonin booklet
                                     -employee files
                                     -PUFC files
                                     -GNC
                                     -Clover CC
                                     -notebooks

Box 5
Redwood, Ste 100, Room D
Section 6A, 6B                       -office memos
                                     -bill logs
                                     -2017 payroll

Stack 4 (top to bottom)

Box 1
Redwood, Ste 100, Room B
Section 4 (vault) partial 2          -Clover Strip product

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    GOV_MOI_001080

Box 2                                      -misc files
Redwood, Ste 100, Room D                   -employee files
Section 8A                                 -taxpayer ID with copies/voided checks

Box 3
Redwood, Ste 100, Room D                   -Advanced Men's Institute, Cigirex, Top Hill
Section 1A                                 Shop, Smoke Stop, Ax Distributors binders

Box 4
Redwood, Ste 100, Room D                   -RST Certified USPS letters
Section 1C, 1D, 2A, 2B                     -RAP, AMI, ANP checkbooks, binders
                                           -Wage Lock docs
                                           -RST investor presentation binders –
                                           Feb 2015

Box 5
Redwood, Ste 100, Room F                   -investor binders
Section 4B, 5                              -agreements – Walgreens, CVS, Target
                                           -Prolongz reseller
                                           -Five9
                                           -Owl Enterprises bank account forms
                                           -BDirect
                                           -Triple Scoop


Stack 5 (top to bottom)

Box 1
Redwood, Ste 100, Room B                   -Clover product
Section 4 (vault) partial 4

Box 2
Redwood, Ste 100, Room F                   -Citi statement binders
Section 11A, 11B                           (appears to be 2014 and after)

Box 3
Redwood, Ste 100, Room F                   -merchant statements – TBX-Free, Exp
Section 1, 2, 3, 4A                        Trans 1969
                                           -merchant statements RAP Citi 7881
                                           -Bank of the West
                                           -AMI UPS merchant statements

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                GOV_MOI_001081

Box 4
Redwood, Ste 100, Room F
Section 11D
-Citi statements
-BancTek
-Humboldt merchant services

Box 5
Redwood, Ste 100, Room D
Section 3, 3A
-binders with investor information,
such as copies of driver's licenses
-AZ Corp. Comm.-Leverage Media
(KMG related)
-RST subscription agreement/investor letter
-RAP binder
-PayDay Workforce binder
-PPM and other older docs

Stack 6 (top to bottom)

Box 1
Redwood, Ste 100, Room B
Section 1, 2, 3, 4 (vault) partial
1, 5
-TV Sales checks
-PUFC Donations-Vancouver checkbook
binder
-PUFC (Upland) docs, checks

Box 2
Redwood, Ste 100, Room E
Section 5C, 5D
-2017 banks docs
-RST binder

Box 3
Redwood, Ste 100, Room D
Section 1B
-RST private placement binders
-Citibank statements
-LegalZoom- Am. Source Supply
Direct Retail Supply Dist.

Box 4
Redwood, Ste 100, Room D
Section 3A, 6A
-RST agreements folder
-investor questionnaire folder

Box 5
Redwood, Ste 100, Room F
Section 6, 7, 8, 9, 10, 11A
-2015 bank statements
-1099K folder – 2015

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    GOV_MOI_001082

Stack 7 (top to bottom)

Box 1
Redwood, Ste 100, Room B                -PUFC docs, donation info, mail room
Section 7, 7A, 7B, 7C                    letters


Box 2
Redwood, Ste 100, Room F                -PUFC Citi statements - 2012, 2014
Section 11C                              -AMI 2014 binder
                                        -RAP 2015 binder


Box 3
Redwood, Ste 100, Room E                -Canna. Oral Thin Film LLC
Section 1A, 1B, 5A, 5B, 5C,             -merchant services docs folder
5D                                      -PUFC statements
                                        -Redwood payroll
                                        -inventory log folder
                                        -chargeback folder


Box 4
Redwood, Ste 100, Room A,
Section 5, 5A, 5B, 6, 7, 7A,            -approx. 7 plastic bags with PUFC donation
7B                                      checks, money orders
Room B, Section 1 and 2                 -Redwood catalog/binder




(4) white boxes on floor in front of brick wall stacks of boxes labeled as -
Hard Drives, Ste 100, Room E, Drawer 1B



**Against Brick Wall**


Stacks from Right Side
to Left Side


"Do Not Destroy Per Danielle            -716 Valparaiso docs
1/16"                                   -insurance
                                        -escrow docs
                                        (most appear pre-2014)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    GOV_MOI_001083

| | |
|---|---|
| "RAP 2015" | -folder labeled "IRS" with "Edward Thomas Ministries" – 2012<br>-Carol's Secret Garden<br>1525 W. 13th #G, Upland, CA 91786<br>(909) 946-0333<br>-Citi 1368<br>-folder labeled – donations for Lights On<br>-HSBC and JPMC<br>-handyman and pest control |
| Third box<br>(no label/writing) | -"Focus Your Faith" tabs<br>-PUFC projects – folders |
| Bottom box<br>blue/white Staples<br>box with RST mailing<br>label | -RST payroll 2015, etc.<br>-possible audit documents request list<br>-cash disbursements ~2011-2016<br>-account transactions<br>-Canella |

Stack 2

| | |
|---|---|
| "Star Scientific vs. Cigirex LLC" | -binders 12-CV-7969 GW (Ex) |
| Second box<br>red/white Office Depot<br>box | -Prolongz consumer complaints<br>-AG cases – folder; letters<br>-Paul Lewis<br>-Cash Your Gold – folder<br>-wine license – folder<br>-Veterans Affairs (dated 2009)<br>re: TriEmerald<br>Attn: Ms. Judy Warren<br>re: VA lender ID 902029-00-00<br>-Cash Your Gold<br>** -some docs with/from Thaler Law |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          GOV_MOI_001084

| | |
|---|---|
| Third box<br>red/white Office Depot<br>box | -Canella<br>-fixed asset info kiosk<br>-Citi 7471<br>-warehouse – customer refunds 2016<br>-employee files<br>-bank records |

Stack 3

| | |
|---|---|
| First box<br>"RST 2016 A/P" | -financial docs<br>-folders - Code Clouds, Bentley, 4DQ<br>-employee files<br>-TV Sales – IRS 2016<br>-City of Ontario<br>-VoiceGenix |
| Second box<br>red/white Office Depot<br>box | -Wellnex vs. KMG<br>-Feed the Children – binders<br>-Fast Forward Media<br>-First Choice Media<br>-Cigirex<br>(many/most appear to be pre-2014) |
| Third box<br>red/white Office Depot<br>box | -Jason Cardiff Bank of America settlements<br>(**possible info w/ Rhonda Jo Pearlman)<br>-DMS payroll 2010<br>-Hillard letter procedures<br>-PUFC 2014 payroll |
| Fourth box<br>"RAP 2015" with<br>(2) | -"Jasons Personals" labeled folder<br>-RAP 2013 taxes, bills<br>-TMobile; QBE Ins.<br>-Red Hill Country Club – labeled folder<br>-RAP July 2015 bills |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    GOV_MOI_001085

Fifth box
"Bishop Alex Pastor                    -Hillard / Bynum docs
Hillard New Light/Telecom        (appears most pre-2014)
Wellenex chargeback"


Stack 4

First box
Staples box                              -Valparaiso escrow papers
(no lid; red folders on top)       -Heckler vs. Cigirex
                                              -Cigirex; Wage Lock
                                              -BBB Folder with accreditation AMI, with
                                              stickers
                                    **  -Thaler Law binder/folders

Second box
Staples box with                     -legal docs
"C6" post-it                            -Star Scientific vs. Cigirex
                                              -KMG Canada

Third box
"RAP & PUFC 2016"               -2016 poss. lawsuit paperwork
                                              -poss. employee docs (has direct deposit
                                              docs, copies of DL, applications ~2015)
                                              -folders labeled misc.

Fourth box
red/white Office Depot             -binder/book – med./food/cosmetics
box with "C7" post-it               -NJ Cigirex
                                              -KMG taxes (pre-2014)
                                              -settlement Beal and KMG
                                              -RAP EDD

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER              GOV_MOI_001086

Fifth box
Bottom box w/ stain on                    ** -Bisno/Mulvaney envelopes
lid; red/white Office Depot                   -log-in info labeled folder
box                                           -Heckler vs. Cigirex
                                              -GNC
                                              -FDA/England
                                              -TBX-Free draft label with notes
                                              -Dalian - ingredients list
                                              -terms and conditions – labeled folder
                                              -customer service and chargebacks –
                                              labeled folder
                                          ** -TBX-Free info/UK with RJP edits
                                              -USPTO labeled folder re: 2015 PUFC
                                              vs. PUFC
                                              -InterMedia
                                              -Cigirex lawsuit – summons
                                          ** -state bar re: RJP
                                          ** -RJP folders


Stack 5

First box
Staples box, no lid
(sheets w/ clear protect.)                -sample letters 2015

Second box
Ripped, no lid                            -Cigirex docs
"Cigirex 2015"

Third box
Ripped Staples box                        -"Edward Thomas Ministries" red box
"Shred"                                   binder
                                          -2014 PUFC
                                          -employee files
                                          -Cigirex binders
                                          -Prolongz binders

Fourth box
Office Depot box                          -Citi, BofA, AmEx - ~2015, 2016
(blue tabs; purple folders)

| | |
|---|---|
| Brown box on<br>ground<br>"C5" post-it | -AMI Media 2015<br>-"Trademark Abandonment" labeled<br>folder re: Wage Lock<br>-terminated employees folders<br>-Cigirex related<br>-payroll 2015 |

## Second row from brick wall – computer row

| | |
|---|---|
| Brown box w/ red tape<br>"Ste 115 Room A<br>A1 Storage<br>Loose Hard Drives" | "drives" written on box |

White box
"Redwood, Ste 100
Laptops, iPads, Tablets"

## Right Side (when facing the brick wall)

Second stack closest
to brick wall

| | |
|---|---|
| "Ste 100 Room C Storage"<br>(on top of clear boxes) | -external drive |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          GOV_MOI_001088

First stack closest to
brick wall

Clear tub on top                        -2012/2013 RAP binders; Cigirex
                                        -AL copies for copyright 2014 PUFC

Clear tub 58Qt                          -Riley Aviation
                                        -pre-2014 docs
                                        -brown cardboard box inside with
                                        Redwood docs; merchant services; "Master
                                        Profit"
                                        -PUFC pre-2014

Clear tub                               -appears to be pre-2014 KMG, etc.

Second Stack

Clear tub
"Suite 118 Room B                       -Clover related docs
Section: 7A, 7B"                        -reimbursement docs; Sandy Westergren
                                        -PUFC letters/campaigns
                                        -letter pay sheets
                                        -Customs and Border Protection sheets
                                        -Proforma invoices – labeled folder

Clear tub with blue lid                 -Cash Your Gold and Word Network binders

Large tub                               -appears to be ministry related binders

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    GOV_MOI_001089

Right side, tubs closest to
roll up door

Clear tub on left                       -UPS receipts
                                        -employee docs
                                        -employee schedule
                                        -BBB letters
                                        -binder w/ note containing social media
                                        info/sites; training binder
                                        -merchant service docs

Clear tub on right                      -appears to be pre-2014 docs

Second Row

Clear tub, top left                     -RST parcels
                                        -TBX binders
                                        -Cannabis related docs

Clear tub, top right                    -ministry related docs

Clear tub, bottom                       -appears to be pre-2014 ministry related
                                        Docs

Christine Reins-Jarin                   July 7, 2021
U.S. Postal Inspector                   Date

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          GOV_MOI_001090



CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 12

**CARDIFF MOTION**

**TO SUPPRESS**

# U.S. POSTAL INSPECTION SERVICE
# LOS ANGELES DIVISION

## MEMO TO FILE

RE: October 22, 2018

On Thursday, October 18, 2018, at approximately 4:42 p.m., Inspector Christine Reins-Jarin spoke with Brick Kane, President, Robb Evans and Associates (court appointed temporary receiver) by phone regarding returning to 870 N. Mountain Ave., Suite 118, as well as 820 N. Mountain Ave., Suite 100, Upland, CA, to review items located in the offices.  Inspector Reins-Jarin confirmed with Mr. Kane that he would permit inspectors and Postal Inspection Service forensic computer analysts to enter the premises to inspect the locations, photocopy and/or photograph items, and image computers.

On Monday, October 22, 2018, Inspector Reins-Jarin, Inspector Julie Taing, and Forensic Computer Analysts Beau Stilger and Damon Barringer met with Jacklin Dadbin of Robb Evans and Associates at 870 N. Mountain Ave., Upland.  Inspection Service personnel entered Suite 118 with Ms. Dadbin at approximately 9:30am.

Ms. Dadbin contacted others at Robb Evans to assist FCAs Stilger and Barringer in accessing two computers located in the main workroom of Suite 118 – one located at the work area near the window, to the left side of the work area (when facing the window); and one located at a desk in the middle of the work area against the wall where a "production schedule" whiteboard hangs, closest to the room with multiple plastic bins containing Redwood Scientific Technologies products.  FCA Stilger access the desktop computer at the middle desk, a HP Pavilion with serial number CNV6360Y3T.  FCA Stilger located what appeared to be a database hosted by "Little Green Light' for People United for Christians and informed Inspector Reins-Jarin that this service was not housed on the computer itself but on a cloud.  Ms. Dadbin contacted Mr. Kane by phone at approximately 10:00am and put him on speaker.  Inspector Reins-Jarin asked for permission for the analysts to extract data and reports from the People United for Christians database housed by the Little Green Light website.  Mr. Kane granted permission.  FCA Barringer was not able to turn on and access the computer by the window, a Dell Inspiron with serial number G2PD822.  FCA Barringer imaged the computer without previewing its contents.  FCAs provided Inspector

Reins-Jarin with an external drive containing reports from the HP Pavilion and the imaged contents of the Dell Inspiron.

Inspectors Taing and Reins-Jarin reviewed items in the office suite. Inspector Reins-Jarin took photos within the rooms and photos of a sampling of items within the rooms.  Inspectors also photocopied the mailing labels of parcels found in one of the rooms as well as some mailpieces that contained addresses in California.

Ms. Dadbin remained with inspectors and FCAs during the process. Inspectors and Ms. Dadbin left the suite at approximately 12:45pm for a break and returned to the suite at approximately 1:50pm. Inspectors and Ms. Dadbin left Suite 118 at approximately 3:45pm.

Ms. Dadbin and inspectors went to 820 N. Mountain Ave., Suite 100, Upland, and entered at approximately 3:50pm.  Inspectors reviewed items in the suite and Inspector Reins-Jarin took photos within the rooms and photos of a sampling of items within the rooms. Inspectors and Ms. Dadbin left the suite at approximately 4:37pm.

Christine Reins-Jarin
Postal Inspector
October 23, 2018

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          GOV_MOI_001093

# EXHIBIT 13

**CARDIFF MOTION**

**TO SUPPRESS**

U.S. Postal Inspection Service
**CONSENT TO SEARCH – ELECTRONIC DEVICES AND
STORAGE MEDIA OR SERVICES**

Date: JULY 6, 2021

I, BRICK KANE / ROEE EVANS AND ASSOCIATES , have been informed of and understand my constitutional

rights not to have a search made of the below listed devices, without the requirement of a search warrant. I

have also been informed of, and understand, my right to refuse to consent to the search. However, I hereby

authorize law enforcement officers and/or their designees to conduct a complete search of:

| | Device or Service Make/Type/Name | Serial Number/Telephone Number IMEI/ User Name | Password If swipe use graphic below |
|---|---|---|---|
| 1 | LENOVO LAPTOP (BLACK) | S/N R90HN0ØN | UNKNOWN / TBD |
| 2 | | | |
| 3 | | | |
| 4 | | | |

```
        1               2               3               4

  •   •   •       •   •   •       •   •   •       •   •   •

  •   •   •       •   •   •       •   •   •       •   •   •

  •   •   •       •   •   •       •   •   •       •   •   •
```

U.S. Postal Inspector(s) C. REINA-JARIN or their designees are authorized by me to

take custody of and/or access the above described devices or services and to search for any electronic data

or files which are contraband or evidence of including but not limited to federal criminal violations, Mail fraud + wire fraud. I further authorize law

enforcement officers or analysts to create a forensic image or copy of the device's contents. I understand that

any contraband or evidence may be used against me in court of law or an administrative proceeding. I

understand that I may withdraw my consent at any time.

V 2.16.2021

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

This written permission is being given by me to the above named persons freely and voluntarily without threats, promises, or coercion of any kind to have me consent to the search and/or sign this form. I realize that I may ask for and receive a receipt for all things taken.

Consenter: _____ 7/6/2021    Witness: _____ 07/06/21

Witness: _____ - POSTAL INSPECTOR
7/6/21

V 2.16.2021

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER         GOV_MOI_001795

# EXHIBIT 14

## CARDIFF MOTION

## TO SUPPRESS

Message

| | |
|---|---|
| **From**: | Williams, Joseph M. [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=9D35F16BCC2440CAB7796592D936F2F3-WILLIAMS, J] |
| **Sent**: | 5/15/2020 4:54:28 PM |
| **To**: | Brick Kane [bkane@robbevans.com] |
| **CC**: | mfletcher@frandzel.com; Sebastian, Manu J. [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=dac5d98a5406473388a0428728c99360-Sebastian,]; Jauregui, Eddie (USACAC) [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=12e143b994d44743b72e37ee8bc88047-Jauregui, E]; Gardner, Brianna M. [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b593f29a1fa74a6c8081abbeb8844f77-Gardner, Br] |
| **Subject**: | Redwood Scientific interviews and privilege waiver |
| **Attachments**: | Receiver Privilege Waiver.pdf; Receiver Privilege Waiver.docx |

Brick,

Thanks very much for speaking with us a few weeks back regarding our investigation into Jason and Eunjung Cardiff and their various business entities. I connected briefly with Michael Fletcher to ensure that he was comfortable with us contacting you directly with a few brief requests, and he graciously provided his consent. I will keep him copied on our correspondence.

We would like to request a few things from the Receivership.

First, I have attached a draft waiver of the attorney client/work product privilege for the Receivership entities. Please let me know if you have any edits you would like to make, and feel free to use the Word version to return an edited copy for my review. Otherwise, please send me an executed copy as soon as you are able. Apologies for taking so long to send this to you—internal approvals too longer than expected.

Second, we discussed that you were willing to provide interview notes/summaries from any potential witnesses you interviewed in connection with the immediate access and the initiation of the Receivership. Could you please forward those along at your convenience?

Finally, we ask that you please continue to keep our involvement in this matter confidential. We continue our investigative efforts but, as you likely know, are extremely limited in what we are permitted to share about it at this time.

Thanks very much, and I'm happy to discuss any questions or issues you have.

Best,

Matt

J. Matt Williams
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
Office: (202) 532-4521



**U.S. Department of Justice**
Consumer Protection Branch

| **J. Matt Williams** | **Overnight Delivery Address** | **Mailing Address** |
|---|---|---|
| Phone:  202-532-4521 | 450 Fifth Street, NW, Sixth Floor South | P.O. Box 386 |
| Fax:      202-514-8742 | Washington, D.C.  20001 | Washington, D.C.  20044 |

May 15, 2020

VIA EMAIL
Mr. Brick Kane
President
Robb Evans & Associates LLC
bkane@robevans.com

   Re: <u>Redwood Scientific, <i>et al.</i>, Privilege Waiver</u>

Dear Mr. Kane:

  You have advised me that the business entities currently subject to a Receivership ordered by the United States District Court for the Central District of California in <u>Federal Trade Commission v. Redwood Scientific, Inc. et al.</u>, 5:18-cv-02104-SJO (C.D. Cal.), are willing to voluntarily cooperate with the United States Department of Justice's criminal investigation into potential violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1349 (conspiracy), 1503 & 1505 (obstruction of justice), and related offenses. The business entities encompassed within the Receivership ("the Receivership Entities") are:

  1. Redwood Scientific Technologies, Inc. (California Corporation)
  2. Redwood Scientific Technologies, Inc. (Nevada Corporation)
  3. Redwood Scientific Technologies, Inc. (Delaware Corporation)
  4. Identify, LLC (Wyoming limited liability company)
  5. Advanced Men's Institute Prolongz, LLC (California limited liability company)
  6. Run Away Products, LLC (New York limited liability company)
  7. Carols Place Limited Partnership (Arizona limited liability partnership)
  8. 1 through 7's subsidiaries, affiliates, successors, and assigns.

  You have also advised me that you are President of Robb Evans & Associates LLC, the court-appointed Receiver ("the Receiver") over the Receivership Entities, and you agree that you have the authority to enter into this agreement on behalf of the Receiver and the Receivership Entities.

<div align="center">AGREEMENT</div>

  The Receiver hereby waives any and all attorney-client communications privilege and attorney work product protection held by the Receivership Entities in this investigation. The Receiver agrees that the United States Department of Justice and any law enforcement agencies working with the Department may interview prior employees, prior in-house legal counsel, and prior external legal counsel for the Receivership Entities, on any matters the Department deems

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER   **GOV005_00000002_0002.00001**

relevant to its ongoing criminal investigation.

Further, the Receiver does <u>not</u> waive any applicable privilege that it holds related to documents or communications occurring between the Receiver and its current litigation counsel, Frandzel Robins Bloom & Csato, LC, or their successor(s).

The Receiver enters into this agreement voluntarily, without threat or coercion. The Receiver agrees it has had sufficient time to review this document and the ability to consult with its legal counsel.

Agreed to by:

_____
J. Matt Williams
Manu Sebastian
Brianna Gardner
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch

_____
Brick Kane
President
Robb Evans & Associates LLC
Receiver

- 2 -

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER          GOV005_00000002_0002.00002

[ SEQ CHAPTER \h \r 1]



**U.S. Department of Justice**
Consumer Protection Branch

| **J. Matt Williams** | **Overnight Delivery Address** | **Mailing Address** |
|---|---|---|
| Phone: 202-532-4521 | 450 Fifth Street, NW, Sixth Floor South | P.O. Box 386 |
| Fax:  202-514-8742 | Washington, D.C. 20001 | Washington, D.C. 20044 |

[DATE \@ "MMMM d, yyyy"]

[ SEQ CHAPTER \h \r 1]<u>VIA EMAIL</u>
Mr. Brick Kane
President
Robb Evans & Associates LLC
bkane@robevans.com

      Re:    <u>Redwood Scientific, *et al.*, Privilege Waiver</u>

Dear Mr. Kane:

    You have advised me that the business entities currently subject to a Receivership ordered by the United States District Court for the Central District of California in <u>Federal Trade Commission v. Redwood Scientific, Inc. et al.</u>, 5:18-cv-02104-SJO (C.D. Cal.), are willing to voluntarily cooperate with the United States Department of Justice's criminal investigation into potential violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1349 (conspiracy), 1503 & 1505 (obstruction of justice), and related offenses. The business entities encompassed within the Receivership ("the Receivership Entities") are:

1. Redwood Scientific Technologies, Inc. (California Corporation)
2. Redwood Scientific Technologies, Inc. (Nevada Corporation)
3. Redwood Scientific Technologies, Inc. (Delaware Corporation)
4. Identify, LLC (Wyoming limited liability company)
5. Advanced Men's Institute Prolongz, LLC (California limited liability company)
6. Run Away Products, LLC (New York limited liability company)
7. Carols Place Limited Partnership (Arizona limited liability partnership)
8. 1 through 7's subsidiaries, affiliates, successors, and assigns.

    You have also advised me that you are President of Robb Evans & Associates LLC, the court-appointed Receiver ("the Receiver") over the Receivership Entities, and you agree that you have the authority to enter into this agreement on behalf of the Receiver and the Receivership Entities.

<div align="center">AGREEMENT</div>

    The Receiver hereby waives any and all attorney-client communications privilege and attorney work product protection held by the Receivership Entities in this investigation. The Receiver agrees that the United States Department of Justice and any law enforcement agencies working with the Department may interview prior employees, prior in-house legal counsel, and prior external legal counsel for the Receivership Entities, on any matters the Department deems

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

relevant to its ongoing criminal investigation.

Further, the Receiver does <u>not</u> waive any applicable privilege that it holds related to documents or communications occurring between the Receiver and its current litigation counsel, Frandzel Robins Bloom & Csato, LC, or their successor(s).

The Receiver enters into this agreement voluntarily, without threat or coercion. The Receiver agrees it has had sufficient time to review this document and the ability to consult with its legal counsel.

Agreed to by:

_____

J. Matt Williams
Manu Sebastian
Brianna Gardner
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch

_____

Brick Kane
President
Robb Evans & Associates LLC
Receiver

[ PAGE   \* MERGEFORMAT ]

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 15

**CARDIFF MOTION**

**TO SUPPRESS**

Message

| | |
|---|---|
| **From:** | Brick Kane [bkane@robbevans.com] |
| **Sent:** | 5/26/2020 3:20:43 PM |
| **To:** | Williams, Joseph M. [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=9d35f16bcc2440cab7796592d936f2f3-Williams, J] |
| **CC:** | mfletcher@frandzel.com; Sebastian, Manu J. [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=dac5d98a5406473388a0428728c99360-Sebastian,]; Jauregui, Eddie |
| | (USACAC) [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=12e143b994d44743b72e37ee8bc88047-Jauregui, E]; Gardner, Brianna M. |
| | [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=b593f29a1fa74a6c8081abbeb8844f77-Gardner, Br] |
| **Subject:** | RE: Redwood Scientific interviews and privilege waiver |
| **Attachments:** | DOJ attorney client waiver.pdf; Employee Questionaires.PDF; Employee Questionaires - Sarah garcia.PDF |

Matt,

Sorry about the delay.  Please see the attached.

Regards,
Brick

Brick Kane
President
Robb Evans & Associates LLC
11450 Sheldon St.
Sun Valley, CA 91352
(818) 683-1061
www.robbevans.com


**From:** Williams, Joseph M. <Joseph.M.Williams@usdoj.gov>
**Sent:** Friday, May 15, 2020 9:54 AM
**To:** Brick Kane <bkane@robbevans.com>
**Cc:** mfletcher@frandzel.com; Sebastian, Manu J. <Manu.J.Sebastian@usdoj.gov>; Jauregui, Eddie (USACAC)
<Eddie.Jauregui@usdoj.gov>; Gardner, Brianna M. <Brianna.M.Gardner@usdoj.gov>
**Subject:** Redwood Scientific interviews and privilege waiver

Brick,

Thanks very much for speaking with us a few weeks back regarding our investigation into Jason and Eunjung Cardiff and
their various business entities. I connected briefly with Michael Fletcher to ensure that he was comfortable with us
contacting you directly with a few brief requests, and he graciously provided his consent. I will keep him copied on our
correspondence.

We would like to request a few things from the Receivership.

First, I have attached a draft waiver of the attorney client/work product privilege for the Receivership entities. Please let
me know if you have any edits you would like to make, and feel free to use the Word version to return an edited copy
for my review. Otherwise, please send me an executed copy as soon as you are able. Apologies for taking so long to send
this to you—internal approvals too longer than expected.

CONFIDENTIAL INFORMATION – CONTENTS SUBJECT TO PROTECTIVE ORDER

Second, we discussed that you were willing to provide interview notes/summaries from any potential witnesses you interviewed in connection with the immediate access and the initiation of the Receivership. Could you please forward those along at your convenience?

Finally, we ask that you please continue to keep our involvement in this matter confidential. We continue our investigative efforts but, as you likely know, are extremely limited in what we are permitted to share about it at this time.

Thanks very much, and I'm happy to discuss any questions or issues you have.

Best,

Matt

J. Matt Williams
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
Office: (202) 532-4521



**U.S. Department of Justice**
Consumer Protection Branch

| | | |
|---|---|---|
| **J. Matt Williams** | **Overnight Delivery Address** | **Mailing Address** |
| Phone: 202-532-4521 | 450 Fifth Street, NW, Sixth Floor South | P.O. Box 386 |
| Fax: 202-514-8742 | Washington, D.C. 20001 | Washington, D.C. 20044 |

May 15, 2020

VIA EMAIL
Mr. Brick Kane
President
Robb Evans & Associates LLC
bkane@robevans.com

    Re:  Redwood Scientific, *et al.*, Privilege Waiver

Dear Mr. Kane:

   You have advised me that the business entities currently subject to a Receivership ordered by the United States District Court for the Central District of California in Federal Trade Commission v. Redwood Scientific, Inc. et al., 5:18-cv-02104-SJO (C.D. Cal.), are willing to voluntarily cooperate with the United States Department of Justice's criminal investigation into potential violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1349 (conspiracy), 1503 & 1505 (obstruction of justice), and related offenses. The business entities encompassed within the Receivership ("the Receivership Entities") are:

     1. Redwood Scientific Technologies, Inc. (California Corporation)
     2. Redwood Scientific Technologies, Inc. (Nevada Corporation)
     3. Redwood Scientific Technologies, Inc. (Delaware Corporation)
     4. Identify, LLC (Wyoming limited liability company)
     5. Advanced Men's Institute Prolongz, LLC (California limited liability company)
     6. Run Away Products, LLC (New York limited liability company)
     7. Carols Place Limited Partnership (Arizona limited liability partnership)
     8. 1 through 7's subsidiaries, affiliates, successors, and assigns.

   You have also advised me that you are President of Robb Evans & Associates LLC, the court-appointed Receiver ("the Receiver") over the Receivership Entities, and you agree that you have the authority to enter into this agreement on behalf of the Receiver and the Receivership Entities.

<div align="center">AGREEMENT</div>

   The Receiver hereby waives any and all attorney-client communications privilege and attorney work product protection held by the Receivership Entities in this investigation. The Receiver agrees that the United States Department of Justice and any law enforcement agencies working with the Department may interview prior employees, prior in-house legal counsel, and prior external legal counsel for the Receivership Entities, on any matters the Department deems

relevant to its ongoing criminal investigation.

Further, the Receiver does not waive any applicable privilege that it holds related to documents or communications occurring between the Receiver and its current litigation counsel, Frandzel Robins Bloom & Csato, LC, or their successor(s).

The Receiver enters into this agreement voluntarily, without threat or coercion. The Receiver agrees it has had sufficient time to review this document and the ability to consult with its legal counsel.

Agreed to by:

_____
J. Matt Williams
Manu Sebastian
Brianna Gardner
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch

_____
Brick Kane
President
Robb Evans & Associates LLC
Receiver

- 2 -

## EMPLOYEE QUESTIONNAIRE    (Please Print Legibly)

Full Name: _[JUSTIN DAINES]_

Alias or Phone Name: _____

Home Address: ████████████████████████████████████

City: ████████    State: _____    Zip: ████

Home Phone: ████████    Cell Phone: ████████

Date of Birth: ████████

Driver's License State and No. _____    Social Security # ████████

Name of Company you work for: _Red wood Scientific_

Date started with company _Oct 16th 2016_

Job Title and Description: _Wearhouse worker / Sales_

_____

Describe your daily job duties:
_Ship orders that come in / go to Stores to try_
_to Sell our product_

Supervisor's Name/Title _Julie green_

Do you use scripts? Yes / (No)  Who gives you scripts? _____

Do you change the scripts  Yes / (No) If yes, how: _____

Are you an (Employee) or  Independent Contractor?  (Circle One) _W2_  _salary + commission + mileage_

How often are you paid? _Tweeks_  How much are you paid? $ _1200 - 1600_ Hour / Week)/ Month

When were you last paid? _Oct 1st_  Outstanding Compensation Owed _two weeks_

Do you have keys to the office? Yes / No  Do you have other keys? Describe: _no_

Do you have the Alarm code? Yes / No Please provide: _____

Do you sign on any company accounts:  Bank/Name/Account No _____

Do you use any personal accounts for the business:  Bank/Name/Account No: _____

File Server/Cloud Login and Password: _____

Computer Login and Password: _RSTadmin - Admin_

E-Mail Address: _Justin@redwoodscientific.co_  E-Mail Password: _Q1{Mence%_

Software / File Name: _____

Password: _____

External Access to system: Yes / No  Access Method _____

_Employee's Signature_    Date _10/11/16_

Additional Notes on Back    3.18

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER    GOV005_00000038_0003.00001

(1) all here was 113
            moved to 118
    computer there

Goves inserts
    sells + ships - insert

    sleep aid - melatonin
    men ADS woman performance

leads → on line DIY yelp

keep to this office -    119 & 115    118
                          5k    ↓    5k
                          → endkey

sales calls on phones

used to have phone room   un live gre
                          not 1qr +/—
    cust serv in other bldg
Gus - other bldg
Heather - Doesn't work here no more 6mo
Diana Melendez - left 2 weeks ago.

~~Scott~~ ~~Foes~~

Justin - Admin Wyatt (909) 342-4247

RST admin\ password.

www Google Chrome

ADMIN appears

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER        GOV005_00000038_0003.00003

## EMPLOYEE QUESTIONNAIRE    (Please Print Legibly)

Full Name: ▓▓▓▓▓▓▓▓▓▓

Alias or Phone Name: ▓▓▓▓▓▓

Home Address: ▓▓▓▓▓▓

City: ▓▓▓▓    State: ▓▓    Zip: ▓▓▓▓

Home Phone: _____    Cell Phone: ▓▓▓▓▓

Date of Birth: ▓▓▓▓

Driver's License State and No. ▓▓▓▓    Social Security ▓▓▓▓

Name of Company you work for: People United for Christians Inc.

Date started with company    3 years +/-

Job Title and Description: Data Entry Computer.

Describe your daily job duties:
Data Entry on Computer / Folding papers / inserting letters.

Supervisor's Name/Title    Julie

Do you use scripts? Yes / (No)    Who gives you scripts? _____

Do you change the scripts  Yes / No  If yes, how: _____

Are you an (Employee) or Independent Contractor? (Circle One)

How often are you paid? 2 weeks  How much are you paid: $ 10.50 hr  (Hour)/ Week / Month

When were you last paid? 10 / 1st / 18  Outstanding Compensation Owed _____

Do you have keys to the office? (Yes) / No  Do you have other keys? Describe: _____

Do you have the Alarm code? Yes / (No) Please provide: _____

Do you sign on any company accounts: Bank/Name/Account (No)

Do you use any personal accounts for the business: Bank/Name/Account (No)

File Server/Cloud Login and Password: NO

Computer Login and Password: 11223 computer log on

E-mail Address: Karen@officxec.com gmail    E-Mail Password: Kaykay101

Software / File Name:    _____  _____  _____
Password:    _____  _____  _____

External Access to system: Yes / (No)  Access Method _____

_____    10/12/18
Employee's Signature    Date

Additional Notes on Back    3.18

Chocolate

Lunch.

Savannah →
Heather (Soup)

~~They just has~~

Julie Green is
TOOK Danielle's job.

~~new~~ 2017  W-2

Little Green Light. com
    Data Entry Software
    Login      LGL.com
            login —
            E-Mail  Karen @  office EXECS. com
                            office ECEX
                                (office x)
            Pass  ~~KKAY1O+~~
                    KAY KAY 101
                Same ~~as~~ password both programs.

~~new~~ phone in office

search for name
        Lower L hand corner has a code
        M S — '
    Some remove from mail list.

## EMPLOYEE QUESTIONNAIRE   (Please Print Legibly)

Full Name: ███████ ████████ ████████

Alias or Phone Name: _____

Home Address: ███ ███████ ██████ ████ ███

_____ _____ State: ████ Zip: ███ ███

Home Phone: _____   Cell Phone: ████████████

Date of Birth: ████ ████ ███

Driver's License State and No. ████ ██████ ████   Social Security #_████████

Name of Company you work for: People United for Christians Inc. *txt*

*she does signed paper*

Date started with company _____ Sep 2017 _____

Job Title and Description: ___ production, stuffing envelopes ___

Describe your daily job duties:
___ stuffing envelopes, folding letters, cutting cloth. ___

Supervisor's Name/Title ___ Sandy ___

Do you use scripts? Yes /(No) Who gives you scripts? _____

Do you change the scripts Yes /(No) If yes, how: _____

Are you an   Employee   or   (Independent Contractor?)   (Circle One)   *on call.*

How often are you paid? Weekly   How much are you paid: $ __ 10.50 __ (Hour)/ Week / Month

When were you last paid? .10-12   Outstanding Compensation Owed_____

Do you have keys to the office? Yes /(No) Do you have other keys? Describe:_____

Do you have the Alarm code? Yes /(No) Please provide: _____

Do you sign on any company accounts: Bank/Name/Account (No)_____

Do you use any personal accounts for the business: Bank/Name/Account (No.)_____

File Server/Cloud Login and Password: _____

Computer Login and Password: _____

E-mail Address: _____   E-Mail Password: _____

Software / File Name: Little Green Light _____
Password: _____

External Access to system: Yes /(No)   Access Method _____

_____   10-12-18
Employee's Signature              Date

Additional Notes on Back                                3.18

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER        GOV005_00000038_0003.00006

Production -

Stacks of letters

Assemble mailers - clarify ask

Didn't receive any EOY emp # $

Little Greenlight

Database

Donations

input using a # or outside of env

represent $ donated

Go online using karen's login

yest quest

History + open

google, History, Greenlight

Sign in

redwoodscientific2018@gmail.com

password 780UpLa@nd!

search for name.

never creat a name

Click on name    fill in $2

chose campaign

GOV005_00000038_0003.00007

## EMPLOYEE QUESTIONNAIRE    (Please Print Legibly)

Full Name: ▮▮▮▮▮▮▮▮▮▮

Alias or Phone Name: _____

Home Address: ▮▮ ▮▮▮ ▮▮ _____

City: ▮▮▮    State: ▮    Zip: ▮▮▮

Home Phone: ▮▮ ▮▮    Cell Phone: ▮▮▮▮▮▮

Date of Birth: 8/06/1973

Driver's License State and No. ▮▮    Social Security # ▮▮▮▮▮

Name of Company you work for: People United for Christmas Inc. [Christians]

Date started with company 20kes — bega 8-9-12 mo.

Job Title and Description: production stuffing envelope. [cut the cheese cloth]

Describe your daily job duties:
folding paper.

Supervisor's Name/Title    Sandy WesterGroon

Do you use scripts?  Yes / (No)  Who gives you scripts? _____

Do you change the scripts  Yes / (No) If yes, how: _____

Are you an    Employee    or    (Independent Contractor)    (Circle One)    1099

How often are you paid? weekly    How much are you paid: $ 10:50    (Hour)/ Week / Month

When were you last paid? 10-12    Outstanding Compensation Owed _____

Do you have keys to the office? Yes / (No)  Do you have other keys? Describe: NO

Do you have the Alarm code? Yes / (No) Please provide: _____

Do you sign on any company accounts: Bank/Name/Account No    N O

Do you use any personal accounts for the business: Bank/Name/Account No. N/A

File Server/Cloud Login and Password: _____ N O

Computer Login and Password: _____ N O

E-mail Address: bautistalilies@yahoo.com    E-Mail Password: _____

Software / File Name: N/A
Password: N/A

External Access to system: Yes / (No)    Access Method _____

Liliane Bautista    10/12/18
Employee's Signature    Date

Additional Notes on Back    3.18

Does not use computer

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## EMPLOYEE QUESTIONNAIRE    (Please Print Legibly)

Full Name: ███████████████

Alias or Phone Name: ███

Home Address: ███████████

City: ███ State: ███ Zip: ███

Home Phone: ███ Cell Phone: ███████

Date of Birth: ███████

Driver's License State and No. ███ Social Security # ███████████

Name of Company you work for: People United For Christians Inc.

Date started with company: 10/2017

Job Title and Description: Production Manager - coordinate regular mailings including layout/design, schedule production, supervise/oversee production

Describe your daily job duties:
_____
_____

Supervisor's Name/Title: Jason Cardiff

Do you use scripts? Yes / (No)  Who gives you scripts? _____

Do you change the scripts  Yes / No  If yes, how: n/a

Are you an (Employee) or  Independent Contractor?  (Circle One)

How often are you paid? bi-monthly  How much are you paid: $ 26  (Hour) / Week / Month

When were you last paid? 10/01/18  Outstanding Compensation Owed _____

Do you have keys to the office? (Yes) / No  Do you have other keys? Describe: no

Do you have the Alarm code? Yes / (No) Please provide: ███████ Door Code 9368

Do you sign on any company accounts: Bank/Name/Account No  no

Do you use any personal accounts for the business: Bank/Name/Account No. no

File Server/Cloud Login and Password: _____

Computer Login and Password: cynthia  112233

E-Mail Address: Sandy@officexecs.com  E-Mail Password: nomoreVM17!

Software / File Name: none  and Sandy@rststrips.com
Password:

External Access to system: Yes / (No)  Access Method _____

Employee's Signature _____    Date 10/12/

Additional Notes on Back    3.18

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER



| PREPARED BY | | PAGE NO. |
|---|---|---|
| DATE | | |

PROJECT ACTION NOTES

Jandy

PROJECT PLANNING NOTES

1
2  was W-2
3    Jan.
4
5  Daniel Cadey  asstistant
6  1st 4 mo
7  Then moved to be
8    Product Mgr  for marketing
9  generate create → At work
10  send to funder & approve prog
11
12  now working on shroud of Turin
13    campaigns
14  solct for church Donations
15  Virtual church.
16    minister to people who do not
17    attend a church.
18  Jason Cardiff is master
19                    Prog+
20  News Porsche -
21
22
23
24
25
26
27
28

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| PREPARED BY | | PAGE |
|---|---|---|
| DATE | | NO. |

**PROJECT ACTION NOTES**

**PROJECT PLANNING NOTES**

29  Oct — EOY 2017

30

31         $253 → 1586 reimb.

32  They don't Pay Bills

33

34  Danielle — Dir of Operations

35            hired Sandy

36  Sandy left in July

37     upset when pushed on W2 none

38

39  Redwood gave W2

40  August

41  Karen E. mailed Mrs C new W2

42  Oct 1

43

44  Yest she demanded Expln

45  q gasm

46            got ugly

47     he told her friend.

48  2Cks she got in Nov + Dec were

49     hand calc by Daniel.

50

51  Danielle consults

52       Redwood may (e

53

54

55

56

CONFIDENTIAL INFORMATION — CONTENTS SUBJECT TO PROTECTIVE ORDER          GOV005_00000038_0003-0003

| PREPARED BY | | PAGE |
|---|---|---|
| DATE | | NO. |

**PROJECT ACTION NOTES** | **PROJECT PLANNING NOTES**

1. look at $ g Spreadsheet
2. for investors, resentat
3. (screen dist)
4.
5. Julie is suppose to handle. W2
6. withing was ever reported
7. or submitted
8. you can not report
9. if we report n amend return
10. offsets + Ebay stores
11.
12. (never pd bills from last 1/4 2017    asked MBC
13.
14. Her observations.
15. used to have a salesroom
16. all gone except 2 or 3    3pring 2018    2 T Chet Po Chet bars
17. Danielle told her
18. Jason will MLM so he doesn't need
19. sales people.
20. These
21. 3/18 → 5/18 - 2 sales people left
22. in Spring Aug, 2018
23. Medical Marijuana
24. CBD - medicinal
25. mtg in the Me Card office
26. all emp need to get their relation
27. to cold call
28. Private labeling

| PREPARED BY | | PAGE |
|---|---|---|
| DATE | | NO. |

**PROJECT ACTION NOTES**

**PROJECT PLANNING NOTES**

29 Christian Lands people to

30 redwood to package

31 CBD strips.

32

33

34 Karen + Sandy   Paychock(s)

35 Subs — Maxecruz + Lillianne

36 "Warehouse" → Redwood

37 "Lotterpay" → People Listed

38 all paid by church.

39

40 She has Cynthia's old computer

41                    @ mail.com

42 uses E-Mail by-Mail

43      Sandy @ Office exo Co.Com

44      password

45 org when w/ Daniele

46      sandy @ 1st strips.com

47 Org DBcs on (letter)

48      she has to go to

49 G Mail.com

50 Sandy @ 1st strips.com

51 pa

52 Recovery ph is her cell.

53

54

55 The "papers"

56

## EMPLOYEE QUESTIONNAIRE    (Please Print Legibly)

Full Name: ███████████████████

Alias or Phone Name: ███████

Home ███████████

City: ████████████    State: ███    Zip: ████████

Home Phone: _____    Cell Phone: ████████████

Date of Birth: ████████ / ████████

Driver's License State and No. ████████    Social Security # ████████████

Name of Company you work for: Redwood Scientific Technologies

Date started with company: July 2018

Job Title and Description: Customer Service

Describe your daily job duties:

answer phones, assist with orders

Supervisor's Name/Title: Julie Green

Do you use scripts? (Yes) / No  Who gives you scripts? Management

Do you change the scripts (Yes) / No  If yes, how: retype

Are you an (Employee) or  Independent Contractor?  (Circle One)

How often are you paid? 1st & 15th  How much are you paid: $ 2500 ____ Hour / Week / (Month)

When were you last paid? Oct. 1  Outstanding Compensation Owed _____

Do you have keys to the office?  Yes / (No) Do you have other keys? _____

Describe: _____

Do you have the Alarm code? (Yes) / No  Please provide: _____

File Server/Cloud Login and Password: N/A

Computer Login and Password: ' N/A

E-mail Address: _____    E-Mail Password: _____

Software / File Name: _____  _____  _____
Password: _____  _____  _____

External Access to system:  Yes / No

Access Method _____

_____    _____
Employee's Signature                         Date

Additional Notes on Back                                      10.16

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER    GOV005_00000038_0004.00001

# EXHIBIT 16

**CARDIFF MOTION
TO SUPPRESS**

Message

| | |
|---|---|
| **From**: | Brick Kane [bkane@robbevans.com] |
| **Sent**: | 6/23/2020 4:31:01 PM |
| **To**: | Williams, Joseph M. [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=9d35f16bcc2440cab7796592d936f2f3-Williams, J] |
| **CC**: | Sebastian, Manu J. [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=dac5d98a5406473388a0428728c99360-Sebastian,]; Gardner, Brianna M. [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b593f29a1fa74a6c8081abbeb8844f77-Gardner, Br]; mfletcher@frandzel.com |
| **Subject**: | RE: Redwood CRM Data Consent |
| **Attachments**: | RS Stored Communications Act Consent.pdf |

Matt,

Please see attached.

Brick

rick Kane
President
Robb Evans & Associates LLC
11450 Sheldon St.
Sun Valley, CA 91352
(818) 683-1061
www.robbevans.com


**From:** Williams, Joseph M. <Joseph.M.Williams@usdoj.gov>
**Sent:** Tuesday, June 23, 2020 7:31 AM
**To:** Brick Kane <bkane@robbevans.com>
**Cc:** Sebastian, Manu J. <Manu.J.Sebastian@usdoj.gov>; Gardner, Brianna M. <Brianna.M.Gardner@usdoj.gov>; mfletcher@frandzel.com
**Subject:** RE: Redwood CRM Data Consent

Brick,

Thanks very much for your quick response. If you could sign the attached consent form related to any Receivership Entity third-party stored data, it would help us to not have to come to you every time we discover that a company is claiming that the Stored Communications Act applies to relevant information. Thanks again, and happy to discuss if you have any questions.

Best,

Matt

**From:** Brick Kane <bkane@robbevans.com>
**Sent:** Monday, June 22, 2020 6:02 PM
**To:** Williams, Joseph M. <joswilli@CIV.USDOJ.GOV>
**Cc:** Sebastian, Manu J. <msebasti@CIV.USDOJ.GOV>; Gardner, Brianna M. <brgardne@CIV.USDOJ.GOV>;

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

mfletcher@frandzel.com
**Subject:** RE: Redwood CRM Data Consent

Matt,

You have the Receiver's consent, on behalf of the Receivership entities, to obtain any Redwood third-party CRM data.

Regards,
Brick

Brick Kane
President
Robb Evans & Associates LLC
11450 Sheldon St.
Sun Valley, CA 91352
(818) 683-1061
www.robbevans.com

**From:** Williams, Joseph M. <Joseph.M.Williams@usdoj.gov>
**Sent:** Monday, June 22, 2020 2:43 PM
**To:** Brick Kane <bkane@robbevans.com>
**Cc:** Sebastian, Manu J. <Manu.J.Sebastian@usdoj.gov>; Gardner, Brianna M. <Brianna.M.Gardner@usdoj.gov>; mfletcher@frandzel.com
**Subject:** Redwood CRM Data Consent

Good afternoon Brick,

We are continuing our investigation and wanted to ask for a quick consent from the Redwood Receivership. We intend to go directly to Limelight, Konnektive, and any other Redwood CRM vendors we discover in order to obtain Redwood's CRM data directly. We think cutting you out as the middle man makes sense and saves both of us time. However, if you prefer that we send the Receivership the subpoena and/or warrant, and that the Receivership then produce the relevant CRM data to us, that is fine as well. Under some interpretations of the Stored Communications Act, third-party CRM vendors like Limelight could be "remote computing services," so the Receivership's consent on this issue (under 18 U.S.C. 2702(b)(3) & (c)(2)) would saves DOJ from jumping through a number of hoops.

In any event, if we could quickly obtain your consent on behalf of the Receivership entities to obtain any Redwood third-party CRM data, we would appreciate it.

Thanks very much for your assistance, and I'm happy to discuss at your convenience if needed.

Best,

Matt

J. Matt Williams
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
Office: (202) 532-4521

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER



**U.S. Department of Justice**
Consumer Protection Branch

| **J. Matt Williams** | **Overnight Delivery Address** | **Mailing Address** |
| --- | --- | --- |
| Phone:  202-532-4521 | 450 Fifth Street, NW, Sixth Floor South | P.O. Box 386 |
| Fax:      202-514-8742 | Washington, D.C.  20001 | Washington, D.C.  20044 |

June 23, 2020

<u>VIA EMAIL</u>
Mr. Brick Kane
President
Robb Evans & Associates LLC
bkane@robevans.com

       Re:    <u>Redwood Scientific, *et al.*, Stored Communications Act Consent</u>

Dear Mr. Kane:

       You have advised me that the business entities currently subject to a Receivership ordered by the United States District Court for the Central District of California in <u>Federal Trade Commission v. Redwood Scientific, Inc. et al.</u>, 5:18-cv-02104-SJO (C.D. Cal.), are willing to continue voluntarily cooperating with the United States Department of Justice's criminal investigation into potential violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1349 (conspiracy), 1503 & 1505 (obstruction of justice), and related offenses. The business entities encompassed within the Receivership ("the Receivership Entities") are:

1. Redwood Scientific Technologies, Inc. (California Corporation)
2. Redwood Scientific Technologies, Inc. (Nevada Corporation)
3. Redwood Scientific Technologies, Inc. (Delaware Corporation)
4. Identify, LLC (Wyoming limited liability company)
5. Advanced Men's Institute Prolongz, LLC (California limited liability company)
6. Run Away Products, LLC (New York limited liability company)
7. Carols Place Limited Partnership (Arizona limited liability partnership)
8. 1 through 7's subsidiaries, affiliates, successors, and assigns.

       You have also advised me that you are President of Robb Evans & Associates LLC, the court-appointed Receiver ("the Receiver") over the Receivership Entities, and you agree that you have the authority to enter into this agreement on behalf of the Receiver and the Receivership Entities.

<div align="center">AGREEMENT</div>

       The Receiver, on behalf of the Receivership Entities, hereby consents to disclosing to the United States Department of Justice all (1) wire or electronic communications, and all (2) records or other information, stored by any remote computing service or electronic communications service. <u>See</u> 18 U.S.C. §§ 2701–13. (continued on page 2)

<div align="center">- 1 -</div>

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER     GOV005_00000005_0002.00001

The Receiver enters into this agreement voluntarily, without threat or coercion. The Receiver agrees it has had sufficient time to review this document and the ability to consult with its legal counsel.

Agreed to by:

J. Matt Williams
Manu Sebastian
Brianna Gardner
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch

Brick Kane
President
Robb Evans & Associates LLC
Receiver

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

GOV005_00000005_0002.00002

# EXHIBIT 17

**CARDIFF MOTION
TO SUPPRESS**

# DECLARATION OF BRICK KANE

I, Brick Kane, declare as follows:

1.     I am the President & Chief Operating Officer of Robb Evans & Associates LLC ("REA"), initially the Temporary Receiver and subsequently the Receiver in this matter.  I have personal knowledge of the matters set forth in this declaration and, if I were called upon to testify as to those matters, I could and would competently testify thereto based upon my personal knowledge.

2.     I am one of the individuals with REA that has primary responsibility for the day-to-day supervision and management of the receivership estate in this case since REA first began to act as the Temporary Receiver on October 10, 2018, pursuant the its *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Temporary Restraining Order").

3.     On October 24, 2018, the Court entered its Preliminary Injunction with Asset Freeze, Receiver, and Other Equitable Relief Against Redwood Scientific Technologies, Inc. (CA), etc. Appointment of a Receiver, and Other Equitable Relief, whereby the Court ordered that Robb Evans & Associates LLC shall continue to serve as the Receiver of the Receivership Entities with full powers of an equity receiver.  [Doc. No. 46.]

4.     On October 24, 2018, the Court entered its Order Extending Temporary Restraining Order and Granting Continuance of Preliminary Injunction Hearing for Defendant Danielle Cadiz.  [Doc. No. 47.]

5.     On October 24, 2018, the Court entered its Order Extending Temporary Restraining Order and Granting Continuance of Preliminary Injunction Hearing for Defendants Jason Cardiff and Eunjung Cardiff and Ordering them to Return Assets.  [Doc. No. 48.]

6.     On November 7, 2018, the Court entered its Stipulated Preliminary

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Injunction as to Defendant Danielle Cadiz, whereby the Court ordered that Robb Evans & Associates LLC shall continue to serve as the Receiver of the Receivership Entities with full powers of an equity receiver [Doc. No. 55.]

7.    On November 8, 2018, the Court entered its Preliminary Injunction with Asset Freeze, Receiver, and Other Equitable Relief Against Jason Cardiff and Eunjung Cardiff ("Preliminary Injunction"), whereby the Court ordered that Robb Evans & Associates LLC shall continue to serve as the Receiver of the Receivership Entities and of the Assets of Defendants Jason Cardiff and Eunjung Cardiff, as more particularized therein, with full powers of an equity receiver. [Doc. No. 59.]

8.    The activities undertaken by the Receiver's members and staff from October 10, 2018 through October 31, 2018, are specified Report of Activities for the period from October 10, 2018 through October 31, 2018 ("First Report of Activities"). [Doc. No. 52; *see also* Doc. 53 Notice of Errata – whereby a readable copy of page 9 of the First Report of Activities was filed.] The activities described in First Report of Activities (a true and correct copy of which is attached hereto as Exhibit 1 (without Exhibits)), generally have continued through the First Reporting Period (October 10, 2018 through November 30, 2018) in the context of the Receiver's efforts to identify, obtain, safeguard and preserve assets of the receivership estate and otherwise to perform its duties and responsibilities under the authority granted by the Temporary Restraining Order and Preliminary Injunction.

9.    During the First Reporting Period (October 10, 2018, through November 30, 2018), the fees and costs of the Receiver's members, accountants, staff, and support staff totaled $122,206.83, consisting of $117,562.20 in fees and $4,644.63 in costs. The legal fees and costs of the Receiver's counsel, Frandzel Robins Bloom & Csato, L.C. ("FRBC"), which the Receiver hired pursuant to the authority given to the Receiver in the Court's Temporary Restraining Order at § XVI.G., and the Preliminary Injunction at § XVI.G., totaled $66,267.45, consisting of $55,909.00 in fees and $10,358.45 in costs. Accordingly, the total of receivership

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  fees and expenses incurred during the First Reporting Period which the Receiver

2  seeks an order authorizing payment is $188,474.28.

3    10.    The Receiver's fees and costs for which approval is requested are

4  identified in the summary which the Receiver's office has prepared and titled as

5  "Receivership Administrative Expense Report by Month and Fund Balance From

6  Inception (October 10, 2018) to November 30, 2018," a true and correct copy of

7  which I attach hereto as Exhibit 2. The fees are further detailed Exhibit 3 hereto.

8  Specifically, Exhibit 3 is comprised of monthly billing summaries reflecting the

9  services rendered and time spent by REA's members, accountants, staff, and support

10 staff (with the work descriptions redacted where appropriate to preserve information

11 protected from disclosure by the attorney-client privilege or otherwise to protect the

12 Receiver and the receivership estate from inappropriate disclosures).

13    11.    I am familiar with the methods and procedures used to create, record,

14 and maintain the Receiver's billing records. The billing records attached hereto as

15 Exhibit 3 are prepared from computerized time records prepared contemporaneously

16 with the services rendered by each professional billing time to this matter. These

17 computerized records are prepared in the ordinary course of business by the

18 Receiver's professionals who have a business duty to accurately record their time

19 spent and services rendered on the matters on which they perform work. The time

20 records are transferred into a computerized billing program which generates

21 monthly invoices. In my experience, the Receiver's methods and procedures for

22 recording and accounting for time and services have proven to be reliable and

23 accurate.

24    12.    During the First Reporting Period, FRBC performed certain work for

25 the Receiver. That work is summarized in the accompanying Declaration of Craig

26 A. Welin, and Exhibits 4 and 5 thereto.

27    13.    I believe that in light of the work performed during the First Reporting

28 Period, the fees and costs of the Receiver and FRBC are reasonable and should be

1    approved and authorized for payment in their entirety.

2        14.    In connection with the Application, the Receiver will comply with the

3 notice requirements of Local Rule 66-7(f) concerning applications for approval of a

4 receiver's administrative fees and expenses by serving a copy of the Notice of

5 Application and Application, the supporting Memorandum of Points and

6 Authorities, and the declarations and all exhibits on the parties to this action, and by

7 serving a copy of the Notice of Application and Application and the supporting

8 Memorandum of Points and Authorities. In addition, the Receiver will provide an

9 entire copy of the Application, including the declarations, to anyone who requests a

10 copy of the Application in writing directed to Robb Evans & Associates LLC, 11450

11 Sheldon Street, Sun Valley, California 91352-1121. The Receiver also will post a

12 copy of the entire Application and supporting declarations on the Receiver's website

13 for this case at https://www.robbevans.com/find-a-case/redwood-scientific-

14 technologies-inc-et-al/.

15        15.    Accordingly, the Receiver has complied with Local Rule 66-7

16 regarding notice to creditors of the Application.

17        I declare under penalty of perjury under the laws of the United States of

18 America that the foregoing is true and correct and that this declaration was executed

19 on January 7, 2019, at Sun Valley, California.

20

21                           _____

22                               BRICK KANE

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

5

## DECLARATION OF CRAIG A. WELIN

1.     I am an attorney at law duly admitted to practice before the courts of the State of California, the federal courts of the State of California, including the United States District Court for the Central District of California, and the Ninth Circuit Court of Appeals, and am a shareholder of Frandzel Robins Bloom & Csato, L.C. ("FRBC"), attorneys for the Receiver in this matter, Robb Evans & Associates LLC.

2.     I am one of the attorneys primarily responsible for the representation of the Receiver in this case in addition to Michael Gerard Fletcher, who also is a shareholder of FRBC.

3.     During the period of the October 10, 2018 through November 30, 2018 ("First Reporting Period"), FRBC's fees totaled $66,267.45 consisting of $55,909.00 in fees and $10,358.45 in costs.

4.     I attach hereto as Exhibit 4 a table that summarizes the hours worked by each attorney and paralegal from October 10, 2018, through November 30, 2018 ("First Reporting Period"), and their respective hourly billing rates.

5.     I attach hereto as Exhibit 5 the billing records for FRBC reflecting the services rendered, time spent and costs incurred by FRBC pertaining to this matter during the First Reporting Period, with the work descriptions have redacted where appropriate to preserve information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine or otherwise protect the Receiver and the receivership estate from inappropriate disclosures. These billing summaries are organized in the following manner: (a) by the following ABA Uniform Task-Based Management System Bankruptcy Code Tasks (which are most applicable to billings conducted in a federal receivership matter) – Case Administration, Asset Analysis and Recovery, Meetings of and Communications with Creditors, and Employee Benefits/Pensions; and (b) by each attorney and paralegal under each of the referenced task codes. In addition, at the end of all timekeeper entries under

DECLARATIONS OF BRICK KANE AND CRAIG A. WELIN IN SUPPORT APPLICATION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF RECEIVER'S AND RECEIVER'S COUNSEL'S FEES, ETC.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1   each task code is a table that includes the hours worked by each attorney and

2   paralegal.

3       6.    I am familiar with the methods and procedures used to create, record

4   and maintain billing records for FRBC's clients. The billing records attached hereto

5   as Exhibit 5 are prepared from computerized time records prepared

6   contemporaneously with the services rendered by each attorney and paralegal billing

7   time to this matter. These computerized records are prepared in the ordinary course

8   of business by the attorneys and paralegals employed by FRBC who have a business

9   duty to accurately record their time spent and services rendered on the matters on

10   which they perform work. The time records are transferred into a computerized

11   billing program which generates monthly invoices under the supervision of the

12   firm's accounting department. Based upon my experience with FRBC, I believe the

13   firm's methods and procedures for recording and accounting for time and services

14   for its clients is reliable and accurate.

15       7.    While the legal services rendered by FRBC during the First Reporting

16   Period, either at the direction of the Receiver or responsible attorneys with this firm,

17   are contained in the specific work entries in Exhibit 5, such services included,

18   without limitation, (a) analyzing Plaintiff's Complaint and application for the

19   appointment of receiver, and Court's various receivership orders, (b) assisting the

20   Receiver in the preparation of the Receiver's Affidavit of Non-Compliance for

21   Temporary Restraining Order (filed on October 23, 2018); (c) attending hearings

22   before the Court on the Court's Order to Show Cause re Appointment of a Receiver,

23   (d) analyzing legal issues surrounding potential assets and assets of the receivership

24   estate, including analysis of lien priority issues; (e) initiating miscellaneous actions

25   in 27 other districts under 28 U.S.C. § 754, including filing certified copies of the

26   Complaint, Temporary Restraining Order, and other Orders in connection therewith;

27   (f) communicating with certain creditor's attorneys regarding fact and legal issues;

28   (g) regularly communicating with and advising the Receiver on various legal issues

DECLARATIONS OF BRICK KANE AND CRAIG A. WELIN IN SUPPORT APPLICATION FOR ORDER
APPROVING AND AUTHORIZING PAYMENT OF RECEIVER'S AND RECEIVER'S COUNSEL'S FEES, ETC.

1 related to the Receiver's administration of the receivership estate, including asset
2 identification and recovery issues.

3    8.    I believe that in light of the work FRBC performed during the First
4 Reporting Period, FRBC's fees and costs are reasonable and should be approved and
5 authorized for payment in their entirety.

6    9.    It is FRBC's understanding that in light of the Court's requirement
7 under the Temporary Restraining Order and Preliminary Injunction that the Receiver
8 shall file with the Court and serve on the parties periodic requests for payment of the
9 Receiver's and its professionals' reasonable compensation, that the Receiver was
10 not required to comply with L.R. 7-3 before bringing the instant Application.
11 Further, it is our understanding that L.R. 7-3 does not apply to the Application in the
12 first instance since the Receiver represents the Court's agent, and there is no
13 "opposing counsel" as that term is used in L.R. 7-3.  Nonetheless, on January 2,
14 2019, FRBC e-mailed a letter to counsel of record for Plaintiff Federal Trade
15 Commission and Defendant Danielle Cardiz, as well as to non-represented
16 Defendants Jason Cardiff and Eunjung Cardiff (neither of whom has filed a response
17 to Plaintiff's Complaint) regarding the Receiver's intent to bring the Application.
18 We included with that letter copies of (a) the "Receivership Administrative Expense
19 Report by Month and Fund Balance From Inception (October 10, 2018) to
20 November 30, 2018"  (Exh. 2 to the Declaration of Brick Kane), and (b) copies of
21 FRBC's redacted invoices for the First Reporting Period.  I attach hereto a copy of
22 the January 2, 2019, letter excluding the Exhibits.  Because of the United States
23 federal government shutdown, we did not send the letter before January 2, 2019;
24 however, since sending the letter, the federal government shutdown has continued
25 resulting in the continued closure of Plaintiff Federal Trade Commission.

26
27
28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

10.   As of January 7, 2019, FRBC has not received a response from any of the represented parties or any of the non-represented parties any intent by any of the parties to oppose the Receiver's Application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on January 7, 2019, at Los Angeles, California.

CRAIG A. WELIN

DECLARATIONS OF BRICK KANE AND CRAIG A. WELIN IN SUPPORT APPLICATION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF RECEIVER'S AND RECEIVER'S COUNSEL'S FEES, ETC.

9

# EXHIBIT 1

# EXHIBIT 1

1 | Michael Gerard Fletcher (State Bar No. 070849)
    mfletcher@frandzel.com
2 | Craig A. Welin (State Bar No.138418)
    cwelin@frandzel.com
3 | Hal D. Goldflam (State Bar No.179689)
    hgoldflam@frandzel.com
4 | FRANDZEL ROBINS BLOOM & CSATO, L.C.
    1000 Wilshire Boulevard, Nineteenth Floor
5 | Los Angeles, California 90017-2427
    Telephone: (323) 852-1000
6 | Facsimile: (323) 651-2577

7 | Attorneys for Receiver ROBB EVANS
    AND ASSOCIATES LLC
8

9 |                **UNITED STATES DISTRICT COURT**

10 |              **CENTRAL DISTRICT OF CALIFORNIA**

11 |                    **WESTERN DIVISION**

12

13 | FEDERAL TRADE COMMISSION,          Case No. 5:18-cv-02104-SJO-PLA

14 |           Plaintiff,               **NOTICE OF ERRATUM RE:
                                        REPORT OF RECEIVER'S**
15 |        v.                          **ACTIVITIES FOR THE PERIOD
                                        FROM OCTOBER 10, 2018**
16 | JASON CARDIFF, et al.,             **THROUGH OCTOBER 31, 2018
                                        FILED ON NOVEMBER 1, 2018**
17 |           Defendants.
                                        [NO HEARING ASSIGNED]
18

19

20

21

22

23

24

25

26

27

28

3111926.1 | 078410-0061                                    1

NOTICE OF ERRATUM RE: REPORT OF RECEIVER'S ACTIVITIES FOR THE PERIOD FROM OCTOBER 10,
2018 THROUGH OCTOBER 31, 2018 FILED ON NOVEMBER 1, 2018

11

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  TO: THE HONORABLE S. JAMES OTERO, JUDGE OF THE UNITED

2  STATES DISTRICT COURT.

3  On November 1, 2018, Robb Evans & Associates LLC, Receiver in the

4  above-entitled matter, filed its Report of Activities for the period from October 10,

5  2018 through October 31, 2018 ("Report"; Document 52.)  Subsequent to the Report

6  being filed, the Receiver discovered that page 9 of the filed copy was unreadable

7  due to an unknown error related with the electronic filing of the Report.  Therefore,

8  the Receiver submits herewith another copy of the Report, with page 9 in a readable

9  format.

10

11  DATED: November 2, 2018          FRANDZEL ROBINS BLOOM & CSATO, L.C.
                                      MICHAEL GERARD FLETCHER
12                                    CRAIG A. WELIN
13                                    HAL D. GOLDFLAM
14
15                                 By:    /s/ Hal D. Goldflam
                                          HAL D. GOLDFLAM
16                                        Attorneys for Receiver ROBB
17                                        EVANS & ASSOCIATES LLC
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF ERRATUM RE: REPORT OF RECEIVER'S ACTIVITIES FOR THE PERIOD FROM OCTOBER 10,
2018 THROUGH OCTOBER 31, 2018 FILED ON NOVEMBER 1, 2018

Robb Evans & Associates LLC
Receiver of
Redwood Scientific Technologies, Inc. et al.

## REPORT OF RECEIVER'S ACTIVITIES
## OCTOBER 10, 2018 THROUGH OCTOBER 31, 2018

This report covers the activities of the Receiver[1] since the inception of the receivership. This is the first report to the Court on the progress of the receivership. It does not constitute an audit of financial condition and is intended only to provide information for use by the Court in assessing the progress of the receivership.

## Overview

This report will describe the steps taken by the Receiver to implement the terms of the Temporary Restraining Order (TRO). This report will also describe the destruction of Receivership Entity records in May 2018 on orders from Jason Cardiff and an additional potential violation of the TRO.

## Custody, Control, and Possession

On October 12, 2018 the Receiver took control of the business premises located at 820 and 870 North Mountain Ave. in Upland, CA. There was one employee present at 820 North Mountain Ave., Suite 100. Offices for Individual Defendants Jason Cardiff and Eunjung Cardiff are at Suite 100.

Jason Cardiff was present at 870 North Mountain Ave., Suite 115. Upon seeing the TRO, he advised the Receiver that the office was that of People United for Christians (PUFC), which was not mentioned in the paperwork he saw.

As set forth below, the operations of Redwood Scientific Technologies, Inc. (Redwood) and the PUFC are intertwined and comingled.

The Receiver interviewed five individuals at 870 North Mountain Ave.

The first individual interviewed by the Receiver stated that he worked as a warehouse worker and sales representative for Redwood. He stated his primary job was to move the Redwood

---

[1] Reference to the Receiver in this report means the Receiver, the Receiver's deputies, and staff.

Case 5:18-cv-02104-DMG-PLA Document 107-1 Filed 09/04/19 Page 143 of 221 Page ID
ID#:3925
Case 5:18-cv-02104-SJO-PLA Document 53 Filed 11/02/18 Page 4 of 76 Page ID #:3273

inventory located in that entity's warehouse across the hall into a small office located in Suite 115 that had been set up with shelves for inventory. He did not know why he was moving inventory owned by one company into a suite purportedly occupied by PUFC. In addition to relocating inventory, he stated he made sales calls on companies in the area for the purpose of selling dissolvable film strips to aid in smoking cessation, weight loss, sleep aid, and improved sexual performance for men and women.

The other four individuals that were interviewed by the Receiver all stated they worked for PUFC. The Receiver learned that PUFC is a "virtual ministry" whose message was delivered by Mr. Cardiff, the Master Prophet. Mr. Cardiff exclusively determined the ministry's message through solicitation campaigns which he took from a library of previously used campaigns found in one of the offices.

Two of the four individuals were part time and only worked when called in and the other two were permanent, salaried employees. All four employees worked on solicitation campaigns for PUFC, one preparing art work, others preparing the mailers with the inclusion of religious symbols in the mailings. The Receiver observed that the employees were cutting small swatches of cheesecloth representing an item of religious significance. One full-time employee and one part-time employee also did computer input reflecting the amount of money received for a particular campaign. This input entailed taking information off of the front of empty return envelopes that Defendant Eunjung Cardiff sent to the suite after opening them and removing the money in them. The envelopes had the sender's name and address in the upper left hand corner. In the lower left hand corner there was a code for the marketing campaign the envelope was returned on. Hand written on the right side of the envelope was a number representing the amount of money received in that envelope.

One employee told the Receiver that in August, 2018 there was a meeting with all employees of Redwood and PUFC where it was announced to employees they would begin selling medical marijuana (CBD) dissolvable film strips. When that company required help in packaging that product, PUFC employees would go to 820 North Mountain and work there. The four PUFC employees were always paid by PUFC, even when work was done for Redwood, although the individual responsible for keeping track of employee time used an internal code to designate which hours in the pay period were worked at Redwood and which at PUFC. One PUFC employee listed her supervisor as Julie. The only Julie the Receiver was able to locate in the records is on the payroll report for Redwood.

Employees of PUFC stated that after the third quarter, 2017, employees did not receive checks with paystubs and that at year end they did not receive 2017 W-2 reports for their use in completing their taxes. The employee stated that when she pressed Mr. Cardiff, he became very angry and referred her to a Redwood supervisor who told her PUFC had not reported any information to the Internal Revenue Service and therefore, the employees did not need to either.

Page 2 of 12

In addition, the Receiver observed a substantial amount of Redwood paper records located in the 870 Mountain Ave. suites. Some file cabinets contained records for both Redwood and the ministry.

The 870 Mountain Ave. suites are leased to Intel Property LLC, a Wyoming Limited Liability Company. The Guarantor on this lease is Redwood.

Defendant Danielle Cadiz, who is on Redwood's payroll, is listed as Manager on the application for Messengers for Christ World Healing's post office box application (Exhibit 1). This post office box receives mail from solicitations made by PUFC.

The Receivership Entities utilize Google Suites for email and for their documents. The Receiver took steps to change the administrative password for Google Suites and restricted access by anyone not authorized by the Receiver. Representatives of the Federal Trade Commission (FTC) commenced a forensic image of the data contained in Google Suites.

The Receivership Entities utilize QuickBooks for their accounting system. The Receiver accessed and downloaded the QuickBooks data.

The Receiver changed the locks to all of the office suites and took control of the mail.

## Interview with Jason Cardiff

On October 12, 2018 the Receiver met with Mr. Cardiff and explained to him the asset freeze provisions and the duties of the Receiver as detailed in the TRO[2].

Mr. Cardiff told the Receiver that credit card merchant processors for the Receivership Entities had terminated processing several months ago and there were no current merchant processing accounts. He stated that as a result the total sales for last month were about $7,000.

The Receiver directed Mr. Cardiff to Section XVI. paragraph E. of the TRO which requires the Receiver to take custody, control, and possession of various valuable articles. Mr. Cardiff told the Receiver that all of the items listed in the TRO had been liquidated over the past few years. He first said the items had been liquidated over the last two to three years and then later said over the last four to five years. He further stated that everything was sold for cash at pawn shops overseas and most items were sold at pawn shops in London. He also told the Receiver that he had no records reflecting the sale of any of the assets detailed in the TRO. The Receiver then asked Mr. Cardiff about item 25, his wife's (defendant Eunjung Cardiff) 8.5 carat diamond ring which is insured for $532,000. In response, Mr. Cardiff explained that the

---

[2] Tracy Green, Esq., an attorney who is representing Mr. Cardiff in the discovery dispute with the FTC, was on a speaker phone during this interview. Ms. Green reinforced the Receiver's explanation of the TRO, including the asset freeze provisions.

ring was sold in Abu Dhabi and proceeds of the sale were wire transferred to a trust in the Cook Islands. He stated there are currently no funds in the trust because the funds were wire transferred back to the United States to fund business operations. In response to further questions from the Receiver, he stated that neither he nor his wife is a trustee of the Cook Islands trust and he does not know how the trust works or who provides instructions to the trust to transfer funds.

The Receiver obtained a current insurance policy for the jewelry from Roger Stone Insurance agency. The policy period is from February 11, 2018 to February 11, 2019 and the annual premium is $16,868.77. The coverage still includes the 8.5 carat diamond ring discussed above (Exhibit 2, Item#27 on page 2).

The Receiver will investigate this issue further, but has preliminarily concluded that Mr. Cardiff's explanation about the disposition of these valuable assets that remain insured and the operation of the Cook Islands trust strains credibility and truthfulness.

## Interview with Danielle Walker a/k/a Danielle Cadiz

On October 27, 2018 the Receiver interviewed Danielle Walker. Ms. Walker was the former Operations Director of Redwood and provided a great deal of information to the Receiver.

The Receiver asked Ms. Walker if Mr. Cardiff or anyone else issued instructions to destroy computer files after receiving the FTC's Civil Investigative Demand (CID) in August 2017. Ms. Walker told the Receiver that Redwood received an additional CID in May of 2018. According to Ms. Walker, the May 2018 CID contained a list of key words. The CID instructed Redwood to search all computer files for these key words and to produce any responsive documents to the FTC. Ms. Walker told the Receiver that Mr. Cardiff instructed Redwood's employees to search their documents for these key words and to delete any documents with any of the key words. According to Ms. Walker, Mr. Cardiff said "that if the FTC got a hold of anything with key words, especially those that discussed 88%, we would all be in a lot of trouble and we would lose everything."

## Business Activities Prohibited by the Temporary Restraining Order

The TRO directs that any material fact about the defendants' products including TBX-FREE, Eupepsia Thin, or Prolongz may not be misrepresented, expressly or by implication including, but not limited to, claims that:

- TBX-FREE is an effective smoking cessation product is more effective than either nicotine patches or nicotine gum;

Page 4 of 12

16

- Eupepsia Thin is an effective appetite suppressant and weight loss aid and starts working in less than 20 seconds and suppresses a user's appetite within minutes; and
- Prolongz treats or prevents premature ejaculation.

The Receiver viewed numerous products displayed in several areas of the main office, Suite 100, including samples of TBX-FREE, Eupepsia, and Prolongz. The Receiver also studied a six-panel color foldout Product Catalog displaying and describing these three products. The Catalog and the product cartons have text with the prohibited claims, including… "allows smokers to stop smoking once and for all…has an 88% cure compared to the patch and gum combined; …creating the sensation of feeling full almost instantly, suppressing your appetite…easy weight loss; …homeopathic drug, which helps in the prevention of Premature Ejaculation (PE)."

Scripts posted near the desks of telephone receptionists contained similar wording to use when discussing products with in-bound callers.

## Certain Duties and Authorities of the Receiver

Included in the Court's directions to the Receiver is the Order to "Suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably." The Receiver has considered facts and issues related to each prong of this directive.

The Receiver has concluded business operations of the Receivership Entities cannot be continued lawfully. As described above, the existing products and advertising materials contain text with claims that are prohibited by the TRO.

The Receiver has concluded business operations of the Receivership Entities cannot be continued profitably. Financial information below fully describes the hopelessly insolvent financial condition and operation of the Receivership Entities. In addition to negative cash balances of about $114,000, there are approximately $5.0 million in current liabilities. Mr. Cardiff stated all liabilities are delinquent and several cash advance loans are in litigation or subject to judgment. The audited financial statements for 2015 and 2016 from Redwood's independent auditor show accumulated losses of about $9.9 million as of December 31, 2016. Redwood's financial records, which appear to be incomplete and not fully current, show additional net losses from January 1, 2017 through October 12, 2018 of approximately $1.99 million, indicating accumulated losses could now total about $11.9 million. Documents on site indicate the premises rent is substantially delinquent. The Receiver has determined there could be potential payroll tax liability claims from the Internal Revenue Service because of improperly classifying employees as independent contractors.

Page 5 of 12

## Financial Information

Based on the Receiver's preliminary review and analysis of the account details recorded under Redwood's QuickBooks accounting file, the creditability of Redwoods accounting records are in doubt. Redwood's bank accounts did not appear to be properly and periodically reconciled through the current time period, and many of the accounting records appear to be outdated or transactions appear not to be properly recorded.

Advanced Men's Institute Prolongz LLC (AMI) was organized in January 2014 in California and began selling its products in February 2014. In November 2014, AMI changed its name to Redwood Scientific Technologies LLC. Immediately after the name change, Redwood Scientific Technologies LLC converted from a limited liability company into a California corporation and became Redwood Scientific Technologies Inc. (Redwood California) in January 2015.

Redwood Scientific Technologies Inc. was also incorporated in the state of Nevada on December 17, 2014 (Redwood Nevada). In January 2015, a Share Exchange Agreement was entered into between Redwood California and Jason Cardiff, the shareholder and Chief Executive Officer of Redwood California, in which Mr. Cardiff transferred 100% of Redwood California he owned to Redwood Nevada and Redwood California became a wholly owned subsidiary of Redwood Nevada.

The Receiver obtained the online access to the Receivership Entities' QuickBooks accounting from Mr. Cardiff. The QuickBooks accounting file is in the name of Redwood Scientific Technologies Inc., which appears to be the accounting records for Redwood California and Redwood Nevada (collectively referred as Redwood). The QuickBooks accounting file for Redwood is stored on the QuickBooks online website.

Redwood's QuickBooks accounting file contains multiple bank accounts, which are in the name of affiliated entities and subsidiaries other than Redwood, including but not limited to, Advanced Men's Institute Prolongz LLC (shown as "AMI"), American Nutra Partners LLC (shown as "AM Nutra Partner" or "AM Nutra P LLC"), Expo Supplements, LLC (shown as "Expo Supplements"), Nature's Future LLC (shown as "Nature's Fut LLC") Owl Enterprises, LLC (shown as "OWL"), Top Hill Shop, Ltd (shown as "Top Hill Shop"), Smoke Stop, LLC (shown as "Smoke Shop"), TV Sales LLC, and Intel Property, LLC (shown as "Checking_70"). In addition to the affiliated entities and subsidiaries above, the Receiver also discovered a binder in Mr. Cardiff's office, which contain many corporate documents along with a list of entity names (Exhibit 3), which appear to be affiliated entities of the Receivership Entities. These demonstrate that the Receivership Entities have created a complex web of affiliated entities and subsidiaries in order to open many credit card merchant processing accounts to receive revenue from consumers or to hold the assets for the Receivership Entities.

Page 6 of 12

18

The financial statements generated from Redwood's QuickBooks accounting file, including profit and loss and balance sheet by year are under Exhibit 4 and 5.

According to Redwood's QuickBooks accounting records, the Receivership Entities generated approximately $19.6 million in gross sales from January 1, 2015 through October 12, 2018, and the refunds and chargebacks were approximately $1.38 million during the same period. The net sales revenue was approximately $18.2 million from January 1, 2015 through October 12, 2018.

The Receivership Entities' books and records show their operations have suffered significant losses since the inception of operations. All of the sales revenue was spent to cover the cost of goods sold and expenses. Cost of goods sold was approximately $3.2 million from its inception to October 12, 2018. The most significant expenses on the books were media expenses (approximately $10.2 million), advertising expenses (approximately $2.8 million) and payroll and wages (approximately $3.2 million, including payroll taxes), which totaled nearly $16 million or 77% of the total expenses. The total net losses from its inception through October 12, 2018 were approximately $6.4 million.

Redwood's balance sheet shows approximately $2.5 million in total assets as of October 12. 2018, which primarily consists of the account receivables ("AR Limelight") of $1.2 million and inter-company receivables ("Intercompany Runway") of $921,104.54. The Receiver reviewed the account details, which reflect that the last transaction for account receivables was dated July 11, 2018 and the last transaction for inter-company receivables was dated January 17, 2018, both of which appear to be outdated and not properly reconciled. Lime Light CRM, Inc. (Lime Light) is the former Customer Relationship Management System (CRM) service provider for the Receivership Entities, and the Receiver served Lime Light with the TRO and obtained the CRM data for the Receivership Entities for further assessment as discussed below.

Redwood's balance sheet shows a negative balance of $113,724.58 in cash and bank account balances as of October 12, 2018. The Receiver served the TRO on all known financial institutions and merchant processors that were used by the Receivership Entities, which is discussed in more detail below.

In addition, Redwood's balance sheet shows approximately $5.1 million in common stock, which include the capital contributions raised from the public and received from outside investors. The Receiver found a 2014 independent auditor's report, which indicates that, in 2015, Redwood Nevada began a public placement offering for a maximum of 2,222,222 units at a purchase price of $2.25 per unit. Each unit consists of one share of Redwood Nevada's common stock, par value of $0.01 per share, and a warrant to purchase the number of shares of common stock as is equal to 50% of the number of shares of common stock underlying the investor's unit at an exercise price of $2.75 per share. The Receiver also discovered a copy of the subscription escrow agreement pertaining to this public placement offering, which is under Exhibit 6.

Page 7 of 12

19

Redwood's books and records show that all of the capital contributions received from investors were spent. As of October 12, 2018 the books also reflect total liabilities of approximately $5 million.

As noted above, based on the Receiver's preliminary review and analysis of the account details recorded under Redwood's QuickBooks accounting file, the creditability of Redwoods accounting records are in doubt. Redwood's bank accounts did not appear to be properly and periodically reconciled through the current time period, and many of the accounting records appear to be outdated or transactions appear not to be properly recorded. For example, the Receiver discovered in Mr. Cardiff's office a document regarding a recent disbursement authorization dated July 18, 2018 (Exhibit 7) for the funding of $725,000, including $362,250 to Redwood, $2,750 to Legal & Compliance LLC, $35,000 to Auctus Fund Management LLC, and $325,000 to Auctus Fund LLC. According to this authorization, Redwood authorized Auctus Fund LLC to initiate debit and credit entries to Redwood's accounts at Zions Bank. The Receiver reviewed Redwood's QuickBooks accounting records and was unable to locate or reconcile the recording pertaining to these transactions, other than a deposit of $223,250 received on May 5, 2018, which was recorded as short-term loan -- Legal and Compliance LLC but still remained as an unpaid liability on Redwood's books as of October 12, 2018. It is unclear to the Receiver whether or not and to which account Redwood has received $362,250 or has made any payments to Auctus Fund Management LLC or Auctus Fund LLC pursuant to this authorization.

In addition, on October 22, 2018 the Receiver obtained audited financial statements for 2015 and 2016 from Redwood's Independent Auditor, EKS&H LLP. The 2016 audited balance sheet shows accumulated losses of about $9.9 million as of December 31, 2016 (Exhibit 8), which is significantly different from $5.6[3] million shown on Redwood's QuickBooks accounting records (Exhibit 5). The audited profit and loss statements show net losses for 2015 and 2016 of about $5.7 million and $4.2 million, respectively (Exhibit 9). However, Redwood's profit and loss statements generated from its QuickBooks accounting file at Exhibit 4 show the net losses for 2015 and 2016 were approximately $3.3 million and $1 million, respectively.

## Customer Relationship Management (CRM)

The Receivership Entities maintained consumer data on CRM hosted by Lime Light. Apparently, Lime Light terminated the relationship with the Receivership Entities in June 2018.

---

[3] This includes $4,589,074.18 in retained earnings as of December 31, 2016 and 2016 net loss of $1,014,432.08 shown in Exhibit 4.

Page 8 of 12

20

The Receiver served the TRO on Lime Light and obtained the CRM data of the Receivership Entities directly from Lime Light. According to the CRM data, the product sales and sale orders were recorded from February 7, 2014 to June 15, 2018. The Receiver reviewed, compared and analyzed the sales in the CRM data and the sales recorded on the books as shown below.

| Based on Redwood's QuickBooks | 2015 | 2016 | 2017 | 1/1/2018~ 6/15/2018 | TOTAL |
|---|---|---|---|---|---|
| Sales | $ 4,578,794.44 | $ 5,400,000.72 | $ 297,000.81 | $ 25,500.00 | $ 10,301,295.97 |
| Sales Limelight | - | - | 6,892,212.81 | 959,694.47 | 7,851,907.28 |
| Sales Retail | - | 73,626.60 | 1,154,725.15 | 101,199.85 | 1,329,551.60 |
| Total Sales Per Books <A> | $ 4,578,794.44 | $ 5,473,627.32 | $ 8,343,938.77 | $ 1,086,394.32 | $ 19,482,754.85 |

| Per CRM Data | 2015 | 2016 | 2017 | 1/1/2018~ 6/15/2018 | TOTAL |
|---|---|---|---|---|---|
| Approved & Shipped Sales <B> | $ 4,495,822.52 | $ 5,274,316.61 | $ 6,154,233.33 | $ 977,714.71 | $ 16,902,087.17 |
| Variances <A> - <B> | $ 82,971.92 | $ 199,310.71 | $ 2,189,705.44 | $ 108,679.61 | $ 2,580,667.68 |

Other than some timing differences, the most significant variance was likely related to retail sales, which was recorded under "Sales Retail" account.

The Receiver reviewed the sales details on the books, and it shows that Redwood recorded the sales (under "Sales-Limelight" or "Sales" and "Account Receivable" on the books) based on CRM data on a monthly basis. Starting from 2017, they also separately recorded the retail sales (under "Sales Retail" and "AR-limelight" on the books) other than the sales. It is unclear to the Receiver if Redwood did not properly reconcile the retail sales or whether there was an overstatement of these retail sales because the books still show approximately $1.2 million in "AR-Limelight" outstanding and not collected to date (Exhibit 5).

## PUFC

PUFC was registered as a non-profit entity with the State of California on May 21, 2013. Ms. Walker told the Receiver that early in its existence, PUFC would raise money and make donations to one of the outside Board Member's charity, St. Vincent Church. When those donations ceased, the outside Board Member resigned. Ms. Walker was not aware of any other charitable donations made by PUFC because "there was never enough money in the bank." Ms. Walker stated that Mr. Cardiff obtained his solicitation mailing lists from his former father-in-law, Peter Popoff. According to information on the Internet Mr. Popoff is a televangelist who has been accused for at least the past 30 years of making deceptive or

Page 9 of 12

21

fraudulent claims to heal sickness and promoting products such as "blessed water" and "holy sand" to potential susceptible and vulnerable viewers. The information also reports that Mr. Popoff, referring to himself as a Prophet, promised "fabulous extreme fortune" and "miracles" in exchange for donations to his organization. After a donation, multiple solicitation letters follow, requesting more donations in exchange for miracles.

Ms. Walker stated that Mr. Cardiff produced and completed three mailings each month in sets of about 76,000, 24,000, and 8,000 to consumers listed in a mailing data base. The three sets totaled about 108,000 letters. The second and third mailing sets were smaller and were directed to selected portions of the first mailing group.

The Receiver located multiple copies of a computer-generated mass-produced letter that Mr. Cardiff fashioned as a personal note to the target individuals addressed. The four-page letter came from an unidentified "Master Prophet" and included within the letter the name and address, including address barcode, of an individual the Master Prophet appeared to be on a first name basis. Further attempts to personalize the letter are in the form of faux hand written notations, check marks, underscores, asterisks, circles and encouragement to read on, in green ink. There is also an extensive use of bold type. The letter is overflowing with religious terminology, promises from God, divination of future events and assurances of money to come to the target individuals.

Text contained in letters include the following:

**The powerful events I witnessed in the spirit realm (that) reveal that your upcoming future is altogether ASTOUNDING.**

**Realize one thing: God would never direct me to write you like this if He wasn't ALREADY TAKING MEASURES TO BLESS YOU!**

**I tried to make sure that you had this MIRACULOUS ANOINTED OIL in your hands…Steps one through three involve putting the miraculous anointed oil on painful areas of the body. Step four involves putting the miraculous anointed oil on a cell phone and mailbox to facilitate the notification and receipt of money "a LARGE SUM OF MONEY sooner than you think."**

Following the promises is a strong request, almost a directive, to send a donation of $40 to $250 to "see God move with your prayer needs."

Attached at Exhibit 10 is one of several letters with similar characteristics designed to solicit donations.

Page **10** of **12**

The Receiver downloaded a database that purportedly contains consumer information for funds generated by direct mailing campaigns in 2018. The dates in the database begin on June 15, 2018 and end on October 12, 2018. During this time period there were 4,823 donations totaling approximately $163,000 or about an average of $40,750 per month.

The Receiver also found a copy of PUFC's QuickBooks file in the Receivership Entities' Google Suites. The Receiver reviewed PUFC's QuickBooks records (Exhibit 11), which only recorded the transactions from December 2017 to April 2018, and the total income and expenses for the same period were approximately $14,300 and $52,700, respectively. According to Ms. Walker, PUFC's QuickBooks accounting only recorded the transactions for vendor payments, and they did not record all the income received from donations.

Although the Receiver does not have sufficient information about the donation income that PUFC has collected since its inception, the personal financial information submitted by Mr. Cardiff and his wife shows that they received $2,010,000 of income from their employment from 2014 to 2018, including $1,525,000 from PUFC and $485,0000 from Redwood.

## Bank and Credit Card Merchant Processing Accounts

The Receiver has located and frozen numerous accounts in financial institutions and with credit card merchant processors. Currently, $312,942.09 is frozen in accounts with financial institutions and $248,789.07[4] is frozen in accounts with credit card merchant processors. Several financial institutions have not yet confirmed accounts subject to the TRO.

## Violations of the TRO

The Receiver filed its affidavit on non-compliance with the TRO on October 22, 2018. On October 24, 2018 this Court ordered the Cardiffs to return $8,715 to the Receiver by October 25, 2018. To date, the Cardiffs have not returned any funds to the Receiver, nor have they contacted the Receiver about returning funds.

On October 17, 2018 the Receiver was informed that a female picked up the mail at the post office box in La Verne (Exhibit 1).

On October 18, 2018 the Receiver went to the post office and showed employees pictures on Eunjung Cardiff. One employee tentatively identified Ms. Cardiff as the individual who picked up the mail the previous day. That same day, the Receiver picked up 323 envelopes that contained $5,170.72 in cash, checks, and money orders. Since the initial recovery of mail, the

---

[4] This amount may be reduced due to future credit card chargebacks initiated by consumers.

Page **11** of 12

23

Receiver has taken possession of an additional 1,484 envelopes than contained $20,831.02 in cash, checks and money orders.

The Receiver is continuing its investigation to determine who picked up the mail in violation of the TRO.

Respectfully submitted,

/s/

Robb Evans & Associates LLC
Receiver

# EXHIBIT 18

**CARDIFF MOTION
TO SUPPRESS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**Federal Trade Commission**,

    Plaintiff,

    v.

**Jason Cardiff**, et al.,

    Defendants.

No. ED CV 18-2104-DMG (PLAx)

FINAL JUDGMENT INCLUDING PERMANENT INJUNCTION AS TO DEFENDANTS JASON CARDIFF AND EUNJUNG CARDIFF

On October 3, 2018, Plaintiff, the Federal Trade Commission ("FTC" or the "Commission"), filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401-8405, and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. § 6105, and moved, pursuant to Fed. R. Civ. P. 65(b), for a temporary restraining

order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants Jason Cardiff, Eunjung Cardiff, a/k/a Eunjung Lee, a/k/a Eunjung No, Danielle Cadiz, a/k/a Danielle Walker, Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership.  [Doc. # 1.]

This Court entered a temporary restraining order ("TRO") on October 10, 2018.  [Doc. # 29.]  On October 24, 2018, the Court extended the TRO as to Defendants Jason Cardiff and Eunjung Cardiff ("the Cardiffs").  [Doc. # 48.]  On November 8, 2018, the Court entered a Preliminary Injunction as to Defendants Jason Cardiff and Eunjung Cardiff.  [Doc. # 59.]

On August 6, 2020, the Commission moved for summary judgment as to Defendants Jason Cardiff and Eunjung Cardiff on all counts of the Complaint. [Doc. # 423.]  On October 9, 2020, the Court granted summary judgment against the Cardiffs on all sixteen counts in the Commission's Complaint.  [Doc. # 511.] The Commission filed a proposed Final Judgment on September 3, 2021.  [Doc. # 651.]

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

1.    This Court has jurisdiction over this matter and over the Cardiffs and venue in this district is proper under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d).

2.    At all relevant times, the Cardiffs' activities as alleged in the Commission's Complaint were in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

3.    The Complaint charged that Defendants, including Jason Cardiff and Eunjung Cardiff, participated in deceptive and unfair acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, Section 4 of

ROSCA, 15 U.S.C. § 8403, Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), Section 1005.10(b) of EFTA's implementing Regulation E, 12 C.F.R. § 1005.10(b), and Section 310.4(b)(1)(v) of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(b)(1)(v), in the marketing of Defendants' oral film strips and the Rengalife multilevel marketing program. The Complaint sought both permanent injunctive relief and equitable monetary relief for the challenged acts or practices.

4.    The Complaint stated a claim upon which relief can be granted against the Cardiffs.

5.    The Cardiffs violated Sections 5(a) and 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45(a) and 52, by making:

a.    False or unsubstantiated efficacy clams and false proof claims for their oral film strips TBX-FREE, Eupepsia Thin, and Prolongz;

b.    False money-back guarantee claims for those oral film strips;

c.    False claims that Eupepsia Thin oral film strips were made in the United States, and that testimonialists appearing in advertising for Eupepsia Thin had used the product to lose weight; and

d.    False claims that consumers would not be enrolled in an autoship program and that their credit or debit card would be charged only for a one-time purchase of oral film strips.

6.    The Cardiffs violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by:

a.    Failing to disclose, or disclose adequately, that consumers who provided their billing information for a product order would be enrolled automatically in a continuity plan for future

autoshipments of oral film strips that would be charged to their credit or debit cards; and

    b.    Making false and unsubstantiated claims that people who became Rengalife members were likely to earn substantial income.

7.    The Cardiffs violated Sections 5(a) and 5(n) of the FTC Act, 15 U.S.C. §§ 45(a), 45(n), by causing charges to be submitted for payment to consumers' credit and debit cards without the express informed consent of those consumers.

8.    The Cardiffs violated Section 4 of ROSCA, 15 U.S.C. § 8403, by charging consumers for TBX-FREE oral film strips sold over the Internet through a negative option feature as defined in the TSR, 16 C.F.R. §3102(w) without:  (a) clearly and conspicuously disclosing all material terms of the transaction before obtaining the consumer's billing information; (b) obtaining the consumer's express informed consent before making the charge; and (c) providing a simple mechanism to stop recurring charges.

9.    The Cardiffs violated Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), by debiting consumers' bank accounts without first obtaining written authorizations signed or similarly authorized by those consumers for preauthorized electronic fund transfers from their accounts, or providing those consumers a copy of a written authorization signed or similarly authenticated by them.

10.    The Cardiffs violated the TSR by initiating or causing the initiation of outbound telephone calls that delivered prerecorded messages intended to induce the purchase of oral film strips.

11.    The Cardiffs operated the Corporate Defendants as a common enterprise, and the Corporate Defendants were "all involved in the sale of the Products [with] money, products, and employees flow[ing] freely between them." Summary Judgment Order at 20-21 [Doc. # 511].  The Cardiffs were the

4

"beneficiaries and masterminds" of the common enterprise, and "had knowledge of the misrepresentations in advertising or were recklessly indifferent to the falsity of the misrepresentations." *Id*.

12.     At all times material to the Complaint, both Jason Cardiff and Eunjung Cardiff formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in Findings 5 to 11, above, and both of them are therefore liable for injunctive relief.

13.     At all times material to the Complaint, both Jason Cardiff and Eunjung Cardiff knew of or were recklessly indifferent to the acts and practices set forth in Findings 5 to 11, above.

14.     The danger of future violations by Jason Cardiff and Eunjung Cardiff justifies the issuance of permanent injunctive relief, including banning them from engaging in certain activities.

15.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to issue injunctive relief for the Defendants' law violations.  Section 19 of the FTC Act, § 57b, empowers the Court to grant such relief as it finds necessary to redress injury to consumers from the Defendants' violations of ROSCA and the TSR, including rescission or reformation of contracts and refund of money.

16.     This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

17.     Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Order are binding upon Jason Cardiff and Eunjung Cardiff, their successors and assigns, and their officers, agents, employees and attorneys, and upon those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

18.     Entry of this Order is in the public interest, and there being no just reason for delay, the Clerk is directed to enter judgment in favor of Plaintiff Federal Trade Commission immediately.

**THEREFORE, IT IS ORDERED** as follows:

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.      "**Acquirer**" or "**Acquiring Bank**" means a business organization, Financial Institution, or an agent of a business organization or Financial Institution that has authority from an organization that operates or licenses a credit card system (e.g., Visa, MasterCard, American Express or Discover) to authorize Merchants to accept, transmit, or process payment by credit card through the credit card system for money, products, or anything else of value.

B.      "**Billing Information**" means any data that enables any person to access a consumer's account, such as a credit card, debit card, checking, savings, share or similar account, utility bill, or mortgage loan account.

C.      "**Business Venture**" means any written or oral business arrangement, however denominated, whether or not covered by 16 C.F.R. Part 437, that consists of the payment of any consideration for the right or means to offer, sell, or distribute Goods or Services.  The definition of Business Venture includes multilevel marketing programs.

D.      "**Charge(s),**" "**Charged,**" or "**Charging**" means any attempt to collect money or other consideration from a consumer, including, but not limited to, causing Billing Information to be submitted for payment, including against the consumer's credit card, debit card, bank account, telephone bill, or other account.

E.      "**Clear(ly) and conspicuous(ly)**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

        1.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television

6

advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4. In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5. The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

F.    "**Covered Product**" means any Dietary Supplement, Food, Drug, or Device.

G.      "**Credit Card Laundering**" means: (a) presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; (b) employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or deposit into the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; or (c) obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system.

H.      "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

I.      "**Corporate Defendant(s)**" means Redwood Scientific Technologies, Inc. (CA); Redwood Scientific Technologies, Inc. (NV); Redwood Scientific Technologies, Inc. (DE); Identify, LLC; Advanced Men's Institute Prolongz LLC; Run Away Product, LLC; and Carols Place Limited Partnership, individually, collectively, or in any combination.

J.      "**Defendant(s)**" means all of the named Defendants, individually, collectively, or in any combination.

K.      "**Device**" means an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is (1) recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them; (2) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in humans or other animals; or (3) intended to affect the structure or any function of the body of humans or other

8

animals; and which does not achieve any of its principal intended purposes through chemical action within or on the body of humans or other animals and which is not dependent upon being metabolized for the achievement of any of its principal intended purposes.

L.     "**Dietary Supplement**" means:  (1) any product labeled as a Dietary Supplement or otherwise represented as a Dietary Supplement; or (2) any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional Food or as a sole item of a meal or the diet.

M.     "**Drug**" means:  (1) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other than food) intended to affect the structure or any function of the body of humans or other animals; and (4) articles intended for use as a component of any article specified in (1), (2), or (3); but does not include devices or their components, parts, or accessories.

N.     "**Essentially Equivalent Product**" means a product that contains the identical ingredients, except for inactive ingredients (e.g., binders, colors, fillers, excipients) in the same form and dosage, and with the same route of administration (e.g., orally, sublingually), as the Covered Product; *provided that* the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of

9

additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

O.    "**Financial Institution**" means any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. § 1843(k)). An institution that is significantly engaged in financial activities is a Financial Institution.

P.    "**Food**" means:  (1) any article used for food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

Q.    "**Good(s) or Service(s)**" includes merchandise, products, plans, or programs.

R.    "**Investment Opportunity**" means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

S.    "**Made in the United States**" means any representation, express or implied, that a product, or a specified component thereof, is of U.S.-origin, including a representation that such product is "made," "manufactured," "built," or "produced" in the United States or in America, or any other U.S.-origin claim.

T.    "**Merchant**" means (a) any person or entity engaged in the sale or marketing of any goods or services, or soliciting a charitable contribution, or (b) any person or entity who applies for or obtains Payment Processing services.

U.    "**Merchant Account**" means any account with an Acquiring Bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind.

V.    "**Negative Option Feature**" means, in an offer or agreement to sell or provide any Good or Service, a provision under which the consumer's silence or

failure to take affirmative action to reject a Good or Service, or to cancel the agreement, is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

W.    "**Payment Processing**" means providing a person or entity, directly or indirectly, with the means used to charge or debit accounts through the use of any payment method or mechanism, including, but not limited to, remotely created payment orders, remotely created checks, ACH debits, or debit, credit, prepaid, or stored value cards. Whether accomplished through the use of software or otherwise, Payment Processing includes, among other things: (a) reviewing and approving Merchant applications for payment processing services; (b) providing the means to transmit sales transactions data from Merchants to Acquiring Banks or other Financial Institutions; (c) clearing, settling, or distributing proceeds of sales transactions from Acquiring Banks or Financial Institutions to Merchants; or (d) processing chargebacks or returned remotely created payment orders, remotely created checks, or ACH checks.

X.    "**Person**" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

Y.    "**Preauthorized Electronic Fund Transfer**" means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

Z.    "**Receiver**" means Robb Evans & Associates, LLC.

## ORDER

### I.    BAN ON NEGATIVE OPTION SALES

**IT IS ORDERED** that Jason Cardiff and Eunjung Cardiff, whether acting directly or through an intermediary, including by consulting, planning, participating, facilitating, or advising, are permanently restrained and enjoined

11

from the advertising, marketing, promotion, offering for sale, or sale of any Good or Service with a Negative Option Feature.

## II.    BAN ON ROBOCALLS AND RINGLESS VOICEMAILS

**IT IS FURTHER ORDERED** that Jason Cardiff and Eunjung Cardiff, whether acting directly or through an intermediary, including by consulting, planning, participating, facilitating, or advising, are permanently restrained and enjoined from initiating telephone calls delivering prerecorded messages, including ringless voicemails.

## III.    BAN ON MULTILEVEL MARKETING

**IT IS FURTHER ORDERED** that Jason Cardiff and Eunjung Cardiff, whether acting directly or through an intermediary, including by consulting, planning, facilitating, or advising, are permanently restrained and enjoined from engaging or participating in any multilevel marketing program.

## IV.    BAN ON THE ADVERTISING, MARKETING, PROMOTION, OFFERING FOR SALE, OR SALE OF DISSOLVABLE ORAL FILM STRIPS TO END-USER CONSUMERS

**IT IS FURTHER ORDERED** that Jason Cardiff and Eunjung Cardiff, whether acting directly or through an intermediary, including by consulting, planning, participating, facilitating, or advising, are permanently restrained and enjoined from the advertising, marketing, promotion, offering for sale, or sale of any dissolvable oral film strip to end-user consumers.

## V.    PROHIBITED REPRESENTATIONS:  HEALTH-RELATED CLAIMS REQUIRING HUMAN CLINICAL TESTING FOR SUBSTANTIATION

**IT IS FURTHER ORDERED** that Jason Cardiff, Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling,

advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation that such product:

    A.    Helps users quit smoking, including any specific representation about success rates or the ease or speed of quitting;

    B.    Causes or assists in causing weight loss, including any specific representation about the amount of weight loss;

    C.    Suppresses or helps suppress appetite;

    D.    Causes or assists in causing weight loss without dieting or any change in food or lifestyle;

    E.    Helps users avoid gaining back any weight they lost;

    F.    Increases ejaculation control or the duration of sex;

    G.    Treats or prevents premature ejaculation;

    H.    Cures, mitigates, or treats any disease; or

    I.    Is comparable or superior to other treatments for quitting smoking, weight loss, or sexual performance, or in curing, mitigating, or treating any disease,

unless the representation is non-misleading, and, at the time of making such representation, Jason Cardiff or Eunjung Cardiff possess and rely upon competent and reliable scientific evidence substantiating that the representation is true. For purposes of this Section, competent and reliable scientific evidence must consist of human clinical testing of the product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true. Such testing must be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted

13

by researchers qualified by training and experience to conduct such testing.  In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.  Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## VI.   PROHIBITED REPRESENTATIONS:  OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Jason Cardiff, Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation, other than representations covered under the Section of this Order entitled Prohibited Representations:  Health-Related Claims Requiring Human Clinical Testing For Substantiation, about the health benefits, performance, efficacy, safety, or side effects of the product, unless the representation is non-misleading, and, at the time of making such representation, Jason Cardiff or Eunjung Cardiff possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

14

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true.  In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission. Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## VII.  PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Jason Cardiff or Eunjung Cardiff rely to substantiate any claim covered by this Order, they shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including:

A.     All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B.     All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.     Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

D.     All documents referring or relating to any statistical analysis of any test data, including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.     All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's researchers.

*Provided, however*, the preceding preservation requirement does not apply to a reliably reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by: (1) Jason Cardiff or Eunjung Cardiff; (2) their officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with Jason Cardiff or Eunjung Cardiff; (4) any person or entity affiliated with or acting on behalf of Jason Cardiff or Eunjung Cardiff; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For purposes of this Section, "reliably reported test" means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

For any test conducted, controlled, or sponsored, in whole or in part, by or on behalf of, Jason Cardiff or Eunjung Cardiff, they must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants.  These procedures must

16

be documented in writing and must contain administrative, technical, and physical safeguards appropriate to the size and complexity of the entity sponsoring the test, the nature and scope of that entity's activities, and the sensitivity of the personal information collected from or about the participants.

## VIII.  PROHIBITED REPRESENTATIONS:  TESTS, STUDIES, OR OTHER RESEARCH

**IT IS FURTHER ORDERED** that Jason Cardiff, Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration:

A.    That the product is clinically proven to:

1.    Help users quit smoking, including any specific representation about success rates or the ease or speed of quitting;

2.    Cause or assist in causing weight loss, including any specific representation about the amount of weight loss;

3.    Suppress or help suppress appetite;

4.    Cause or assist in causing weight loss without dieting or any change in food or lifestyle;

5.    Help users avoid gaining back any weight they lost;

6.    Increase ejaculation control or the duration of sex;

7.    Treat or prevent premature ejaculation; or

8.    Be comparable or superior to other treatments for quitting smoking.

B.    That the performance or benefits of the product are scientifically or

17

clinically proven or otherwise established; or

C.    The existence, contents, validity, results, conclusions, or interpretations of any test, study, or other research.

## IX.    FDA-APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order prohibits Jason Cardiff, Eunjung Cardiff, their officers, agents, employees, and attorneys, or all other persons in active concert or participation with any of them from:

A.    For any Drug product, making a representation that is approved for inclusion in labeling for such Drug product under a new drug application or biologics license application approved by the Food and Drug Administration, or, for any nonprescription Drug product authorized by Section 505G of the Food, Drug, and Cosmetics Act, 21 U.S.C. § 355h,  ("FDCA") to be marketed without an approved new drug application, making a representation that is permitted or required to appear in its labeling in accordance with  Section 505G(a)(1)-(3) of the FDCA, 21 U.S.C. § 355h(a)(1)-(3), or a final administrative order under Section 505G(b) of the FDCA, 21 U.S.C. § 355h(b); and

B.    For any product, making a representation that is specifically authorized for use in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

## X.    PROHIBITED MISREPRESENTATIONS:  ENDORSEMENTS

**IT IS FURTHER ORDERED** that Jason Cardiff, Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Good or Service, are permanently restrained and enjoined from making, or assisting others

in making, any misrepresentation, expressly or by implication, (1) about the status of any endorser or person providing a review of the Good or Service, including a misrepresentation that the endorser or reviewer is an independent or ordinary user of the Good or Service, or (2) that any person or organization has endorsed any Good or Service.

## XI.    PROHIBITED MISREPRESENTATIONS:  U.S. ORIGIN CLAIMS

**IT IS FURTHER ORDERED** that Jason Cardiff, Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Good or Service, or any other product, are permanently restrained and enjoined from making, or assisting others in making, any representation, expressly or by implication, that it is Made in the United States unless:

A.    The final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and all or virtually all ingredients or components of the product are made and sourced in the United States; or

B.    A Clear and Conspicuous qualification appears immediately adjacent to the representation that accurately conveys the extent to which the product contains foreign parts, ingredients or components, and/or processing; or

C.    For a claim that a product is assembled in the United States, the product is last substantially transformed in the United States, the product's principal assembly takes place in the United States, and United States assembly operations are substantial.

## XII.    PROHIBITED REPRESENTATIONS:  EARNINGS CLAIMS

**IT IS FURTHER ORDERED** that Jason Cardiff, Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert

19

or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, or sale of any Good or Service, including Business Ventures or Investment Opportunities, are permanently restrained and enjoined from:

   A. Misrepresenting, or assisting others in misrepresenting, expressly or by implication, including through the use of any program name, endorsement, lifestyle description, depiction, or illustration, any material fact, including:

     1. That participants will or are likely to achieve substantial sales or earn substantial income or profit;

     2. The amount of sales, income, or profit that participants have actually earned;

     3. The amount of time or effort required to earn an amount of compensation or to advance; or

     4. The total costs or any material restrictions, limitations, or conditions;

   B. Making any representation, expressly or by implication, including through the use of any program name, endorsement, lifestyle description, depiction, or illustration, regarding the amount of sales, income, or profit that a participant can expect to earn, including that participants will or are likely to achieve substantial sales or earn substantial income or profit, unless the representation is non-misleading, and, at the time it is made, Jason Cardiff or Eunjung Cardiff possess and rely upon competent and reliable evidence that is sufficient to substantiate that the representation is true.

## XIII. PROHIBITED MISREPRESENTATIONS:  OTHER MATERIAL FACTS

   **IT IS FURTHER ORDERED** that Jason Cardiff, Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert

or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Good or Service are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration, any material fact concerning such Good or Service, including:

A.      The success rate or rate of customer satisfaction;

B.      The total costs;

C.      Any refund policy;

D.      Any material restrictions, limitations, or conditions, including any conditions that might limit certain consumers' ability to obtain the full benefits of the proffered Good or Service;

E.      Any material aspect of its performance, efficacy, nature, or central characteristics, including that the benefits of the proffered Good or Service can be obtained quickly or easily;

F.      Any cost to the consumer to purchase, receive, use, or return the Good or Service;

G.      That the consumer will not be Charged for any Good or Service;

H.      That a Good or Service is offered on a "free," "trial," "sample," "bonus," "gift," "no obligation," or "discounted" basis, or words of similar import, denoting or implying the absence of an obligation on the part of the recipient of the offer to affirmatively act in order to avoid Charges, including where a Charge will be assessed pursuant to the offer unless the consumer takes affirmative steps to prevent or stop such a Charge;

I.      The timing or manner of any Charge or bill;

J.      That the consumer can obtain a Good or Service for a processing, service, shipping, handling, or administrative fee with no further obligation;

K.      The purpose(s) for which the consumer's Billing Information will be used;

L.      The date by which the consumer will incur any obligation or be Charged unless the consumer takes affirmative steps to prevent or stop such a Charge;

M.      That a transaction has been authorized by the consumer; or

N.      Any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the Good or Service.

## XIV.  PROHIBITIONS CONCERNING REFUNDS

**IT IS FURTHER ORDERED** that Jason Cardiff, Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Good or Service, are permanently restrained and enjoined from failing to honor a refund, return, or cancellation request that complies with any policy to make refunds or allow returns or cancellations.

## XV.  PROHIBITIONS RELATED TO MERCHANT ACCOUNTS

**IT IS FURTHER ORDERED** that Jason Cardiff and Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.      Credit Card Laundering;

B.      Making, or assisting others in making, directly or by implication, any false or misleading statement in order to obtain Payment Processing services;

C.      Failing to disclose to an Acquiring Bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables a person to accept payments of any kind any material

22

information related to a Merchant Account including, but not limited to, the identity of any owner, manager, director, or officer of the applicant for or holder of a Merchant Account, and any connection between an owner, manager, director, or officer of the applicant for or holder of a Merchant Account and any third person who has been or is placed in a Merchant Account monitoring program, had a Merchant Account terminated by a payment processor or a Financial Institution, or has been fined or otherwise disciplined in connection with a Merchant Account by a payment processor or a Financial Institution; and

D.       Engaging in any tactics to avoid fraud-and-risk-monitoring programs established by any Financial Institution, Acquiring Bank, or the operators of any payment system, including, but not limited to, tactics such as balancing or distributing sales transactions among multiple Merchant Accounts or merchant billing descriptors; splitting a single sales transaction into multiple smaller transactions; or using a shell company to apply for a Merchant Account.

## XVI.  PROHIBITION AGAINST UNAUTHORIZED CHARGES

**IT IS FURTHER ORDERED** that Jason Cardiff, Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, promotion, offering for sale, or sale of any Good or Service, are permanently restrained and enjoined from Charging, causing to be Charged, assisting others in Charging, or attempting to Charge any consumer, without obtaining the consumer's express informed consent to the Charge and having created and maintained a record of such consent.

## XVII. PROHIBITION AGAINST DEBITING CONSUMERS' BANK ACCOUNTS WITHOUT AUTHORIZATION

**IT IS FURTHER ORDERED** that Jason Cardiff, Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether

acting directly or indirectly, in connection with the sale of any Good or Service, are permanently restrained and enjoined from:

A.    Failing to timely obtain written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account before initiating any Preauthorized Electronic Fund Transfer; and

B.    Failing to provide to the consumer a copy of a valid written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account.

## XVIII.    CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that:

A.    Jason Cardiff, Eunjung Cardiff, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

1.    Disclosing, using, or benefitting from, or assisting others in disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Corporate Defendants obtained prior to entry of this Order in connection with the advertising, promotion, offering for sale, or sale of Defendants' oral film strips or Rengalife; and

2.    Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after entry of this Order.

24

> *Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

B.    Upon termination of the receivership, the Receiver shall not return any customer information to the Defendants.

## XIX.  ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Jason Cardiff and Eunjung Cardiff obtain acknowledgments of receipt of this Order:

A.    Jason Cardiff and Eunjung Cardiff, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.    For 20 years after entry of this Order, Jason Cardiff and Eunjung Cardiff for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, must deliver a copy of this Order  to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.    From each individual or entity to which Jason Cardiff or Eunjung Cardiff delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XX.  COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Jason Cardiff and Eunjung Cardiff make timely submissions to the Commission:

A.    One year after entry of this Order, Jason Cardiff and Eunjung Cardiff must each submit a compliance report, sworn under penalty of perjury.  Each of them must:

1.    Identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences;

2.    Identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest;

3.    Describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership;

4.    Identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant;

5.    Identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

6.    Describe the activities of each business, including the Goods or Services offered, the means of manufacturing, labeling, advertising, promotion, offering for sale, sale or distribution, and the involvement of any other Defendant (which Jason Cardiff and Eunjung Cardiff must describe if they know or should know due to their own involvement);

7.    Describe in detail whether and how that Defendant is in compliance with each Section of this Order; and

8.    Provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.    For 20 years after entry of this Order, Jason Cardiff and Eunjung Cardiff must each submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

26

1.    Name, including aliases or fictitious name, or residence address;

2.    Title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity;

3.    Any designated point of contact; or

4.    The structure of any entity that such Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.    Jason Cardiff and Eunjung Cardiff must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.    Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  FTC v. Jason Cardiff, et al., X190001.

## XXI.  RECORDKEEPING

**IT IS FURTHER ORDERED** that Jason Cardiff and Eunjung Cardiff must create certain records for 20 years after entry of the Order, and retain each such record for 5 years.  Specifically, Jason Cardiff and Eunjung Cardiff, for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.    Accounting records showing the revenues from all Goods or Services sold;

B.    Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    Records of all consumer complaints and refund requests concerning the subject matter of this Order, whether received directly or indirectly, such as through a third party, and any response;

D.    All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.    A copy of each unique advertisement or other marketing material.

## XXII. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Jason Cardiff and Eunjung Cardiff's compliance with this Order:

A.    Within 14 days of receipt of a written request from a representative of the Commission, Jason Cardiff and Eunjung Cardiff each must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of

Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the Commission is authorized to communicate directly with Jason Cardiff and Eunjung Cardiff.  Jason Cardiff and Eunjung Cardiff must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.    The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.    Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Jason Cardiff and Eunjung Cardiff, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XXIII.   EXPIRATION OF PRELIMINARY INJUNCTION PROVISIONS

A.    Upon entry of this Order, the provisions of the Preliminary Injunction [Doc. # 59], including the asset freeze and receivership, shall expire, except to the extent provided in the Court's February 28, 2022 Order regarding discharge of the Receiver [Doc. # 702].  Upon the Receiver's completion of the tasks described in paragraphs 5 through 11 of that Order, and the Court's approval of the Receiver's final report, the Receiver will be discharged for all purposes.

## XXIV.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this 1ˢᵗ day of March, 2022.**

_____
**DOLLY M. GEE**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT 19

**CARDIFF MOTION**

**TO SUPPRESS**



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Federal Trade Commission**, | No. ED CV 18-2104-DMG (PLAx) |
| Plaintiff, | DEFAULT JUDGMENT INCLUDING PERMANENT INJUNCTION AS TO REDWOOD SCIENTIFIC |
| v. | TECHNOLOGIES, INC. (CA), REDWOOD SCIENTIFIC TECHNOLOGIES, INC. |
| **Jason Cardiff, et al.**, | (NV) REDWOOD SCIENTIFIC |
| Defendants. | TECHNOLOGIES, INC. (DE), IDENTIFY, LLC, ADVANCED MEN'S INSTITUTE PROLONGZ LLC, RUN AWAY PRODUCTS, LLC, AND CAROLS PLACE LIMITED PARTNERSHIP |

On October 3, 2018, Plaintiff, the Federal Trade Commission ("FTC" or "the Commission"), filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §53(b), the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401-8405, and the Electronic Fund Transfer Act

-1-

("EFTA"), 15 U.S.C. §§ 1693-1693r, and Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. § 6105 and moved, pursuant to Fed. R. Civ. P. 65(b), for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants Jason Cardiff, Eunjung Cardiff, a/k/a Eunjung Lee, a/k/a Eunjung No, Danielle Cadiz, a/k/a Danielle Walker, and corporate defendants, Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership ("Corporate Defendants").  [Doc. # 1.]

This Court entered a temporary restraining order ("TRO") on October 10, 2018.  [Doc. # 29.]  On October 24, 2018, the Court entered a Preliminary Injunction with an asset freeze and appointed a receiver over the Corporate Defendants.  [Doc. # 46.]

On March 5, 2019, the Commission filed an Application for the Clerk to Enter Defaults Against the Corporate Defendants Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  [Doc. ## 89, 89-1.]  The Clerk entered default against the seven Corporate Defendants between March 5, 2019 and March 7, 2019.  [Doc. ## 91, 92, 96.]

On August 6, 2020, the Commission moved for entry of default judgments against all seven Corporate Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55-1.  [Doc. # 422.]  The Commission filed its Proposed Default Judgment on September 3, 2021.  [Doc. # 651.]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.    This action was initiated by the FTC under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Section 5 of ROSCA, 15 U.S.C. § 8404, Section 918(c) of EFTA, 15 U.S.C. § 1693o(c), and Section 6 of the Telemarketing Act, 15 U.S.C. §

6105.  The Commission's Complaint sought both permanent injunctive relief and equitable monetary relief for the acts and practices as alleged therein.

2.    The Court has jurisdiction over this matter and over the Corporate Defendants and venue in this district is proper under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d).

3.    The Corporate Defendants' activities as alleged in the Commission's Complaint were in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4.    The Commission's Complaint stated a claim upon which relief can be granted against the Corporate Defendants.

5.    The Corporate Defendants had proper notice of this lawsuit. They never filed an answer to the Complaint.

6.    The allegations in the Commission's Complaint are taken as true against the Corporate Defendants.

7.    Those allegations and evidence supporting them established that between 2013 and October 12, 2018, the Corporate Defendants violated:

a.    Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, which prohibit unfair and deceptive acts or practices in or affecting commerce;

b.    Section 4 of ROSCA, 15 U.S.C. § 8403, which prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the Commission's Telemarketing Sales Rule, 16 C.F.R. § 310.2(w), unless the seller:  (a) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; (b) obtains the consumer's express informed consent before making the

-3-

charge; and (c) provides a simple mechanism to stop recurring charges;

c.    Section 907(a) of EFTA, 15 U.S.C. § 1693e(a) and Section 1005.10(b) of EFTA's implementing Regulation E, 12 C.F.R. § 1005.10, which provides that a preauthorized electronic fund transfer (which is elsewhere defined as an electronic fund transfer authorized in advance to recur at substantially regular intervals) from a consumer's account may be authorized by the consumer only in a writing signed or similarly authenticated by the consumer, and require that a copy of such authorization shall be provided to the consumer when made; and

d.    Section 310.4(b)(1)(v) of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(b)(1)(v).

8.    Jason Cardiff and Eunjung Cardiff operated the Corporate Defendants as a common enterprise.  The Corporate Defendants "constitute[d] various iterations and shells of one another" and the Cardiffs and the Corporate Defendants were "all involved in the sale of the Products and . . . money, products, and employees flowed freely between them."  Summary Judgment Order at 20 [Doc. # 511.]

9.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to issue injunctive relief against violations of the FTC Act.  Section 19 of the FTC Act, § 57b, empowers the Court to grant such relief as it finds necessary to redress injury to consumers from the Defendants' violations of ROSCA and the TSR, including rescission or reformation of contracts and refund of money.

10.    The danger of future violations by the Corporate Defendants justifies the issuance of permanent injunctive relief, including banning them from engaging in certain activities.

-4-

11.     This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

12.     Pursuant to Federal Rule of Civil Procedure 65(d), this Order is binding upon the Corporate Defendants, their officers, agents, servants, employees, attorneys, wholly-owned subsidiaries, successors and assigns, and upon those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

13.     Entry of this Order is in the public interest, and there being no just reason or delay, the Clerk is directed to enter judgment in favor of Plaintiff Federal Trade Commission immediately.

**THEREFORE, IT IS ORDERED** as follows:

<div align="center">

**DEFINITIONS**

</div>

For the purpose of this Order, the following definitions shall apply:

A.     "**Acquirer**" or "**Acquiring Bank**" means a business organization, Financial Institution, or an agent of a business organization or Financial Institution that has authority from an organization that operates or licenses a credit card system (e.g., Visa, MasterCard, American Express or Discover) to authorize Merchants to accept, transmit, or process payment by credit card through the credit card system for money, products, or anything else of value.

B.     "**Billing Information**" means any data that enables any person to access a consumer's account, such as a credit card, checking, savings, share or similar account, utility bill, or mortgage loan account, or debit card.

C.     "**Business Venture**" means any written or oral business arrangement, however denominated, whether or not covered by 16 C.F.R. Part 437, that consists of the payment of any consideration for the right or

<div align="center">

-5-

</div>

means to offer, sell, or distribute Goods or Services.  The definition of Business Venture includes multilevel marketing programs.

D.  **"Charge(s)," "Charged," or "Charging"** means any attempt to collect money or other consideration from a consumer, including, but not limited to, causing Billing Information to be submitted for payment, including against the consumer's credit card, debit card, bank account, telephone bill, or other account.

E.  **"Clear(ly) and conspicuous(ly)"** means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

   1.  In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

   2.  A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

   3.  An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

   4.  In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.  The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.  The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.  The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.  When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

F.  "**Covered Product**" means any Dietary Supplement, Food, Drug, or Device.

G.  "**Credit Card Laundering**" means: (a) presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; (b) employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or deposit into the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; or (c) obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system.

H.  "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

-7-

I.     **"Corporate Defendant(s)"** means Redwood Scientific Technologies, Inc. (CA); Redwood Scientific Technologies, Inc. (NV); Redwood Scientific Technologies, Inc. (DE); Identify, LLC; Advanced Men's Institute Prolongz LLC; Run Away Product, LLC; and Carols Place Limited Partnership, individually, collectively, or in any combination.

J.     **"Defendant(s)"** means Jason Cardiff, Eunjung Cardiff, and the Corporate Defendants, individually, collectively, or in any combination.

K.     **"Device"** means an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is (1) recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them; (2) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in humans or other animals; or (3) intended to affect the structure or any function of the body of humans or other animals; and which does not achieve any of its principal intended purposes through chemical action within or on the body of humans or other animals and which is not dependent upon being metabolized for the achievement of any of its principal intended purposes.

L.     **"Dietary Supplement"** means:  (1) any product labeled as a Dietary Supplement or otherwise represented as a Dietary Supplement; or (2) any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite,

-8-

constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional Food or as a sole item of a meal or the diet.

M.  **"Drug"** means:  (1) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other than food) intended to affect the structure or any function of the body of humans or other animals; and (4) articles intended for use as a component of any article specified in (1), (2), or (3); but does not include devices or their components, parts, or accessories.

N.  **"Essentially Equivalent Product"** means a product that contains the identical ingredients, except for inactive ingredients (e.g., binders, colors, fillers, excipients) in the same form and dosage, and with the same route of administration (e.g., orally, sublingually), as the Covered Product; *provided that* the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

O.  **"Financial Institution"** means any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. § 1843(k)). An institution that is significantly engaged in financial activities is a Financial Institution.

P.  "**Food**" means:  (1) any article used for food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

Q.  "**Good(s) or Service(s)**" includes merchandise, products, plans, or programs.

R.  "**Investment Opportunity**" means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

S.  "**Made in the United States**" means any representation, express or implied, that a product, or a specified component thereof, is of U.S.-origin, including a representation that such product is "made," "manufactured," "built," or "produced" in the United States or in America, or any other U.S.-origin claim.

T.  "**Merchant**" means (a) any person or entity engaged in the sale or marketing of any goods or services, or soliciting a charitable contribution, or (b) any person or entity who applies for or obtains Payment Processing services.

U.  "**Merchant Account**" means any account with an Acquiring Bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables an individual, a business, or other organization to accept payments of any kind.

V.  "**Negative Option Feature**" means, in an offer or agreement to sell or provide any Good or Service, a provision under which the consumer's silence or failure to take affirmative action to reject a Good or Service, or to cancel the agreement, is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

-10-

W.    "**Payment Processing**" means providing a person or entity, directly or indirectly, with the means used to charge or debit accounts through the use of any payment method or mechanism, including, but not limited to, remotely created payment orders, remotely created checks, ACH debits, or debit, credit, prepaid, or stored value cards. Whether accomplished through the use of software or otherwise, Payment Processing includes, among other things: (a) reviewing and approving Merchant applications for payment processing services; (b) providing the means to transmit sales transactions data from Merchants to Acquiring Banks or other Financial Institutions; (c) clearing, settling, or distributing proceeds of sales transactions from Acquiring Banks or Financial Institutions to Merchants; or (d) processing chargebacks or returned remotely created payment orders, remotely created checks, or ACH checks.

X.    "**Person**" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

Y.    "**Preauthorized Electronic Fund Transfer**" means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

Z.    "**Receiver**" means Robb Evans & Associates, LLC.

## ORDER

## I.    BAN ON NEGATIVE OPTION SALES

**IT IS ORDERED** that Corporate Defendants, whether acting directly or through an intermediary, are permanently restrained and enjoined from the advertising, marketing, promotion, offering for sale, or sale of any Good or Service with a Negative Option Feature.

## II.    BAN ON ROBOCALLS AND RINGLESS VOICEMAILS

**IT IS FURTHER ORDERED** that Corporate Defendants, whether acting directly or through an intermediary, are permanently restrained and enjoined from initiating telephone calls delivering prerecorded messages, including ringless voicemails.

## III.   BAN ON MULTILEVEL MARKETING

**IT IS FURTHER ORDERED** that Corporate Defendants, whether acting directly or through an intermediary, are permanently restrained and enjoined from engaging or participating in any multilevel marketing program.

## IV.   BAN ON THE ADVERTISING, MARKETING, PROMOTION, OFFERING FOR SALE, OR SALE OF DISSOLVABLE ORAL FILM STRIPS TO END-USER CONSUMERS

**IT IS FURTHER ORDERED** that Corporate Defendants, whether acting directly or through an intermediary, are permanently restrained and enjoined from the advertising, marketing, promoting, or offering for sale of any dissolvable oral film strip to end-user consumers.

## V.   PROHIBITED REPRESENTATIONS:  REGARDING HEALTH-RELATED CLAIMS REQUIRING HUMAN CLINICAL TESTING FOR SUBSTANTIATION

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation that such product:

   A.   Helps users quit smoking, including any specific representation about success rates or the ease or speed of quitting;

-12-

B.  Causes or assists in causing weight loss, including any specific representation about the amount of weight loss;

C.  Suppresses or helps suppress appetite;

D.  Causes or assists in causing weight loss without dieting or any change in food or lifestyle;

E.  Helps users avoid gaining back any weight they lost;

F.  Increases ejaculation control or the duration of sex;

G.  Treats or prevents premature ejaculation;

H.  Cures, mitigates, or treats any disease; or

I.  Is comparable or superior to other treatments for quitting smoking, weight loss, or sexual performance, or in curing, mitigating, or treating any disease,

unless the representation is non-misleading, and, at the time of making such representation, Corporate Defendants possess and rely upon competent and reliable scientific evidence substantiating that the representation is true.  For purposes of this Section, competent and reliable scientific evidence must consist of human clinical testing of the product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.  Such testing must be:  (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing.  In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to

the Commission.  Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## VI.    PROHIBITED REPRESENTATIONS:  OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation, other than representations covered under the Section of this Order entitled Prohibited Representations:  Regarding Health-Related Claims Requiring Human Clinical Testing For Substantiation, about the health benefits, performance, efficacy, safety, or side effects of the product, unless the representation is non-misleading, and, at the time of making such representation, Corporate Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of

-14-

an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true.  In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission. Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

**VII.  PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES**

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Corporate Defendants rely to substantiate any claim covered by this Order, they shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including:

A.    All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B.    All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.    Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not

-15-

complete the test; source documents for such data; any data dictionaries; and any case report forms;

D.    All documents referring or relating to any statistical analysis of any test data, including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.    All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's researchers.

*Provided, however*, the preceding preservation requirement does not apply to a reliably reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by:  (1) Corporate Defendants; (2) their officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with Corporate Defendants; (4) any person or entity affiliated with or acting on behalf of Corporate Defendants; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For purposes of this Section, "reliably reported test" means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

For any test conducted, controlled, or sponsored, in whole or in part, by or on behalf of, Corporate Defendants, they must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants.  These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to the size and complexity of the entity sponsoring the test, the nature and scope of that entity's activities, and the sensitivity of the personal information collected from or about the participants.

-16-

## VIII. PROHIBITED REPRESENTATIONS: TESTS, STUDIES, OR OTHER RESEARCH

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration:

A.     That the product is clinically proven to:

    1.   Help users quit smoking, including any specific representation about success rates or the ease or speed of quitting;

    2.   Cause or assist in causing weight loss, including any specific representation about the amount of weight loss;

    3.   Suppress or help suppress appetite;

    4.   Cause or assist in causing weight loss without dieting or any change in food or lifestyle;

    5.   Help users avoid gaining back any weight they lost;

    6.   Increase ejaculation control or the duration of sex;

    7.   Treat or prevent premature ejaculation; or

    8.   Be comparable or superior to other treatments for quitting smoking.

B.     That the performance or benefits of the product are scientifically or clinically proven or otherwise established; or

The existence, contents, validity, results, conclusions, or interpretations of any test, study, or other research.

-17-

## IX.    FDA-APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order prohibits Corporate Defendants, their officers, agents, employees, and attorneys, or all other persons in active concert or participation with any of them from:

A.    For any Drug product, making a representation that is approved for inclusion in labeling for such Drug product under a new drug application or biologics license application approved by the Food and Drug Administration, or, for any nonprescription Drug product authorized by Section 505G of the Food, Drug, and Cosmetics Act, 21 U.S.C. § 355h ("FDCA") to be marketed without an approved new drug application, making a representation that is permitted or required to appear in its labeling in accordance with Section 505G(a)(1)-(3) of the FDCA, 21 U.S.C. § 355h(a)(1)-(3), or a final administrative order under Section 505G(b) of the FDCA, 21 U.S.C. § 355h(b); and

B.    For any product, making a representation that is specifically authorized for use in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

## X.    PROHIBITED MISREPRESENTATIONS:  ENDORSEMENTS

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Good or Service, are permanently restrained and enjoined from making, or assisting others in making, any misrepresentation, expressly or by implication, (1) about the status of any endorser or person providing a review of the Good or Service, including a misrepresentation that the endorser or reviewer is an independent or ordinary user

of the Good or Service, or (2) that any person or organization has endorsed any Good or Service.

**XI.   PROHIBITED MISREPRESENTATIONS:  U.S. ORIGIN CLAIMS**

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Good or Service, or any other product, are permanently restrained and enjoined from making, or assisting others in making, any representation, expressly or by implication, that it is Made in the United States unless:

A.   The final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and all or virtually all ingredients or components of the product are made and sourced in the United States; or

B.   A Clear and Conspicuous qualification appears immediately adjacent to the representation that accurately conveys the extent to which the product contains foreign parts, ingredients or components, and/or processing; or

C.   For a claim that a product is assembled in the United States, the product is last substantially transformed in the United States, the product's principal assembly takes place in the United States, and United States assembly operations are substantial.

**XII.  PROHIBITED REPRESENTATIONS:  EARNINGS CLAIMS**

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing,

-19-

promotion, offering for sale, or sale of any Good or Service, including Business Ventures or Investment Opportunities, are permanently restrained and enjoined from:

    A.    Misrepresenting, or assisting others in misrepresenting, expressly or by implication, including through the use of any program name, endorsement, lifestyle description, depiction, or illustration, any material fact, including:

        1.    That participants will or are likely to achieve substantial sales or earn substantial income or profit;

        2.    The amount of sales, income, or profit that participants have actually earned;

        3.    The amount of time or effort required to earn an amount of compensation or to advance; or

        4.    The total costs or any material restrictions, limitations, or conditions;

    B.    Making any representation, expressly or by implication, including through the use of any program name, endorsement, lifestyle description, depiction, or illustration, regarding the amount of sales, income, or profit that a participant can expect to earn, including that participants will or are likely to achieve substantial sales or earn substantial income or profit, unless the representation is non-misleading, and, at the time such representation is made, Corporate Defendants possess and rely upon competent and reliable evidence that is sufficient to substantiate that the representation is true.

## XIII.  PROHIBITED MISREPRESENTATIONS:  OTHER MATERIAL FACTS

    **IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or

participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promoting, offering for sale, sale, or distribution of any Good or Service are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration, any material fact concerning such Good or Service, including:

A.    The success rate or rate of customer satisfaction;

B.    The total costs;

C.    Any refund policy;

D.    Any material restrictions, limitations, or conditions, including any conditions that might limit certain consumers' ability to obtain the full benefits of the proffered Good or Service;

E.    Any material aspect of its performance, efficacy, nature, or central characteristics, including that the benefits of the proffered Good or Service can be obtained quickly or easily;

F.    Any cost to the consumer to purchase, receive, use, or return the Good or Service;

G.    That the consumer will not be Charged for any Good or Service;

H.    That a Good or Service is offered on a "free," "trial," "sample," "bonus," "gift," "no obligation," or "discounted" basis, or words of similar import, denoting or implying the absence of an obligation on the part of the recipient of the offer to affirmatively act in order to avoid Charges, including where a Charge will be assessed pursuant to the offer unless the consumer takes affirmative steps to prevent or stop such a Charge;

I.    The timing or manner of any Charge or bill;

-21-

J.      That the consumer can obtain a Good or Service for a processing, service, shipping, handling, or administrative fee with no further obligation;

K.      The purpose(s) for which the consumer's Billing Information will be used;

L.      The date by which the consumer will incur any obligation or be Charged unless the consumer takes affirmative steps to prevent or stop such a Charge;

M.      That a transaction has been authorized by the consumer; or

N.      Any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the Good or Service.

## XIV.  PROHIBITIONS CONCERNING REFUNDS

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Good or Service, are permanently restrained and enjoined from failing to honor a refund, return, or cancellation request that complies with any policy of Corporate Defendants to make refunds or allow returns or cancellations.

## XV.  PROHIBITIONS RELATED TO MERCHANT ACCOUNTS

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order are permanently restrained and enjoined from:

A.      Credit Card Laundering;

B.   Making, or assisting others in making, directly or by implication, any false or misleading statement in order to obtain Payment Processing services;

C.   Failing to disclose to an Acquiring Bank or other Financial Institution, service provider, payment processor, independent sales organization, or other entity that enables a person to accept payments of any kind any material information related to a Merchant Account including, but not limited to, the identity of any owner, manager, director, or officer of the applicant for or holder of a Merchant Account, and any connection between an owner, manager, director, or officer of the applicant for or holder of a Merchant Account and any third person who has been or is placed in a Merchant Account monitoring program, had a Merchant Account terminated by a payment processor or a Financial Institution, or has been fined or otherwise disciplined in connection with a Merchant Account by a payment processor or a Financial Institution; and

D.   Engaging in any tactics to avoid fraud-and-risk-monitoring programs established by any Financial Institution, Acquiring Bank, or the operators of any payment system, including, but not limited to, tactics such as balancing or distributing sales transactions among multiple Merchant Accounts or merchant billing descriptors; splitting a single sales transaction into multiple smaller transactions; or using a shell company to apply for a Merchant Account.

## XVI.  PROHIBITION AGAINST UNAUTHORIZED CHARGES

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, promotion, offering

-23-

for sale, or sale of any Good or Service, are permanently restrained and enjoined from Charging, causing to be Charged, assisting others in Charging, or attempting to Charge any consumer, without obtaining the consumer's express informed consent to the Charge and having created and maintained a record of such consent.

## XVII. PROHIBITION AGAINST DEBITING CONSUMERS' BANK ACCOUNTS WITHOUT AUTHORIZATION

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any Good or Service, are permanently restrained and enjoined from:

A.    Failing to timely obtain written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account before initiating any Preauthorized Electronic Fund Transfer; and

B.    Failing to provide to the consumer a copy of a valid written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account.

## XVIII.    CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that:

A.    Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

1.    Disclosing, using, or benefitting from, or assisting others in disclosing, using, or benefitting from, customer information, including the name, address, telephone number, email address,

-24-

social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Corporate Defendants obtained prior to entry of this Order in connection with the advertising, promotion, offering for sale, or sale of Defendants' oral film strips or Rengalife; and

2. Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after entry of this Order.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

B. Upon termination of the receivership, the Receiver shall not return any customer information to the Defendants.

## XIX. ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Corporate Defendants obtain acknowledgments of receipt of this Order:

A. Corporate Defendants, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For 20 years after entry of this Order, Corporate Defendants for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and

(3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which Corporate Defendants delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XX. COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Corporate Defendants make timely submissions to the Commission:

A. One year after entry of this Order, Corporate Defendants must each submit a compliance report, sworn under penalty of perjury.  Each of them must:

1. Identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences;

2. Identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest;

3. Describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership;

4. Identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant;

5.  Identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

6.  Describe the activities of each business, including the Goods or Services offered, the means of manufacturing, labeling, advertising, promotion, offering for sale, sale or distribution, and the involvement of any other Defendant (which Corporate Defendants must describe if they know or should know due to their own involvement);

7.  Describe in detail whether and how that Defendant is in compliance with each Section of this Order; and

8.  Provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.  For 20 years after entry of this Order, Corporate Defendants must each submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.  Name, including aliases or fictitious name, or residence address;

2.  Title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity;

3.  Any designated point of contact; or

4.  The structure of any entity that such Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any

subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.  Corporate Defendants must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.  Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____ " and supplying the date, signatory's full name, title (if applicable), and signature.

E.  Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin: FTC v. Jason Cardiff, et al., X190001.

## XXI.  RECORDKEEPING

**IT IS FURTHER ORDERED** that Corporate Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years.  Specifically, Corporate Defendants, for any business that each such Defendant, individually or collectively with any other Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.  Accounting records showing the revenues from all Goods or Services sold;

-28-

B.  Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.  Records of all consumer complaints and refund requests concerning the subject matter of this Order, whether received directly or indirectly, such as through a third party, and any response;

D.  All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.  A copy of each unique advertisement or other marketing material.

## XXII. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Corporate Defendants' compliance with this Order:

A.  Within 14 days of receipt of a written request from a representative of the Commission, Corporate Defendants each must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.  For matters concerning this Order, the Commission is authorized to communicate directly with Corporate Defendants. Corporate Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.     The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.     Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Corporate Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XXIII.   EXPIRATION OF PRELIMINARY INJUNCTION PROVISIONS

A.     Upon entry of this Order, the provisions of the Preliminary Injunction [Doc. # 46], including the asset freeze and receivership, shall expire, except to the extent provided in the Court's February 28, 2022 Order regarding discharge of the Receiver [Doc. # 702].  Upon the Receiver's completion of the tasks described in paragraphs 5 through 11 of that Order, and the Court's approval of the Receiver's final report, the Receiver will be discharged for all purposes.

**XXIII. RETENTION OF JURISDICTION**

       **IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this 1st day of March, 2022.**

_____

**DOLLY M. GEE**

**UNITED STATES DISTRICT JUDGE**

-31-

# EXHIBIT 20

**CARDIFF MOTION
TO SUPPRESS**

の



**U.S. Department of Justice**
*Consumer Protection Branch*

| Manu J. Sebastian | **Overnight Delivery Address** | **Mailing Address** |
|---|---|---|
| Phone:   202-514-0515 | 450 5th St NW, Suite 6400 | P.O. Box 386 |
| Fax:      202-514-8742 | Washington, DC 20001 | Washington, DC  20044 |

April 18, 2024

<u>VIA EMAIL</u>

Jonathan D. Gershon
Larson LLP
555 South Flower Street
30th Floor
Los Angeles, CA 90071
jgershon@larsonllp.com

    Re: *United States v. Jason Edward Thomas Cardiff,*
      <u>5:23-cr-00021-BERNAL (C.D. Cal)</u>

Dear Counsel:

  Enclosed please find the government's tenth discovery production in the above-captioned matter. The enclosed production is provided on a hard drive. The password to access the drive was emailed to you separately.

  The tenth production contains United States Postal Inspection Service (USPIS) Agent-Generated Materials, including additional memoranda of interviews (MOIs), Memoranda to File (MTFs), and Memoranda of Activity (MOA) generated during the investigation of this matter, as well as captures of websites associated with the Defendant. For your convenience, the documents in this production are produced both in load-ready format, as searchable PDFs, and in some cases, in native format. Pursuant to the protective order entered by the Court on December 28, 2023 (Dkt. # 37), the government is identifying all of these documents as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER.

  The documents in this production have a bate stamp range of GOV007_00000001 through GOV007_00134913.

  To the extent that the enclosed materials and any future discovery provided to you exceeds the scope of discovery mandated by the Federal Rules of Criminal Procedure, federal statute, or relevant case law, such materials are provided voluntarily and solely as a matter of discretion.  By producing such materials to you, the government does not waive its right to object to any future discovery requests beyond the ambit of its legal obligations.

*United States v. Cardiff*
Page **2** of **2**

Importantly, to date, the government has not received any discovery from you. With this letter the government renews its requests for all reciprocal discovery to which it is entitled under Rule 16(b) and 26.2 of the Federal Rules of Criminal Procedure. The government again also requests pursuant to Rules 12.1, 12.2, and 12.3 all notice of intention of your clients to rely on an entrapment defense, a defense involving mental condition or duress, an alibi defense, or a public-authority defense.

Respectfully,

Manu J. Sebastian
Trial Attorney

**Comprehensive Production Index as of April 18, 2024**

| BEG BATES | END BATES | DESCRIPTION |
|---|---|---|
| GOV_MOI_000001 | GOV_MOI_001076 | Agent Materials (USPIS MOIs, MTFs, etc.) |
| GOV_MOI_001077 | GOV_MOI_001553 | Additional Agent Materials (USPIS MTFs) |
| GOV_MOI_001554 | GOV_MOI_001801 | Additional Agent Materials (USPIS MOIs, MTFs, etc.) |
| GOV001_00000001 | GOV001_00000335 | Notable Documents (Lighthouse and Receiver) |
| GOV001_00025445 | GOV001_00025452 | Notable Documents (Sticky.io production) |
| GOV001_00025919 | GOV001_00025924 | Notable Documents (Sticky.io production) |
| GOV001_00000336 | GOV001_00000753 | Sticky.io (f/k/a Limelight) Documents |
| GOV001_00000754 | GOV001_00001875 | Discover (Subpoena Return) |
| GOV001_00001876 | GOV001_00001977 | First City Credit Union (Subpoena Return) |
| GOV001_00001978 | GOV001_00002046 | East-West Bank (Subpoena Return) |
| GOV001_00002047 | GOV001_00002226 | Bank of America (Subpoena Return) |
| GOV001_00002227 | GOV001_00010271 | Clear Trust (Subpoena Return) |
| GOV001_00010272 | GOV001_00010272 | Coin Base (Subpoena Return) |
| GOV001_00010273 | GOV001_00010771 | TD Ameritrade (Subpoena Return) |
| GOV001_00010772 | GOV001_00011060 | Meadows Bank (Subpoena Return) |
| GOV001_00011061 | GOV001_00012651 | JP Morgan Chase (Subpoena Return) |
| GOV001_00012652 | GOV001_00013691 | Payday Workforce Solutions (Subpoena Return) |
| GOV001_00013692 | GOV001_00013722 | Vantiv (FIS) (Subpoena Return) |
| GOV001_00013723 | GOV001_00014340 | Paychex (Subpoena Return) |
| GOV001_00014341 | GOV001_00021171 | American Express (Subpoena Return) |
| GOV001_00021172 | GOV001_00021935 | Answering Specialists (Subpoena Return) |
| GOV001_00021936 | GOV001_00021938 | FreeVoice (Subpoena Return) |
| GOV001_00021939 | GOV001_00022492 | UPIC Insurance Services (Subpoena Return) |
| GOV001_00022493 | GOV001_00022618 | Sticky.io (f/k/a Limelight) Documents |
| GOV001_00022619 | GOV001_00025282 | Answer Connect (Subpoena Return) |
| GOV001_00025283 | GOV001_00026148 | Sticky.io (f/k/a Limelight) Documents |

| GOV001_00026149 | GOV001_00027218 | Answer Connect (Subpoena Return) |
|---|---|---|
| GOV001_00027219 | GOV001_00029792 | EMC2 Billing (Subpoena Return) |
| GOV001_00029793 | GOV001_00029884 | Google (Subpoena Return) |
| GOV001_00029885 | GOV001_00029927 | Stamps.com (Subpoena Return) |
| GOV001_00029928 | GOV001_00030109 | JP Morgan Chase (Subpoena Return) |
| GOV001_00030110 | GOV001_00030182 | Google Search Warrant Return |
| GOV001_00030183 | GOV001_00030683 | Sticky.io (f/k/a Limelight) Documents |
| GOV001_00030684 | GOV001_00031187 | Grand Valley (Subpoena Return) |
| GOV001_00031188 | GOV001_00275824 | Danielle Walker (a/k/a Danielle Cadiz) Laptop |
| GOV001_00275825 | GOV001_00275971 | Chino Commercial Bank (Subpoena Return) |
| GOV001_00275972 | GOV001_00276413 | Mountain Grove Office Park (Subpoena Return) |
| GOV001_00276414 | GOV001_00276655 | Elavon (Subpoena Return) |
| GOV001_00276656 | GOV001_00276747 | JP Morgan Chase (Subpoena Return) |
| GOV002_00000001 | GOV002_04035264 | FTC Lighthouse Database |
| GOV003_00000001 | GOV003_04505223 | Redwood Receiver provided Google Documents |
| GOV004_00000001 | GOV004_09053589 | FTC Relativity Workspace |
| GOV005_00000001_0001.00001 | GOV005_00000374_0002.00002 | Communications between CPB and the FTC, and CPB and the Redwood Court-Appointed Receiver |
| GOV005_00000375_0001.00001 | GOV005_00000378_0001.00002 | CPB Form 712 and response, and USPIS Form 712 and response |
| GOV005_00000379_0001.00001 | GOV005_00000423_0001.00001 | Additional communications between CPB and FTC |
| GOV005_00000424_0001.00001 | GOV005_00000582_0001.00001 | Communications between USPIS and the FTC, and USPIS and the Redwood Court-Appointed Receiver |
| GOV006_00000001 | GOV006_03016065 | Released Filter Materials. Materials have not been reviewed by Government prosecution team, only by Filter Team. |
| GOV007_00000001 | GOV007_00134913 | Additional Agent Materials (USPIS MOIs, MTFs, etc.) |
| GOV008_00000001 | GOV008_00000003 | USPIS and FTC obtained forensic image hard drives |