Stephen R. Cochell
Admitted Pro Hac Vice
srcochell@gmail.com
5850 San Felipe, Ste. 500
Houston Texas 77057
Telephone:(713) 436-8000
Facsimile: (213) 623-2000

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888)937-7555
Facsimile (866)858-6637

Attorneys for Defendant

JASON EDWARD THOMAS CARDIFF

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>    Defendant. | Case No. 5:23-CR-00021-JGB<br><br>[*Filed concurrently with Notice of Motion; Declaration of Stephen R. Cochell; Declaration of Jason Cardiff and [Proposed] Order*] |

# DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE

i

COCHELL LAW FIRM

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... ii
TABLE OF AUTHORITIES ........................................................................................ iii
I.   Standing............................................................................................................... 2
II.  The Second Search .............................................................................................. 9
III. The Searches and Seizures Were Based on Pretext ........................................... 10
IV.  Exceptions From Illegal Searches ..................................................................... 11
V.   Attenuation ........................................................................................................ 14
VI.  Conclusion......................................................................................................... 15

COCHELL LAW FIRM

ii

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

# TABLE OF AUTHORITIES

**Case Law**

*Alexander v. City & County of San Francisco*,
29 F.3d 1355 (9th Cir. 1994) ………………………………………………….. 11

*AMG Capital Management, LLC v. FTC,* 141 S.Ct. 1341 (2021) ………………. 2-3

*Arizona v. Evans*, 514 U.S. 1 (1995) ……………………………………………. 12

*Birchfield v North Dakota*, 579 U.S. 438 (2016) ………………………………. 8

*Harper v. Virginia Dep't of Taxation,* 509 U.S. 86 (1993) …………………….. 3

*Michigan v. Clifford*, 464 U.S. 287 (1984) …………………………………… 11

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) ……………………..……. 10

*United States v. Anderson*, 101 F.4th 586 (9th Cir. 2024) ……………………... 1-4, 11

*United States v. Baires-Reyes*, 750 Fed. Appx. 548 (9th Cir. 2018) ………….. 13

*United States v. Bradford*, No. 2:19-cr-00222-GMN-BNW,
2023 U.S. Dist. LEXIS 158330 (D. Nev. Sep. 6, 2023) …………………….….. 5

*United States v. Brown*, 563 F.3d 410 (9th Cir. 2009) …………………………. 10

*United States v. Camou*, 773 F.3d 932 (9th Cir. 2014) …………………….…... 12-13

*United States v. Chan-Jimenez*, 125 F.3d 1324 (9th Cir. 1997) ……………….... 8

*United States v. Gonzalez, Inc.*, 412 F.3d 1102 (9th Cir. 2005) ………………... 5

*United States v. Gonzalez,* Inc., No. 04-10041,
2006 U.S. App. LEXIS 3269 (9th Cir. Feb. 10, 2006) ……………………….... 5

*United States v. Johns*, 891 F.2d 243 (9th Cir. 1989) ………………………… 14

*United States v. Johnson*, 875 F.3d 1265 (9th Cir. 2017) ……………………… 2

COCHELL LAW FIRM

iii

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

*United States v. Leon*, 468 U.S. 897 (1984) ………………………………….,… 12

*United States v. Reid*, 226 F.3d 1020 (9th Cir. 2000) ………………………….. 9

*United States v. Russell,* 664 F.3d 1279 (9th Cir. 2012) ……………………….. 9

*United States v. Shaibu*, 920 F.2d 1423 (9th Cir. 1990) …………………….…... 8-9

*United States v Twilley*, 222 F.3d 1092 (2000) ……………………………….. 14

*United States v. Young,* 573 F.3d 711 (9th Cir. 2009) ……………………….…… 13

*Utah v. Strieff*, 579 U.S. 232 (2016) ………………………………………….... 14

*Wong Sun v. United States*, 371 U.S. 471 (1963) ……………………………... 14

**Constitution**

USCS Const. Amend. 4 ………………………………………………….... *passim*

COCHELL LAW FIRM

iv

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

1  The Government's opposition is riddled with misstatements of both the law and the facts. As a threshold matter, the Government ignores the Ninth Circuit's *en banc* decision in *United States v. Anderson*, 101 F.4th 586 (9th Cir. 2024) which held that the government cannot conduct a warrantless inventory search when the true purpose of the search was to conduct a search for purposes of criminal prosecution. The Government represented to this Court that the purpose of having six (6) USPIS agents accompany the Receiver was for "peacekeeping." Dkt. 110 at 11, 16-17.

As this Court found, the USPIS had been conducting a criminal investigation for *months* prior to the receivership order and the Receiver's entry into Redwood's offices. Dkt. 79 at 24. Indeed, on August 21, 2018, the FTC sent a detailed memorandum with consumer complaints setting out numerous facts and evidence setting out "Criminal Issues" for the USPIS along with weekly meetings to discuss evidence. Dkt. 107-1 at 26. The USPIS's *true purpose* in searching the premises was to use the receivership to gain entry into Redwood's offices to identify what USPIS wanted to seize. Simply stated, the Government's representation that six agents of the USPIS were there on a "peacekeeping" mission is nothing more than a pretext for an unlawful search. Dkt. 110 at 17. The Government could have easily obtained deputies from San Bernardino, Riverside counties (or the U.S. Marshal), but just *happened* to have the FTC invite the USPIS enter the premises with them on October 12, 2018.[1] There is no such thing as *coincidence* where, as here, the Government was engaged in conducting its own criminal investigation of Defendants and surveilling the premises accompanied by the intense communications about when the TRO would be granted. While the Government may claim "we were just keeping the peace," the

---

[1] The Government has produced no evidence that the Receiver tried to get deputies from San Bernardino or Riverside counties, nor is there any evidence that a request was made to the U.S. Marshals to keep the Supeace during access on Redwood's premises. The Government's representation suggesting USPIS was the only alternative to keep the police is simply false and untrue.

1  evidence reeks of pretext. The Ninth Circuit has consistently suppressed evidence obtained in pretextual searches conducted by law enforcement. *Anderson,* at 604 (rejecting post-hoc explanations for a search).

Government counsel also suggests that they are confused as to why Defendant has filed this motion to suppress asserting that Defendant is seeking a second bite at the apple. Simply stated, the Motion to Dismiss Indictment focused on whether the Government violated Cardiff's Due Process Rights and *circumvented* his Fourth Amendment rights by conducting a joint civil action and criminal action in bad faith. Dkt. 45 at 23. Defendant challenged whether searches conducted by USPIS were properly authorized by the Receiver under a receivership order that allowed the Receiver to "cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency. Dkt. 45 at 32. Cardiff recognizes that the Court held that the Receiver was authorized to allow reasonable requests by law enforcement to enter the premises. However, granting a "reasonable request" is not synonymous to giving consent to a law enforcement search for criminal evidence. Indeed, the TRO's "reasonable request" language and consent under the Fourth Amendment are different animals.

Moreover, it is well established that, as to the Fourth Amendment, the Government bears the burden of proving that consent was, in fact, freely and voluntarily given. *United States v. Johnson,* 875 F.3d 1265, 1276 (9th Cir. 2017). There was no such standard under the Court's TRO. As set out herein, the Receiver did not consent to the October 12, 2018 search. This motion squarely addresses the question of whether the initial search on October 12, 2018 was unlawful and whether the Court should suppress evidence from that search and subsequent searches.

I.  **Standing**

The Government contends that Defendant lacks standing to object to the October 12, 2018 search. To that end, the Government relies on the fact that a receiver was appointed to safeguard and maintain the assets. However, in *AMG Capital*

COCHELL
LAW FIRM

2

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

*Management, LLC v. FTC,* 593 U.S. 57 (2021), the Supreme Court held that the FTC lacked authority to seek monetary relief under Section 13(b) of the FTC Act. Authority for the receivership was based on monetary relief under Section 13(b), an order to protect assets, was *void ab initio*. *AMG*, at 77-78 (Congress never intended monetary relief in Section 13(b)). The rule in *AMG* applied to all cases pending at the time, including this case.[2] *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 97 (1993). Simply stated, there was no authority to appoint a receiver in the FTC action. Thus, because the FTC case was pending at the time of the AMG decision, Redwood's officers have standing to object to searches conducted on October 12, 2024 and after.

Standing also exists based on *United States v. Anderson*, 101 F.4th 586 (9th Cir. 2024) (en banc). The facts in *Anderson* parallel the facts in this case. In *Anderson*, the defendant's property (a car) was placed in the exclusive custody, control and possession of the police in an impound lot. Like a temporary receivership, the property was impounded to be maintained and safeguarded for the ultimate owner. Like the police in *Anderson,* who had policies for conducting an inventory of a car to safeguard the property in the car and protect the public, the Fourth Amendment sets policies and procedures for the USPIS obtaining a consent to search a property. Like the inventory procedures in *Anderson* allowing seizure of, and access to Anderson's vehicle, the TRO allowed the Receiver to enter the premises to accomplish the receivership's *administrative* purpose of inspecting and then preserving, safeguarding and maintaining property for the ultimate owners. Whether an inventory or an entry into property to keep the peace, law enforcement agents are not allowed to game the system and manipulate the administrative procedures under the TRO to conduct an investigatory search of the premises.

Officers relying on a standard procedure to justify a search must not "act in bad

---

[2] Final judgment was not entered until March 1, 2022. *FTC v. Cardiff*, No. 18-2104, Dkt. 705, 706.

COCHELL
LAW FIRM

3

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

faith or for the sole purpose of investigation. *Anderson*, 101 F.4th at 593. The *Anderson* court concluded that the exemption from the need for probable cause (and warrant) "accorded to searches made for the purpose of inventory or administrative regulation, *is not accorded to searches that are not made for those purposes*." *Id.* at 594, quoting *Whren*, 517 U.S. 806, 811-12 (emphasis added).

The Temporary Receiver merely had temporary possession of the premises, but Cardiff was Redwood's President, Chief Executive Officer and owner and was present during the October 12, 2018 search. Prior to the receivership, Cardiff directly managed and controlled Redwood's day-to-day business holding daily management meetings and directing managers on what tasks to perform, and their time line to do them. **Exhibit C**, Supplemental Declaration of Jason Cardiff ¶ 3 (hereafter "Supp. Cardiff Dec.").[3] The Logbooks identified in earlier proceedings were used to record these meetings. Cardiff performed primary human resource functions, including hiring, firing, onboarding, setting employee policies and procedures, resolving employee complaints or misconduct, directed employees on shipping matters addressing periodic problems with shipments, bringing new products to market, directing employees on issues with Limelight, working with retail partners, setting monthly, quarterly, and annual growth targets, setting employee goals, and assigning all digital passwords. Cardiff also had full access to employee passwords, computers and periodically logged into employee computers to monitor their performance. Cardiff Supp. Dec. ¶¶ 3-4, 7. The computers contained personal information. Id. at 5.

The TRO allowed Cardiff *full access* to the premises and did not transfer ownership during or after October 12, 2018. *Id*. at ¶ 4. Cardiff kept going to Redwood's offices post-October 12, 2018 and had full access to computer data bases

---

[3] **Exhibit C** is next in order to Exhibits A (Cochell declaration) and B (Cardiff Declaration) in Defendant's initial Motion to Suppress Evidence. The transcript of the June 3, 2024 hearing was not received until October 3, 2024. On October 7, 2024, the Government indicated that it did not object to providing the Court with the transcript.

COCHELL LAW FIRM

4

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

and information. *Id.* At all times, Cardiff had keys to the corporate offices. *Id.* Moreover, the actual office at 870 North Mountain Avenue, Ste 100 was under Jason Cardiff's direct control, including the open office and Cardiff's personal office with computers located throughout these locations. *Id.* At the time of the October 12, 2018, there were only three employees employed at Redwood. Id. at ¶ 5.

In *United States v. Gonzalez*, Inc., No. 04-10041, 2006 U.S. App. LEXIS 3269 (9th Cir. Feb. 10, 2006), the court held that owners and managers of a small, family-run business who exercised full access to the building and managerial control over its day-to-day operations had a reasonable expectation of privacy over conversations taking place on the office's telephones. *United States v. Gonzalez, Inc.*, 412 F.3d 1102 (9th Cir. 2005); *United States v. Bradford*, No., 2023 U.S. Dist. LEXIS 158330 (D. Nev. Sep. 6, 2023). Just as the defendant in *Gonzalez* had standing and an expectation of privacy to contest the legality of intercepted phone calls at his business, Cardiff has standing to contest the search of Redwood's premises and business records.

Moreover, a review of the TRO shows that the Receiver, the FTC and Cardiff were granted free access to the premises. The Court did not grant free access to law enforcement personnel and did not grant ownership, possession or control over Defendant's *constitutional* rights to the Receiver. TRO, ¶¶ XVI (R), XVI(S). To the extent that constitutional rights are involved in a civil receivership regarding Fourth and Fifth Amendment rights, magistrates and Article III judges must make those decisions. Stripping a person of their constitutional rights is, by definition, punitive.

The Receiver did not <u>own</u> the company or its property but was entrusted with maintaining, preserving and safeguarding the property of the ultimate owners (i.e. Cardiff). *Id.* Thus, the receiver was not empowered to waive Defendants' constitutional rights.[4] Just as the Receiver could not order Jason Cardiff to waive his

---

[4] It is up to magistrates and judges to determine rights of an suspect or accused. This is certainly true where, as here, the constitutional right against unreasonable searches and seizures was not before the receivership court.

5

COCHELL
LAW FIRM

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

right against self-incrimination, he cannot waive or order the waiver of Defendants' rights against search and seizure of property. Simply stated, the Receiver lacked the authority to waive Redwood or Cardiff's constitutional rights, including the Fourth Amendment.

Cardiff was also in possession of the premises, including documents and electronic data. Thus, the only person who could have consented to a search of Redwood's premises for evidence of criminal activity on October 12, 2018 was Jason Cardiff.

In *Georgia v. Randolph*, 547 U.S. 103, 120 (2006), the Supreme Court held that a warrantless search of a shared dwelling cannot be justified "over the express refusal of consent by a physically present resident." *Id.* In this case, Cardiff was not aware that USPIS was conducting a criminal investigation and was unaware of his rights. Thus, he was unable to object to the search. **Exhibit C**, Supp. Dec. Cardiff ¶ 8.

Similarly, there is no evidence that the Receiver was aware of the USPIS's criminal investigative mission as of October 12, 2018. There is no evidence that, on October 12, 2018, USPIS agents told the Receiver that he had a right to refuse to consent to the search. USPIS did not disclose its law enforcement goals and objectives to the Receiver. It appears that the Receiver was tricked into thinking USPIS was there to keep the peace. In that vein, the Declaration of Jeffrey Hedrick is a model of ambiguity and conclusory statements, providing as little or no detail about the who-what-when-where and-how this search was actually conducted. There is no indication that Hedrick had any personal contact with Brick Kane or was in a position to draw the conclusions made in his declaration.

There is no indication that Cardiff knew that the USPIS had been conducting a criminal investigation for months prior to October 12, 2024. Id. at ¶¶ 8-9. In fact, Cardiff objected when the Receiver wanted to enter his home pursuant to the TRO, but later worked that out and cooperated with the Court and the Receiver. *Id*. at ¶ 9.

In that vein, the Government's brief misrepresents the facts. The Government

COCHELL LAW FIRM

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

provides hearsay that: "Brick Kane from the Receiver's office not only provided verbal consent on behalf of the Receiver to USPIS agents, but also had a representative from the Receiver accompany USPIS personnel each time they entered the Receivership Entities locations…" Dkt. 110 at 20. The Government then goes on to assert that Kane *accompanied* USPIS personnel on October 12, 2018. Id. <u>First, there is no report or evidence that the Receiver verbally consented to USPIS entering the premises to conduct a law enforcement investigation nor is there evidence that he was told about a criminal investigation prior to October 12, 2018</u>. Secondly, there is no evidence that the Receiver entered the premises first or with the USPIS. On June 3, 2024, the Government argued that the USPIS "came in to assist the receiver in taking over a location. It's two different locations with two different buildings. So two law enforcement is not enough one-on-one to go to a company with 25 employees and the defendant. So they split up law enforcement to go in and ensure access." **Exhibit D**, Hearing Transcript, Motion to Dismiss at 29.

To buttress their argument, the Government presents Agent Jeffrey Hedrick, who asserts that USPIS personnel *followed* the Receiver into the building. Dkt. 110 ¶ 5. Hedrick's conclusory declaration does not specifically state who else entered the building, when they entered nor did he state what they did after entry into the premises. The Government's attempt to mislead the Court on this issue is similar to its attempt to mislead the Court in oral argument on the Motion to Dismiss. In pertinent part, the counsel for the Government asserted that the Receiver entered the premises, discovered evidence of alleged misconduct and called the USPIS to <u>come back</u> for a further inspection. **Exhibit D** at 29. This narrative is totally inconsistent with evidence that Agent Reins Jarin wrote that <u>she</u> contacted the Receiver about USPIS' request to return and review specific items identified during the search on October 12, 2018. **Exhibit A,** Ex. 12.[5] The Receiver did not mention or report

---

[5] The Government was well aware of Reins-Jarin's report, which was marked as

7

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

COCHELL LAW FIRM

anything about the alleged misconduct until his Receivership Report on November 2, 2018. Dkt. 53-1 at 12-13.

The Government then suggests that the Receiver gave implied consent because he accompanied the USPIS (or the USPIS accompanied him) into the building. Dkt 110 at 20 *citing Birchfield v North Dakota*, 579 U.S. 438, 476 (2016) and *United States v. Basher*, 629 F.3d 116, 1167-1168 (9th Cir. 2011). However, in *Birchfield*, the Court rejected implied consent with a law that required giving an intrusive blood test for suspected DUI or be subjected to criminal penalties did not constitute consent. In *Basher*, the defendant was specifically asked by law enforcement if agents could retrieve his shotgun, and Basher affirmatively nodded his head signifying consent. Id. The Court held that: The Fourth Amendment provides that people are protected from warrantless searches and seizures. Consent can be inferred from nonverbal actions, but it must be "unequivocal and specific" and "freely and intelligently given." *United States v. Chan-Jimenez*, 125 F.3d 1324, 1328 (9th Cir. 1997) (quoting *United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir. 1990)).

In the instant case, there is no indication that the Receiver was aware that USPIS was there to conduct a criminal investigation nor is there any indication that he consented to search of Redwood's premises for criminal investigative purposes. The lack of documentation regarding October 12, 2018 search conveniently allows the Government to come back almost six years after-the-fact to claim consent.

The fact that USPIS did not document its activity on the October 12, 2018 search *underscores* the fact that the USPIS was not following its own practice of reporting events on its Memorandum of Investigation or Memorandum of Activity.[6]

---

Exhibit 16 in the Motion to Dismiss Indictment.

[6] On one hand, USPIS' lead agent Christine Reins-Jarin purportedly called Brick Kane who supposedly agreed to allow a search and seizure of evidence but totally failed to document any communication with Brick Kane obtaining consent to conduct the

COCHELL
LAW FIRM

8

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

## II. The Second Search

In contrast to its lack of documentation regarding the October 12, 2018, the Government did provide some documents relating to the October 22, 2018 search. The Government claims that, on October 18, 2018, Agent Reins-Jarin's email asserts that she called Brick Kane asserting that Brick Kane purportedly consented to a search of computers and areas that USPIS identified during its October 12, 2018 search. However, there is no evidence from Brick Kane showing that he freely and voluntarily gave consent. At best, this was a request for cooperation under the TRO--- which is not tantamount to a consent under the Fourth Amendment.

A search was conducted on October 22, 2018 by USPIS where the USPIS reported that forensic images of computers were taken and photographs taken of the office. Dkt. 107-1. The record was made for law enforcement purposes and is inadmissible hearsay as to statements made by Brick Kane or other third parties. *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983).

Consent is a recognized exception to the Fourth Amendment protection against unreasonable searches and seizures. *United States v. Russell,* 664 F.3d 1279, 1281 (9th Cir. 2012). However, "[t]he existence of consent to a search is not lightly to be inferred" and the government always has the burden of proving effective consent. *United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000) (citation omitted). In determining the validity of consent, the government must show that "there was no duress or coercion, express or implied" and that the consent was "unequivocal and specific and freely and intelligently given." *United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir. 1990) (as amended). Whether consent to search was voluntarily given is to be determined based on a totality of the circumstances. *Schneckloth v.*

---

October 12, 2018 search. **Exhibit A**, Ex 12. USPIS' failure to follow it established practices and procedures is further evidence of pretext.

9
DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

COCHELL
LAW FIRM

*Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009) (same).

The Court need not reach the issue of consent because the search was pretextual. Even *assuming* that there was an effective consent (which there was not), the Receiver had no authority to waive Defendants' right to allow law enforcement to conduct a search of the premises for evidence of crime.[7]

The USPIS later obtained a written consent advising the Receiver of "his" constitutional right to consent to search. On July 6, 2021, the USPIS' presented Brick Kane a written consent search form from Brick Kane waiving constitutional rights to search and seizure despite the fact that the agency did not previously (on October 12, 2018 and October 18, 2018) advise Kane of Defendants' constitutional rights to refuse consent. This further amplifies the lack of consent and pretextual nature of the October 12, 2018 search. Indeed, the USPIS knew all along that the best way to establish consent is to provide a written consent advising individuals of their rights.

### III.   The Searches and Seizures Were Based on Pretext

When the Government responded to Defendant's Motion to Dismiss Indictment based on parallel prosecution, it justified USPIS' October 12, 2018 search representing that the USPIS was there to "assist" the Receiver under the TRO's "reasonable cooperation" provision. **Exhibit D** at 29.  Peacekeeping was nothing more than a *false statement* to hide the USPIS' true purpose on October 12, 2018.[8]

---

[7] With respect to pretext, every other search and seizure in this case was, to some extent, documented in USPIS Memorandum of Activity or Memorandum of Interview.

[8] The term "pretext" is almost synonymous with "false pretenses." A pretext is a false reason or motive given to hide the true purpose behind an action. It is a cover or excuse that someone uses to justify their behavior while the real intention is concealed. False pretenses refers to deliberate deception used to obtain something of value by lying about the facts or circumstances. For instance, if someone claims to

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

COCHELL
LAW FIRM

Indeed, this misrepresentation is and was designed to mislead the Court.

In *Anderson*, the Ninth Circuit made it clear that it has consistently ruled against the Government in cases where, as here, the Government conducted a search and tried to misrepresent the true purpose of their searches. *United States v. Grey*, 959 F.3d 1166, 1169 (9th Cir. 2020 ) holding that law enforcement officers asked to assist in the execution of an administrative warrant violate the Fourth Amendment when their primary purpose is to gather evidence in support of a criminal investigation rather than to assist inspectors); *Alexander v. City & County of San Francisco*, 29 F.3d 1355, 1360-1361 (9th Cir. 1994), *citing Michigan v. Clifford,* 464 U.S. 287, 294 (1984), the Supreme Court held that arson investigators, even if authorized to conduct an administrative search into the cause of a fire, violated the Fourth Amendment when instead their primary purpose was to search for evidence of arson. *Id.* at 297-98.[9]

Taking the Government's position to its logical conclusion, the Government would have this Court overlook or excuse this key misrepresentation and approve a warrantless search based on a civil order that did not contemplate or authorize a receiver to waive Defendants' constitutional rights. A contrary ruling would encourage law enforcement agencies to "partner" with administrative agencies to advance their criminal investigative goals by using receiverships to claim "peacekeeper" status and gain access to companies placed into receivership.

IV. **Exceptions From Illegal Searches**

The Government contends that even if the October 12, 2018 and October 22,

---

sell an authentic item knowing it's a fake, they are acting under false pretenses. See Merriam Webster Dictionary.

[9] *See United States v. $124,570 U.S. Currency*, 873 F.2d 1240 (1989) (Supreme Court has repeatedly emphasized the importance of keeping criminal investigatory motives from coloring administrative searches; cases cited therein).

2018 and other searches of Redwood's premises were unlawful, the Court may deny suppression based on the inevitable discovery, good faith exception and the independent source doctrines. In *United States v. Leon*, 468 U.S. 897, 922 (1984), the Supreme Court held that the good faith exception applies if an officer executed a search in "good faith" or on objectively reasonable reliance on facts that proved to be untrue. *See e.g. Arizona v. Evans*, 514 U.S. 1, 14 (1995) 135, 145 (2009) (good faith met when officer reasonably relied on an external source, which turned out to be erroneous). In the instant case, the search was based on a pretext. Simply stated, good faith cannot be found where, as here, the Government has relied on pretextual reasons for the October 12, 2018.

Moreover, the courts have refused to apply these doctrines where, as here, the Government had probable cause, but deliberately chose not to seek a search warrant. The burden is on the Government to establish an exception where, as here, the initial search violated the Fourth Amendment. *United States v. Camou*, 773 F.3d 932, 945 (9th Cir. 2014). The problem is that the Government had probable cause and could have obtained a search warrant in the first place. By July 2018, the USPIS was receiving non-public information from the FTC that included complaints, financial data, and evidence of deceptive practices. This escalated in September 2018 when the FTC shared detailed litigation updates, showing an alleged pattern of fraudulent conduct sufficient to justify a warrant. Dkt. 79 at 6. By October 9-10, the FTC's internal complaint and the FTC's Memorandum to USPIS that documented sufficient evidence of fraud allegations to support probable cause. Dkt. 107-1 at 26. The FTC used these materials in the civil case, where the Court found good cause to impose a receivership and a likelihood of success on the merits in the civil case. The evidence supporting the good cause standard for granting receivership would have established probable cause for issuance of a search warrant.

The Government has not offered any explanation as to why it did not seek issuance of a search warrant. Indeed, the Government could have, but chose not to

COCHELL LAW FIRM

12

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

comply with the warrant requirement of the Fourth Amendment to obtain the documents lawfully.

The 9th Circuit has consistently held that the inevitable discovery doctrine does not apply when officers have probable cause to obtain a warrant but fail to do so. <u>This principle is rooted in the concern that allowing such an exception would effectively eliminate the warrant requirement of the Fourth Amendment</u>. For instance, in *United States v. Lundin*, 817 F.3d 1151, 1161-1162 (9th Cir. 2016), the court emphasized that admitting evidence under the inevitable discovery doctrine in such circumstances would remove any incentive for officers to seek a warrant. Accord *United States v. Baires-Reyes*, 750 Fed. Appx. 548, 550 (9th Cir. 2018) (court noted that excusing the failure to obtain a warrant merely because officers had probable cause would completely obviate the warrant requirement)*; United States v. Young,* 573 F.3d 711, 723 (9th Cir. 2009) (same); *United States v. Camou*, 773 F.3d 932 (9th Cir. 2014) (same).

Unlike the inevitable discovery doctrine, which asks whether evidence would have been discovered by lawful means, the independent source doctrine asks whether the evidence *actually* was obtained independently from activities *untainted* by the initial illegality. *Lundin*, at 1161. In pertinent part, the Court granted suppression in *Lundin* stating that a rational officer who already has probable cause to obtain a search warrant will ordinarily not enter the premises without a warrant That is because the normal burden of convincing a magistrate that there is probable cause was outweighed by "the much more onerous burden of convincing a trial court that no information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it." *Lundin* at 1162, *citing Murray v. United States*, 487 U.S. 533, 540 (1988). The Government has not met its burden to show that any of the evidence obtained from any of its seizures were *actually* obtained from an independent source.

## V. **Attenuation**

The Government cited *Utah v. Strieff*, 579 U.S. 232, 238 (2016) identifying the factors in determining whether the taint from an illegal search has been attenuated. Dkt. 110 at 23. The three factors include: (1) the temporal proximity between the unlawful conduct and the discovery of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the misconduct. Id. at 239. The Government has the burden to show that the evidence is not the fruit of the poisonous tree. *United States v. Johns*, 891 F.2d 243, 245 (9th Cir. 1989); *Wong Sun v. United States*, 371 U.S. 471 (1963). The Government must show that there was a break in the chain of events sufficient to refute the inference that the search and the evidence were products of the illegal search. *United States v Twilley*, 222 F.3d 1092 (2000).

Twilley involved a traffic stop where the officer stopped the car with only one license plate. *Twilley* at 1097. Although he was informed that Michigan issues only one license plate, he continued to question all three occupants of the car until he received conflicting answers. *Id*. The officer called for backup and asked to consent to search. Except for Twilley, the two other occupants consented to the search. *Id*. A drug sniffing dog alerted to drugs and cocaine was seized. *Id*. The Court granted suppression because: "This is a classic case of obtaining evidence through the exploitation of an illegal stop, as is the case when the officer's suspicions are aroused by what he observes following the stop, and on that basis obtains . . . consent." *Id.*

In the context of this case, USPIS gained entry to the premises pursuant to a Temporary Restraining Order. The Receiver did not know of USPIS's criminal investigation and was not asked to waive Redwood's Fourth Amendment rights. As in *Twilley*, the Government the USPIS identified computers and documents that it wanted to search. This is a classic case of the exploitation of an illegal search, where the USPIS was able to exploit the illegal search to help it focus on what was on premises to be searched in detail. As to temporal proximity, the Government has not shown that the connection between the October

14

COCHELL LAW FIRM

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

12, 2018 search and the subsequent search on October 22, 2018 was sufficiently attenuated to dissipate the taint caused by the illegality. The Government asserts that the FTC litigation is an intervening circumstance that would have brought the evidence to the Department of Justice. Dkt. 110 at 24. The USPIS knew of the FTC civil investigation prior to the search and, as documented, the FTC had weekly meetings where it shared everything in its investigation with USPIS. Dkt. 79 at 4, 8. Regardless, the Government's argument that the FTC Complaint and TRO is an intervening circumstance that breaks the chain of illegality confuses the issue of attenuation with inevitable discovery. As previously stated, inevitable discovery cannot be used where, as here, the USPIS' had probable cause but failed to apply for a search warrant.

As to the third factor, the Government's conduct was a flagrant effort to use the receivership order to gain access under the pretext that the USPIS was only there to keep the peace and secure the property. To this day, that is the Government's "story" and they are "sticking to it." While it may be difficult for the Government to admit that it always intended to search for criminal evidence at Redwood, maintaining the "Peacekeeper" façade is a *flagrant misrepresentation* to this Court.

## VI.    Conclusion

For the reasons stated above, the Court should grant Defendant's Motion to Suppress Evidence.

Respectfully submitted,

*/s/ Stephen R. Cochell*
Stephen R. Cochell
SBN: 24044255
The Cochell Law Firm, P.C.
5850 San Felipe, Ste 500
Houston, Texas 77057
(346) 800-3500 – Telephone
srcochell@gmail.com

COCHELL LAW FIRM

15

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS

# SERVICE LIST

I HEREBY DECLARE THAT THE FOLLOWING COUNSEL HAVE BEEN SERVED WITH THIS REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO SUPRESS EVIDENCE THROUGH THE COURT'S ECF OR NEXT GEN ELECTRONIC FILING SYSTEM:

E. Martin Estrada
United States Attorney
Mack E. Jenkins
Assistant United States Attorney Chief, Criminal Division
Ranee A. Katzenstein
Assistant United States Attorney Chief, Criminal Division
Valerie Makarewicz
Assistant United States Attorney Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-0756 Facsimile: (213) 894-6269
E-mail: Valerie.Makarewicz@usdoj.gov

Amanda Liskamm
Director, Consumer Protection Branch
Manu J. Sebastian
Brianna M. Gardner
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
450 Fifth Street NW, Suite 6400 Washington, DC 20001
Telephone: (202) 514-0515 Facsimile: (202) 514-8742
E-mail: Manu.J.Sebastian@usdoj.gov
         Brianna.M.Gardner@usdoj.gov

*/S/ Stephen R. Cochell*
Stephen R. Cochell

COCHELL LAW FIRM

16

DEFENDANT JASON CARDIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRSS EVIDENCE BASED ON FOURTH AMENDMENT VIOLATIONS