UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | ED CV 18-2104-DMG (PLAx) | Date | May 24, 2021 |
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 1 of 8 |

Present: The Honorable **DOLLY M. GEE, UNITED STATES DISTRICT JUDGE**

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Appellant(s)
None Present

Attorneys Present for Appellee(s)
None Present

**Proceedings: IN CHAMBERS—ORDER RE RECEIVER'S APPLICATION FOR FEES AND APPROVAL OF FINAL REPORT AND ACCOUNTING RE VPL MEDICAL, INC. [580]**

Before the Court is the Receiver Robb Evans & Associates LLC's Sixth Fee Application and Application for an Order approving the Receiver's final report and accounting regarding VPL Medical, Inc. ("VPL"). [Doc. # 580.] The Application is fully briefed. In addition, as ordered by the Court on May 4, 2021, Plaintiff the Federal Trade Commission ("FTC"), the Receiver, Defendants Jason and Eunjung Cardiff, Intervenor VPL, and Non-parties Inter/Media Time Buying Corporation ("Inter/Media") and True Pharmastrip, Inc. have filed briefs on (i) whether VPL's cash funds may or must be released forthwith; (ii) which party is responsible for the Receiver's past and outstanding fees; (iii) what Receivership Assets other than VPL funds are available to pay the Receiver's fees; and (iv) any other issues pertinent to release of VPL funds or payment of Receiver's fees. [Doc. ## 579, 581-84, 586-87, 590.]

For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** the Receiver's Application.

**I.
DISCUSSION**

The Court first explains why approval of the Receiver's VPL final report and accounting is not warranted at this time, before turning to its Sixth Fee Application, who must pay its fees, and whether VPL funds held in bank accounts or in cash must be released.

**A.      Approval of the Receiver's Final Accounting**

The Receiver seeks entry of an order approving its administration of the Receivership Estate regarding VPL, discharging it from its duties regarding VPL, and releasing it from liability regarding VPL. Sixth Fee App. at 1-4 [Doc. # 580]. The Court **DENIES** this request. As described in the parties' Joint Status Report after the Supreme Court's decision in *AMG Capital Management v. FTC*, 141 S. Ct. 1341 (Apr. 22, 2021), the FTC asserts that it may still seek monetary relief on Count 13 of the Complaint, for the Cardiffs' violations of the Restore Online

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | May 24, 2021 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 2 of 8 |

Shoppers' Confidence Act ("ROSCA"), on which the Court granted summary judgment for the FTC. *See* April 30, 2021 Joint Status Report at 17 [Doc. # 574].

The Court set an expedited briefing schedule on the scope of the November 2018 Preliminary Injunction and the appropriate remedies for final judgment. [Doc. # 577.] The 2018 Preliminary Injunction remains in effect until the Court renders a decision on the parties' arguments regarding the availability of monetary relief. Because the Receivership still remains in place, and the Receiver emphasizes that "[t]here is only one receivership estate" with all funds held under one qualified settlement fund ID, *see* Receiver's Reply at 7 [Doc. # 586], the Court will not enter final approval of the Receiver's Final Accounting with respect to VPL until the entire Receivership may be accounted for, settled, and approved. In the interim, the Court will **ORDER** the Receiver to complete VPL's 2020 tax returns, after which the Receiver is relieved from the Receiver's official duties *only* with respect to VPL, but is not yet discharged from its obligation to provide a full and final accounting at the termination of the Receivership as a whole.

The Cardiffs must continue to comply with the terms of the 2018 Preliminary Injunction, including by transferring any Receivership Property to the Receiver.

**B.      Receiver's Sixth Fee Application**

The Court previously approved the Receiver's fees and costs in this action through October 31, 2020. [Doc. ## 223, 224, 307, 514, 555.] The Receiver now seeks $276,328.66 for its own fees and costs ($256,230.45 in fees and $20,098.21 in costs) and $200,989.15 in fees and costs ($198,630.00 in fees and $2,359.15 in costs) incurred by its attorney, Frandzel Robins Bloom & Csato, L.C. ("FRBC"), which the Receiver hired pursuant to the Court's 2018 Preliminary Injunction at § XVI.G. [*See* Doc. # 59.] The total amount of payment sought for the period from November 1, 2020 to April 30, 2021, is $477,317.81. *See* Sixth Fee App. at 3.

The Cardiffs and VPL now argue that after the Supreme Court's decision in *AMG*, this Court "lost all authority to award receivership fees." Cardiff Opp. to FTC at 10 [Doc. # 582]. They rely on *Netsphere v. Baron*, 703 F.3d 296 (5th Cir. 2012), to argue that when a receivership is found to be unauthorized, the Court may order the moving party—in this case, the FTC—to pay receivership costs and fees. Cardiff Opp. to Receiver at 6 [Doc. # 583].[1] This argument fails for several reasons.

---

[1] Non-party Inter/Media also requests that the Court order the FTC to reimburse the Receivership Estate for all the fees paid to the Receiver and its counsel during the Fifth Reporting Period, the Sixth Reporting Period, or thereafter. Inter/Media Response at 2 [Doc. # 581]. It argues that the FTC should have taken a "conservative approach to manage th[e] risk" of the Supreme Court reversing the Ninth Circuit's decision in *FTC v. AMG Capital Management, LLC*, 910 F.3d 417 (9th Cir. 2018). *Id.* at 5.

Case 5:18-cv-02104-DMG-PLA Document 598-1 Filed 05/24/21 Page 3 of 8 Page ID #:5200

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | May 24, 2021 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 3 of 8 |
|---|---|---|---|

First, the VPL Receivership was authorized under existing Ninth Circuit precedent and the 2018 Preliminary Injunction. [*See* Doc. # 59.] The Court therefore exceeded no authority in granting the FTC's motion to put VPL under Receivership, unlike the district court in *Netsphere*, which *sua sponte* appointed a receiver over a defendant's personal property in order to control his vexatious litigation techniques. *Netsphere*, 703 F.3d at 311.

Second, *Netsphere* cited to two older cases, *W.F. Potts Son & Co. v. Cochrane*, 59 F.2d 375, 377–78 (5th Cir. 1932), and *Porter v. Cooke*, 127 F.2d 853 (5th Cir. 1942), for the proposition that "the parties whose property has been wrongfully seized are entitled, on equitable principles, to recover costs from those who have wrongfully provoked the receivership." *Netsphere*, 703 F.3d at 313 (quoting *Porter*, 127 F.2d at 859). That assertion is not a statement that *all* parties with property under wrongful receiverships may recover costs from those who sought the receiver, but that the equities may sometimes demand such recovery. In fact, in *Netsphere*, the Fifth Circuit concluded that there is "no controlling rule on assessing costs for an improperly created receivership other than that *equity* is the standard." *Id.* at 312 (emphasis added). Equity is also the guiding principle in other circuits, including the Ninth Circuit, in which district courts have wide discretion regarding a receiver's fees. *See Drilling & Expl. Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934) ("The court appointing the receiver has full power to fix the compensation of such receiver and the compensation of the receiver's attorney or attorneys."); *see also Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000, 1003 (8th Cir. 1939) (noting that "equitable considerations create exceptions to [the] general rule" that a receiver later found to be unauthorized "must look for his fee to the party securing his appointment").

Third, the Fifth Circuit in fact ordered that, as a matter of equity, the defendant in *Netsphere* must pay reasonable receivership expenses out of the former receivership estate. *Netsphere*, 703 F.3d at 313 (charging "the current receivership fund [in the dissolved receivership estate] for reasonable receivership expenses, without allowing any additional assets to be sold, is an equitable solution"). The court noted that "the circumstances that led to the appointment of a receiver were primarily of [the defendant's] own making," and the defendant failed to show that the appointment of the receiver was in bad faith or collusive. *Id.* Moreover, the court recognized that "'there was no malice nor wrongful purpose, and only an effort to conserve property in which [the court] believed' it was interested in maintaining for unpaid attorney fees and to control [the defendant's] vexatious litigation tactics." *Id.* (quoting *W.F. Potts*, 59 F.2d at 377–78). Finally, requiring that the receiver in *Netsphere* be paid out of defendant's assets formerly in receivership was further justified because the defendant's actions "resulted in more work and more fees for the receiver and his attorneys." *Id.*

In light of the case law and as a matter of equity, the Court declines to lay the Receiver's entire bill at the FTC's feet. The Cardiffs and VPL fail to show that the FTC acted in bad faith in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | May 24, 2021 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 4 of 8 |
|---|---|---|---|

requesting that the Court impose the Receivership over VPL. According to then-existing Ninth Circuit case law and the 2018 Preliminary Injunction, the Receivership over VPL was never improper. The FTC's aggressive actions with respect to VPL are defensible, given that the Cardiffs' prior businesses resulted in summary judgment against them for violations of the FTC Act, ROSCA, Electronic Funds Transfer Act, and Telemarketing Sales Rule [Doc. # 511], and both Cardiffs remain in contempt of court [Doc. ## 417, 486]. The Cardiffs' and VPL's litigiousness has also resulted in more work and fees for the Receiver's attorney. These factors tilt the equities toward paying the Receiver fees from the Receivership Estate.

The Court agrees with the Cardiffs and VPL, however, that the equities do not require Jason Cardiff and VPL's co-owner Bobby Bedi, an innocent third party, to watch VPL's remaining funds drain entirely into the Receiver's fees and costs. In its Order re Fifth Fee Application, the Court already expressed its desire to curb some of the Receiver's inefficient and unnecessary practices. [*See* Doc. # 555.] As in the prior fee application, the Court notes some evidence of inefficiencies in the Sixth Fee Application, such as both Michael Fletcher and Hal Goldflam of FRBC billing for attending a hearing on February 5, 2021. *See* Kane Decl., Ex. 6 [Doc. # 580-1]. The Cardiffs' and VPL's Opposition to the Sixth Fee Application also notes some discrepancies with the Receiver's reported costs and legal fees. *See* Cardiffs' Opp. to Receiver at 12 [Doc. # 583]. Furthermore, although the Court requested more detailed explanations of the Receiver's costs in its Order re Fifth Fee Application, the only cost-related documents attached are mileage reimbursements for Henry Jen's and Jackie Dadbin's near-daily commutes between their homes and VPL's office in Rancho Cucamonga, CA. *See id.*, Ex. 3. Considering that Jen drove almost 80 miles, and Dadbin drove over 113 miles, *daily*, to monitor VPL, their simultaneous monitoring becomes even more inefficient, and the reimbursement sought is excessive.

This Court recognizes the Receiver and FRBC's hard work in this difficult matter, and that a better outcome for VPL may not have been possible under any circumstance. But, as a matter of equity, VPL cannot alone bear the costs of this ill-fated Receivership, particularly where there is some evidence of inefficient billing. Therefore, as it did in ruling on the prior fee application, the Court will impose a percentage cut. *See id.* at 4 (citing *S.E.C. v. Small Bus. Capital Corp.*, No. CV 12-03237 EJD, 2013 WL 4446780, at *2 (N.D. Cal. Aug. 16, 2013) (courts "endorse percentage cuts as a practical means of trimming fat from a fee application")). This time, due to the lack of supporting documentation as to its costs, the percentage cut will apply to the Receiver's costs as well as its fees.

In recognition of certain inefficiencies of the Receivership that ran contrary to the Court's order of "Receivership Lite" and in an effort to reduce the financial burden on VPL, and on Bedi in particular, the Court imposes a 40% cut as a matter of equity on all fees incurred from November 1, 2020 up to but not including April 22, 2021, the date of the *AMG* decision, for a total of

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

Case 5:18-cv-02104-DMG-PLA Document 598-1 Filed 06/24/24 Page 5 of 8 Page ID #:13042
Case 5:21-04-02104-DMG-PLA Document 593-1 Filed 05/24/21 Page 5 of 8 Page ID #:5202

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | May 24, 2021 |
|---|---|---|---|
| Title | ***Federal Trade Commission v Jason Cardiff, et al.*** | Page | 5 of 8 |

$147,307.41 in fees to the Receiver and $111,512.70 in fees to the Receiver's counsel FRBC. The Receiver will calculate the amount of its costs incurred from November 1, 2020 up to and including April 21, 2021 and discount those costs by 40%. The Receivership Estate shall pay those discounted fees and costs, and the FRBC's full costs incurred from November 1, 2020 up to and including April 21, 2021.[2]

Any of the Receiver's or FRBC's fees and costs with respect to VPL that were incurred on or after the date of the Supreme Court's *AMG* decision, shall be paid by the FTC without any percentage reduction, unless the FTC files its own objections to the amount of the fees/costs. Neither the Receiver nor FRBC will receive compensation for additional fees *from VPL* to complete the process of winding up the VPL Receivership after April 21, 2021, although they may continue to bill for their activities with respect to the Receivership established by the 2018 Preliminary Injunction over the Cardiffs' other assets. The Receiver's final request for fees and costs incurred on or after April 22, 2021, as well as its final accounting and report on the *entire* Receivership, will be heard at a later date after the Court resolves the question of what remedies remain in this case—the Court will also decide at that time who will pay the Receiver's final request for fees and costs. The FTC, Inter/Media, and any other entity may file objections to the Receiver's final fee application, accounting, and report according to the briefing schedule the Court shall set at the appropriate time.

The Receiver's request is therefore **GRANTED in part** and **DENIED in part**. The amount in fees granted to the Receiver for November 1, 2020 through and including April 21, 2021, is $147,307.41. The amount in fees granted to FRBC is $111,512.7. The total amount in fees to be paid from the Receivership Estate is $258,820.11. The Receiver shall calculate the amount of its and FRBC's costs incurred through and including April 21, 2021, which shall be discounted by 40% and paid by the Receivership Estate. All VPL-related fees incurred on and after April 22, 2021, that the Court approves after the final fee application, will be paid by the FTC.

The Court does not and need not rule at this time which party will pay for Receivership fees unrelated to VPL.

C.  **Source of Receiver's Fees**

The only significant assets remaining are funds from VPL; funds from Jason Cardiff's Biztank Group, LLC bank account, in the amount of $329,406.58; and $47,889.73 of Jason Cardiff's VPL salary withheld by the Receiver. The Receiver appears to assume that its fees for administering the receivership over VPL from November 1, 2020 to April 30, 2021 will be paid

---

[2] Because FRBC adequately documented its costs, the Court approves the full amount of FRBC's request for costs incurred through and including April 21, 2021.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | May 24, 2021 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 6 of 8 |

from VPL's funds. The Cardiffs and VPL do not appear to contest that the VPL funds, rather than the Biztank funds or Jason's withheld salary, should be used to pay the Receiver's fees. Therefore, the Court **ORDERS** the Receiver to account for payment of its fees from the funds belonging to VPL.

**D.     Release of VPL Funds**

After the Supreme Court's decision in *AMG*, the FTC asserts that it may still seek monetary relief under a different section of the FTC Act,[3] but it does not disagree that the Receivership over VPL should be wound up. April 30, 2021 Joint Status Report at 10 [Doc. # 574]. Its only argument that the Receiver should maintain control over VPL's remaining funds is to conserve resources to satisfy a money judgment that may be available under ROSCA and Section 19(b) of the FTC Act. FTC Br. at 3 [Doc. # 579]. Thus, although the Ninth Circuit vacated the Preliminary Injunction extending the Receivership over VPL and remanded the matter of the VPL Preliminary Injunction to this Court for further proceedings consistent with *AMG*, *see* Ninth Circuit No. 20-55858 [Doc. # 44], the FTC raises a plausible argument that it may still obtain a money judgment. Moreover, the 2018 Preliminary Injunction remains in place, designating as Receivership Property

> any Assets, wherever located, that are: (1) owned, controlled, or held by or for the benefit of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff, in whole or in part; (2) in the actual or constructive possession of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff; or (3) owned, controlled, or held by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned or controlled by the Receivership Entities, Jason Cardiff, or Eunjung Cardiff, including the Jurikel Family Trust, and Carols Place Trust.

2018 Preliminary Injunction at 9 [Doc. # 59].

In order to prevent any dissipation of VPL assets that belong to Jason Cardiff, the Receiver shall continue to maintain control over Cardiff's VPL salary going forward, and anything of value provided by VPL, Bedi, and/or any other person or entity to Jason or Eunjung Cardiff shall continue to be remitted to the Receiver. The Court assumes that Jason Cardiff and Bedi share VPL's control and financial benefits equally and prohibits the dilution of any of Cardiff's interest in VPL in any manner, by any means, until the remedies issue is resolved and the scope of the 2018 Preliminary Injunction and Receivership is clarified.

---

[3] The Court will rule on this argument after briefing concludes on June 11, 2021, as set forth in its May 7, 2018 Order. [Doc. # 578.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | May 24, 2021 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 7 of 8 |

Accordingly, half of the remainder of any VPL funds held in bank accounts or as cash, after paying the Receivers' fees and costs as set forth above, shall remain in the Receiver's control as Receivership Property until the Court orders otherwise. The other half, which belongs to Bedi, shall be immediately turned over to VPL's control.[4]

## II.
## CONCLUSION

The Court hereby **ORDERS** as follows:

1. The Receiver's Sixth Fee Application is **GRANTED in part** and **DENIED in part**. The amount approved for payment to the Receiver for all Receivership fees from November 1, 2020 through and including April 21, 2021, is $147,307.41. The amount of fees approved for FRBC is $111,512.7. The total amount of fees to be paid from the Receivership Estate, out of funds originally belonging to VPL, is $258,820.11. The Receiver shall also pay 60% of its costs through and including April 21, 2021, and 100% of FRBC's costs in the same time period, from VPL funds.

2. All VPL-related Receivership fees and expenses incurred on and after April 22, 2021 shall be paid by the FTC, subject to briefing on the Receiver's final fee application, accounting, and report.

3. Half of any remaining VPL funds shall be returned to VPL immediately, and half shall remain in the Receiver's control as Receivership Property.

4. The Receiver shall complete VPL's 2020 state and federal tax returns within 30 days, after which it is relieved of all duties with respect to VPL.

---

[4] At the hearing, the Receiver's counsel argued that 31 U.S.C. section 3713(b) could apply to the distribution of VPL funds to VPL. Section 3713(b) provides that "[a] representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government." 31 U.S.C. section 3713(b). It is not obvious to this Court that VPL is a creditor of the Receivership Estate, when the Receiver is merely returning funds to VPL after the termination of the Receivership over VPL. Accordingly, unless the Receiver notifies the Court of other authority to the contrary, the Court will not require the Receiver to wait until taxes are accounted for and paid—especially in light of the Receiver's counsel's representation that it is unlikely that any taxes will be owed—before returning the remaining VPL funds to their original owner.

In addition, the Receiver's Application refers to a request made by non-party Wave Crest Management, which asserts that it is a secured creditor of VPL, having loaned VPL approximately $2.92 million in April 2020. Sixth Fee App. at 15-16; *see* Kane Decl., Ex. 4. The Court agrees with the Cardiffs and VPL that it need not address Wave Crest's pre-receivership claim in this Order. *See* Cardiffs' Opp. to Receiver at 25 [Doc. # 583].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | May 24, 2021 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 8 of 8 |

5. The Receiver, the Cardiffs, and VPL shall meet and confer regarding (i) the timing of presentation of draft tax returns and supporting documents to VPL prior to filing; and (ii) the creation of an orderly process to discuss and exchange the Receiver's accounting and supplemental supporting documents.

6. Until the Court rules otherwise and pending the Court's decision on what monetary remedies remain in this action:

   a. The 2018 Preliminary Injunction [Doc. # 59] remains in effect.
   b. VPL and Bobby Bedi shall continue to remit any VPL assets belonging to Jason Cardiff to the Receiver as Receivership Property.
   c. Jason Cardiff's interest in VPL shall not be diluted in any manner, by any means.

**IT IS SO ORDERED.**