Stephen R. Cochell
Admitted Pro Hac Vice
*srcochell@gmail.com*
5850 San Felipe, Ste. 500
Houston Texas 77057
Telephone:(713) 436-8000
Facsimile: (213) 623-2000

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888)937-7555
Facsimile  (866)858-6637

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>       vs.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>             Defendant. | Case No. 5:23-CR-00021-JGB<br><br>Hearing Date: December 30, 2024<br><br>Courtroom:  1<br><br>Time:  2:00 p.m. |

1

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iii

I.     INTRODUCTION.................................................................................... 1

II.   The Civil and Criminal Proceedings Involve the Same Offenses.......................... 4

III.  The Double Jeopardy Clause Protects Against Multiple Prosecutions or
      Punishments for the Same Offense. ........................................................... 5

      A.     The *Hudson* Test Does Not Apply in This Case......................................... 7

      B.     The Act's Legislative History Amplifies the Fact that Section 13(b)
             Was Never Intended to Allow Monetary Remedies. ................................... 8

      C.     The Government Had Unclean Hands and Was Not Entitled to
             Equitable Relief. ..................................................................... 12

      D.     The FTC and the Trial Court Exceeded the Bounds of the FTC's
             Authority Violating the Doctrine of Separation of Powers.......................... 13

      E.     The *AMG* Case Applied to All Pending Cases. .................................... 15

      F. The Inherently Punitive Nature of the FTC's Unauthorized Actions............ 16

IV. Conclusion .................................................................................. 17

DEFENDANT JASON CARDIFF'S CORRECTED NOTICE OF MOTION AND MEMORANDUM  TO DISMISS
THE INDICTMENT BASED ON DOUBLE JEOPARDY

1

# TABLE OF AUTHORITIES

2

3

Cases

4

*AMG Capital Mgmt., LLC v. FTC*,

5
593 U.S. 67, 141 S. Ct. 1341 (2021) …………....………………… 1-3, 8, 10-11, 15

6
*FTC v. Credit Bureau Center*, 937 F.3d 764 (7th Cir. 2019) …………………… 10-12

7
*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*

8
591 U.S. 1 (2020) ……………………………………………………… 3, 6, 13, 15-16

9
*Ex. Part Lange*, 85 U.S. 163 (1973) …………………………………………… 5

10

11
*FTC v. H.N. Singer*, 668 F.2d 1107 (9th Cir. 1982) …………………....…… 10

12
*Green v. United States*, 355 U. S. 184 (1957) …………………………………….. 6

13

14
*Harmelin v. Michigan*, 501 U.S. 957 (1991) …………………………………… 6

15
*Harper v. Virginia Dept. of Taxation*, 509 U.S. 86 (1993) ………………………….. 15

16
*Helvering v. Mitchell*, 303 U.S. 391 (1938) …………………………………… 6

17

18
*Henderson v. United States*, 575 U.S. 622 (2015) ………………………………….. 16

19
*Hudson v. United States*,  522 U.S. 93 (1997) ……………………………… 6-7, 13, 17

20
*North Carolina v. Pearce*, 395 U.S. 711 (1969) …………………………………… 5

21

22
*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980)

23
*Tex. Ass'n Mfrs. V. U. S. Consumer Product Safety Comm'n,*

24
989 F.3d 368 (5th Cir. 2021) …………………………………………………….. 15

25
*Texas v. Cardona*, 2024 U.S. Dist. LEXIS 103452 *138 (N.D. Tex) ……………… 15

26
*United States v. La Franca*, 282 U. S. 568 (1931) …………………………………… 6

27
*United States v. Ward*, 448 U.S. 242 (1980) …………………………………………… 7

28

COCHELL
LAW FIRM

DEFENDANT JASON CARDIFF'S CORRECTED NOTICE OF MOTION AND MEMORANDUM  TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY

*Wong Sun v. United States,* 371 U.S. 471 (1963) ……………………………………… 17

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) …………………… 14

<u>Rules</u>

Fed. R. Civ. P. 11 ……………………………………………………………………… 12

<u>Constitution</u>

U.S. Const. amend. XIV, § 2 ……………………………………………….. *passim*

<u>Statutes</u>

15 U.S. Code
       § 53 – False advertisements; injunctions and restraining orders............... *passim*
       § 57b - Civil actions for violations of rules and cease and desist orders
       respecting unfair or deceptive acts or practices ………………..……………  9

Aggravated Identity Theft 18 U.S.C. § 1028A …………………..……………… 1, 5

Access Device Fraud 18 U.S.C. § 1029 ………………………………………... 1, 5

Witness Tampering 18 U.S.C. § 1512(b)(2)(B) ………………………………... 1, 5

<u>Other</u>
S. Rep. No. 151, 93d Cong., 1st Sess. 9 (1973) …………………………………  8

David M. FitzGerald, "The Genesis of Consumer Protection Remedies
Under Section 13(b) of the FTC Act" September 23, 2004 …………………….. 9-12

COCHELL
LAW FIRM

DEFENDANT JASON CARDIFF'S CORRECTED NOTICE OF MOTION AND MEMORANDUM  TO DISMISS
THE INDICTMENT BASED ON DOUBLE JEOPARDY

## JASON CARDIFF'S CORRECTED MOTION TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY

### NOTICE

PLEASE TAKE NOTICE that on December 30, at 2:00 p.m. in the courtroom of the Honorable Jesus G. Bernal, United States District Judge, Defendant Jason Cardiff, by and through his attorneys of record, Stephen R. Cochell and Allan Grant hereby move this Honorable Court for an order dismissing Counts 3 and 4 of the Indictment against Defendant as prosecution of this case subjects Defendant to double jeopardy in violation of the Fifth Amendment to the United States Constitution. If required, Cardiff requests an evidentiary hearing to further develop the record in support of this Motion.

This Corrected Motion is based upon the attached Memorandum of Points and Authorities, the Declaration of Stephen R. Cochell, all files and records in this case, and any further evidence as may be adduced at the hearing on this Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 27, 2024 when counsel for the Government indicated that the Government opposes this Motion.

Respectfully submitted,

*/s/ Stephen R. Cochell*
Stephen R. Cochell
SBN: 24044255
The Cochell Law Firm, P.C.
5850 San Felipe, Ste 500
Houston, Texas 77057
(346) 800-3500 – Telephone
srcochell@gmail.com

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant Jason Edward Thomas Cardiff ("Cardiff") moves to dismiss the Indictment because this criminal prosecution follows civil proceedings by the FTC which were punitive in character and effect thereby violating the Double Jeopardy provision to the United States Constitution.  U.S. Const. amend. V.

Cardiff was sued by the Federal Trade Commission (FTC) under Section 13(b) of the FTC Act for alleged deceptive business practices on October 10, 2018.  **Exhibit A**, Declaration of Stephen Cochell, Ex. 1 (hereafter "Cochell Dec. _").    At that time, the Court issued a Temporary Restraining Order (TRO) and an order appointing a Receiver was entered by the district court. **Exhibit A,** Cochell Dec., Ex. 2.

On October 12, 2018, the Receiver seized Redwood Scientific Technologies, Inc. ("Redwood") and Cardiff's assets with approximately $3.5 million in cash. **Exhibit A**, Cochell Dec., Ex. 3 at 9.  The Receiver did not operate Redwood but decided to liquidate the assets.  *Id*. at 5.  A preliminary injunction was entered on November 8, 2018.  **Exhibit A**, Cochell Dec. Ex. 2-A.

On April 22, 2021, the Supreme Court ruled against the FTC in *AMG Capital Management, LLC v. FTC, 593 U.S. 67 (2021)* holding that Congress never intended that Section 13(b) of the Act authorized the Commission to seek, much less obtain court-ordered monetary relief.  Shortly thereafter, on April 28, 2021, the Ninth Circuit reversed the district court's order authorizing seizure of Cardiff's assets holding that Section 13(b) did not authorize VPL's seizure. *FTC v. VPL Medical, Inc., Jason Cardiff, et.al*. No.20-55858 (9th Cir. Apr. 28, 2021).    Finally, on March 5, 2022, the district court issued final orders in the FTC litigation.  Cochell Dec., Ex. 5, 6.

Almost five years later, on January 31, 2023, Mr. Cardiff was indicted on several criminal charges, including Access Device Fraud (18 U.S.C. § 1029(a)(5)), Aggravated Identity Theft (18 U.S.C. § 1028A(a)(1)), and Witness Tampering (18

U.S.C. § 1512(b)(2)(B)). Crim, Case Dkt. 1. These criminal charges allege the same underlying conduct that formed the basis of the civil case.

The receivership imposed on Mr. Cardiff was *void ab initio* and punitive because it was predicated on authority the FTC did not possess under Section 13(b) of the FTC Act. The Supreme Court's ruling in *AMG Capital Management, LLC v. FTC* affirmed that Section 13(b) permits only injunctive relief and does not authorize monetary remedies, asset freezes, or punitive measures. Despite Congress explicitly rejecting the FTC's request to impose broad monetary relief during the legislative process, the FTC deliberately misused Section 13(b) to impose a receivership, resulting in the unlawful seizure of Mr. Cardiff's assets, including his family home, and denying him access to essential funds for living expenses, legal defense, and child support.[1] These actions, entirely lacking in statutory authority, violated separation of power principles, which render the receivership and acts of the Receiver a nullity and invalid from its inception. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1 (2020).

The receiver's actions inflicted devastating financial and personal harm on Mr. Cardiff, including the loss of his home, the destruction of his credit, and the inability to meet basic obligations for his family. **Exhibit B**, Declaration of Jason Cardiff ¶¶s 8-12 (hereafter "Cardiff Dec."). Absent Congressional authority, the Receiver's actions must be characterized as punitive rather than remedial.

The DOJ's decision to pursue criminal charges for the same alleged conduct compounds the punitive harm inflicted by the FTC's prior actions. By subjecting Mr. Cardiff to successive punishments—first through the FTC's improperly imposed receivership and now through criminal prosecution—the Government has violated the constitutional prohibition against double jeopardy. This fundamental protection

_____

[1] Alternatively, the Receivership acts seizing Mr. Cardiff's property and limiting his right to make a living are voidable.

DEFENDANT JASON CARDIFF'S CORRECTED NOTICE OF MOTION AND MEMORANDUM  TO DISMISS
THE INDICTMENT BASED ON DOUBLE JEOPARDY

ensures that individuals are not repeatedly punished for the same offense, safeguarding against government overreach and preserving the integrity of judicial proceedings. The Government's actions therefore violate the Double Jeopardy Clause, warranting dismissal of the criminal charges against Mr. Cardiff.

## II.    The Civil and Criminal Proceedings Involve the Same Offenses.

In the civil case, *Federal Trade Commission v. Jason Cardiff, et al.*, ED CV 18-2104, the FTC alleged unauthorized billing practices, fraudulent use of consumer financial information, and attempts to obstruct the FTC's investigation were raised and  summary judgment was entered against Cardiff on October 9, 2020.  **Exhibit A**, Cochell Dec. Ex. 4  at 14, 18.  The civil complaint asserted that Defendant Cardiff and Redwood engaged in unauthorized enrollment of consumers into continuity programs and utilized credit and debit card information without consent. **Exhibit A**, Ex. 1 at 6-9.[2]  The court granted summary judgment on these issues, effectively determining that Cardiff's conduct violated federal law and imposed severe consequences. **Exhibit A**, Cochell Dec. Ex. 4 at 12-13, 24-25, Ex. 5, 6.

Notably, the court-ordered receivership of Redwood Scientific Technologies, Inc., played a basic part in the FTC imposing punitive sanctions against Cardiff. The Receiver's actions included seizing the Cardiff's assets (including Redwood Scientific Technologies, Inc), selling his home, and preventing Cardiff from accessing his own funds to pay for personal and legal expenses, which had a direct and substantial punitive effect on Cardiff and his family. **Exhibit A**, Cochell Dec. Ex. 2, 2-A ; **Exhibit A**, Cardiff Dec. ¶¶s 8-9. The receivership effectively deprived Cardiff of resources to meet basic living needs, child support obligations, health insurance for him, his wife

---

[2] The charges included:  Count XI (Misrepresentation and Continuing Autoship Program) and Count XII (Unfairly Charging Consumers Without Authorization).

COCHELL
LAW FIRM

DEFENDANT JASON CARDIFF'S CORRECTED NOTICE OF MOTION AND MEMORANDUM  TO DISMISS
THE INDICTMENT BASED ON DOUBLE JEOPARDY

and young daughter, and home mortgage payments, all of which, in the absence of legitimate authority, constitute punitive measures.[3]  Id.

The criminal indictment filed in January 2023 repeats the allegations previously addressed, charging Cardiff with Access Device Fraud (18 U.S.C. § 1029), Aggravated Identity Theft (18 U.S.C. § 1028A), and Witness Tampering (18 U.S.C. § 1512(b)(2)(B)). Specifically, Counts One and Two of the indictment mirror the civil case's allegations (Counts XI and XII) regarding unauthorized billing practices and misuse of consumer financial information from January to May 2018.  Crim. Dkt. 1 at 3-4; Cochell Dec. Ex 1 at 44-45.

Appeal was lodged with the Ninth Circuit, which ultimately reversed the trial court's receivership order based on Section 13(b).  *FTC v. VPL Medical, Inc., Jason Cardiff, et.al*. No.20-55858 (9th Cir. Apr. 28, 2021).

### III.    The Double Jeopardy Clause Protects Against Multiple Prosecutions or Punishments for the Same Offense.

The Double Jeopardy Clause protects against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); see *Ex. Part Lange*, 85 U.S. 163, 168 (1973).[4] The Supreme Court has stated repeatedly that

---

[3] During approximately the last eight months of the 40-month receivership, Cardiff was employed by VPL Medical, Inc. and was paid a salary, most of which was retained by the Receiver, who allowed limited funds to pay groceries, health insurance and child support obligations.  **Exhibit A,** Cardiff Dec. at ¶8-9.

[4] In pertinent part, the Fifth Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, … nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb;… nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. (emphasis supplied)

DEFENDANT JASON CARDIFF'S CORRECTED NOTICE OF MOTION AND MEMORANDUM  TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY

1  double jeopardy protection extends to both successive criminal prosecutions and

2  other successive punishments. Double Jeopardy protection is critical to protecting a

3  defendant from the repeated "expense and ordeal and compelling him to live in a

4  continuing state of anxiety and insecurity .... " *Green v. United States*, 355 U. S. 184,

5  187 (1957). Equally important is the "Double Jeopardy Clause protects against the

6  possibility that the Government is seeking the second punishment because it is

7  dissatisfied with the sanction obtained in the first proceeding." *United States v.*

8  *Halper,* 490 U.S. 435 (1989).

9  The Supreme Court's interpretation in *Helvering v. Mitchell*, 303 U.S. 391

10  (1938), further underscores the breadth of this protection, forbidding the government

11  from *"attempting* a second time to punish criminally." *Id* at 399 (emphasis added).

12  Whether a particular punishment is criminal or civil is, at least initially, a matter of

13  statutory construction. *See Hudson v. United States*,  522 U.S. 93, 99 (1997) (*citing*

14  *Helvering*, 303 U.S. at 399.)

15  It has been a settled proposition that the Government cannot use the "civil"

16  label to escape entirely the Double Jeopardy Clause's command, as the Supreme

17  Court has recognized for at least six decades. *See United States v. La Franca*, 282 U.

18  S. 568, 574-575 (1931); *Helvering*, 303 U. S. at 398-399. This proposition is

19  extremely important because the Government has an array of civil administrative

20  sanctions at their disposal that are capable of being used to punish persons repeatedly

21  for the same offense, violating the bedrock double jeopardy principle of finality.

22  This Court must rigorously scrutinize governmental actions that exceed

23  prescribed boundaries, especially when such overreach may benefit the State unduly.

24  *See Harmelin v. Michigan*, 501 U.S. 957, 979, n. 9 (1991).  It is axiomatic that "[A]n

25  agency literally has no power to act…unless and until Congress confers power upon

26  it…[citations omitted] When an agency exercises power beyond the bounds of its

27  authority, it acts unlawfully.  The courts cannot allow the *Dep't of Homeland Sec. v.*

28  *Regents of the Univ. of Cal.,* 591 U.S. 1, 45 (2020)  The FTC's misuse of Section

DEFENDANT JASON CARDIFF'S CORRECTED NOTICE OF MOTION AND MEMORANDUM  TO DISMISS
THE INDICTMENT BASED ON DOUBLE JEOPARDY

13(b) to impose asset receivership a receivership was an unlawful exercise of its power and therefore void ab initio. *Id.*

**A. The *Hudson* Test Does Not Apply in This Case.**

In *Hudson v. United States*, 522 U.S. 93, 104 (1997), the Supreme Court adopted a two-step test in determining whether civil sanctions could constitute punishment under the Court' double jeopardy standard. *Id.* Under *Hudson*:

> A court must first ask whether the legislature, 'in <u>establishing</u> the *penalizing mechanism*, indicated either expressly or impliedly a preference for one label or the other.' Even in those cases where the legislature 'has indicated an <u>intention</u> to establish a civil penalty, courts have inquired further whether the statutory scheme was so punitive either in purpose or effect' as to 'transform what was clearly intended as a *civil remedy* into a criminal penalty.'

*Hudson*, 522 U.S. at 99 (*citing Ward*, 448 U.S. at 248(emphasis supplied).

Under the *Hudson* test, the Court must first determine whether the legislature intended to establish the "penalizing mechanism" as a "civil penalty.*" Id.* at 98 (citing *United States v. Ward*, 448 U.S. 242, 248 (1980)). This assessment can be made from the "statute on its face" and the expressed or implied intent of the legislature regarding the statutory enforcement provision. Second, if the Court determines that the penalty authorized by statute was "clearly intended" to be a civil penalty, then a Defendant has a heightened burden where only the "clearest proof" will *override Congress' intent* of a civil penalty to transform it to a criminal penalty. *Id.*

However, the *Hudson* test addresses cases where agency officials are acting within the scope of their authority. Assuming that an agency is acting within the scope of its legitimate authority, double jeopardy is then measured by determining whether a penalizing mechanism set by Congress was intended to establish a civil penalty and whether the statutory scheme transformed was so punitive in purpose or effect as to transform the civil penalty int a criminal penalty. <u>In this case, however, the FTC did not follow the Congressional scheme, but set out to subvert Congressional intent</u>. The

Court must focus on the agency's intent to determine whether an unlawful civil prosecution under Section 13(b) was then followed by a criminal prosecution for the same offenses.

In the instant case, there was never an intention to establish Section 13(b) as a penalizing mechanism. Indeed, Congress **rejected** the proposal to provide monetary remedies through Section 13(b).   Review of the *actual text* of Section 13(b) reveals that Congress merely authorized issuance of injunctive relief pending issuance of an administrative complaint.  *AMG*, 141 S. Ct. at 1348-49. In *AMG*, the Supreme Court unanimously rejected the FTC's misuse of Section 13(b) as being fundamentally incompatible with traditional equitable powers. *Id.* at 1349-52. This court is bound to the Supreme Court's holding that Congress never "clearly intended" a civil penalty ("could not have been Congress' intent…" *AMG,* 141 S. Ct. at 1349). The FTC forged ahead with their own plan to extract penalties without congressional authorization and exceeded its statute.

### B. The Act's Legislative History Amplifies the Fact that Section 13(b) Was Never Intended to Allow Monetary Remedies.

Congress rejected broad monetary relief when it amended the FTC Act in 1973 and 1975.  In sessions before Congress, the FTC testified that the agency did not have authority for retrospective relief nor civil penalties.  **Exhibit A**, Cochell Dec. at Ex. 7 9-11. S. Rep. No. 151, 93d Cong., 1st Sess. 9 (1973) (accompanying S. 356) FTC Commissioner Philip Elman complaining that "the Federal Trade Commission and its limited power to prohibit unfair and deceptive practices" "having only prospective effect."   And "no penalties**,** criminal or civil, can be imposed" and "no recovery of damages may be had under the FTC Act**.**"  *Id.* FTC Commissioner Mary Gardner Jones similarly testified that the then-current authority "is not enough to create the kind of *deterrent* that one needs" and "what we need are stronger sanctions" (emphasis supplied)   *Id*. at 10.  FTC Chairman Caspar Weinberger; "on behalf of a unanimous commission, sought new powers from Congress" including authority to assess civil

8

penalties and authority to award damages to consumers injured by acts or practices violating the law). *Id*. at 10.

Congress enacted Section 13(b) and Section 19, which granted limited and conditional monetary relief. However, the FTC was dissatisfied with the authority granted by Congress and decided to adopt a workaround to get the authority agency officials thought Congress should have granted. One of the Agency's appellate lawyers, Michael Fitzgerald, authored an article methodically detailing the FTC's deliberate plan to obtain unauthorized remedies:

1) "In response, the Commission asked Congress to give it authority to order restitution [under the Section 13(b) injunction statute]. Instead, in 1975 Congress added Section 19 to the FTC Act, authorizing the Commission to seek consumer redress in federal district court" **Exhibit A,** Cochell Dec. at Ex. 8. at 6. (Emphasis supplied)

2) The Commission found Section 19 "was inefficient and protracted" and "the Commission had begun to explore the possibility of using the permanent injunction proviso of Section 13(b) as a shortcut." *Id.* at 12.

3) The FTC knew that "neither Section 13(b) itself nor its legislative history mentions any remedy other than injunctions" *Id.* at 15. See also "Neither the text of Section 13(b) nor its legislative history disclosed a basis to argue for broad equitable relief" *Id***.** At 22.

4) The FTC predicted they were not going to succeed seeking monetary remedies under Section 13(b). ("many people within the Commission predicted they would be unsuccessful, because Section 13(b) authorized only injunctive relief") *Id***.** at 22.

5) The FTC decided to "establish" its own remedies under Section 13(b) anyways. "If the doubters had stopped the Commission from filing the cases, the Commission might never have **established** the full range of remedies available to it under Section 13(b)" *Id*. at 22 (emphasis supplied)

DEFENDANT JASON CARDIFF'S CORRECTED NOTICE OF MOTION AND MEMORANDUM  TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY

6) In executing this plan, the FTC argued the word "injunction" under Section 13(b) includes "'ancillary relief,' including restitution to the injured consumers [and] a freeze of the defendants' assets" knowing Congress rejected this relief and there was no support in the legislative history or text of the statute. *Id*. at 14.

David M. FitzGerald, "The Genesis of Consumer Protection Remedies Under Section 13(b) of the FTC Act" September 23, 2004) (emphasis supplied) (hereafter "FitzGerald Article").[5]

In *FTC v. H.N. Singer*, 668 F.2d 1107 (9th Cir. 1982), the Court granted the FTC power, the Court accepted the FTC's argument that the term "injunction" implied that the FTC could obtain the full range of equitable remedies within the powers of federal district court judges. Moreover, it strains logic to imply powers denied by Congress. Until *FTC v. Credit Bureau Center*, 937 F.3d 764 (7th Cir. 2019), none of the courts addressing Section 13(b) actually addressed the fact that Congress *refused* to grant the FTC authority to seek broad monetary relief under Section 13(b). As that Court observed, the courts "uncritically accepted" the FTC's arguments. *Credit Bureau Center*, 937 F.3d at 785. In sum, the FTC never disclosed that Congress *rejected* broad remedial relief under Section 13(b).

The FTC appealed to the Supreme Court and *AMG v. Capital Management, Inc*, 910 F.3d 417 (9th Cir. 2018) was consolidated with *Credit Bureau Center* for oral

---

[5] This paper was presented the FTC 90th Anniversary Symposium and can be accessed at:

https://www.ftc.gov/sites/default/files/documents/public_events/FTC%2090th%20Anniversary%20Symposium/fitzgeraldremedies.pdf

argument before the Court.

The Supreme Court reviewed the history leading up to the 1973 and 1975 citing the Fitzgerald article.   The court concluded that the FTC misused Section 13(b) with great frequency to bring dozens of Section 13(b) cases every year and seeking a permanent injunction and the return of illegally obtained funds[.]" ignoring the administrative process.  *Id*. at 74 (quoting respondent brief).   In pertinent part, the Court held that the language and structure of 13(b), taken as a whole, indicate that the words "permanent injunction" have a limited purpose that did not extend to the grant of monetary relief and was prospective, not retrospective. Id. at 77.   The Court also found:

> It is <u>highly</u> <u>unlikely</u> that Congress would have enacted provisions expressly authorizing conditioned and limited monetary relief if the act, via §13(b), had already implicitly allowed the Commission to obtain that same monetary relief and more without satisfying those conditions and limitations.  <u>Nor is it likely</u> that Congress, without mentioning the matter, would have granted the Commission authority so readily to circumvent its traditional § 5 administrative proceedings. *See FitzGerald* (arguing that, in the mid-1970's "no one imagined that Section 13(b) of the [FTC] Act would become an important part of the Commission's consumer protection program."

*AMG*, 593 U.S.  at 77-78 (emphasis supplied).

During oral argument in *AMG Capital Mgmt., LLC v. FTC*, Justice Breyer bluntly criticized the FTC's subverting the legislative compromise reached by Congress.[6] **Exhibit B**, Cochell Dec. Ex. 9 at 5.   In addition to the fact that Congress did not grant broad remedial authority to seek monetary relief, Justice Breyer noted

---

[6] Justice Sotomayer (at 16), Justice Breyer (at 37), and Justice Kagan (at 48) all were concerned about the number of cases filed under 13(b) that were unrelated or had not gone through the administrative cease and desist route. (Oral argument transcript can be found at: https://www.supremecourt.gov/oral_arguments/argument_transcripts/2020/19-508_3f14.pdf ).

DEFENDANT JASON CARDIFF'S CORRECTED NOTICE OF MOTION AND MEMORANDUM  TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY

COCHELL LAW FIRM

that, after the agency started using Section 13(b) to seek monetary relief, the agency initially promised to use Section 13(b) only in "exceptional cases" *Id.* at 38. The agency then reneged on its promise of a limited use of Section 13(b) into a sweeping enforcement mechanism that confirmed "your fears, business community, were absolutely right" *Id.* Justice Alito noted how the FTC "looked for a workaround" and the "Commission's attorneys thought these arguments were not going to succeed but, to their surprise, they were successful." *Id.* at 42. Justice Kavanaugh stated "that the problem [the FTC has] is the text. And in that sense, this case really is a separation of powers case."[7] *Id.* at 52-53.

The FTC deliberately set out to subvert the will of Congress and impose its own brand of justice on individuals and small businesses. This sort of conduct defines the term "bad faith" and is the sort of agency misconduct that must be punished whenever discovered because it goes right to the heart of checks and balances and separation of powers. While the Government may try to excuse the FTC by blaming the courts for failing to detect their misrepresentations about Section 13(b) (through omission), the fact is---courts rely on government agencies to tell the truth about their governing statute and not make arguments that are not grounded in law. *See* Fed. R. Civ. P. 11. As noted in *Credit Bureau Center*, the appellate courts "uncritically accepted" the FTC's arguments. 737 F.3d at 785.

**C. The Government Had Unclean Hands and Was Not Entitled to Equitable Relief.**

When the government unlawfully seeks remedies not authorized by Congress,

---

[7] In *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980), the Court held that bad faith involves "willful[] abuse [of the] judicial processes" focusing on a party's conduct and motivations rather than relying on prevailing legal interpretations. The FitzGerald article shows that FTC knew it lacked authority but proceeded anyway to "establish" a disgorgement punishment Congress plainly rejected.

DEFENDANT JASON CARDIFF'S CORRECTED NOTICE OF MOTION AND MEMORANDUM  TO DISMISS
THE INDICTMENT BASED ON DOUBLE JEOPARDY

then the Government cannot, as a matter of law, satisfy the first prong of the *Hudson* test, to show that the statute was not intended as a civil penalty. Because Congress rejected the authority sought by the FTC under Section 13(b), it is abundantly clear that any attempt by agency authorities to impose monetary penalties constituted criminal punishment. Indeed, the Government came to equity with unclean hands. In short, the Government was not entitled to equitable relief when it knew full well that the relief requested had been rejected by Congress. Imposition of a receivership over Defendant's property was the result of government misconduct and a violation of the doctrine of separation of powers.

### D. The FTC and the Trial Court Exceeded the Bounds of the FTC's Authority Violating the Doctrine of Separation of Powers.

The Supreme Court has not hesitated to address and nullify constitutional violations by agencies of separations of powers. In *Homeland Security*, the Court held that DHS can only exercise the authority Congress chose to delegate and cannot arrogate power it was not granted by Congress. 591 U.S. at 54. The case took place against the background of two dozen bills seeking to grant lawful status to millions of aliens illegally brought to this country as children. The bills failed so the Executive branch took "matters into its own hands" to create the Deferred Action for Childhood Arrivals (DACA) program. *Id.* at 39. The subsequent administration took steps to rescind the program.

The Court held that the actions to establish the program were *void ab initio* and an unlawful exercise of power. The Court held that the agency rescinded the DACA program on the basis that it was unlawful and forced the agency to continue acting unlawfully if forced to carry the program forward. *Id.* at 45, 54[8]

_____

[8] *See Wabol v. Villacrusis*, 908 F.2d 411, 424 (9th Cir. 1990) (holding that any transaction made in violation of a specific constitutional provision was void ab initio, meaning it was completely without force and effect from the beginning); *Schwartz v.*

COCHELL
LAW FIRM

In *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), on the eve of a strike against certain steel companies, an executive order was issued directing the Secretary of Commerce to take seize and take possession of most of the nation's steel mills. *Id*. at 583-584, 672-675. The seizure took place during the Korean War. The steel companies obeyed the order but brought action against the government charging that the seizure was not authorized by an act of Congress or by any constitutional provision. *Id*. at 583-584. The Government argued that the seizure was necessary to avert a national catastrophe resulting from the threatened stoppage of steel production. *Id.* The Court held that the President's seizure of steel mills was not authorized by any act of Congress or constitutional provision, rendering the seizure invalid. Id. at 588. The Court emphasized that *Congress* had the exclusive authority to make laws necessary and proper to carry out the powers vested by the Constitution. There was a stalemate in the legislative process where Congress was asked to delegate the power of seizure of the steel industry, but Congress refused to grant that authority. The Court condemned this action stating that Article II cannot be read as giving "the President not only the power to execute the laws but to make some." *Id*. at 634.

The instant case is virtually identical in the basic fact pattern in this case. Congress met to determine the nature and scope of powers to be granted the Executive Branch (i.e. the FTC). The FTC asked Congress to grant the FTC the authority to seek broad monetary relief. Congress refused to grant that authority, but the FTC arrogated that authority to substitute its legislative judgment over that of Congress. "Section 13(b)'s 'permanent injunction' language does not authorize the Commission directly to obtain court-ordered monetary relief such as restitution or disgorgement."[9]

---

*United States (In re Schwartz)*, 954 F.2d 569, 574 (9th Cir. 1992) (actions taken in violation of automatic stay are void ab initio).

[9] When the Government engages in bad faith misconduct and exceeds its statutory

DEFENDANT JASON CARDIFF'S CORRECTED NOTICE OF MOTION AND MEMORANDUM  TO DISMISS
THE INDICTMENT BASED ON DOUBLE JEOPARDY

1  *AMG Capital,* 141 S. Ct. at 1352.

2     **E. The *AMG* Case Applied to All Pending Cases.**

3     In *Harper* v. *Virginia Dept. of Taxation*, 509 U.S. 86, 97 (1993), held

4  that, when (1) the Court decides a case and applies the new legal rule of that case to

5  the parties before it, then (2) it and other courts must treat that same new legal rule as

6  "retroactive," applying it, for example, to all pending cases, whether or not those cases

7  involve pre-decision events.  *AMG* applied to this case because the FTC's case was

8  pending at the time of the Supreme Court's ruling in *AMG.*

9     In this case, the Court granted the Government's motion to seize Cardiff's

10 property based on Section 13(b).  Civil Dkt. 5 at 21-22; Civil Dkt. 29 at 4; Civil Dkt.

11 59 at 7.   However, neither the trial court nor the FTC had legitimate authority to

12 impose a receivership over Defendant.  As in *Homeland Security* and *Youngstown,*

13 the FTC was not authorized to create the law or to obtain a ruling that a statutory

14 provision rejected by Congress provided authority for an asset-based receivership.

15 The end result would be to give "the President not only the power to execute the laws

16 but to make some." Id. at 634.  In both cases, the Court found that the agency's actions

17 were *void ab initio*.

18     The issue then becomes whether a seizure of property that is *void ab initio* must

19 be considered punitive or punitive in effect. The answer is *Yes*.  <u>The FTC's intent was</u>

20 <u>to grab power and authority denied by Congress.</u>   From the FTC's perspective,

21 Congress should have given them the power, but when it was not granted, agency

22 officials set out to take the power.   This power was then misused to impose a

23

24 _____

   authority, trial courts have held the agency action *void ab initio*. *See Texas v.*
25 *Cardona*, 2024 U.S. Dist. LEXIS 103452 *138 (N.D. Tex) (illegitimate agency action
   found void ab initio on regulations "where Congress did not pass and Supreme Court
26 did not allow.") citing *Tex. Ass'n Mfrs. V. U. S. Consumer Product Safety Comm'n*,
27 989 F.3d 368, 389 (5th Cir. 2021).

28

COCHELL
LAW FIRM
DEFENDANT JASON CARDIFF'S CORRECTED NOTICE OF MOTION AND MEMORANDUM  TO DISMISS
THE INDICTMENT BASED ON DOUBLE JEOPARDY

1  receivership over Jason Cardiff and his assets.   Seizure of assets without legitimate
2  authority is proscribed by the Fifth Amendment and, when accomplished without
3  legitimate authority, is inherently punitive.  <u>This is precisely the evil condemned by
4  the Supreme Court in *Homeland Security* and *Youngstown*.</u>[10]

5        Mr. Cardiff was not the only person affected by the FTC's misconduct.
6  Hundreds of businesses were seized under Section 13(b).   However, Mr. Cardiff was
7  one of a handful of active cases when the Supreme Court unanimously rejected the
8  FTC's misuse of Section 13(b).   As Justice Breyer noted, the idea that an agency in
9  the United States of America would feel free to undermine and thwart Congressional
10 intent realizes the "worst fear" of the business community and undermines
11 constitutional checks and balances  **Exhibit A**, Cochell Dec., Ex. 9 at 38-39.    The
12 district courts stand as a bulwark against agency misconduct where agency officials
13 disregard the limits of power set by Congress and substitute their own version of a
14 statute affecting the property rights of business and individuals.

15       Without consequence, administrative agencies will feel free to subvert
16 Congressional intent and violate constitutional protections afforded by separation of
17 powers.

18 **F.  The Inherently Punitive Nature of the FTC's Unauthorized Actions**
19       The FTC's actions in seizing Mr. Cardiff's assets under a receivership without
20 congressional authorization were inherently punitive in nature because they were
21 wholly devoid of any lawful statutory basis and inflicted severe and disproportionate
22 harm to him and his family. The Supreme Court's ruling in *AMG* made clear that
23 Section 13(b) does not authorize monetary remedies, asset freezes, or any measures
24 designed to punish. Yet, the FTC flagrantly disregarded this limitation, imposing a

25 _____

26 [10] Similarly, courts must deny injunctive relief where, as here, the FTC was guilty of
27 unclean hands when it sought to exercise authority denied by Congress. *See*
   *Henderson v. United States*, 575 U.S. 622, 625 fn. 1 (2015).

28

receivership that stripped Mr. Cardiff of his life savings and retirement account, his home, destroyed his credit, and deprived him of the resources necessary to meet basic living expenses, legal defense, and child support obligations. These actions served no remedial or equitable purpose.  Instead, the FTC's intent and effect were clearly punitive, using the guise of civil authority to impose what amounts to severe criminal sanctions.

This egregious overreach is *void ab initio* because the FTC violated the bedrock constitutional principle that Congress, not executive agencies make the law. Unlike cases where *Hudson* might be invoked to determine whether a civil penalty became punitive, the FTC's conduct here was calculated to exercise the very power denied by Congress. By usurping authority explicitly denied by Congress, the FTC demonstrated willful disregard for statutory limits and constitutional protections. These actions are <u>punitive</u> in the truest sense of the word.

As with other constitutional violations, the Court must protect defendant from government misconduct and impose a sanction that will deter the FTC or other agencies from engaging in the same or similar course of misconduct. The policies set out in *Wong Sun v. United States,* 371 U.S. 471 (1963)  apply with equal force where, as here, an administrative agency has illegally claimed authority to seize property. Unless agency officials know there will be a consequence, they will not be deterred from future acts of misconduct that undermine the rule of law.

**IV. Conclusion**

For these reasons, Counts 1 and 2 of the Indictment must be dismissed with prejudice.

Dated:  December 2, 2024

By:  /s/ Stephen R. Cochell
     Stephen R. Cochell

     Attorney for Defendant
     JASON EDWARD THOMAS CARDIFF

## SERVICE LIST

I HEREBY DECLARE THAT THE FOLLOWING COUNSEL HAVE BEEN SERVED WITH THIS DEFENDANT JASON CARDIFF'S NOTICE OF MOTIO AND MOTION TO SUPPRESS EVIDENCE THROUGH THE COURT'S ECF O NEXT GEN ELECTRONIC FILING SYSTEM:

E. Martin Estrada
United States Attorney
Mack E. Jenkins
Assistant United States Attorney Chief, Criminal Division Ranee A. Katzenstein
Assistant United States Attorney Chief, Criminal Division Valerie Makarewicz
Assistant United States Attorney Major Frauds Section
1100 United States Courthouse
312 North Spring
Street Los Angeles,
CA 90012
Telephone: (213) 894-0756 Facsimile: (213) 894-6269
E-mail: Valerie.Makarewicz@usdoj.gov

Amanda Liskamm
Director, Consumer Protection Branch Manu J. Sebastian
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
450 Fifth Street NW, Suite 6400 Washington, DC 20001
Telephone: (202) 514-0515 Facsimile: (202) 514-8742
E-mail: Manu.J.Sebastian@usdoj.gov
        Brianna.M.Gardner@usdoj.gov

*/S/ Stephen R. Cochell*
Stephen R. Cochell

COCHELL
LAW FIRM

18
DEFENDANT JASON CARDIFF'S CORRECTED NOTICE OF MOTION AND MEMORANDUM  TO DISMISS THE INDICTMENT BASED ON DOUBLE JEOPARDY