Stephen R. Cochell
Admitted Pro Hac Vice
*srcochell@gmail.com*
5850 San Felipe, Ste. 500
Houston Texas 77057
Telephone:(713) 436-8000
Facsimile: (213) 623-2000

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888)937-7555
Facsimile (866)858-6637

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>Defendant. | Case No. 5:23-cr-00021-JGB<br><br>**MOTION FOR RECONSIDERATION OF COURT'S DENIAL OF JASON CARDIFF'S *EX PARTE* APPLICATION FOR AN ORDER EXTENDING INTERNATIONAL TRAVEL AND RETURNING HIS PASSPORT OR, IN THE ALTERNATIVE, TO MODIFY BOND CONDITIONS** |

COCHELL LAW FIRM

MOTION FOR RECONSIDERATION OF DENIAL OF JASON CARDIFF'S *EX PARTE* APPLICATION FOR AN EXTENSION TO ORDER EXTENDING INTERNATIONAL TRAVEL AND RETURNING HIS PASSPORT OR, IN THE ALTERNATIVE, TO MODIFY BOND CONDITIONS

Pursuant to Local Rule 7-18, Defendant, Jason Cardiff, moves for reconsideration of this Court's denial of his Ex Parte Application to Extend International Travel and Return of Passport or, in the Alternative, to Modify Bond Conditions (the "Application to Extend Travel")  LR 7-18 permits reconsideration where the Defendant did not have a chance to refute and address arguments raised for the first time in its opposition.  Fundamental fairness and due process require that a defendant be allowed a chance to reply to Government allegations of misconduct while on bond.

The Court denied Mr. Cardiff's application on the same date that the Government filed its opposition setting out arguments that were inaccurate or irrelevant.   In support of this Motion, Defendant states:

1. The Application to Extend Travel was filed on January 14, 2025 (Dkt. 162).
2. The Government filed its opposition on January 15, 2025 at 9:15 a.m. PST. (Dkt. 163).
3. On January 15, 2025 at 2:21 p.m. PST, counsel emailed Court Clerk Maynor Galvez, stating that "The Government filed an opposition making claims that we contend are inaccurate.  We anticipate filing a response to refute the claims tomorrow morning." **Exhibit A,** Declaration of Counsel ¶ 3.
4. The Court entered its Order on January 15, 2025 at 4:51 p.m. PST.  The Order stated, in pertinent part, that the Court was not inclined to grant further extensions. Dkt.165.
5. Mr. Cardiff's physicians have determined, through diagnostic testing, that there he has serious medical problems and opine that he is currently unfit to travel and recommended a 3-4 month treatment plan.  If untreated, the physicians conclude that he will face more serious health consequences if forced to travel before he receives adequate treatment. This evidence is unrebutted.  **Exhibit B**, Declaration of Jason Cardiff ¶ 7-8, Exhibit 3 (filed January 14, 2025 under seal)

6. Contrary to the Government's assertions, Defendant's symptoms began in 2016 and have escalated to a dangerous point due to Covid and other complicating factors. **Exhibit B**, Declaration of Jason Cardiff ¶ 11, 13, Exhibit 3 (filed January 14, 2025 under seal)

7. This evidence negates the Government's assertion that Mr. Cardiff's illness is contrived.

8. The unrebutted evidence is that Mr. Cardiff cannot obtain medical insurance for treatment upon his return. **Exhibit B**, Declaration of Jason Cardiff ¶ 22 (filed January 14, 2025 under seal). Further Mr. Cardiff has no Primary care physician in the United States and does not have access to any of the specialty physicians that he is in need of such as Cardiologist and Pulmonary Docter. All of which are fully engaged in Mr. Cardiff's Medical treatment in Ireland. Declaration of Jason Cardiff ¶ 23 (filed January 14, 2025 under seal)

9. Contrary to the Government's assertions, Defendant has complied with the Court's Bond Conditions. **Exhibit B**, Cardiff Declaration ¶ 5.

10. As set out below, the Government's attempted to execute an extradition warrant on January 14, 2025. This action interfered with and violated this Court's order allowing Mr. Cardiff time to obtain medical treatment. The Government's mishandling of a 15-month-old extradition request subjected Mr. Cardiff to unnecessary delays, forced him to spend an entire week addressing the issue, and inflicted unnecessary personal stress on him and his family. Furthermore, this conduct violated Mr. and Mrs. Cardiff's rights under both U.S. and Irish law.

### I. The Government Relied on an Email from a Pretrial Officer Who Provided False Information.

The thrust of the Government's response was that the Court cannot trust Jason Cardiff or the certified medical records submitted under seal. For this argument, the

Government primarily relied on an email exchange with a Pretrial Services Officer, Ryan McClellan[1], who asserts that:

> According to the case notes, Mr. Cardiff had no video calls with SrUSPO Sherrod and has only had one with me. Mr. Cardiff does check in weekly via email, however there have been no routine, daily or every other day attempts at video calls by him.

That assertion is simply false.  As set out in Mr. Cardiff's Declaration, there have been forty-four (44) emails exchanged with Officer McClellan including fifteen emails referring to arranging a video conference, two videos created by Mr. Cardiff that he sent to Mr. McClellan, and thirty (30) requests and questions asking if Officer McClellan needed anything or required information.  **Exhibit B**, Declaration of Jason Cardiff ¶ 6.  There are two sets of exhibits.  **Exhibit B-1** is a set of emails from Jason Cardiff to Officer McClellan and **Exhibit B-2** is a set of emails from Officer McClellan to Jason Cardiff.  Significantly, Mr. McClellan never followed up on any of Mr. Cardiff's requests for a video call.  Id.

Officer McClellan responded to only four (5) emails from Defendant, two of which were "out-of-office" notices. **Exhibit B** ¶ 6.  It is readily apparent from review of Mr. Cardiff's emails that he consistently attempted to conduct video calls with Officer McClellan, but Mr. McClellan was unresponsive and apparently uninterested in working with Mr. Cardiff to comply with Court's December 20, 2024 Order.  The suggestion that Defendant did not frequently check in with Officer McClellan is unfounded.  The issue is not trusting Mr. Cardiff with complying with a court order—it is whether the Court should trust Officer McClellan for his failure to report events correctly.

The Government also suggests that Mr. Cardiff's medical records cannot be trusted.  However, the most recent set of records are *certified* in accordance with Irish

---

[1] Counsel is informed that Officer McClellan was relatively new to Pretrial Services. Officer Jack Sherrod, his predecessor reportedly is going to retire.  Exhibit D ¶ 3.

law. The symptoms experienced by Mr. Cardiff date back to 2016 and are documented by different physicians. **Exhibit B,** Cardiff Declaration. ¶ 8. A copy of records from San Antonio Hospital confirming this history were received and will be submitted under seal with this motion. **Exhibit B-3,** Cardiff Declaration. As evidenced in prior travel applications, Officer Jack Sherrod had no problems with Mr. Cardiff's compliance with pretrial conditions. The Government also cites to the FTC civil case and other events predating the Court's imposition of bond in **this** case. This argument was irrelevant. The bond was granted notwithstanding and with full knowledge of the FTC case.

The real issue before the Court was whether Mr. Cardiff complied with the bond conditions in **this** case.

**II. The Government's Attack on the Medical Records is Unsupported.**

Other than its unsupported arguments, the Government's assertion that the Court disregard *certified* medical records is without merit. In the absence of contrary medical evidence, the Court must accept the doctors' evaluation and treatment plan as appropriate. *See Saheed v. Colvin*, 2016 U.S. Dist. LEXIS 152871 *18-19 (E.D. Cal.)

**III. Defendant Sought Treatment at the MDC for Pulmonary Symptoms**

The Government asserts that Defendant told Pretrial Services that he was in good health. Dkt. 163 at 2. However, Defendant twice sought treatment from MDC physicians for his pulmonary symptoms while awaiting bond. **Exhibit B**, Cardiff Declaration ¶ 7. Mr. Cardiff was given incorrect medication for the same pulmonary symptoms that have progressed. Defendant does not have quick access to these records, but they exist and are easily accessed by the DOJ.

**IV. The Government Attempted to Execute an Extradition Warrant on January 14, 2025 Under Suspicious Circumstances New Constitutional violations**

The Government made much of the fact that Mr. Cardiff's refused to provide

5

medical records to the Government.  This refusal was based on his distrust of the Government.  On January 14, 2025, agents of the Irish Garda confronted Mr. Cardiff in the parking lot of *his home* in Dublin (blocking his exit) and told him that they wanted to arrest him on an extradition warrant issued by the Government on October 23, 2023, almost two months before his arrest at LAX on this case. **Exhibit B**, Cardiff Declaration ¶ 10.   Mr. Cardiff showed the agents a copy of this Court's Order permitting travel.  Detective Sergeant Murray told Mr. Cardiff that he could either be arrested and go with them or he could surrender his passport and his wife's passport. Mr. Cardiff surrendered the passports. Id.  Mr. Cardiff is suffering from serious health problems and his wife recently suffered a heart attack.  Id.  Both were extremely upset and humiliated at being confronted with a warrant and possible arrest.   Fortunately, his eleven-year old daughter was not present to witness this scene.  Id.

The Government never disclosed the existence of the extradition request and warrant to Defendant or his counsel in this case.  **Exhibit A**, Cochell Declaration ¶ 2. Id. at ¶ 3. On January 14, 2025, counsel notified Manu Sebastian and Valerie Makarewicz by email advising them about the Garda's apprehension of Mr. Cardiff and provided them with the name of Detective Sergeant Murray. On January 15, 2025 around 10:30 a.m. PST, counsel requested a copy of the extradition order and asked the Government to participate in a phone call to discuss the extradition warrant. The Government failed to respond to the request.  **Exhibit A**, Cochell Declaration ¶ 3.

Trust is a two-way street.  The Court should *not* trust the Government to keep Mr. Cardiff's medical records in confidence. Indeed, the DOJ would likely distribute highly sensitive medical records to any government agency making a request.  See 44 U.S.C. Sec. 3510 (requires agencies to grant access if the disclosure is not inconsistent with applicable law). <u>Moreover, the records are unrelated to the merits of this case.</u> After a number of travel requests—<u>all opposed by the Government</u>---it is unlikely that government prosecutors "*forgot*" that they had an extradition warrant pending in Ireland.  It is equally unlikely that the Garda sat on an extradition warrant for fifteen

months and simply woke up to execute a warrant the day after counsel asked the Government to concur in this motion to extend travel. However, it is likely that someone from the Government gave the Garda direction to execute the warrant on January 14, 2025. From Defendant's perspective, the attempt to serve a fifteen-month old extradition warrant appears to have been a deliberate response to Mr. Cardiff's travel to Ireland.

Garda's conduct was undertaken at the request and direction of the Department of Justice and interferes with and violates the Order authorizing Defendant to travel to Ireland. Defendants on bond are entitled to protection from this Court. Defendant recognizes that the issue of executing the extradition warrant cannot be addressed in a motion to extend travel. However, the Government's conduct does call for discovery of the facts and the who, what, when and how this could have happened to ensure that Mr. Cardiff is not subjected to other unnecessary attempts to arrest him.[2]

**V.    Conclusion**

The Government's opposition rests almost entirely on Ryan McClellan's inaccurate statements leading the Court to conclude that Defendant failed to communicate with Pretrial Services and thereby violated the Court's December 20, 2025 Order. Clearly, Defendant did his best to comply with the Court's order. <u>Mr. McClellan was either too busy or uninterested in replying to several dozen emails from Mr. Cardiff updating or attempting to connect and update and videoconference with Mr. McClellan.</u> Further, it is not Mr. Cardiff's fault if pretrial services ignores his numerous requests for video conferencing. The bottom line is that: (1) Mr. Cardiff complied with the FTC Order disclosing where he lived to the Government; (2) has a

---

[2] Mr. Cardiff is also skeptical of the Government based on his experience with the Federal Trade Commission and their misuse of Section 13(b). As set out in his motion to dismiss the indictment, Defendant sets out the fact that Congress denied the FTC the very authority to seek monetary damages but did so anyway. Dkt. 135 at 7-15.

7

JASON CARDIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER EXTENDING INTERNATIONAL TRAVEL AND RETURNING HIS PASSPORT

home in Dublin, where he lives with his wife and child; (3) has a business in the United States; and (4) has complied with the Court's bond conditions and travel order. There is also a $530,00 appearance bond that is secured by real property. Contrary to the Government's assertions, Mr Cardiff is not a flight risk.

The Court's denial of an extension of travel or modification of bond will, in the judgment of medical professionals, likely result in physical harm to Mr. Cardiff. An accused should not be forced to travel where, as here, the *objective* medical evidence shows that travel would result in: (1) serious medical harm; and that (2) a 3-4 month course of treatment will enable Defendant to travel and safely return to the United States for trial. The Government's argument regarding the "veracity" of medical records is no substitute for competent evidence.

The Court should reconsider its denial and grant Mr. Cardiff's travel request.

Dated: January 16, 2025

By: /s/ Stephen R. Cochell
Stephen R. Cochell

Attorney for Defendant
JASON EDWARD THOMAS CARDIFF

## SERVICE LIST

I HEREBY DECLARE THAT THE FOLLOWING COUNSEL HAVE BEEN SERVED WITH THIS DEFENDANT JASON CARDIFF'S NOTICE OF MOTIO AND MOTION TO SUPPRESS EVIDENCE THROUGH THE COURT'S ECF O NEXT GEN ELECTRONIC FILING SYSTEM:

E. Martin Estrada
United States Attorney
Mack E. Jenkins
Assistant United States Attorney Chief, Criminal Division
Ranee A. Katzenstein
Assistant United States Attorney Chief, Criminal Division
Valerie Makarewicz
Assistant United States Attorney Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-0756 Facsimile: (213) 894-6269
E-mail: Valerie.Makarewicz@usdoj.gov

Amanda Liskamm
Director, Consumer Protection Branch
Manu J. Sebastian
Brianna M. Gardner
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
450 Fifth Street NW, Suite 6400 Washington, DC 20001
Telephone: (202) 514-0515 Facsimile: (202) 514-8742
E-mail: Manu.J.Sebastian@usdoj.gov
         Brianna.M.Gardner@usdoj.gov

                                               */S/ Stephen R. Cochell*
                                               Stephen R. Cochell

9

JASON CARDIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER EXTENDING INTERNATIONAL TRAVEL AND RETURNING HIS PASSPORT