Stephen R. Cochell
Admitted Pro Hac Vice
*srcochell@gmail.com*
5850 San Felipe, Ste. 500
Houston Texas 77057
Telephone:(713) 436-8000
Facsimile: (213) 623-2000

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888)937-7555
Facsimile (866)858-6637

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>　　　　Defendant. | Case No. 5:23-cr-00021-JGB<br><br>**JASON CARDIFF'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF EXTRADITION FILES AND RELATED COMMUNICATIONS** |

COCHELL
LAW FIRM

1

## NOTICE OF MOTION

Please Take Notice that, on March 10, 2025, at 2:00 p.m., as soon thereafter as it may be heard, in the courtroom of the Hon. Jesus G. Bernal located at 3470 Twelfth Street, Courtroom 1, Riverside, CA 92501, Defendant Jason Cardiff will move the Court for an order compelling production of extradition files and related communications.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument and evidence as may be presented at the hearing of this motion.

Dated: February 10, 2025                Respectfully submitted,

/s/ Stephen R. Cochell
Cochell Law Firm, P.C.
5850 San Felipe Ste. 500
Houston Texas 77057
(832)800-3500

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     Introduction

Defendant, Jason Cardiff contends that his Fourth Amendment right against illegal search and seizure were violated when he was arrested on January 14, 2025 by the Garda in Dublin Ireland. The extradition warrant was obtained on or about October 23, 2023. Thirteen months later, the Garda arrest Mr. Cardiff outside his house literally a day after Defendant's counsel asked the Government to confer about extending his travel in Ireland for medical reasons. The prosecutors *ignored* Defendant's counsel's reasonable requests for more information and whether they directed the arrest. In short, the circumstantial evidence shows that the arrest by the Garda was at the direction of the prosecutors in this case and that the arrest violated his Fourth Amendment rights and interfered with and/or violated this Court's Order of December 20, 2025 authorizing Mr. Cardiff to travel to Ireland. The duty to obey court orders applies equally to both the Government as well as Mr. Cardiff.

Defendant requests this Court to issue an order that the Government: (1) produce records relating to Mr. Cardiff's arrest by the Garda in Dublin Ireland on January 14, 2025 despite the fact that this Court issued an order authorizing Mr. Cardiff to be in Dublin, Ireland; and (2) provide a full report of why an arrest was made by Garda and the Government's participation either directing or authorizing the arrest. The production of documents will either support or not support an order for sanctions against the Government for violation of Mr. Cardiff's right against illegal arrest and seizure of passports and interference with this Court's order allowing Mr. Cardiff to be at his home in Dublin, Ireland.

The Court determined that the extradition warrant executed on January 14, 2025 was cancelled and then denied Defendant's Ex Parte Application to Restrain Government From Further Violations of Defendant's Fourth Amendment Rights; to Produce Extradition Records and Related Communications and to Set Expedited

Briefing Schedule. The Court authorized counsel to file a motion to be heard on the regular motions calendar. Dkt. 189

The timing of the January 14, 2025 arrest and the Government's refusal or failure to explain to counsel why Mr. Cardiff was arrested raises a serious question as to whether the prosecutors were involved in directly or indirectly directed the arrest. Despite requests for an explanation for the arrest starting on January 14, 2025, the Government waited until January 30, 2025 to provide any information to counsel for Defendant. In part, the Mr. Sebastian represented that the "warrant was open and once that happened, it was withdrawn." Hearing Transcript at 4-5. He further stated that: "the Government did not go out and request that he be arrested in January." Id. This general denial, however, could have been made two weeks before when the incident occurred. Good cause exists to compel the documents that it could have easily been produced before the January 30, 2025 hearing or before the instant motion was filed.

**II.   Statement of Facts**

In support of his motion, Defendant states:

1. On or about October 23, 2023, an extradition warrant was reportedly obtained by the federal government. **Exhibit A**, Declaration of Jason Cardiff ¶ 3.
2. On or about November 21, 2023, Jason Cardiff was taken into custody by authorities when he entered the United States to attend his father's funeral.
3. On November 30, 2023, the Court issued bond in this case. Dkt. 21.
4. From the date he obtained bond until this Court's recent order denying extension of travel,[1] Mr. Cardiff scrupulously complied with all bond conditions and traveled for work related event.

---

[1] The Court denied Mr. Cardiff's most recent request to extend travel or to modify bond conditions. Mr. Cardiff filed a Status Report on January 24, 2025. Dkt. 178.

4

5. On July 25, 2024, the Court entered an Order allowing Mr. Cardiff to travel to Ireland to visit his family after his wife sustained a heart attack. Mr. Cardiff returned as directed. Dkt. 94.

6. On October 31, 2024, the Court entered an Order allowing Mr. Cardiff to visit his home and family. During this occasion, Mr. Cardiff unexpectedly became ill and sought treatment through the Irish medical system. The Court granted extensions of travel to allow Mr Cardiff to obtain medical testing and treatment. Dkt. 31, 133, 151.

7. On each occasion, the Government opposed any travel for Mr. Cardiff.

8. On January 12, 2025, counsel contacted the Government prosecutors seeking their concurrence that Mr. Cardiff was going to ask the Court for an additional extension for travel or modification of bond to allow Mr. Cardiff to obtain treatment for his medical condition. Counsel noted that the request was accompanied by further medical evidence from Dr. M.S. **Exhibit B**, Declaration of Stephen Cochell ¶ 2, Ex. 1.

9. On January 13, 2025, counsel is informed that a directive was sent by the U.S. Consulate in Dublin to the Ireland's Garda to execute the extradition warrant obtained by the Government on October 23, 2023. **Exhibit A,** Jason Cardiff Dec., Exhibit 1.

10. On January 14, 2025, the Garda entered Mr. Cardiff's property blocking his exit. Three Garda agents rushed and surrounded him. They demanded that Mr. Cardiff turn over his car keys, and he did. One of the agents, *Detective Sergeant Murray told Mr. Cardiff that he was being arrested for extradition*. Mr. Cardiff advised them that he was in Ireland pursuant to a lawful court order and that he had a criminal case pending against him the U.S. **Exhibit A,** Jason Cardiff Dec. ¶ 3.

11. During the discussion, Detective Sergeant Murray showed Mr. Cardiff what he called the "extradition file." The extradition file was dated October 23, 2023 before Mr. Cardiff was taken into custody in the United States. **Exhibit A,** Jason

5

1  Cardiff Dec. ¶ 4. Mr. Cardiff asked why a year-plus warrant was being used now.
2  Detective Sergeant Murray told him that he did not know but that he got the file
3  in October, 2023 and did nothing with it until he was contacted by the U.S.
4  Embassy on January 13, 2025 asking him to execute the warrant. *Id.*

5  12. The agents reviewed the December 20, 2025 Order permitting international
6  travel. **Exhibit A,** Jason Cardiff Dec. ¶ 4. The agents gave Mr. Cardiff the
7  choice to either be taken to Irish jail, or that he give the agents his passport as
8  well as his wife's passport. Id. Under these circumstances, Mr. Cardiff had no
9  choice but to surrender the passports, which he did, but under duress. The agent
10 released Mr. Cardiff allowing him to remain with his wife and eleven year old
11 child. *Id.*

12 13. On January 14, 2025, counsel emailed Valerie Makarewicz and Manu Sebastian
13 asking for production of the extradition file. **Exhibit B**, Declaration of Stephen
14 Cochell ¶ 4, Exhibit 2.

15 14. On January 15, 2025, counsel emailed Ms. Makarewicz and Mr. Sebastian to talk
16 about Jason Cardiff's arrest and the extradition warrant. **Exhibit B**, Declaration
17 of Stephen Cochell, Exhibit 2

18 15. The Government did not respond to any of counsel's requests that they provide
19 a copy of the extradition file or to discuss the extradition. **Exhibit B**, Declaration
20 of Stephen Cochell ¶ 6

21 16. On January 15, 2025, Jason Cardiff called the U.S. Embassy and asked about
22 his extradition. He received a letter from Andrew Kopiak, with the U.S. Embassy
23 stating that: "As soon as we have any update that we can provide you regarding
24 the status of the extradition request that <u>appears to be still on file,</u> <u>we will do so</u>.
25 **Exhibit A**, Jason Cardiff Dec. ¶ 5. Ex. 1 (emphasis supplied)

26 17. During a discussion regarding possible resolution of the case on January 24,
27 2025, Ms. Makarewicz stated that she was going to ask the Court to impose the
28 Fugitive Disentitlement doctrine and ask the Court to refuse to entertain

arguments by counsel on the motions set for oral argument on Thursday, January 30, 2025. Exhibit B, Declaration of Counsel, ¶ 7. Counsel never heard of this doctrine and found that there is a statute, 44 U.S.C. § 2466. *Id.* This act applies only to civil proceedings involving forfeitures and has nothing to do with criminal proceedings, where defendants have a right to effective counsel and a right to oppose the Government's allegations. Id. As set out in his Status Report, Mr. Cardiff does not intend to become a fugitive but is following the directives of his physicians to preserve his health and safety so that he can return and defend himself at trial. Dkt. 178.

18. On January 25, 2025, counsel sent the Government prosecutors an email stating, in pertinent part, that:

> We also note that we have yet to receive a response from you regarding the active extradition warrant issued in October 2023 and executed on January 14, 2025 after we made our January 12, 2025 request for concurrence on Mr. Cardiff's Ex Parte Motion to Extend Trial or to Modify Bond Conditions. Mr. Cardiff has been informed by Garda that they received instructions from the U.S. State Department on January 13, 2025 to execute the warrant. <u>We do not believe that this is just coincidence</u>. We are requesting all communications once again regarding these issues. Mr. Cardiff was unlawfully blocked at his house by Garda at the U.S. Government's instruction, and his U.S. passport and his wife's U.S. passport were taken. These actions were in violation of the Court's Order allowing Mr. Cardiff to be at his home in Dublin. These actions violated the Cardiffs' constitutional rights. We again request that you provide a substantive response to this matter.

**Exhibit B**, Declaration of Stephen Cochell, Exhibit 4 (emphasis supplied)

19. Given the timing of the arrest, it is difficult to believe that the Government was not deliberately trying to intimidate Jason Cardiff by ordering an arrest in violation of this Court's order and then threatening to prevent him from challenging government actions that he believes constitute overcharging or overreaching by the Government. Regardless of what the Government thinks

1 Mr. Cardiff has done, he is entitled to the full protections of this Court's order and the United States Constitution.

20. Counsel sent an email dated January 26, 2025 stating that if he did not receive a response to the above emails, he would have to take action to protect his clients' rights. **Exhibit B**, Declaration of Stephen Cochell, Exhibit 4.

21. On January 30, 2025, the Court was set to hear two motions filed by Mr. Cardiff. The Court announced that it would take the motions under advisement. The Court also asked the Government about the arrest in Ireland and whether the warrant was cancelled.

22. The Court asked: "So what is the Government's understanding of what's happening in Ireland with the warrant that was executed but not executed stemming from 2023?" Jan. 30 Hearing Transcript at 4. In response, Mr. Sebastian made the following representations to the Court:

> MR. SEBASTIAN: Your Honor, so there was an extradition request that was submitted in October of 2023, like counsel had said, but Mr. Cardiff was arrested at LAX and that was unexpectedly, so the Government did not go out and request that he be arrested again in January. The October 2023 extradition warrant was open and once what occurred in Ireland occurred, it was withdrawn. My understanding is that Mr. Cardiff was not arrested in Ireland, that this was an amicable situation where they went to his home, they talked it over with him, and they ended up leaving without any kind of arrest. Id. at 4-5.

23. The Court indicated that counsel should file the motion on the regular motions calendar.

24. Mr. Sebastian's comments ignored the fact that the three Garda agents blocked Mr. Cardiff in his driveway preventing his exit, took his car keys, surrounded him while that told him they were going to arrest him on an extradition warrant. Exhibit A, Cardiff Dec. ¶ Mr. Cardiff was not free to leave and had to either cooperate with the agents and was required to either surrender both his passport

8

and his wife's passport, or be taken to Garda jail. Under the circumstances, Mr Cardiff was arrested, then released on condition that he surrender his and his wife's passport.

### III. The Government Acted Without Authority to Direct the Arrest of Mr. Cardiff.

25. The arrest and seizure of passports based on a stale and outdated warrant violated Mr. Cardiff's Fourth and Fifth Amendment rights. The extradition warrant should have been but was not cancelled when Mr. Cardiff was placed on bond. Mr. Cardiff was authorized by this Court to be in Ireland on January 14, 2025. There was no lawful reason for the Government to execute the warrant against Mr. Cardiff on January 14, 2025. The Fourth Amendment protects U.S. citizens while overseas. *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990). Indeed, the Fourth Amendment prohibits unreasonable searches and seizures regardless of whether the evidence is sought to be used in a criminal trial. *Id* at 264. A violation of the amendment is accomplished at the time of an unreasonable governmental intrusion. *See Reid v. Covert*, 354 U.S. 1 (1957) (American citizens tried by U.S. military authorities in a foreign country were entitled to constitutional protections).

26. The Government's failure or refusal to provide some explanation for the extradition strongly suggests that the Government was unhappy with Mr. Cardiff's January 12, 2025 request for concurrence in asking the Court for extended travel and decided to take matters into their own hands. At the very least, the Government should be required to explain why Mr. Cardiff was arrested, their role in directing his and produce documents in the Government's possession that show who was involved in directing an arrest on a thirteen month warrant that should have been, but was not cancelled when Mr. Cardiff was arraigned and release on bond.

27. The Court has inherent authority to order production of documents relating to interference with the Court's Order authorizing Mr. Cardiff to be at his home in Dublin, Ireland. Federal courts have inherent powers to manage their own proceedings and control the conduct of persons appearing before them. *Chambers v. NASCO, Inc.* 501 U.S. 32, 43 (1991).

WHEREFORE, Defendant requests this Honorable Court issuing an order to the United States requiring it to: (a) produce all Extradition files and communications related to any Extradition requests as to Jason Cardiff; and (b) communications relating to government officials directing Defendant's arrest and extradition in Ireland at any time, including but not limited his arrest on or about January 13-14, 2025. This includes emails, text and any other means of communications, with all Government agencies including but not limited to the U.S. Department of State, Department of Justice, Federal Trade Commission, U.S. Postal Inspection Service and the U.S. Attorney's office related to the extradition request as to Jason Cardiff; Defendant also requests the Court require the Government prosecutors to file a report to the Court setting out why an arrest was effected on January 14, 2025 within 7 days of this order.

Dated: February 10, 2025

By: /s/ Stephen R. Cochell
Stephen R. Cochell

Attorney for Defendant
JASON EDWARD THOMAS CARDIFF

# SERVICE LIST

I HEREBY DECLARE THAT THE FOLLOWING COUNSEL HAVE BEEN SERVED WITH THIS DEFENDANT JASON CARDIFF'S NOTICE OF MOTIO AND MOTION TO SUPPRESS EVIDENCE THROUGH THE COURT'S ECF O NEXT GEN ELECTRONIC FILING SYSTEM:

E. Martin Estrada United
States Attorney Mack E.
Jenkins
Assistant United States Attorney Chief, Criminal Division
Ranee A. Katzenstein
Assistant United States Attorney Chief, Criminal Division
Valerie Makarewicz
Assistant United States Attorney Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-0756 Facsimile: (213) 894-6269
E-mail: Valerie.Makarewicz@usdoj.gov

Amanda Liskamm
Director, Consumer Protection Branch Manu J. Sebastian
Brianna M. Gardner
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
450 Fifth Street NW, Suite 6400 Washington, DC 20001
Telephone: (202) 514-0515 Facsimile: (202) 514-8742
E-mail: Manu.J.Sebastian@usdoj.gov
          Brianna.M.Gardner@usdoj.gov

*/S/ Stephen R. Cochell*
Stephen R. Cochell