Stephen R. Cochell
Admitted Pro Hac Vice
*srcochell@gmail.com*
5850 San Felipe, Ste. 500
Houston Texas 77057
Telephone:(713) 436-8000
Facsimile: (213) 623-2000

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888)937-7555
Facsimile  (866)858-6637

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 5:23-CR-00021-JGB |
|---|---|
| Plaintiff, | |
| vs. | DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF JASON CARDIFF'S MOTION TO COMPEL PRODUCTION OF EXTRADITION FILES AND RELATED COMMUNICATIONS |
| JASON EDWARD THOMAS CARDIFF | |
| Defendant | |

COCHELL LAW FIRM

i

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES ............................................................................................ i

REPLY MEMORANDUM IN SUPPORT OF JASON CARDIFF'S MOTION TO COMPEL PRODUCTION OF EXTRADITION FILES AND RELATED COMMUNICATIONS ........................................................................................... 1

I.  Unsworn Statements Cannot Be Taken at Face Value ......................................... 2

II. The Fourth Amendment Protects U.S. Citizens Overseas .................................... 5

III. The Government's Mischaracterization of Mr. Cardiff as a Fugitive. .................. 7

IV. Prosecutorial Overreaching-The Defendant's Perspective ................................... 8

V.  CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

**Case Law**

*AMG Capital Management v. FTC* 593 U.S. 67 (2021) ……………………………….. 9

*Andersen v. United States*, 298 F.3d 804 (9th Cir. 2002) ……………………………… 8

*Chambers v. NASCO, Inc*, 501 U.S. 32 (1991) ……………………...………………. 1

*Dubin v. United States,* 599 U.S. 110 (1023) ………………………..………………. 9

*Hoffman v. Halden*, 268 F.2d 280 (9th Cir. 1959) …………………………………… 8

*United States v Aguilar*, 883 F.2d 662 (1989) …………………………………… 9-10

*United States v. Barona*, 56 F. 3d 1087 (9th Cir. 1995) …………………………... 5-6

*United States v. Lee*, 723 F.3d 134 (2d Cir. 2013) …………………………….…… 6

U*nited States v. Kojayan*, 8 F.3d1315 (9th Cir. 1993) ……………………………….. 7

**Constitution**

*U.S. Const. amend. IV.* ……………………………..………..... 1-3, 5-6, 8, 11

**Statutes**

Speedy Trial Act, 18 U.S.C. § 3161 ……………………………………….. 7-8

# REPLY MEMORANDUM IN SUPPORT OF JASON CARDIFF'S MOTION TO COMPEL PRODUCTION OF EXTRADITION FILES AND RELATED COMMUNICATIONS

The Government's response fails to address the key issues where, as here, the United States requested and directed the Irish Garda to arrest Defendant in violation of the Fourth Amendment and a Court order authorizing Defendant to be at his home in Dublin Ireland while obtaining medical treatment.

The issue is not discovery under Rule 16 or *Brady v. Maryland*—it is about Government agents directing the Irish Garda to execute an invalid warrant violating the Fourth Amendment and interfering with an order issued by this Court. The Court should hold the Government as well as Defendant accountable for violations of its orders. It is well within the Court's inherent authority to order any party to produce documents that will show a violation of the Court's orders. *Chambers v. NASCO, Inc*, 501 U.S. 32, 43 (1991).

Prior to filing this motion, Defendant's counsel asked for an explanation and documents to support that explanation. The Government refused to provide any explanation. If the Government had nothing to hide, their refusal to provide any explanation is inexplicable. But for filing of this motion seeking discovery of the documents that would reveal what happened and why, the Government would have simply refused to provide any information that might show the prosecutors were involved in directing Mr. Cardiff's arrest.

The Government belatedly offered *unsworn* and extremely vague representations to the effect that the Government did not go out and request that Defendant be arrested in January. Dkt. 203-1 at 4. The Government further asserted that the January 14, 2025 was an amicable situation… ending up without any kind of arrest." Id. Measured against this vague claim, Defendants' declaration states that he was rushed by three Garda officers who blocked his exit and told he was being arrested, in custody for an hour and a half and later told that he could either go to jail or surrender his passport and

his wife's passport. Dkt. 200-1 ¶ 5. Simply stated, Defendant was arrested and released only after the Garda seized the passports.

<u>Even if Defendant had not been arrested, why would the Government stonewall any attempt by Defendant or this Court to confirm the accuracy of the Government's statements?</u> The only possible conclusion is that the Government prosecutors have something to hide.

Defendant filed a motion contending that the Government deliberately or indirectly violated his Fourth Amendment and violated the Court's travel order. Other than argument and unsworn and vague statements, the Government has not raised any valid reason or objection as to why the documents should not be produced.

## I.   <u>Unsworn Statements Cannot Be Taken at Face Value</u>

The Government's unsworn statements in opposition to discovery of the facts surrounding Defendant's arrest by Irish Garda on January 14, 2025 cannot be accepted at face value. The facts are undisputed:

(1) The Court issued an order authorizing Mr. Cardiff to be in Dublin Ireland;

(2) There was an arrest of Mr. Cardiff on January 14, 2025 which interfered with the Court's order;

(3) The Government concedes that the extradition file was dated October 2023;
(4) A warrant for arrest was part of the extradition package;

(5) On January 13, 2025, counsel for Defendant asked the Government prosecutors if they would concur in Defendant's request for an extension of travel for his medical treatment;

(6) Notwithstanding the fact that the warrant had been sitting on Garda's desk for thirteen months, their decision to arrest Mr. Cardiff was simply coincidence and not motivated by a request from the United States Government.

The notion that the Garda personnel simply woke up one day and decided to arrest Defendant on January 14, 2025 defies logic and common sense. *Simply stated*, s*omeone from the United States Government requested execution of the warrant*.

1 Furthermore, the Government's representation as to the facts of the arrest are, at
2 best, vague and ambiguous.  Ms. Makarewicz advised that Mr Sebastian had recently
3 spoken to the Office on International Affairs about the warrant that was executed.  Dkt.
4 203-1 at 5:17-18.  In turn, Mr. Sebastian stated that the Government did not request that
5 Mr. Cardiff be arrested in January, but provided no facts to support his assertion to the
6 Court.. Id. at 5:24-25.  It defies logic that Detective Sergeant Murray sat on a warrant
7 for thirteen months and just happened to decide to execute the warrant on January 14,
8 2025.  Mr. Cardiff's declaration makes it clear that Detective Sergeant Murray got the
9 warrant in October 2023 and "did nothing with it until he was contacted by the U.S.
10 Embassy on January 13, 2025 asking him to execute the warrant." Dkt. 200-1 ¶ 5.

11 Mr. Sebastian's hearsay statements about the arrest does not square with logic
12 and generally states that: "My understanding is that Mr. Cardiff was not arrested in
13 Ireland, that this was an amicable situation where they went to this home,  they talked
14 it over with him, and they ended up leaving without any kind of arrest."  Dkt. 203-1 at
15 5:24-25.  The problem is that the Government has now filed a response to this motion
16 merely parroting Mr. Sebastian's unsupported hearsay; that is, his "understanding" of
17 what happened on January 14, 2025.  It is unclear when Mr. Sebastian contacted the
18 Office of International Affairs, who he talked to, whether they were provided
19 Defendant's declaration describing the circumstances of his arrest or whether they
20 talked to anyone with anything close to personal knowledge about the arrest and who
21 authorized the arrest. .

22 Defendant filed a motion contending that the Government deliberately or
23 indirectly violated his rights under the Fourth Amendment and violated the Court's
24 travel order. Neither Ms. Makarewicz nor Mr. Sebastian filed a declaration stating that
25 they neither directly or indirectly asked the Irish Government to arrest Mr. Cardiff in
26 January 2025.  Mr. Sebastian's unsupported comments should not be taken at face
27 value. The Government must be ordered to produce documents and a written sworn
28 declaration regarding the Government's knowledge and/or participation of the

extradition file, the arrest of Mr. Cardiff and seizure of the Cardiffs' passports.

This is not the first time that the Government has overreached in prosecuting Defendant on bail issues. Mr. Sebastian previously made representations to the Court that were simply false. In seeking detention, the Government's brief asserted that: "the defendant left the United States and resided in Ireland <u>in an attempt to avoid arrest on criminal charges.</u>" Dkt 13 at 9. At the November 30, 2023 bond hearing, Mr. Sebastian again reiterated a theme that Mr. Cardiff left the United States and "He had no intention to return." Dkt. 2015 at 4. Judge Mircheff directly asked Mr. Sebastian: "In the motion , there are attempts to flee. What is that? What are you referring to? Id at 5. In response, Mr. Sebastian asserted that Judge Otero took Defendant's passports and he ended up getting a new Irish passport and that he lied about his income and assets. After several more questions, Judge Mircheff asked:

> THE COURT: So you started, I think, by saying he had gone to Ireland and had no intention to return. Is there any reason to think he knew that there were charges pending and he was avoiding that process, or just simply that he was in Ireland and wasn't planning to come back, kind of dust the dirt off his shoes and not return?

Dkt. 205 at 6. Mr. Sebastian *still* did not give Judge Mercheff a straight answer, but referred to Defendant's discussions with postal inspectors about the statute of limitations Dkt. 201-5 at 7. There was no question that the Indictment was *sealed* and that Mr. Cardiff was unaware of the charges. Judge Mercheff finally got Mr. Sebastian to admit that Defendant was not avoiding charges by fleeing to Ireland. Id. at 8.

As part of the Government's Response Memorandum in Support of Defendant's Motion to Forfeit Bail and for Summary Adjudication of Obligation, Defendants, Government counsel wrote that: "Other than two conversations with defendant, neither of the sureties have shown any further attempt to apprehend defendant or otherwise persuade him to return." Dkt. 204 at 4. This assertion is blatantly false. Ms. Murphy testified that she urged Defendant to return to Houston and on other occasions starting in January 2025 and February 2025. Dkt. 199-1 at 4. This sort of misrepresentation

appears calculated to mislead the court to minimize Ms. Murphy's testimony regarding forfeiture of bond.

Unless ordered to produce documents relating to the extradition file, the Government will not be candid with the Court.[1]

## II. The Fourth Amendment Protects U.S. Citizens Overseas

The Government does not seriously take issue with the proposition that the Fourth Amendment applies to U.S. citizens living overseas. Dkt. 203 at 8-9. Instead, the Government, *citing United States v. Barona*, 56 F. 3d 1087, 1092 (9th Cir. 1995), points out that Defendant must show that U.S. agents' participation in a foreign investigation must be "'so substantial that the action is a joint venture between United States and foreign officials." *Id*. at 9. This is exactly what happened here when the United States sent an Extradition request based on the bilateral treaty agreement of cooperation --a joint venture.

In *Barona*, U.S. agents requested wiretaps be issued by the Danish legal authorities and later provided information to Italian authorities, who then executed various wiretaps on their own. *Barona*, 56 F.3d at 1094. The Ninth Circuit held that the four Danish wiretaps were part of a joint venture between the Danish Government and the United States. *Barona*, at 1094-1096. As to the fifth wiretap obtained through Italian authorities, the Court found that the act of providing information to Italian

---

[1] Counsel also notes that, in its Reply Memorandum in support of its Motion to Forfeit Bail, Government counsel represented that both Mr. Kennedy and Ms. Murphy made only one request for Defendant to return. In fact, Ms. Murphy's declaration made it clear that she asked numerous times. Dkt. 199-1 at 17, 20. "In January (before the January 19 deadline) and early February, I had discussions with Jason about his status in Ireland. I told him that although he had medical problems, he was putting my home at risk and that needed to return to Houston to cure that problem. Jason told me that he wanted to return but that his doctors told him that he would suffer even greater and irreversible damage to his health if he flew before they could treat him." Dkt. 199-1 ¶ 20.

authorities that motivated them to obtain a wiretap under Italian law did not amount to a "joint venture" because the operation was carried out by foreign officials without substantial United States involvement. *Barona* at 1056. Therefore, in *Barona*, the Fourth Amendment did not apply.

The Government also cites *United States v. Lee*, 723 F.3d 134 (2d Cir. 2013) for the proposition that a collaboration between law enforcement agencies does not *ipso facto* establish an "agency" relationship implicating the Fourth Amendment. Dkt. 203 at 9. In that case, the Court held that information was shared pursuant to a Memorandum of Understanding did not establish a finding of "agency" between the DEA and Jamaican law enforcement.

The Government then asserts that Defendant failed to show that United States law enforcement participated in any way in his encounter with Irish law enforcement let alone participated in such a way as that it was so substantial that the encounter was a joint venture between the U.S. and Irish officials. Dkt. 203 at 12.

Unlike *Lee*, this case does not involve mere information sharing. The United States made a request for extradition, issued an arrest warrant and asked Irish authorities to act as their agents to arrest Jason Cardiff pursuant to an Extradition Treaty. But for the request, the Irish Garda would have never gone to Defendant's home and arrested Defendant.

The evidence shows that: "Detective Sergeant Murray told me that he did not know but that he got [the] file in October, 2023 and did nothing with it until he was contacted by the U.S. Embassy on or around January 13, 2025 asking him to execute the warrant." Dkt, 200-1, Cardiff Declaration ¶ 5. While the Government suggests that Mr. Cardiff's sworn statement is "self-serving," the Government's unsworn representations to this Court are no less self-serving. In that vein, Government counsel confirmed part of Mr. Cardiff's statement that the extradition treaty request was dated October 23, 2023. Clearly, Detective Sergeant Murray did show Mr. Cardiff the extradition file on January 14, 2025. The Government failed to tell the Court who they

contacted with the U.S. Embassy regarding the status of the extradition warrant. The question is whether the State Department and or the Office of International Affairs was directed or requested by the Department of Justice to arrest Mr. Cardiff in or around January of 2025. Mr. Cardiff has the right to know if the Government was directly or indirectly involved in his arrest and seizure of passports.

### III.   The Government's Mischaracterization of Mr. Cardiff as a Fugitive.

Government counsel have a duty of candor to the Court. "Lawyers representing the Government in criminal cases serve truth and justice first. The prosecutor's job isn't just to win, but to win fairly, staying well within the rules." U*nited States v. Kojayan*, 8 F.3d1315, 1323 (9th Cir. 1993).

In its response, the Government asserts that Mr. Cardiff "is currently a fugitive in violation of multiple orders of this Court." Dkt. 203 at 7 and further states that the Court "*declared Defendant a fugitive…. Id.* at 8 (emphasis supplied). In truth and fact, the Court did not make any findings that Mr. Cardiff was a "fugitive." The Court did not declare Mr. Cardiff to be a fugitive. Dkt. 196. The Court's ruling made specific findings that Mr. Cardiff was "absent" from the January 20, 2025 hearing and, as a result, the Court vacated the trial date and stated that it would consider issuance of a bench warrant. Specifically, the Court found that the Government's application demonstrated "facts that support vacating the trial date in this matter, and provides good cause for a finding of excludable time pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 and for the issuance of a bench warrant." [2] Dkt. 196.

The Government has cynically taken this non-finding and is blatantly misleading the Court to rule in its favor. While the Government titled its motion as a motion for

---

[2] The Government argued that, under the Speedy Trial Act, Defendant was a "fugitive." Dkt. 190 at 5. Yet, the Speedy Trial Act does not define or address when or whether a defendant becomes a "fugitive." The Act allows exclusions for "absence or unavailability of the defendant." 18 U.S.C. § 3161(h)(3)(A).

declaration of fugitive status (Dkt. 190), the actual <u>substance</u> of the motion is devoid of any analysis of the term "fugitive."

It is well established that the substance of a motion, not its form, controls its disposition. *Andersen v. United States*, 298 F.3d 804, 807 (9th Cir. 2002). Similarly, in *Hoffman v. Halden*, 268 F.2d 280, 303-304 (9th Cir. 1959), the court held that caption of an action "is only the handle to identify it" and the determination of a party's rights hinge upon the allegations in the body of the complaint [or order] and not upon his inclusion in the caption."

The prosecutors brought a motion for a "Declaration of Fugitive Status" but failed to argue any facts or cite cases to support the motion.[3] When the Court entered an order that "granted" the motion without findings of fact, the Government then started arguing that the Court granted "fugitive status" when it knew full well that the Court entered findings that narrowly vacated the trial date, made findings under the Speedy Trial Act and stated that it would consider issuance of a bench warrant.

### IV.  **<u>Prosecutorial Overreaching-The Defendant's Perspective</u>**

The Government's overreach on this Fourth Amendment violation and mischaracterization of this Court's order is consistent with Defendant's view that the Government is pursuing this case in bad faith. Defendant was civilly prosecuted and lost VPL Medical to the FTC's receivership and lost years in trying to develop smoking cessation products for Redwood Scientific Technologies. In *AMG Capital Management v. SEC*, 593 U.S. 67 (2021), the Supreme Court ruled that the statute allowing monetary remedies was never intended by Congress. Thus, Redwood

---

[3] The prosecutors withdrew the extradition warrant and knew that: (a) Mr. Cardiff was in Ireland receiving medical treatment; (b) indicated his intention to return to the United States after receiving further medical treatment; (c) remained in frequent contact with Pretrial Services; and (d) intends to participate fully in pretrial proceedings if allowed. Dkt. 178.

Scientific Technologies, Inc ("Redwood") was put in receivership and millions lost because the FTC deliberately set out to obtain monetary remedies that were expressly denied and rejected by Congress. Dkt. 153-1 ¶¶ 7-8.

Judge Gee recognized the good work done by Defendant in developing a surgical mask company in the middle of a pandemic and specifically allowed Defendant to operate Redwood so that it could market non-smoking products to distributors. Dkt. Dkt. 705. The Government filed this action barely before the expiration of the statute of limitations. Dkt. 1. As set out in his motion to dismiss based on double jeopardy, Defendant contends that there was government misconduct through misuse of Section 13(b) and that the actions undertaken by the Government and its receiver in the civil case lacked authority, were *void ab initio* and therefore punitive. Dkt. 153-1 ¶¶ 16-17. Similarly, Defendant challenged the Government's search of Redwood because postal agents entered the premises, not to help the receiver keep the peace, but to conduct a search of the premises and computers. Dkt. 115 at 5-6, 14-15.

Defendant also filed a motion based on *Dubin v. United States,* 599 U.S. 110 (1023) because the Supreme Court emphasized that identity theft focuses on the "who" and not the why or how. Dkt. 106 at 6-7, 9-14. In this case, Defendant contends that he did not impersonate anyone in connection with overcharges. Id. at 11. The Supreme Court recognized the statute was overly broad because it allowed prosecutors to hold the threat of charging an additional 2-year mandatory sentence over the head of any defendant who is considering going to trial. 599 U.S. at 130-131. Similarly, in *Aguilar*, the Supreme Court held that an FBI investigation is not a formal proceeding under the witness tampering statute. Defendant contends that the Indictment was vague because it failed to identify the "official proceeding" at issue and did not otherwise meet the standard in *Aguilar, 515 U.S. 593 (1995).* Dkt. 154 at 7.

The Government approved the destruction of logbooks containing handwritten entries by Defendant and key Government witnesses that would have contained his contemporaneous instructions relating to alleged charges to customers and electronic

records that would have helped limit the amount of loss claimed by the Government. Dkt. 79 at 18-21.

Defendant followed the rules on bond. His medical problems in Ireland were unexpected and severe. The Court received medical records substantiating that Defendant is suffering from a medical condition and extended Defendant's travel to allow him to seek medical treatment in Ireland. Unfortunately, Ireland's socialized medicine system does not work quickly so Defendant was unable to schedule appointments and treatment with specialists as quickly as hoped. The Court ordered Defendant to return over the advice of his doctors. Faced with the prospect of imminent harm and long term injury to his health, Mr. Cardiff was faced with a Hobson's Choice and decided that he had to follow his doctor's advice to follow a 3-4 month course of treatment. *See United States v Aguilar*, 883 F.2d 662, 693(1989).[4] The Government waited almost five years to seek indictment of Mr. Cardiff. Yet the Government does not want to wait several months to allow Mr. Cardiff to regain his health, return and report to Pretrial Services. If he does not return, there is plenty of time to declare him a fugitive.

Thus, it appears to Defendant that the Government decided to take matters into their own hands and arrest Mr. Cardiff at his home in Dublin.

## V. **CONCLUSION**

The narrow issue before the Court is discovery of documents relating to the extradition file and related communications and whether the Government directly or indirectly violated or interfered with this Court's order. Violation of the Order resulted in the Cardiffs' Fourth Amendment rights being violated. Rather than transparency and

---

[4] Contrary to the Government's argument, the necessity defense may be raised where defendant is: (1) faced with a choice of evils and chose the lesser evil; (2) that he acted to prevent immediate harm; (3) that he reasonably anticipated a causal connection between his conduct and the harm to be avoided; and (4) that there were no legal alternatives to violating the law. *Raich v. Gonzales*, 500 F.3d 850, 859 (9th Cir. 2007).

disclosure of what happened, the Government apparently asks the Court to accept its double-or-even-triple hearsay explanations and turn a blind eye to Fourth Amendment violations and violation of its travel order.

The Government's attempt to stonewall any discovery on this issue should be rejected. Defendant asks the Court to order the Government to produce the extradition file and all communications related to the January 14, 2025, arrest, as well as any pending or future extradition requests.

**Dated:** February 24, 2025

**Respectfully submitted,**

By: /s/ Stephen R. Cochell
       Stephen R. Cochell

       Attorney for Defendant
       JASON EDWARD THOMAS CARDIFF

# SERVICE LIST

I HEREBY DECLARE THAT THE FOLLOWING COUNSEL HAVE BEEN SERVED WITH THIS DEFENDANT JASON CARDIFF'S NOTICE OF MOTIO AND MOTION TO SUPPRESS EVIDENCE THROUGH THE COURT'S ECF O NEXT GEN ELECTRONIC FILING SYSTEM:

E. Martin Estrada United
States Attorney Mack E.
Jenkins
Assistant United States Attorney Chief, Criminal Division
Ranee A. Katzenstein
Assistant United States Attorney Chief, Criminal Division
Valerie Makarewicz
Assistant United States Attorney Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-0756 Facsimile: (213) 894-6269
E-mail: Valerie.Makarewicz@usdoj.gov

Amanda Liskamm
Director, Consumer Protection Branch Manu J. Sebastian
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
450 Fifth Street NW, Suite 6400 Washington, DC 20001
Telephone: (202) 514-0515 Facsimile: (202) 514-8742
E-mail: Manu.J.Sebastian@usdoj.gov
        Brianna.M.Gardner@usdoj.gov

                                                */S/ Stephen R. Cochell*
                                                 Stephen R. Cochell