

Stephen R. Cochell
Admitted Pro Hac Vice
srcochell@gmail.com
5850 San Felipe, Ste. 500
Houston Texas 77057
Telephone:(713) 436-8000
Facsimile: (213) 623-2000

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888) 937-7555
Facsimile  (866) 858-6637

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JASON EDWARD THOMAS CARDIFF

Defendant

And

LILIA MURPHY and BRIAN KENNEDY

Sureties

Case No. 5:23-CR-00021-JGB

SURETIES' LILIA MURPHY AND BRIAN KENNEDY'S NOTICE OF MOTION AND MOTION TO SET ASIDE OR MODIFY JUDGMENT

Hearing Date: April 21, 2025

Courtroom:  1

Time:  2:00 p.m.

i

COCHELL
LAW FIRM

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 21, 2025, at 2:00 pm., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Jesus Bernal, located at the United States District Court, Central District of California, Sureties Lilia Murphy and Brian Murphy will move this Court,  pursuant to Federal Rule of Criminal Procedure 49(f)(2), to set aside  or modify the Judgment For Plaintiff United States On Bail Bond Forfeiture With Respect To Defendant Jason Edward Thomas Cardiff And Sureties Lilia Murphy And Brian Kennedy.

Pursuant to Local Rule 7-3, Defendant's counsel provided timely written notice of this motion to counsel for Plaintiff, Valerie Makarewicz and Manu Sebastian. The parties conferred on March 18, 2025, and were unable to resolve the matters raised herein.

This Motion is based upon this Notice, the concurrently filed Memorandum of Points and Authorities, the accompanying Declarations and Exhibits, the files and records in this matter, and such additional evidence and argument as may be presented at or before the hearing.

Respectfully submitted,
*/s/ Stephen R. Cochell*
Stephen R. Cochell
SBN: 24044255
The Cochell Law Firm, P.C.
5850 San Felipe, Ste 500
Houston, Texas 77057
(346) 800-3500 – Telephone
srcochell@gmail.com

# **TABLE OF CONTENTS**

NOTICE OF MOTION ................................................................................................ ii

TABLE OF CONTENTS ........................................................................................... iii

INDEX OF AUTHORITIES ...................................................................................... iv

MEMORANDUM IN SUPPORT OF LILIA MURPHY AND BRIAN
KENNEDY'S MOTION TO SET ASIDE OR TO MODIFY JUDGMENT
FORFEITING BAIL ..................................................................................................... 1

I. Background Facts ...................................................................................................... 1

II. Rule 46(f) Does Not Require Forfeiture of Property or Funds If Justice Does
Not Require Forfeiture. ............................................................................................ 3

    A.    Defendant's Willfulness in Breaching a Release Condition ...................... 5
    B.    The Sureties' Participation Apprehending Defendant. ............................. 6
    C.    The Cost, Inconvenience, and Prejudice Suffered By The
Government ..................................................................................................... 6
    D.    Mitigating Factors- Whether the Surety Was Responsible for the
Breach of the Release Conditions ............................................................... 7
    E.    Whether The Surety Is A Professional Or A Member Of The
Family Or Friend; ......................................................................................... 9
    F.   The Appropriateness of The Bond Amount.  The Court Should Defer
or Stay Any Further Action Until Resolution of Pending Pretrial Motions. ...... 9
    G.    The Facts Are Not Crystallized .................................................................. 10

III.    Conclusion ...................................................................................................... 11

# INDEX OF AUTHORITIES

<u>**Case Law**</u>

*Am. Tobacco Co. v. Patterson,* 456 U.S. 63 (1982) ................................................. 5

*Idaho Plumbers and Pipefitters Health & Welfare Fund cv. United Mechanical Contractors, Inc.* 875 F.2d 212 (9th Cir.1989) ..................... 7

*Pinon v. Bank of Am., NA (in re Late Fee & Over-Limit Fee Litig.,* 741 F.3d 1022 (9th Cir. 2014) ....................................................................... 7

*United States v $8850 in United States Currency*, 461 U.S. 555 (1983) ............... 10

*United States v Abernathy*, 757 F.2d 1012, 1015 (9th Cir.) ................................. 5

*United States v Bass*, 573 F.2d 258 (5th Cir 1978) .......................................... 3

*United States v. Castaldo*, 667 F.2d 20 (9th Cir. 1981) .................................. 7

*United States v Gifford*, 423 F. Supp. 819 (C.D. Cal. 2019) ............................. 9

*United States v. Lusby*, 972 F.3d 1032 (9th Cir 2020) ................................. 5, 7

*United States v. Nguyen*, 279 F.3d 1112 (9th Cir. 2002) ......................... 3-4, 11

*United States v. Vaccarro,* 51 F.3d 189 (9th Cir. 1988) .................................. 3

*United States v. Vickers*, 144 F. Supp. 3d 1146 (E.D. Cal.2015) ...................... 5

*Zidell, Inc. v. Pacific Northern Marine Corp.*, 744 F.Supp. 982 (D. Ore. 1990) ....... 7

<u>**Rules**</u>

Fed. R. Crim. P. 46(f)(2) ........................................................... *passim.*

Local Rule 7-18 ......................................................................... 2

### <u>MEMORANDUM IN SUPPORT OF LILIA MURPHY AND BRIAN KENNEDY'S MOTION TO SET ASIDE ORDER FORFEITING BAIL</u>

Pursuant to Rule 46(f)(2), Lilia Murphy and Brian Kennedy (hereinafter "Sureties"), by and through their undersigned counsel, respectfully file this motion to set aside the judgment entered by this Court on March 12, 2025. Dkt. 215.    The Judgment, in pertinent part, entered judgment in the amount of $530,000 against Sureties Lilia Murphy in the amounts of $500,000 Murphy and $30,000 against Brian Kennedy.

For the reasons set forth below, the Sureties respectfully submit that the judgment ordering forfeiture of bail should be set aside in whole or in part because "it appears that justice does not require bail forfeiture." F.R.Crim.P. 46(f)(2).

## I.    <u>Background Facts</u>

The facts of this case are unique. Mr. Cardiff was placed under arrest when he traveled from Ireland to the United States to attend his father's funeral.  Bond was granted at $530,000. Ms. Lilia Murphy agreed to pledge her home to secure $500,000 of the bond as part of an appearance bond and Mr. Kennedy agreed to a $30,000 appearance bond.  The Court also provided for Stephen Cochell to have custody of Mr.Cardiff and approved Mr. Cardiff to live with Ms. Murphy and Stephen Cochell.[1] Dkt. 21. The bond also set a curfew from 8:00 a.m. to 8:00 p.m. daily and to wear an electronic monitoring device. Id.

The Court granted Mr. Cardiff leave to travel to Dublin after his wife suffered a heart attack.   Dkt. 87  He stayed ten days and complied fully with the Court's order. On September 4, 2024, the Court granted Mr. Cardiff leave to visit Ireland to provide support for his wife and eleven year old daughter. Dkt. 103, 105. Mr. Cardiff's request

---

[1] Ms. Murphy later married Mr. Cochell.  Mr. Cochell subsequently entered an appearance as counsel for Mr. Cardiff.  For purposes of this case, counsel will refer to his wife as Ms. Murphy.

1    indicated that he was going to visit a pulmonologist. Dkt. 103-1 at 5. On October 29,
2    2024, the Court entered an Order allowing Mr Cardiff fourteen days travel to assist his
3    wife and attend a medical appointment. Dkt. 122, 122-1. On November 15, 2025, Mr.
4    Cardiff requested an extension of his travel because of unanticipated health problems
5    and had scheduled an appointment with a cardiologist. Dkt. 125 at 2. He advised the
6    Court that Dr. M.S. referred him to Blackrock Medical Centre finding him "medically
7    unfit to fly until further notice. *Id.* Pretrial Services did not oppose the request. Dkt.
8    125 at 3. On December 13, 2024, Defendant asked for an additional extension of travel
9    for medical reasons. Dkt. 148. The Court granted this extension but indicated that,
10    absent extenuating circumstances, the Court was not inclined to grant future requests
11    to travel or extend travel. Dkt. 151.

12      From December 6, 2023 until his last departure to Ireland, Mr. Cardiff was living
13    with Ms. Murphy and counsel complying fully with the Bond with electronic
14    monitoring, curfew and reporting to Pretrial Services. At that point, Mr. Cardiff had
15    periodic discussions with Ms. Murphy updating her on his health condition. While
16    living at Ms. Murphy's home, Ms. Murphy became aware that Mr. Cardiff had certain
17    symptoms and was concerned about Mr. Cardiff's health. **Exhibit A,** Murphy Dec. ¶¶s
18    12-14. In or about November, 2024, Mr. Cardiff disclosed to Ms. Murphy that he had
19    experienced additional and more severe medical problems that needed treatment. Id.
20    at ¶ 15, 17.

21      On January 14, 2025, Defendant filed his Motion for an Order Extending
22    International Travel, or in the Alternative to Modify the Bond. Mr. Cardiff advised the
23    Court, and provided the Court with medical evidence that he was medically unfit to fly
24    back to the United States. Dkt. 162. Defendant's primary physician, Dr. M.S.
25    recommended a three-to-four-month treatment plan to assure that Mr. Cardiff could fly
26    safely without risking even more serious health consequences. Dkt. 171 at 2. Mr.
27    Cardiff submitted Dr. M.S.' report under seal and asked the Court to allow him to stay
28    the additional time to protect his health. Dkt 149, 175.

COCHELL
LAW FIRM

1    The Court deemed the evidence submitted by Dr. M.S. to be insufficient as her
2  report indicated that Mr. Cardiff's symptoms "could" pose a risk of serious injury and
3  that reduced cabin pressure and lower oxygen availability at altitude would greatly
4  increase the potential for …complications.  See Dkt. 171 at 4.   On reconsideration,
5  Defendant submitted further evidence from Dr. M.S.  However, the Court held that the
6  evidence was rejected because the email submission was not "new" evidence that could
7  not have been submitted under L.R. 7-18.  Dkt. 171 at 2.

8    Both Ms. Murphy and Mr. Kennedy were aware that Mr. Cardiff became ill while
9  in Ireland and was granted extensions of time to seek evaluation medical treatment for
10  his medical condition.  After the Court's ruling on reconsideration, the Sureties asked
11  Mr. Cardiff why he could not return but were told that he wanted to return but was
12  medically unfit to travel until further treatment was obtained to avoid risk of additional
13  injury or permanent harm to his physical health if he traveled.  **Exhibit A**, Declaration
14  of Lilia Murphy ¶¶s 16, 19  (hereafter "Murphy Dec.") ;  **Exhibit B**, Declaration of
15  Brian Kennedy ¶ 7 (hereafter "Kennedy Dec.").  As set out below, the Bondholders
16  respectfully submit that they should not be punished for Mr. Cardiff's decision not to
17  return on January 19, 2025.

18    **II.    Rule 46(f) Does Not Require Forfeiture of Property or Funds If Justice
19          Does Not Require Forfeiture.**

20    It is well established that the purpose of bail bonds is to make sure defendants
21  show up for court, not to punish them or their families if they fail to appear. *United*
22  *States v. Vaccaro,* 51 F.3d 189, 192 (9th Cir. 1988*); United States v Bass*, 573 F.2d 258,
23  260 (5th Cir 1978) ("The purpose of a bail bond is not punitive; it is to secure the presence
24  of the defendant").  As set out below, this court has the discretion to set aside a forfeiture
25  "in whole or in part" "if it otherwise appears that justice does not require the forfeiture."
26    In *United States v. Nguyen,* 279 F.3d 1112, 1115 (9th Cir. 2002), the Court noted
27  that "The law on bail forfeiture is neither complex nor voluminous."   F.R. Crim. P. 46
28  provides that if there is a breach of a condition of a bond, the district court shall declare

COCHELL
LAW FIRM
                                                3

1  a forfeiture of the bail."    However, Rule 46 (e)(2) and (4) also provides that a district
2  court:

> (2) …may direct that a forfeiture be set aside in whole or in part,
> upon such conditions as the court may impose, if a person
> released upon execution of an appearance bond with a surety is
> subsequently surrendered by the surety into custody or if *it*
> *otherwise appears that justice does not require the forfeiture*….
> [and]
> (4) …may remit it in whole or in part under the [same]
> conditions….

*Id*. (emphasis supplied)

The *Nguyen* court set out six non-exclusive factors that may be considered in
deciding whether to set aside or remit forfeiture of the bond.  These factors include:
(1)The defendant's willfulness in breaching a release condition; (2) the sureties'
participation in apprehending the defendant; (3) the cost, inconvenience, and prejudice
suffered by the government; (4) mitigating factors; (5) whether the surety is a
professional or a member of the family or friend; and (6) the appropriateness of the
bond amount.

In *Nguyen*, while the Court set out non-exclusive factors that might be considered
in evaluating whether Rule 46(f)(2) did not address the burden of proof to be applied
where Rule 46(f)(2) is invoked. Rule 46(f)(2) specifically states:  "if it <u>appears</u> that
justice does not require the forfeiture" qualifies the remainder of the clause "justice
does not require the forfeiture…."   The term "appears" is significant because it sets out
a lower standard of proof, suggesting that the decision is based on what *appears* to be
just, rather than requiring definitive proof that justice does not require the forfeiture.
The *Nguyen* court focused on whether the forfeiture should be set aside based on the
facts at hand, but it did not address whether the "appears' language required the court
to consider more leniently whether "justice did not require forfeiture." Indeed, the plain
language "appears" to indicate proof that seems to be true, reasonable or plausible and
does not require definitive proof. In cases involving statutory construction, the Court

must start with the plain language of the words used as the legislative purpose is expressed by the ordinary meaning of the words expressed. *United States v. Lusby*, 972 F.3d 1032, 1041-1042 (9th Cir 2020) *citing Am. Tobacco Co. v. Patterson.* 456 U.S. 63, 68 (1982).

Thus, Rule 46(f)(2)'s inclusion of "appears" suggests that this Court does not need to be convinced to a high degree of certainty that forfeiture would be unjust, only that it appears, based on the circumstances, that forfeiture might not be warranted. This means that the standard for granting a setting aside of bail forfeiture is arguably a more flexible, discretionary standard.

In *United States v. Vickers*, 144 F. Supp. 3d 1146, 1150 (E.D. Cal.2015), the Court noted that the purpose of the bail bond is not punitive. Rather a bond is to ensure that the accused will reappear at a later time. *Id.* citing *Vaccaro*, 51 F.3d at 192. The *Vickers* court emphasized that the court must ensure that its decision remains free from frustration or vindictiveness. *Id. citing United States v. Parr*, 594 F.2d 440, 444 (5th Cir. 1979).

## A. Defendant's Willfulness in Breaching a Release Condition

In *Nguyen*, defendant was arrested at work despite consistent claims that he could not surrender himself because he was at home recuperating from surgery. Id. at 1116. Similarly, in *United States v Abernathy*, 757 F.2d 1012, 1015 (9th Circuit), the Court found conduct to be willful where defendant fled nearly 1500 miles using aliases.

In stark contrast, Defendant was granted a court order allowing him to travel to Ireland and was granted extensions to seek medical treatment. While the Court denied further extensions, Defendant was advised by his doctors that he was medically unfit to travel and that he would suffer greater injury if he returned to the United States. Dr. M.S. provided a 3-4 month treatment plan. Dkt. 175. Defendant recognized that the Court ordered his return but, at the time, concluded that if he returned without sufficient treatment, he would potentially suffer greater health consequences resulting in

COCHELL
LAW FIRM

1  disability and lose his ability to support his family.    Dkt 178, Defendant's Status

2  Report. Defendant fully intends to return to the United States. **Exhibit C,** Declaration

3  of Jason Cardiff ¶ 4.  Dkt. 178 at 2.

4      The Court should not proceed with forfeiture of property or assets from innocent

5  third parties unless or until it becomes clear that Defendant does not intend to return to

6  the United States.

7      **B. The Sureties' Participation Apprehending Defendant.**

8      While Ms. Murphy and Mr. Kennedy are not in a position to physically

9  apprehend Defendant in Ireland.  The evidence shows:

10    1. Both Ms. Murphy and Mr. Kennedy, have asked the defendant to obey the
11       order and return to the United States.  Indeed, Ms. Murphy has asked Mr.
         Cardiff, on numerous occasions, to return to the United States as her home
12       was at risk. **Exhibit A**, Murphy Dec. ¶ 19, **Exhibit B,** Kennedy Dec.¶ 7.

13
       2. Both were essentially told that Defendant wanted to return to the United
14        States but could not risk the health consequences.   **Exhibit A**, Murphy Dec.
15        ¶ 19, **Exhibit B,** Kennedy Dec.¶ 7.  This factor favors the Sureties.

16     3. Neither Ms. Murphy are doctors or medical professionals and are not in a
17        second guess Mr. Cardiff's explanations or the recommendations of his
          doctors.
18
       **C. The Cost, Inconvenience, and Prejudice Suffered By The Government**
19
       At this point, the Government has sustained limited cost or prejudice from
20
    Defendant's absence on January 19, 2025.   The cost of litigating pre-trial motions and
21
    trial is a cost that would have been incurred in any event.  Moreover, there is no
22
    evidence that the Defendant intends to do anything but get treatment in Ireland and
23
    return.  Indeed, on January 14, 2025, Irish authorities arrested Mr. Cardiff at his home.
24
    Dkt. 201-1 ¶ 3.  Defendant states he intends to return to the United States after his
25
    doctors release him to travel.  Defendant is still reporting to Pretrial Services and will
26
    continue to do so upon return. This factor potentially favors the Government.
27
       Sureties recognize that there is authority supporting the idea that the bond
28

amount may be treated as "liquidated damages", but unlike contracts where parties negotiate liquidated damages provisions, the Court dictates the amount of the bond. Sureties respectfully submit that that notion that a judicially imposed bond constitutes "liquidated" damages is a *fiction* unsupported by Rule 46.[2]  The *Nguyen* factors clearly identify the "cost" and "inconvenience" as a factor and does <u>not</u> hold that the amount should invariably result in forfeiture of the entire bond regardless of the actual cost to the Government.  Mechanistic application of this factor violates due process, which requires courts to apply rules reasonably in light of all the facts and circumstances.

Moreover, it is contrary to the plain language of Rule 49(f)(2)—that the Court may set aside in whole or in part if it appears that justice does not require bail forfeiture of the entire amount of the bond.  Following the "liquidated damages" theory to its logical conclusion, virtually no bond can be "set aside in whole or in part...."  The Court should not apply the bond as though it were "liquidated damages" as that would render the express language of Rule 46(f)(2) meaningless.  Again, the Court must be guided by plain language of the rule and not a fiction that appears unrooted in the language of the rule itself.  *Lusby,* at 1042-1043.

### D. Mitigating Factors- Whether the Surety Was Responsible for the Breach of the Release Conditions

In *Nguyen*, the Court considered the Sureties' involvement in supporting or

---

[2] The courts' use of liquidated damages in bond cases bears little resemblance to the actual application of liquidated damages in real life contract cases.  It is axiomatic that the amount fixed (negotiated) as liquidated damages must be a reasonable forecast of just compensation for the harm caused by the breach.  *Idaho Plumbers and Pipefitters Health & Welfare Fund cv. United Mechanical Contractors, Inc*. 875 F.2d 212, 217-218 (9th Cir.1989). The liquidated sum should represent a good faith effort by the parties to appraise the benefit of the bargain. *Pinon v. Bank of Am., NA (in re Late Fee & Over-Limit Fee Litig.,* 741 F.3d 1022, 1026 (9th Cir. 2014) .  Finally, if liquidated damages are disproportionate to the actual damages sustained, they are stricken and unenforceable.  *Zidell, Inc. v. Pacific Northern Marine Corp*., 744 F.Supp. 982, 987 (D. Ore. 1990).

1  aiding and abetting violation of Nguyen's bond conditions as a key factor.   This
2  factor should be a decisive if not controlling factor under Rule 46(f).

3      The Court held a hearing on January 30, 2025 and then filed this motion seeking
4  forfeiture of property and funds.   Ms. Murphy's home is worth more than $500,000
5  and was purchased by her and her late husband, Leo Murphy, before he tragically died
6  in 2022.   **Exhibit A**, Murphy Dec. ¶ 5.  Ms. Murphy respects and obeys the law and
7  has been a law-abiding citizen her entire life.  *Id*. at ¶ 4.  Ms. Murphy felt compelled to
8  help. Because he had electronic monitoring, curfew conditions and was under
9  supervision of Pretrial Services supervision, Ms. Murphy was confident that she and
10 Steve Cochell would have control over the situation and be able to oversee Mr.
11 Cardiff's bond conditions.  *Id*. at ¶ 7.

12     Ms. Murphy took Mr. Cardiff into her home and was aware that he complied
13 with the curfew and had a decent living situation.  **Exhibit A** at ¶¶s 8-9.  Over the course
14 of the last fourteen months, Ms. Murphy observed that Mr. Cardiff went on business
15 trips and returned without incident.  *Id*. at 9.

16     In January, 2025, <u>before the January 19, 2025 deadline and after the January 19,</u>
17 <u>2025 deadline, Ms. Murphy told Mr. Cardiff that he needed to return to Houston and</u>
18 <u>reminding him that her house would be subject to forfeiture if he did not return.</u>  **Exhibit**
19 **A** at ¶ 17, 20.  On those occasions, Mr. Cardiff made it clear that he wanted to return
20 but could not return to Houston unless the doctors in Ireland said he was fit to travel
21 and further stated that he would suffer greater and potentially irreversible damage to
22 his health if he flew before the doctors could treat him.  *Id*. at ¶ 19.

23     Mr. Kennedy is a member of Redwood Scientific Technologies, Inc's Board of
24 Directors and has had frequent contact with Mr. Cardiff in that capacity.  Mr. Kennedy
25 learned of Mr. Cardiff's health condition and urged him to return to the United States
26 to comply with the January 19, 2025 deadline.  **Exhibit B**, Kennedy Declaration ¶7.
27 However, Mr. Cardiff told him that he would seriously jeopardize his health and
28 believed that he needed to follow his doctors' orders until he was found to be fit to

COCHELL
LAW FIRM

travel. Id.  This factor favors the Sureties.

**E. Whether The Surety Is A Professional Or A Member Of The Family Or Friend;**

If the surety is a defendant's family member or friend, rather than a professional bondsman, this factor weighs in favor of setting aside the bond forfeiture." *United States v Gifford*, 423 F. Supp. 819, (C.D. Cal. 2019); *United States v. Martinez*, 2013 U.S. Dist. LEXIS 161260, 2013 WL 6002441, at *7 (S.D. Cal. Nov. 12, 2013). *See also United States v. Castaldo*, 667 F.2d 20, 21 (9th Cir. 1981) (explaining that professional bondsmen are "experienced at bonding criminal defendants" and more likely to be "aware of the risks of executing and filing a bond on [the defendant's] behalf."). Ms. Murphy was a friend and not a professional bondsman. As such, this factor favors setting aside the bond forfeiture.

**F. The Appropriateness of The Bond Amount.  The Court Should Defer or Stay Any Further Action Until Resolution of Pending Pretrial Motions.**

This factor addresses whether the bond amount was reasonable at the time of its issuance.[3] The reasonableness of the bond should also be evaluated in light of motions that seek dismissal of part or all of the indictment based on Supreme Court precedent. In sum, the bond should have been lower where, as here, the indictment was either vague or substantively defective. Pending before the Court are four motions that impact

---

[3] At the time of the initial bond hearing, the Government counsel argued that Mr. Cardiff fled to Ireland to avoid prosecution notwithstanding the fact that Mr. Cardiff made no secret of his intention to move to Ireland and, in compliance with the FTC order, gave notice to the FTC that he was moving to Dublin and later updated his address.  Counsel obtained a copy of the hearing transcript, which showed that Magistrate Mircheff closely questioned government counsel and ultimately counsel conceded that Mr. Cardiff did not move to Ireland to avoid prosecution. Dkt. 205, at 4-6-8 ("He was *not* aware. This was a sealed indictment." Id. at 8. (emphasis supplied) Such arguments detract from credibility of Government counsel.

a determination of whether the bond was reasonable[4]: (a) Defendant's Motion to
Dismiss Count Two of the Indictment (Dubin) Dkt 106; (b) Motion to Suppress
Evidence (Dkt. 115); (c) Motion to Dismiss Counts 3 and 4 (Aguilar) Dkt. 134; and (d)
Motion to Dismiss Based on Double Jeopardy (Dkt. 135).  Each of these motions
present substantial legal and constitutional challenges to the prosecution of this case.
If any of these motions are granted, the reasonableness of the original bond would be
subject to substantial modification or the issue rendered moot.

In the context of this case, due process requires that the Court rule on these
motions *before* determining bond forfeiture. *See United States v $8850 in United States
Currency*, 461 U.S. 555, 564 (1983) (Due process is flexible regarding the right to be
heard at a meaningful time recognizing that the timing of a proceeding may impair and
unfairly prejudice a party's ability to defend the propriety of a forfeiture).

At the Government's request, the Court vacated the trial date.  The Government
will not suffer any undue prejudice or harm by delaying forfeiture enforcement while
the Court determines key issues going to the validity of the indictment. Enforcing
forfeiture prior to ruling on the pretrial motions would impose an irreparable  financial
burden on the sureties;  for example, depriving Ms. Murphy of her home, which cannot
be replaced if the bond was later found to have been forfeited improperly.

### G. The Facts Are Not Crystallized.

As a practical matter, the facts are not set in stone and may change.  While the
Government may take some satisfaction if they have obtained a judgment forfeiting
Ms. Murphy's property and Mr. Kennedy's funds, Mr. Cardiff may be released to travel
by his physicians as they treat his condition.  At that point, the Court and the sureties
will have expended a lot of time and resources on this issue and the Court will have to
re-evaluate its rulings on the bond.

---

[4] Sureties recognize that the Court indicated that it would issue decisions on the pretrial
motions at the January 30, 2025 hearing. Dkt. 198.

### III.  <u>Conclusion</u>

Rule 46(f) provides that the Court may set aside in whole or in part a bail forfeiture if "it otherwise *appears* that justice does not require bail forfeiture." (emphasis supplied).

In this case, the evidence shows that neither Ms. Murphy nor Mr. Kennedy have first-hand knowledge of Mr. Cardiff's medical condition and are not in a position to apprehend him or to even question the recommendations of his doctors.  Both have asked Mr. Cardiff to return to Houston and were told by Mr. Cardiff that he wanted to return but his doctors found him medically unfit to travel and would suffer additional harm if he traveled before he completed treatment.  Ms. Murphy, who has the most to lose, has been consistently telling Mr. Cardiff that he has to return or her home is at risk.  The Government is well aware of Mr. Cardiff's explanation for not appearing at the January 30, 2025 hearing and that he intends to surrender as soon as possible, presumably in the short term when his treatment is concluded.  Dkt. 178.

Based on the *Nguyen* factors, it "appears that justice does not require the forfeiture" of Ms. Murphy's home and Mr. Kennedy's funds.    In that vein, Sureties respectfully submit that the process should be deferred or stayed for several months until Mr. Cardiff either surrenders himself or does not.  At that time, the Court will have more information and be in a better position to render a decision that is fair to the Sureties.

WHEREFORE, Sureties request this Honorable Court grant an evidentiary hearing and/or grant their Motion to Set Aside Judgment and to: (1) enter an order setting aside or remitting the forfeiture; and (2) exonerating the sureties pursuant to

COCHELL
LAW FIRM

Rule 46(g).

**Dated:** March 19, 2025

**Respectfully submitted,**


By:  /s/ Stephen R. Cochell
Stephen R. Cochell

Attorney for Defendant
JASON EDWARD THOMAS CARDIFF

COCHELL
LAW FIRM

12

## SERVICE LIST

I HEREBY DECLARE THAT THE FOLLOWING COUNSEL HAVE BEEN SERVED WITH THIS DEFENDANT JASON CARDIFF'S NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE THROUGH THE COURT'S ECF OF NEXT GEN ELECTRONIC FILING SYSTEM:

E. Martin Estrada United States Attorney
Mack E. Jenkins Assistant United States Attorney Chief, Criminal Division
Ranee A. Katzenstein Assistant United States Attorney Chief, Criminal Division
Valerie Makarewicz Assistant United States Attorney Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-0756 Facsimile: (213) 894-6269
E-mail: Valerie.Makarewicz@usdoj.gov

Amanda Liskamm Director, Consumer Protection Branch
Manu J. Sebastian Trial Attorneys Consumer Protection Branch
U.S. Department of Justice
450 Fifth Street NW, Suite 6400 Washington, DC 20001
Telephone: (202) 514-0515 Facsimile: (202) 514-8742
E-mail: Manu.J.Sebastian@usdoj.gov
Brianna.M.Gardner@usdoj.gov

/s/ Stephen R. Cochell
Stephen R. Cochell

COCHELL
LAW FIRM

13

# EXHIBIT A

Stephen R. Cochell
Cochell Law Firm P.C.
5850 San Felipe Ste 500
Houston Texas 77057
(346)800-3500
srcochell@gmail.com
Admitted Pro Hac Vice

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888)937-7555
Facsimile (866)858-6637

Attorneys for Defendant
Jason Edward Thomas Cardiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 5:23-CR-00021-JGB |
| Plaintiff, | |
| vs. | |
| JASON EDWARD THOMAS CARDIFF | |
| And | |
| LILIA MURPHY and BRIAN KENNEDY | |
| Sureties | |

### DECLARATION OF LILIA MURPHY COCHELL IN SUPPORT OF SURETIES' MOTION TO SET ASIDE JUDGMENT

I, Lilia Murphy Cochell, declare as follows:

1. I have personal knowledge of the facts set forth herein. If called as a

1

witness, I could and would competently testify to the matters stated herein. I make this declaration in the Sureties Motion to Set Aside Judgment, filed with this declaration.

2. I am married to Stephen Cochell, who represents Jason Cardiff in this criminal case and who is also General Counsel for Redwood Scientific Technologies, Inc. I have signed a waiver of conflict of interest to allow my husband to represent me in the Government's request to forfeit bond and to also represent Mr. Kennedy and Mr. Cardiff.

3. I am one of the bondholders who signed an affidavit of surety and pledged my home as security if Jason Cardiff did not comply with his bond conditions.

4. I have been a law-abiding citizen all my life working and always try to do the right thing the right way. I have always been a private person and do not disclose the details of my life to others.

5. As background, I was born in Mexico City in 1952 and grew up in San Diego, California and completed high school. My family was poor and had modest means. However, I worked very hard in the auto industry and mortgage industry to improve my life style and better the lives of my daughters. I also managed an optometry store. I was married to Dr. Robert Giarratano for over thirty years. After our divorce, I married Dr. Leo Murphy for ten years and managed his practice. In 2021, Leo and I relocated to Texas. We purchased a home in Houston Texas. We helped my grand son and daughter buy a home near our house. Leo passed away in 2022 and it was a devastating blow but I had my daughter and grandson near. A year after Leo's passing, my daughters and I were stricken with another devastating tragedy when my only grandson (age

2

23) passed away in a freak accident.

6. When my grandson passed, my daughter could not live in Texas anymore and moved to Oregon to live with my other daughter. This left me in Texas without friends or family. I had been dating Steve Cochell a few months before my grandson died. Steve saved me from falling into deep depression and feeling suicidal. We moved in together.

7. I was living with Steve Cochell when I first met Mr. Cardiff. I understood that Mr. Cardiff was in detention and would remain in jail until his trial unless he made bail. Steve told me that the Court was potentially open to having Jason released to his custody to live with us and my home could be posted as security. I felt compelled to help. I also understood that Jason Cardiff would have an ankle bracelet that electronically monitored him and a 8:00 a.m. to 8:00 p.m. curfew and other conditions of release including regular contact with Pretrial Service. On that basis, I agreed to pledge my home. I was confident that my husband and I would have control over the situation and could oversee Mr. Cardiff's bond conditions.

8. Mr. Cardiff arrived in December 2023. He lived upstairs in my home, shared meals with us and was a good house guest. Mr. Cardiff cooked and helped maintain the house and trained my three dogs. He is smart, talented and friendly. I also found him very trustworthy and was reliable in what he said and did around me and Steve. Steve and I were married on May 11, 2024. Jason Cardiff attended the wedding.

9. Mr. Cardiff stayed at our home and complied with the 8 to 8 curfew. He occasionally went on business trips. He kept us informed of his schedule and checked in with me or Steve while he was out of town. I understood

3

that each of these trips were coordinated and approved by the Court and Pretrial Services.

10. After he moved in, Mr. Cardiff was so grateful that I had helped bail him out that he offered to give 900,000 shares of stock in Redwood. I told hm that it was unnecessary because I did not expect anything in return for helping him.  I thought it was kind of hm, but I basically saw the shares as monopoly money and still do.

11. In or about October, 2024, Mr. Cardiff applied for and was granted permission by the Court to travel to Ireland for ten days after his wife suffered a heart attack.  He returned on the deadline set by the Court.

12. In or about November, 2023, Mr. Cardiff applied for and was granted permission by the Court to travel back to Ireland to assist his wife and daughter and to visit his pulmonologist.

13. As I got to know Mr. Cardiff, I came to know more about his health and I found his health to be fragile.  I believed that he was a potential candidate for a heart attack given his medical condition and all the stress he experienced over the years including chronic asthma.  I noticed that Jason was coughing daily.   I observed that he had problems going up and down the stairs and difficulty breathing. I witnessed on several occasions that he had uncontrolled coughing fits.   He asked me to look out for him because he had prior episodes of uncontrollable coughing and passing out.

14. Mr. Cardiff was an early riser.  On several occasions when he was not up early, I had my husband go upstairs to make sure he was alive.

15. Both of us had COVID in October, 2024, which seemed to increase Jason's coughing fits.  It took Jason longer to get over COVID and he

4

was having even more difficulty going up and down the stairs. Sometime in November, 2024, after he tested negative for COVID, Jason applied to go back to Ireland and planned to see his pulmonologist.

16. When he got to Ireland in November, Jason told me that he got COVID again and told me that the second COVID illness was more difficult than the COVID episode in October.

17. After he saw his doctor in Ireland, he told me about the visit and told me about his medical problems. I asked "Are you coming back? He replied "Of course, I'm coming back. I would never do that to you. I would never want to be a fugitive" He then asked if he could have the downstairs bedroom when he came back. I believed and trusted him.

18. I understand that he made appointments with various doctors to get to the root cause of this problem. I also understand that his General Practitioner found that he was medically unfit to travel and submitted a treatment plan to the Court. I understand that this plan was rejected by the Court and that the Court ordered him to return on January 19, 2025.

19. I am not a doctor. All I know is that, before he left, Jason Cardiff's symptoms needed to be evaluated and treated by a doctor. I have not been in a position to observe Jason's current medical problems but the symptoms he says he has are consistent with what I witnessed all along while he was in Houston.

20. In January (before the January 19 deadline) and early February, I had discussions with Jason about his status in Ireland. I told him that although he had medical problems, he was putting my home at risk and that he needed to return to Houston to cure that problem. Jason told me that he wanted to return but that his doctors told him that he would suffer

5

even greater and irreversible damage to his health if he flew before they
could treat him.

21. For me, my home is my refuge and security. I am a "home-body" with
my husband and three dogs. I did sign the Affidavit of Surety and
understood that my house might be at risk if there was a violation of the
bond conditions. However, we did assure Jason's compliance with the
bond conditions while he was under our control and living at our house in
Houston. I do not think it would be fair to lose my home for actions
taken by Jason that are beyond my control and which I do not support.

22. This is a summary of events. I reserve the right to supplement my
testimony if called as a witness at hearing or trial.

I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.

Executed on this 19th day of March 2025, at Houston, Texas.

Lilia Murphy Cochell

6

# EXHIBIT B

Stephen R. Cochell
Cochell Law Firm P.C.
5850 San Felipe Ste 500
Houston Texas 77057
(346)800-3500
srcochell@gmail.com
Admitted Pro Hac Vice

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888)937-7555
Facsimile (866)858-6637

Attorneys for Defendant
Jason Edward Thomas Cardiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    vs.<br><br>JASON EDWARD THOMAS CARDIFF<br><br>And<br><br>LILIA MURPHY and BRIAN KENNEDY<br><br>        Sureties | Case No. 5:23-CR-00021-JGB |

**DECLARATION OF BRIAN KENNEDY IN SUPPORT MOTION TO SET ASIDE**

**JUDGMENT**

I, Brian Kennedy, declare as follows:

1. I have personal knowledge of the facts set forth herein. If called as a

1

witness, I could and would competently testify to the matters stated
herein. I make this declaration in Support of the Sureties Motion to Set
Aside Judgment.

2. I have signed a waiver of conflict of interest to allow my Mr. Cochell to
   represent me in the Government's request to forfeit bond and to also
   represent Lilia Murphy Cochell and Mr. Cardiff.

3. I became a member of the Board of Directors in Redwood Scientific
   Technologies, Inc. in 2023.

4. I am one of the bondholders who signed an affidavit of surety and
   pledged $30,000 as security if Jason Cardiff did not comply with his
   bond conditions.

5. I have spent a good deal of time with Jason Cardiff over the years
   During that time, I became aware that he had some medical issues but not
   in any detail.

6. In or about September, 2024 I became aware that Jason was given
   permission by the Court to travel to Ireland after his wife suffered a heart
   attack. I understand that he later was granted permission to return to
   Ireland to visit his wife and child and see a pulmonologist. I was
   informed that Jason's health problems were serious and that his General
   Practitioner certified that he was medically unfit to fly home to the
   United States.

7. Sometime in January, 2025, Jason advised me that he had applied to the
   Court for an extension of time to complete treatment in Ireland and that
   the Court denied his motion and ordered him to return to the United
   States. During a discussion with Jason about his health, I told Jason that
   I thought that he should return to the United States. In substance, he told

2

me that he wanted to return to the United States but did not want to risk
that he would suffer additional and lasting harm by returning before
completing prescribed treatment.

8. I understand that there are some pretrial motions to dismiss the case that
may affect the bond issues before the Court. I would request that these
legal issues be resolved before determining the Government's motion to
forfeit bond.

9. This is a summary of events. I reserve the right to supplement my
testimony if called as a witness at hearing or trial.

I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.

Executed on this 19th day of March 2025, at Upland, California.

Brian Kennedy

3

# EXHIBIT C

Stephen R. Cochell
Admitted Pro Hac Vice
srcochell@gmail.com
5850 San Felipe, Ste. 500
Houston Texas 77057
Telephone:(713) 436-8000
Facsimile: (213) 623-2000

Allan Grant (SBN#213658)
Grant's Law Firm
17351 Greentree Drive
Riverside, California 92503-6762
Telephone (888)937-7555
Facsimile (866)858-6637

Attorneys for Defendant
JASON EDWARD THOMAS CARDIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON EDWARD THOMAS CARDIFF<br><br>Defendant | Case No. 5:23-CR-00021-JGB |

I, Jason Cardiff, declare as follows:

1. I am a party in the above entitled action. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of the sureties motion to set aside judgment.

2. This declaration is submitted under the protections of *Simmons v United States*, 390 U.S. 377 (1968) and the United states constitution. Pursuant to Simmons and my constitutional rights, I would object to the use of this declaration for any purpose beyond the court's adjudication of the sureties motion to set aside judgment

3. With respect to this motion to set aside judgment, the statements made on my behalf and my status report, Docket 178, are true and accurate. I do intend to return to the United States as soon as possible. I am concerned that travel before getting treated will result in lasting injury and additional complications to my health.

4. I understand that one of the factors in determining whether bonds should be forfeited is whether the bond was reasonable at the time of issuance. I request that any decision on forfeiting bond be deferred till the court decides four (4) pretrial motions that are currently pending before the court including: (a) the Motion To Dismiss Count 2 based on the Supreme Court's Dubin decision; (b) the Motion To Dismiss Counts 3 and 4 based on the Supreme Court's Aguilar decision; (c) the Motion To Dismiss based on double jeopardy; and (d) the Motion To Suppress Evidence. These motions essentially argue that the Government was not justified in bringing the charges. Dismissal of any of the charges should also result in reduction or elimination of liability on my bond.

5. This is a summary of events. I reserve the right to supplement my testimony if called as a witness at hearing or trial

I declare under the penalties of perjury under the laws of the United States of America that the foregoing is true and correct

Executed on this 19th day of March, 2025 at Dublin Ireland.

Jason Cardiff

COCHELL
LAW FIRM

2